KENJI M. PRICE      #10523
United States Attorney
District of Hawaii

RONALD G. JOHNSON    #4532
Assistant U.S. Attorney
PJKK Federal Building, Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:    Ron.Johnson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                IN THE UNITED STATES DISTRIC COURT

                    FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 17-00101 LEK |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S MOTION FOR |
| vs. | ) | INJUNCTION AGAINST FDC FOR |
| | ) | RETALIATION; DECLARATION OF |
| | ) | JEFFREY DIXON; EXHIBITS |
| ANTHONY WILLIAMS, (01) | ) | A – J; CERTIFICATE OF |
| | ) | SERVICE |
| Defendant. | ) | |
| | ) | |

        **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR**
          **INJUNCTION AGAINST FDC FOR RETALIATION**

**I.   Introduction**

    On January 17, 2018, Defendant, Anthony Williams', filed a Motion For Injunction Against FDC For Retaliation (Motion).  The Motion is broken down into two sections, his statement of facts consisting of 11 paragraphs and a Section entitled Relief Sought consisting of 9 paragraphs. Defendant references his Motion To

Compel which was heard and ruled upon by Magistrate Judge Puglisi and then appealed by the United States.  This Honorable Court heard Arguments on the appeal and reconsideration on January 29, 2018, and indicated to the parties that it would be reviewing the transcripts of the prior hearings before the Magistrate Judges.  Defendant's arguments in the instant Motion raise again some of the same issues of access and accommodation he raised in his Motion to Compel.  The United States would incorporate herein by reference the arguments, declarations and exhibits, it provided to the Court within the: Government's Response To Defendant's Motion To Compel (Docket #73); and Government's Appeal And Request To The District Court To Reconsider A Pretrial Matter Determined Buy The Magistrate Judge. (Docket #79).

    The Federal Bureau of Prisons (BOP) has already explained FDC Honolulu's procedures to the defendant, and how they may best accommodate his requests.  Defendant has represented to FDC Honolulu staff that this Court has already issued several injunctive orders related to his legal access.  He has also repeatedly threatened government employees with "consequences and repercussions" and "drastic action" if his demands remain unsatisfied.  (Docket #73 and #79).

    "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and

practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979); see also Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 132 S. Ct. 1510, 1512, 182 L. Ed. 2d 566 (2012).  The Court should give the Bureau of Prisons (BOP) the "wide-ranging deference" it is due in this instance and refuse to replace BOP's judgement with that of the Court.

The defendant's legal access rights have been more than constitutionally satisfied at FDC Honolulu.  The United States positions on those issues have been presented to the Court in the Government's Response To Defendant's Motion To Compel (Docket #73) and Government's Appeal And Request To The District Court To Reconsider A Pretrial Matter Determined Buy The Magistrate Judge. (Docket #79).

In his Motion, Defendant claims retaliation when in fact his own actions, communications, and statements, have placed him in the very situation he complains of.  Defendant has been treated no differently than any other inmate, and like any inmate within the FDC is subject to the rules and regulations of the BOP.

## II. FDC Honolulu Has Not Retaliated Against Defendant Williams

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  See Rhodes v. Robinson 408 F.3d 559, 567 – 68 (9th Cir.2005).  Defendant Williams alleges FDC Honolulu has denied him the right and ability to communicate with his attorney by phone; delayed his electronic communications by three to nine days; charged him for paper and writing tools; and disciplined him for no legitimate correctional purpose.  These claims are without merit and are unsupported.

