1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF HAWAII

3
     UNITED STATES OF AMERICA,        ) CR 17-00101 LEK
4                                     )
               Plaintiff,             ) Honolulu, Hawaii
5                                     ) October 6, 2017
        vs.                           )
6                                     ) STATUS CONFERENCE
     ANTHONY T. WILLIAMS,             )
7                                     )
               Defendant.             )
8    _____)

9
                        TRANSCRIPT OF PROCEEDINGS
10             BEFORE THE HONORABLE KEVIN S.C. CHANG
                     UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Government:       ROBERT G. JOHNSON, AUSA
13                             Office of the United States Attorney
                               PJKK Federal Building
14                             300 Ala Moana Boulevard, Suite 6100
                               Honolulu, Hawaii 96850
15
     Also Present:             TIMOTHY A. RODRIGUES, BOP
16                             MEGAN CRAWLEY, FBI SPECIAL AGENT

17
     For the Defendant:        ANTHONY T. WILLIAMS, *Pro Se*
18
     Standby Counsel:          LARS ROBERT ISAACSON, ESQ.
19                             547 Halekauwila Street, Suite 102
                               Honolulu, Hawaii 96813
20

21
     Official Court Reporter:  Debra Read, CSR CRR RMR RDR
22                             United States District Court
                               300 Ala Moana Boulevard
23                             Honolulu, Hawaii 96850

24
     Proceedings recorded by electronic sound recording; transcript
25   produced with computer-aided transcription (CAT).

```
 1   FRIDAY, OCTOBER 6, 2017                          10:00 A.M.

 2            THE COURTROOM MANAGER:  Please be seated.

 3        Criminal 17-101 LEK, U.S.A. versus Defendant(1) Anthony T.

 4   Williams.

 5        This case has been called for a status conference.

 6        Counsel, please make your appearances for the record.

 7            MR. JOHNSON:  Good morning, Your Honor.

 8        Ronald Johnson, Assistant United States Attorney on

 9   behalf of the government.  Along with me this morning are Megan

10   Crawley, Special Agent with the FBI, and Tim Rodrigues, a BOP

11   local counsel.

12            THE COURT:  Good morning.

13            THE DEFENDANT:  Good morning.  Private Attorney

14   General Anthony Williams, common law counsel for the defendant

15   legal fiction Anthony Williams.

16            THE COURT:  Good morning.

17            MR. ISAACSON:  Standby Counsel Lars Isaacson, Judge.

18            THE COURT:  Good morning, Mr. Isaacson.

19        Mr. Williams, we're having this status conference in part

20   to draft your opportunity or ability to review electronic

21   discovery at the FDC.  Can you tell me what the situation is

22   now?

23            THE DEFENDANT:  The situation at the FDC, the access

24   that they've given us is inadequate.  The law library, they

25   give us one computer in the unit that has law library
```

UNITED STATES DISTRICT COURT

1    accessibility.  They have six other computers, but the law

2    library cannot be accessed, so we have one computer that 90

3    inmates have to use, and then there's a time limit.  So when

4    you log into the law library, you've got 2-hour time limits,

5    and then once you do those two hours, then you get locked out

6    for at least a minimum of a hour, but by that time somebody

7    else is on it, so you might not be able to use that law library

8    maybe till the next week.

9        With me being a self-represented litigant, I need access

10   that the other inmates really doesn't need because they have,

11   you know, attorney there, they have counsel, and I'm my own

12   counsel.  And right now I can't have the access that I need to

13   properly research, you know, do my documents, type up my

14   documents and things like that, be able to look at the

15   discovery, and that's the reason why I had requested just the

16   physical pages because then I could go through it, you know,

17   through a whole day, whereas if they gave me this right now the

18   way the policy is, I might not be able to look at the disc two

19   hours out of a week.

20       And so I need be able to access if I'm going to get a DVD

21   every day to, you know, be able to look at the files and be

22   able to be prepared for trial.

23           THE COURT:  Mr. Isaacson, do you and Mr. Williams

24   have a sense of how many documents there are?

25           MR. ISAACSON:  Judge, looking over the discs that

1   I've provided, there were two sets of discovery, giving --

2   apparently there's 50,000 more pages plus many audio-type

3   files, so there's quite a large number of materials.