### A. Defendant Williams has Abundant Opportunity for Contact with Counsel

FDC Honolulu permits inmates to meet with counsel seven days a week, with visitation hours exceeding twelve hours on most days.  *See* Declaration of Jeffrey Dixon ("Dixon Dec.") at ¶ 4(a).  No advance appointments are required.  *Id.*  Inmates of all security levels are permitted attorney visitation access.  *Id.*  Defendant Williams has met with his stand-by attorney on several occasions and may continue to do so while housed at FDC

4

Honolulu.  *Id.*  Defense counsel may contact the FDC Honolulu Unit Team, directly or via FDC agency counsel, to schedule periodic unmonitored attorney-client calls.  *Id.* at ¶ 4(b).  The facility is not aware of any unfulfilled legal call requests from Defendant Williams's stand-by counsel.  *Id.*  Defendant Williams may contact his stand by attorney at any time to request – without the need for any privileged discussion – that his attorney visit in person or call FDC Honolulu staff to schedule an unmonitored legal call.  *Id.* ¶ 4(c).  Since September 27, 2017, Defendant Williams has made over 100 calls, none of them to counsel.  *Id.*

    B.    **Defendant Williams has Received Full Legal Mail Protections**

BOP mail procedures are determined by its program statements and the Code of Federal Regulations, not Defendant Williams's declaration of himself as a "Private Attorney General."  *See* Dixon Decl. ¶ 5(a).  When properly identified, mail from specified senders qualifies as special mail.  *Id.*  Such mail is logged and opened in the presence of the inmate-recipient.  *Id.*  However, "For incoming correspondence to be processed under the special mail procedures, the sender must be adequately identified on the envelope, and **the front of the envelope must be marked 'Special Mail — Open only in the presence of the inmate'.**"  *Id.* (quoting 28 CFR § 540.2(c))

(emphasis added).  FDC Honolulu staff have carefully explained this policy to Defendant Williams, in writing and in person. *Id.* ¶ 5(b).  All of Defendant Williams's properly-identified legal mail has been logged and opened in his presence.

### III. **Defendant Williams's Electronic Messages Are Transmitted and Received without Undue Delay**

The defendant cites no Constitutional Right to email in prison.  As a general matter, inmate electronic messaging is not a traditional email system.  *Id.* ¶ 6(a).  Users are made aware of delay and monitoring as incidental to use.  *Id.*  Messages are delayed by at least 60 minutes, to prevent the system being used as an "instant message" or "chat" system.  *Id.*  Since September 23, 2018, Defendant Williams has exchanged over 400 messages with outside contacts: approximately 100 emails per month.  *Id.* ¶ 6(b).  His emails have neither been destroyed nor subject to undue delay.  *Id.*

#### A. **Defendant Williams Has Not Been Improperly Charged for Legal Access Tools**

Defendant Williams states that FDC Honolulu charges him for paper, writing tools, and the printing of "legal documents." *See* Motion at ¶ 1(d).  Inmates are provided gratuitous stamps and envelopes to allow full compliance with filing deadlines in their pending case(s) and district court requirements. *See* Dixon Decl. ¶ 7(a).  Legal research access is provided via a LexisNexis terminal in every housing unit and in the Education

Department.  Paper and writing tools are provided to all inmates at no cost upon request, regardless of indigence status.  *Id.* Attached as Ex. D are a series of BOP records describing Defendant Williams's financial status and spending while housed at FDC Honolulu.  *Id.* ¶ 7(b).  Defendant Williams has had $1,170.00 deposited into his spending account over the past six months.  *Id.*  He is not, nor has he ever been without funds while housed with the BOP.  *Id.*  He can also seek assistance from Stand-by counsel for costs and fees associated with his self representation.

### IV. Defendant Was Properly Classified as a Sovereign Citizen By BOP.

Defendant is properly classified as a "Sovereign Citizen" as that term is described and explained by Associate Warden, Annelizabeth Card's declaration attached to Docket #79 as 79-1, at ¶¶ 24-28.  Defendant has been classified as a Sovereign Citizen based upon his statements, communications, publications, and actions.  Defendant sent a letter dated October 30, 2015, to State of Hawaii Attorney General Doug Chin, at the Department of the Attorney General "(de facto)". (Exhibit I).  In this letter, Defendant uses the title "Private Attorney General" and is a self-described "American Sovereign."  He alleges that the Attorney General's Office does not have jurisdiction over him. *Id.* at 1.  Defendant goes on to threaten "don't be surprised if

I, with my law enforcement team, RAID your office with guns and arrest everyone of you criminals and use deadly force if necessary." *Id*. at 2.