4            THE COURT:  Mr. Johnson, with regard to the volume

5   of the documents, is there a search -- a search feature that

6   can be employed?

7            MR. JOHNSON:  Your Honor, they should -- it should

8   be in a format that allows for search, and with the information

9   that's been provided, my legal assistant and our paralegal have

10  provided an index.  So you can look at the index, which is

11  assigned to the case, look at the disc number and then see the

12  information that will be contained on the disc, and the

13  information on the disc is also Bates stamped.  So you can --

14  it references by kind of subject and what you would be looking

15  at, the nature of the documents, say, like bank records for

16  First Hawaiian Bank for a period, and then it would also

17  reference the Bates stamp for that.

18       So it is searchable and it is labeled in a way with an

19  index so that you can navigate and put the correct disc in if

20  you want to look at certain types of things.

21           THE COURT:  Mr. Rodrigues, does the computer that

22  the FDC has available to inmates have the ability to conduct

23  such a search?

24           MR. RODRIGUES:  Your Honor, I'm not sure if the

25  software is capable of doing that.  I have brought some

1    information regarding the file types that are viewable.  As far

2    as I know, search is possible and that's something I can get

3    back to you about to let you and counsel know if that's

4    possible.

5         I did bring some additional materials in and if I could

6    provide the Court a brief overview of our capabilities

7    generally at the FDC.  I've also been provided with some

8    specific questions from counsel regarding some concerns from

9    the defendant which I'll try to address right now.

10             THE COURT:  Okay.  Why don't you go ahead so that

11   Mr. Williams can also hear what I'm hearing, yeah.

12             MR. RODRIGUES:  The first document, Your Honor, is a

13   memorandum from our warden regarding electronic discovery

14   procedures at the FDC, and this was issued earlier this year.

15   And it does specify that CDs and DVDs are acceptable and that's

16   the format which the government and defense counsel can send

17   materials to the defendant.  These materials can be reviewed

18   during a legal visit.  There are several computers in the

19   attorney-client visitation rooms and they can also be mailed in

20   or left in person.

21        And responding to some of the specific questions that were

22   provided to me from defense counsel, the discs will be stored

23   with the defendant's unit team.  He can retrieve them at his

24   option, simply go into the unit team and checking them out.

25   The reason they're not provided and able to be stored in a cell

1   is they can easily be broken, used as weapons, but they will be

2   available all day.  And I have confirmed that he is in our

3   pretrial unit which does have a dedicated discovery review PC

4   in the unit, and as far as I know, no one else is making use of

5   it at this time.  He can use it.  He can print, through a

6   request of the staff, at $0.10 a page.

7        And he can also request use of a typewriter.  It's not out

8   in the open.  He can request use of it, and depending on his

9   indigency or nonindigency, he'll either be provided a ribbon

10  and things like stamps, or he'll be asked to pay for them per

11  our policy.

12        All of our units, as the defendant mentioned, do have a

13  cluster of computers.  One of them is a dedicated electronic

14  law library which is a Westlaw terminal, the same as we use.

15  It's updated monthly and it is current law, and it also has all

16  BOP policies.  I do understand the defendant's concern that

17  sometimes it might be occupied and I would encourage him to

18  work with our staff.  Our staff are aware all the way -- I

19  understand he's already spoken to our warden and various other

20  staff members.  We will work with him to make sure that that

21  computer is available to him.

22        Another option that he has is to go to the Education

23  Department where there is another electronic law library,

24  another discovery PC, and the ability to print at that

25  location.

1          The second document, Your Honor, is our national policy on

2     inmate legal activities, and I won't review it in full, but I'm

3     sure the defendant will appreciate knowing what he has access

4     to, what his rights are in this regard.  One thing I would like

5     to point out is on page 9 of the document, the obligation that

6     we have under 28 CFR 543.11 is to provide a law library and

7     provide a reasonable opportunity for the defendant to

8     participate in his own defense.  And we certainly plan to meet

9     and exceed that in this case.

10          On the very next page is also some important language.  If

11     the defendant finds that he's dissatisfied with the contents of

12     our law library, which I'll go over in a moment, he can have

13     materials sent to him by counsel or by a third party.  I would

14     like to note, however, that those materials are subject to

15     review.  There might be certain documents, the UCC, certain IRS

16     forms, etc., which we may look at more closely and will

17     certainly be open to discussing whether they're appropriate for

18     use in this case.