On January 15, 2015, Defendant filed a civil lawsuit under 15-CV-20111-Cooke/Torres, against "JUDGE BEATRICE BUTCHKO" in the United States District Court, Southern District of Florida, citing "Common Law Jurisdiction UCC 1-103.6" claiming conspiracy and civil rights violations. (Exhibit J).  Defendant filed this as a "Private Attorney General" through the United States Office of the Private Attorney General" which "is a common law de jure federal agency." *Id*. 1,2, and 11. *See also,* Southern Poverty Law Center, *HATEWATCH: Sovereign Citizen Faces Unlawful Practice of Law Charge in Florida*, June 16, 2017, available at https://www.splcenter.org/hatewatch/2017/06/16/sovereign-citizen-faces-unlawful-practice-law-charge-florida (describing Williams as a Sovereign Citizen who makes use of "the most-common sovereign citizen techniques"); ABC News 7 Miami, *South Florida Sovereign Citizen Found Guilty of Practicing Law without a License*, March 2, 2016, available at http://wsvn.com/news/south-florida-sovereign-citizen-found-guilty-of-practicing-law-without-a-license/ ("Authorities call Williams a sovereign citizen. Believers think many laws do not apply to them;" noting Williams's description of himself as "a foreign diplomat"); ABC News 7 Miami, *Sovereign Citizen Busted*

8

*for Practicing Law Without a License*, November 10, 2015, available at http://wsvn.com/news/sovereign-citizen-busted-for-practicing-law-without-a-license/ ("Authorities consider Williams a sovereign citizen. Followers of the movement do not recognize many conventional laws. Williams calls himself everything from a foreign diplomat to private attorney general."); NBC News 4 Nashville, *FBI Warns Police of Growing Sovereign Citizen Movement*, July 8, 2013, available at (http://www.wsmv.com/story/22788061/fbi-warns-police-of-growing-sovereign-citizen-movement) (casting Williams as one of several "self-proclaimed sovereign citizens who believe the law doesn't apply to them").

In addition, Defendant or other Sovereign Citizens have posted various videos to YouTube related to Anthony Williams, to include: *FBI HAWAII CONSPIRACY 1 OF 2... Judge Evades Oath of Office Question by Anthony Williams*, https://www.youtube.com/watch?v=0M9kIxR_ePU; *FBI HAWAII CONSPIRACY 2 of 2, Anthony Williams framed and assaulted*, https://www.youtube.com/watch?v=cTP5W0VRpmU; *Outlaws in Justice Part 1 Private Attorney General Anthony Williams Produced by Dr Leonard G Hor*, https://www.youtube.com/watch?v=3a2Vry3pf6k; *Interview with Anthony Williams - ON SECOND THOUGHT*, https://www.youtube.com/watch?v=Vo6RBvFkgA4 .

Defendant through his own words and actions validates the BOP classification of him as a Sovereign Citizen. He has claimed that Courts and government entities have no jurisdiction over him, that he is a Private Attorney General, he has frivolously sued those who oppose him, and he has threatened the use of deadly force on more than one occasion.  BOP has accurately classified Defendant as a Sovereign Citizen, and within BOP's rules and policies, and should be able to properly manage the risk he presents.

## V.     **Defendant Williams Has Been Properly Subjected to the BOP Disciplinary Process**

The BOP disciplinary process is governed by Program Statement 5270.09, <u>Inmate Discipline Program</u>, (June 20, 2011).  The policy is publicly available on the BOP website and from any inmate compute terminal.  Defendant Williams was subject to the BOP disciplinary process after a pattern of prohibited conduct.  The docket for this matter reflects comments from Defendant Williams that he intended to use lethal violence against government officials who he believes have compromised his rights under the Constitution: "Any man or woman who tries to restrict and violate my Constitutional divine and common law rights will be met with DEADLY FORCE!!" <u>See</u> Motion to Deny Bail, Dkt. No. 32 (emphasis in Williams's original).  It was in this context FDC Honolulu digested further similar statements from the defendant.