19          And in the appendix to this document, Your Honor, which is

20     right after page 22, lists each and every item that is present

21     in our electronic law library and that's something that the

22     defendant can review on his own.

23          And finally, the third document is simply each and every

24     file type that our computers can accommodate, and I will

25     confirm for the Court whether we have a searchable function on

1    those computers.

2            THE COURT:  I was wondering, Mr. Rodrigues, since

3    Mr. Williams raises the issue about access, is there any way

4    that the computer internally time stamps when it's being used

5    or accessed by a particular inmate?  Or is it just generally by

6    inmates, or would Mr. Williams have his own ID, for example?

7            MR. RODRIGUES:  Yes, Your Honor.  His login would be

8    tied and time stamped and all of those things, and to the

9    extent that he would like -- anything that he would like to

10   request which he believes is critical to his due process in

11   this matter, I encourage him to speak with our staff; he can

12   use any of those computer terminals, the 6 to 8 computers, to

13   email staff, any department, education, unit team, an associate

14   warden.  And if he has concerns, I'd encourage him to use that

15   to discuss what they are.

16           THE COURT:  Mr. Williams, you have any reaction?

17           THE DEFENDANT:  Yes.  The objection that I would

18   have is for the FDC policy.  The use of a typewriter is

19   inadequate.  This is 2017 and we use computers to type motions.

20   And the other facility, the other federal facility that I came

21   from in Pahrump actually provided the computers with the Word

22   document where we can actually type our motions, edit them, and

23   we can have jump drives sent in by our attorney that we can

24   actually save our documents on, and I would need that seeing

25   that I am representing myself, where I can, you know, if I have

1    to go back in and edit a document or a motion, I will be able

2    to do that --

3              THE COURT:  I'm sorry, Mr. Williams, I'm not

4    familiar with the term "jump drive."  What is that?

5              THE DEFENDANT:  Zip drives, right, you know, you

6    store your information on, and -- 'cause the present system

7    that they have with the typewriter, if I type a 5-page motion

8    and I mess up and I have to go back, I got to scrap the whole 5

9    pages and go back and type the whole thing over again, whereas

10   if I had access to the computer that has the Word document, I

11   can just simply go in there, edit it, you know, save it, and do

12   whatever I need to do.

13       Also, they don't have where we could have access to a copy

14   machine 'cause I have discovery documents that I would need to

15   copy so I can send to the United States Government with my

16   discovery -- my participation in the discovery, and I don't

17   have access to that.

18       The terminals in the unit give you a two-hour time limit.

19   So like I was saying on the law library, once you log in for

20   those two hours, then you're done, you know, for another hour,

21   and that's the only computer that accesses the law library.

22   The other computers in there you can access your personal email

23   and do things like that and, you know, mail to staff, but you

24   can't use those other emails for law library, you know, and I

25   need to be able -- 'cause I'm going to be basically on the

1    computer all day, you know, doing my case, researching my case.

2    I don't do any other leisure stuff.  That's what I, you know,

3    do, working on my case.

4        So with the typewriter I would need access -- now I went

5    to the law library there; they do have computers in the law

6    library that does have the word processing, you know, formats

7    where I could use, but when I talked to the education staff,

8    she said that the only way I would be able to use that is I

9    would have to get a court order and then they could let me use

10   that, that computer with the Word document where I could type

11   it up.  She said she couldn't authorize it on her own, that she

12   wouldn't -- you know, as long as I got a court order, then I

13   would be able to do that.

14       So that's one thing I would need and that would greatly

15   assist me in preparing my documents, you know, where I can file

16   the motions in a timely manner, also to be able to get my

17   documents filed to be able to print the documents up.  Way the

18   format is now, you're charged $0.10 a page, and that's really

19   against the U.S. Supreme Court case *Bounds v. Smith*, also

20   *Johnson v. Avery, Lewis v.* Casey, *Younger v. Gilmore* where

21   anything having to do with legal materials being printed or

22   copied, inmates are not supposed to be charged for that.  And

23   the present situation is that they are charging us for that.