On October 18, 2017, Defendant Williams threatened "consequences and repercussions" and "drastic actions" if FDC Honolulu failed to meet his demands for internet access, a personal unmonitored phone, and other accommodations. *See* Dixon Decl. ¶8.  Two Executive Staff members at FDC Honolulu personally counseled Defendant Williams and urged him to cease threatening BOP staff. *Id.* ¶ 10.  He did not. *Id.*  Based on Defendant Williams's prior threats of deadly force, and due to his sustained threats, FDC Honolulu initiated the disciplinary process against Defendant Williams for acts of threatening and insolence on January 10, 2018. *Id.* ¶¶ 10-11.

Prior to commencement of his disciplinary hearing, Defendant Williams was informed of, and acknowledged understanding of his rights at the hearing. *Id.* at ¶ 12.  He was also informed of his appeal rights under the BOP Administrative Remedy Program. *Id.*

## VI.   Defendant Williams Has Failed to Seek Review with BOP of His Discipline or Any Other Aspect of His Incarceration

In order to properly exhaust available administrative remedies with the BOP, an inmate must proceed through the administrative remedy process. *See* 28 C.F.R. §§ 542.10-542.19. An inmate may utilize the administrative remedy process to address any aspect of his or her own confinement. *Id.* § 542.10. First, the inmate must seek informal resolution of the issue of

11

concern at their institution of confinement. *Id.* § 542.13. If that fails, the inmate must file a formal request ("BP-9") with the Warden. *Id.* § 542.14. If the Warden denies a remedy, the inmate may then appeal first to the Regional Director ("BP-10"), within 20 days of receiving the Warden's response, and then to the General Counsel in Washington, D.C. ("BP-11"), within 30 days of receiving the Regional Director's response. *Id.* § 542.15.

A final decision from the Office of General Counsel completes the BOP's Administrative Remedy Process. *Id.* § 542.15(a). Thus, the administrative process is not complete until (1) the Office of the General Counsel replies on the merits to the inmate's appeal, or (2) the response is not forthcoming within the time allotted for reply. <u>See</u> *Id.* § 542.18.

Defendant Williams informed FDC Honolulu staff of his readiness to use the Administrative Remedy Process, even commenting upon its exhaustion requirements, only two days after arriving at FDC Honolulu ("I will also be sending this request to the warden in order to exhaust my administrative remedies before I have to seek remedy through the courts"). <u>See</u> Dixon Decl. at ¶ 13. However, Defendant Williams has not appealed his disciplinary finding. *Id.* ¶ 14. In fact, Defendant Williams has yet to utilize the Administrative Remedy Program to seek

review of any aspect of his incarceration, including the legal access issues currently pending before the court. *Id.*

Prison administrative remedy schemes ensure inmate grievances are fully considered and justified at the administrative level, before they begin to consume court time and resources. The Supreme Court has recognized that robust use of administrative grievance procedures serves two important policy purposes: "First . . . [it] gives an agency an opportunity to correct its own mistakes with respect to the programs it administers . . . [and, second] promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court . . . ." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal citations and quotations omitted). In this case, Defendant Williams has not approached the BOP to seek formal review of his discipline.

### VII. Conclusion

For the aforementioned reasons, the Court should deny Defendant's Motion For Injunction Against FDC For Retaliation.

//

//

//

//

//

13

DATED: February 1, 2018, Honolulu, Hawaii.

Respectfully Submitted,

KENJI M. PRICE
United States Attorney
District of Hawaii

By  /s/ Ronald G. Johnson
    RONALD G. JOHNSON
    Assistant U.S. Attorney

    Attorneys for Plaintiff
    UNITED STATES OF AMERICA

UNITED STATES v. ANTHONY WILLIAMS
Cr. No. 17-00101 LEK
"Government's Response to Defendant's Motion For
 Injunction Against FDC For Retaliation"