24       I've already been gained -- been afforded my indigency

25   status, so I am indigent, so I cannot pay to have these

1   documents printed out, especially if the government is saying

2   there's over 50,000 pages.  So there's going to be some things

3   in there that I'm going to need to print out that I might have

4   to use as exhibits and attachments to some of the motions that

5   I will be filing.

6       So it would be a financial burden on me to have to pay

7   $0.10 every time I need to print out some legal documents, and

8   that's the current situation right now.  Even if I do research

9   and I want to print out whatever I just researched, I got to

10  pay $0.10 a page and I don't have it to pay, so I can't just

11  sit there and just write everything that I need to write out

12  for my research.

13      Also, when I'm doing the motions, I will be able to be

14  able to copy and paste, you know, some of the case law into a

15  Word document where at the present I can't do that.  I would

16  have to literally handwrite all the research and then go to the

17  typewriter and retype everything that I hand wrote, you know,

18  which is very tedious, it's time consuming, and it's

19  unnecessary seeing that they do have the proper computers with

20  the proper Word documents for me to be able to access to be

21  able to do that.

22          THE COURT:  Well, with regards to the access to a

23  computer that has some word processing ability, it's the

24  court's inclination that Mr. Williams ought to be able to

25  access that computer.  Whether or not he's entitled to the

1  use -- exclusive use of a computer is a very different issue.

2  There are other inmates who are there who may also be in need

3  at some point.

4       What I'd like to see is some sort of a -- Mr. Rodrigues, a

5  time period so we can come back and review these issues to see

6  how, in fact, things are being implemented and worked through.

7       So what I would do is schedule another status conference,

8  say, in three weeks.  In the meantime, Mr. Williams will have

9  access to the discovery computer that you've referred to.  As

10 you've indicated, he'll have access to the discs or DVDs that

11 he can use and scan and so forth.  As he scans, I'm sure he has

12 access to paper and pencil so that he can make whatever

13 notations on whatever documents since they're going to be

14 referenced or somehow identified, so that in the future if he

15 wants to copy those documents, he can just refer back to his

16 own notes which are going to be privileged and so forth.

17      As far as the research, let's see how -- rather than

18 having a computer exclusively available to Mr. Williams, let's

19 see what his access and use turns out to be with regards to

20 that Westlaw terminal.  And as far as copying documents, I

21 understand that he's indigent, but that doesn't mean that he's

22 not charged.

23           MR. RODRIGUES:  Your Honor, if I may?

24           THE COURT:  Sure.

25           MR. RODRIGUES:  I do have some information which may

1  be helpful to the defendant.  The nonelectronic law library

2  computer terminals, all of them have what is colloquially

3  called inmate email.  It's the CorrLinks system.  What many

4  inmates choose to do is write emails as drafts which go to no

5  one and hit the print button.  It is functionally equivalent to

6  a word processer, and he can use that.  I understand that he is

7  indigent, and I would ask him to please submit a request to his

8  unit team or to the TRU -- Trust Fund Department to gain access

9  where he could use that as the functional equivalent of a word

10  processer.

11       Regarding high volume printing, I think it's wonderful

12  that there is standby counsel.  This would be a great

13  opportunity to meet with standby counsel, look at the documents

14  together in the attorney visitation room, and decide what

15  large-scale printing needs to occur outside the prison by

16  counsel which could be left in person or mailed back to the

17  defendant.

18            THE COURT:  I agree.  Mr. Johnson?

19            MR. JOHNSON:  Your Honor, at the prior hearing we

20  were in front of Judge Mansfield and basically we were looking

21  at potentially having to produce -- I believe the first wave of

22  discovery that was provided was somewhere in the ballpark of

23  53,000 pages, so a set for the defendant and a set for standby

24  counsel counsel, you know, we're talking 106,000 pages of

25  material.  The other problem that production of hard copy

1    presents is the Bureau of Prisons then won't let him have that

2    volume of paper in his cell, and so then, you know, it poses

3    other problems logistically.

4        We believe that the Court's approach with the discs and

5    access is a good one.  And to the extent and -- and maybe

6    Mr. Rodrigues can answer this question -- to the extent that

7    court order is necessary for use of a word processer,

8    Judge Mansfield mentioned that at the prior hearing and said,

9    you know, once we had somebody from the Bureau of Prisons

10   present, we could explore that.  I think that Mr. Isaacson -- I

11   have no objection to that.  If Mr. Isaacson feels that that's

12   necessary, you know, we could stipulate to an order to that

13   effect, if one is necessary.

14       THE COURT:  Would you prepare or propose the

15   proposed stipulation, Mr. Isaacson?

16       MR. ISAACSON:  Yeah, okay.

17       THE DEFENDANT:  As long as the -- you know, in the

18   stipulation I just need access to a computer, you know, daily

19   that has word processing, you know, capability where I can

20   draft my motions, also where if I'm doing research -- because

21   what I do a lot of times when I'm researching, I will copy and

22   paste, you know, like the case law and then copy and paste that

23   to the Word document so where I can have it on the same

24   computer.  And that's my only concern, that the computer they

25   give me Word document access won't be the computer where I have

1    access to the LexisNexis, you know, program to be able to copy

2    and paste and, you know, it would be -- basically defeat the

3    purpose.

4           THE COURT:  No, I don't see it that way at all,

5    Mr. Williams.  What I do see is that you have a need and we're

6    doing our best to try and meet that need in accordance with due

7    process and what justice requires.  I'd like you to work

8    through with FDC, your standby counsel, and Mr. Rodrigues to

9    see what the best system is.  I mean, this is not going to be

10   done overnight just because of the volume.  Having -- having

11   been involved in a nonjury trial, you know, for eight months

12   with myself as a judge with thousands -- hundreds of thousands

13   of pages of documents, I understand the need, and I also

14   understand some of the management issues that come into play.

15         So I think this is a good start.  Let's see how this

16   works, and then we'll get together again in three weeks and see

17   how this is working out.

18         Mr. Isaacson.

19         MR. ISAACSON:  Well, Your Honor, I have no

20   objection.

21         Can I just ask a question, Mr. Rodrigues?  Do you mind me

22   asking a question?

23         MR. RODRIGUES:  No.

24         MR. ISAACSON:  It sounds like -- do you think he

25   needs to have an order to be able to use the word processing

1    system?  Sounds like -- is it required to have an order before

2    you can use it?

3            MR. RODRIGUES:  Inmates are -- this would be a staff

4    machine, and inmates are, by our rules, not permitted to use

5    those machines.

6            MR. ISAACSON:  Okay.

7            MR. RODRIGUES:  There would need to be significant

8    modifications made by our Information Technology Department,

9    and respectfully, I would ask for some time to speak with that

10   department before I could faithfully represent what is or is

11   not possible.  And in the meantime I would ask that the

12   TRULINCS system be used as a makeshift word processer in the

13   meantime as I gather this information for the Court.

14           THE DEFENDANT:  Can I speak?

15           THE COURT:  Sure.

16           THE DEFENDANT:  I had talked with the education

17   staff that's actually in the law library, and there are

18   computers in the law library that we can access that has the

19   Word document on there, but she said we just would need a court

20   order.

21           THE COURT:  Well, I think that's what Mr. Rodrigues

22   is referring to are those machines.

23           THE DEFENDANT:  Well, I mean, we can use the

24   machine, but we don't have access to the Word program on that

25   machine.  We using that machine.  It's not a staff machine.

1          THE COURT:  I understand that Mr. Rodrigues is --
2     that's sort of within the universe of our developing a system
3     for you so that you'll have that access, whether it's that
4     machine or another machine --
5          THE DEFENDANT:  Well --
6          THE COURT:  -- what I understand is -- and I
7     understand what you're saying is that they're already --
8          THE DEFENDANT:  Right.  They already have the
9     machine that's there that we can use, but they've taken the
10    Word document out.  But it's -- well, they made it where we
11    can't access it, put that I way.  So it's there and we can use
12    the computer, but we can't use the Word program on that
13    computer unless we get a court order.
14         THE COURT:  And I hear you and I think that's what
15    we're trying to do is to see whether or not that's the best
16    method to do it, or if there's a staff machine, that may be a
17    better opportunity for you.
18         THE DEFENDANT:  Okay.
19         THE COURT:  So that's what we're trying to do.
20         THE DEFENDANT:  All right.
21         MR. ISAACSON:  If I may, Mr. Rodrigues, if you give
22    me that information, I'll convey it to Mr. Williams.  And if
23    it's possible that it be worked out -- but I'll prepare an
24    order in case it can't.  Is that fair?  Okay.  And I'll
25    confirm.

1          THE COURT:  Two weeks?

2          THE DEFENDANT:  And I just have one more question.

3   What about the storing of my documents like when I print out

4   the documents to be able to save it because I want to be able

5   to save the documents, you know?

6          THE COURT:  Again, I think, Mr. Williams -- I'm not

7   trying to deflect your question, but there's a difference

8   between your storing 50 pages and 500 pages and 5,000 pages.

9          THE DEFENDANT:  Right.  No, I'm just saying just

10  like the motion that I'm typing that I need to file, not the

11  discovery.  I'm just talking about like the motion that I file.

12         THE COURT:  I think currently inmates are allowed to

13  keep legal papers in their rooms, cell, whatever.

14         MR. RODRIGUES:  Yes, Your Honor.

15         THE COURT:  So if that's what you're talking about.

16  I'm actually thinking of more in terms of discovery that you

17  may want copied or printed, Mr. Williams, trying to anticipate

18  that situation.

19         THE DEFENDANT:  Right, right.  Okay.

20         MR. RODRIGUES:  And it's three cubic feet, Your

21  Honor.

22         MR. ISAACSON:  What is that?

23         THE COURT:  So --

24         MR. RODRIGUES:  Few boxes.

25         MR. ISAACSON:  Few boxes.

1          MR. RODRIGUES:  Couple boxes.

2          THE COURT:  All right.  So it's a good place to

3     start.  Counsel?  Mr. Williams?

4          THE DEFENDANT:  I also have --

5          MR. ISAACSON:  Oh, I -- sorry.

6          THE COURT:  Mr. Isaacson?  Mr. Williams?

7          THE DEFENDANT:  Yeah, I have -- I came from FDC

8     Miami and I was transferred from FDC Miami.  I had two boxes of

9     my legal work that still hasn't got here.  And within that

10    legal work is documents that I have for discovery to be able to

11    give to the government, but I still don't have it.

12         So I talked to the receiving and distribution.  They said

13    they haven't had it.  I had my people on the outside call FDC

14    Miami.  They can't get through FDC Miami, I guess they say

15    because of the hurricane or because of the phone lines or

16    something.  But I'm being handicapped because a lot of my --

17    well, all of my legal documents are in those two boxes.

18         And so I don't know what to do to be able to locate them

19    so I can get them because, you know, my trial is set

20    November 21st and I'm in dire need of that information because

21    they have exhibits in there that actually prove my innocence

22    that I need.

23         THE COURT:  Mr. Rodrigues, would you check with your

24    compatriot or counterpart at FDC Miami to determine or perhaps

25    be able to determine whether or not those boxes of documents

1  are en route or in?

2          MR. RODRIGUES:  Yes, Your Honor, I'll look into it.

3          THE COURT:  All right.

4          MR. ISAACSON:  One last thing, Your Honor.  I have

5  been holding onto the discovery 'cause I did not know these

6  protocols until today, and I will, pursuant to them, transmit

7  them to my client.

8      I would request that the government provide me with a set

9  of these discs as well so I can -- 'cause if he's going to have

10 it in his cell, I need to have it as standby counsel.

11         THE COURT:  Understand.

12         MR. ISAACSON:  So I would request the government

13 give me a duplicate set of the discovery discs and print-outs.

14         THE COURT:  Mr. Johnson's nodding in the affirmative

15 so --

16         MR. JOHNSON:  Yes, Your Honor, we'll get on that

17 process.

18         THE COURT:  So three weeks, Toni?

19         THE COURTROOM MANAGER:  October 27th at 10 o'clock

20 A.M.

21         MR. ISAACSON:  Sorry, Your Honor.

22         THE COURT:  It's all right.

23         MR. ISAACSON:  The question was -- I've brought it

24 with me today -- can I give them to him today, or do you want

25 me to transmit them through the -- he's asking if I can just

1   give it to him.

2            THE DEFENDANT:  Yeah, if he does it through the

3   mail, I'm not going to get it till probably Tuesday.

4            THE COURT:  The protocol, Mr. Rodrigues?

5            MR. RODRIGUES:  If I may ask, are these discs,

6   Mr. Isaacson?

7            MR. ISAACSON:  Yes.  I can show them to you.

8            MR. RODRIGUES:  No, thank you.  The current

9   arrangement that we have with the U.S. Marshal Service by an

10  MOU is to accept a reasonable amount of paper or legal

11  material.  I would kindly ask if you could please send them in

12  the mail.  I understand there will be a delay, but we don't

13  have provisions in place for nonpaper receipt through this

14  channel.

15           MR. ISAACSON:  I'll do it today, Your Honor.

16           THE COURT:  Thank you very much.  We'll be in

17  recess.

18           MR. JOHNSON:  Your Honor?

19           THE COURT:  Yes, Mr. Johnson.

20           MR. JOHNSON:  On the -- I was trying to look at my

21  schedule and would it be possible to do it a little earlier?  I

22  have --

23           THE COURT:  Earlier in time or earlier in date?

24           MR. JOHNSON:  Either -- either the afternoon of the

25  27th or maybe the 25th?

1          THE COURT:  10 o'clock?  Did you want to do it the

2    afternoon of the 25th?

3          MR. JOHNSON:  It could be -- it could be afternoon

4    27 -- afternoon -- 25, 26, 27 afternoon is fine, or 25 --

5          THE COURT:  Mr. Isaacson?

6          MR. ISAACSON:  Judge, I'm available the 27th.  The

7    only thing I might add, Judge, because we are set for trial in

8    November, I might suggest, Judge, if we maybe put it a week

9    earlier, two weeks instead of three, just 'cause if we are

10   going to trial, these issues are going to be pretty paramount.

11   I think they will either be resolved by then or not.

12        I might suggest the 20th, Judge.  There's a hearing set on

13   the bill -- Mr. Williams's bill of particulars at 10 o'clock on

14   the 20th.  Perhaps that might be a time --

15         THE COURT:  Mr. Rodrigues, is that enough time for

16   you?

17         MR. RODRIGUES:  Yes, Your Honor.

18         THE COURT:  All right.  We'll schedule it the same

19   time, status conference.

20         THE COURTROOM MANAGER:  Puglisi, is that okay?

21         THE COURT:  The Bill of Particulars in front of

22   Judge Puglisi?

23         MR. JOHNSON:  Yes.

24         THE COURT:  Why is that?

25         THE COURTROOM MANAGER:  Because you're out --

1          THE COURT:  Oh, I'm out, that's right.  I'm

2    traveling.  Yeah, that's fine.

3          MR. JOHNSON:  Would it be possible, Your Honor, to

4    do it on the 18th or the 19th?

5          THE COURT:  That would have to be in front of

6    Judge Puglisi because I'll be in Arizona.

7          MR. JOHNSON:  Hmm, okay.  My thought was just, Your

8    Honor, the continuity 'cause you know where we are with this.

9          THE COURT:  I think there's some advantage to that

10   and also some disadvantage.

11         MR. JOHNSON:  Yeah, yeah.  Yes, Your Honor.

12         THE COURT:  But --

13         MR. JOHNSON:  Okay.

14         THE COURT:  Mr. Isaacson, I'll be back Monday, which

15   would be --

16         THE COURTROOM MANAGER:  23rd.

17         THE COURT:  -- the 23rd of November.

18         MR. ISAACSON:  That is the date of our final

19   pretrial conference in this case.

20         THE COURT:  So we'll add it on to the final

21   pretrial, Mr. Johnson, Mr. Rodrigues.

22         MR. JOHNSON:  That'd be great, Your Honor.

23         THE COURT:  Okay.  We'll be in recess.  Thank you

24   very much.

25         MR. ISAACSON:  Thank you.


                    UNITED STATES DISTRICT COURT

1                    (Proceedings concluded at 10:31 A.M.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      TRANSCRIBER'S CERTIFICATE

 2

 3              I, DEBRA READ, court approved transcriber, United

 4    States District Court, District of Hawaii, do hereby certify

 5    that the foregoing is a correct transcript from the official

 6    electronic sound recording of the proceedings in the

 7    above-entitled matter and that the transcript page format is in

 8    conformance with the regulations of the Judicial Conference of

 9    the United States.

10              DATED at Honolulu, Hawaii, January 25, 2018.

11

12                      /s/ Debra Read

13              DEBRA READ, CSR CRR RMR RDR

14

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**