```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3
        UNITED STATES OF AMERICA,      ) CR 17-00101 LEK
 4                                      )
                    Plaintiff,          ) Honolulu, Hawaii
 5           vs.                        ) October 23, 2017
                                        )
 6                                      ) FINAL PRETRIAL CONFERENCE,
        ANTHONY T. WILLIAMS,            ) STATUS CONFERENCE AND
 7                                      ) CONTINUED HEARING ON THE
                    Defendant.          ) MOTION FOR BILL OF
 8      _____) PARTICULARS [39]

 9
                      TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE KEVIN S.C. CHANG
                 UNITED STATES MAGISTRATE JUDGE
11
        APPEARANCES:
12
        For the Government:       ROBERT G. JOHNSON, AUSA
13                                Office of the United States Attorney
                                  PJKK Federal Building
14                                300 Ala Moana Boulevard, Suite 6100
                                  Honolulu, Hawaii 96850
15
        Also Present:            TIMOTHY A. RODRIGUES, BOP
16
        For Defendant (1)        ANTHONY T. WILLIAMS, Pro Se
17      Anthony T. Williams:

18      Standby Counsel:         LARS ROBERT ISAACSON, ESQ.
                                 547 Halekauwila Street, Suite 102
19                               Honolulu, Hawaii 96813

20      For Defendant (2)        MICHAEL JAY GREEN, ESQ.
        Anabel Cabebe:           841 Bishop Street, Suite 2201
21                               Honolulu, Hawaii 96813

22      Official Court Reporter: Debra Read, CSR CRR RMR RDR
                                 United States District Court
23                               300 Ala Moana Boulevard
                                 Honolulu, Hawaii 96850
24
        Proceedings recorded by electronic sound recording; transcript
25      produced with computer-aided transcription (CAT).
```

1   MONDAY, OCTOBER 23, 2017                    10:05 A.M.

2            THE COURTROOM MANAGER:  Criminal 17-101 LEK, United

3   States of America versus Defendant(1) Anthony T. Williams,

4   Defendant (2) Anabel Cabebe.

5        This case has been called for a final pretrial conference,

6   status conference, and a continued hearing on the motion for

7   bill of particulars.

8        Counsel, please make your appearances for the record.

9            MR. JOHNSON:  Good morning, Your Honor.

10        Ronald Johnson, Assistant United States Attorney on

11   behalf of the government.  Along with me this morning are Megan

12   Crawley, Special Agent with the FBI, and Timothy Rodrigues, the

13   counsel for the FDC in Honolulu.

14            THE COURT:  Good morning.

15            THE DEFENDANT:  Good morning.

16        Private Attorney General Anthony Williams, common law

17   counsel for the defendant, legal fiction Anthony Williams.

18            MR. GREEN:  Your Honor, good morning.

19        Michael Green for Anabel Cabebe.  Allow me to waive her

20   presence.  The government has no objection; I hope the Court

21   does not.

22            THE COURT:  Yes.

23        Mr. Johnson, before we start on the bill of particulars,

24   can you give me an update as to the status of discovery?

25            MR. JOHNSON:  Your Honor, my understanding is that

1    through communications that I've seen crossing between

2    Mr. Isaacson and Mr. Rodrigues, that Mr. Williams has been able

3    to access some of the recorded statements and -- but still is

4    claiming to have some difficulty.  There was some issue as to

5    whether or not he was going to move from one module to another

6    to allow him to have access full-time to certain equipment, and

7    I'll let Mr. Rodrigues kind of fill the Court in as to what his

8    current status is.

9           THE COURT:  Mr. Rodrigues.

10          MR. RODRIGUES:  Good morning, Your Honor.

11     Mr. Williams was moved to a housing unit that up until

12    Friday I was under the impression had a full-time dedicated

13    discovery computer.  I found out this morning that our computer

14    services staff have moved it because it has actually never been

15    used.  They assured me that it would immediately be moved back

16    and he could make use of it daily.  He also has access to

17    several of the other items that he has requested.

18     I provided a letter to Mr. Isaacson explaining how

19    Mr. Williams could accomplish many of the requests that he had

20    made of the FDC.  And in particular one theme of Mr. Williams's

21    requests has been surrounded by the claim of indigency, the

22    need for free copies, etc.  And Mr. Williams is not indigent;

23    he's had $700 deposited into his account over the last three

24    months, and I hope that squares away any question of gratuitous

25    services being provided to him.  But I am working with my staff

1    in good faith to provide this as soon as possible to him, the

2    computer access.

3              THE COURT:  Mr. Williams, do you want to respond to

4    what Mr. Rodrigues has just told me before we get to your

5    motion?

6              THE DEFENDANT:  Yes.  The FDC has not been

7    accommodating.  They've put every roadblock possible to prevent

8    me from using a PC.

9         The first thing they said is that I refused to move,

10   which I didn't refuse to move.  I asked Officer Williams if it

11   was possible that I could stay in the unit that I was and they

12   can just bring the computer there to the office there, and he

13   said he would check and see if that would happen.  And then I

14   was told that I refused, which I didn't.

15        They also said that I didn't make a request to go to the

16   law library, the Education Department.  And the day that I got

17   the discovery DVDs was the 10th of October.  That's the exact

18   same day.  Soon as I got them, I wont on the computer and made

19   a request.

20        Mr. Rodrigues sent a letter stating that I never

21   requested to go to the Education Department, which was a

22   flat-out lie, which I did.  Then he purports to say that I'm

23   not indigent, which I've already been declared indigent by the

24   Court.  $700 in three months that was sent by various people in

25   my family so I can have food to eat because they don't feed us

1    properly over there does not eradicate the fact that I am

2    indigent.  And I would like to say that with $700 in three

3    months, see if Mr. Rodrigues can live off of $700 in three

4    months.  So I am in fact indigent and the law states that being

5    a defendant, I'm not supposed to incur any costs as far as my

6    defense.

7         And so what FDC is trying to do is basically make me pay

8    for my defense.  If it was up to the FDC, I think they would

9    have -- probably make me even pay to use the computer the way

10   they're -- the roadblocks they've been giving me, and I think

11   Mr. Isaacson would come and actually speak on his obstacles

12   that he met in trying to accommodate me so I can be prepared

13   because the trial is set for 30 days and I still haven't been

14   able to look at the discovery DVDs.  I was able to hear and see

15   one -- well, two DVDs, the audio and the video.  That was the

16   only one.  But the document DVDs, it won't let me access it.

17   Whatever program that they put on there, the computers at FDC

18   cannot access it.  It cannot, like, pull it up.  It won't do

19   anything.  It gives a error.  And so the Education Department,

20   Ms. Camillo, said that whoever got -- whoever made the CDs,

21   they would have to reformat the DVDs and maybe put it on PDF

22   format where I would be able to view the documents on there.

23        So just in light of everything that I've experienced, if

24   that has to happen, it might be another 30 days before I can

25   get access to that, the way I've been treated by the FDC.

1              THE COURT:  All right.  Mr. Isaacson?

2              MR. ISAACSON:  Your Honor -- Mr. Williams, allow me

3    to address the Court?

4              THE DEFENDANT:  Yes.

5              MR. ISAACSON:  Your Honor, to further help this

6    along, I certainly have been in contact with Mr. Rodrigues.

7    He's been very -- certainly has attempted to respond to the

8    emails.

9         Mr. Williams was indicted back in February.  He was in

10   Florida.  I was appointed kind of early or mid September.  I

11   sent out a discovery letter right away when I was the attorney

12   of record.  I did receive the CDs.  There was a whole bunch of

13   them, as you know, in this case, 50,000 pages, apparently, of

14   documents.

15        We give -- so then Mr. Williams was brought in.  We met,

16   we had an initial hearing, and then it was set OPAC(phonetic)

17   and send the DVDs.  So we did that.

18        Going back and forth to the emails, there was certainly,

19   Yes, you could send the CD; they sent it over.  We filed a

20   number of motions.  And the problem was, Judge, where he was at

21   the floor, there was a situation where Mr. Williams said he had

22   requested to be able to use the computer to review the

23   discovery once it arrived, and then with all due respect to

24   Mr. Rodrigues, he was -- he was sending me messages back that,

25   no, my client had never really done this, had never officially

1      requested, and so we were having some gum-up there.

2           On the 18th of August, you know, I believe Mr. Rodrigues

3      was able to discover that actually on the 10th of

4      October -- sorry -- October 18th, that he -- my client actually

5      had requested, they found that, and I have a copy of that which

6      I presented to him.

7           So I just want to be very clear it wasn't Mr. Williams

8      really.  We got the discovery to him and there was a problem

9      reviewing it in the law library which is where the discovery

10     computer was on the floor he was at.  And so he's -- finally

11     that kind of communication came through at FDC, but there was a

12     miscommunication at FDC, I think.  And so finally he was able

13     to see it, and I think last Thursday was the day he was only

14     able to go to this law library where they had the discovery

15     computer and only for a brief time.

16          Now he's on a new floor.  There was a question about him

17     moving to a new floor, and the idea was that, hey, you could

18     move to this new floor, we'll have the discovery computer,

19     'cause the three things are legal research, being able to view

20     discovery, the ability to prepare motions.  Those are the three

21     major things to accomplish, I think.  And so the idea was

22     moving to a new floor would be able to do that.

23          I'm glad they now have -- the discovery computer wasn't

24     there, so I guess that's going to be remedied.  The legal

25     research is still -- I want to make sure I got this

1    right -- it's still -- there's still a wait-in-line kind of a

2    thing.  You sign up for two hours and you got to wait, and

3    that -- really, for a case that's going to trial with all these

4    counts, documents -- certainly I think if we could figure out

5    some way to allow more access, I think that would be very

6    helpful to him.

7         In terms of the word processing, I don't believe on the

8    floor he's at now -- please correct me if I'm right -- they do

9    not have word processing on the computers on this floor.

10             THE DEFENDANT:  No.

11             MR. ISAACSON:  My understanding is there's six

12   computers, one of which is dedicated through the Lexis stuff

13   alone, but he has to wait in line for that.  And there's

14   no -- at this point no word processing on the floor.  So no

15   word processing on the floor, can't do the discovery, but

16   hopefully that'll be remedied, and still have problems with

17   legal research.

18             THE COURT:  One of the things that I want to be sure

19   that I understand, Mr. Williams seemed to say that trying to

20   review the disc, he can't -- it won't open or the documents

21   won't open?

22             MR. ISAACSON:  If I can -- may I, Mr. Williams?

23             THE DEFENDANT:  Yes, sir.

24             MR. ISAACSON:  I think what's happened is on

25   the -- there's the software that we get from the U.S.

1    Attorney's Office, it has coded type of stuff, you have to do

2    passwords.  And so it's not always -- if you have an older PC,

3    perhaps, it doesn't -- you have to load the software to be able

4    to view the discovery is what I'm saying.  It doesn't -- you

5    don't just click on a PDF and it pop up -- pops.  You got to go

6    through some proprietary software that if an older computer

7    doesn't like it in the world of -- that's a technical

8    term -- it's a problem.

9          Now, I may have a solution for that one issue, Judge, if I

10   may.  I spent this weekend going through the -- basically

11   there's, I believe, three discovery productions so far.  For 1

12   and 2 -- production one and two are documents that I have been

13   able to download -- 'cause I'm a Mac guy.  Sorry, Judge.  So I

14   think the PCs that I was able to access them on a zip drive and

15   put them on my computer as PDF files.  So I believe I can

16   supply Mr. Williams with PDF files of discovery disc 1 and -- I

17   believe it's 1 and 2 -- as long as the Bureau of Prisons will

18   allow me to send it to him.  And then disc 3 is the audio, I

19   believe.  And he's been able, I understand, to hear the audios,

20   to be able to play those.

21         So that may be a solution to that one problem, Judge,

22   'cause I wasn't sure -- but I was able to do it myself, and I

23   think if I could just send him -- as long as the Bureau of

24   Prisons will allow me to do that -- I think maybe that can

25   solve that access to that problem, Judge.

1          THE COURT:  All right.  Any objection,

2    Mr. Rodrigues, Mr. Johnson, to Mr. Isaacson's providing those

3    PDF files, documents to Mr. Williams?

4          MR. RODRIGUES:  That's absolutely fine, Your Honor.

5          MR. JOHNSON:  No, Your Honor, and --

6          MR. RODRIGUES:  Oh, pardon me.

7          MR. JOHNSON:  Go ahead.  I have no objection.

8          MR. RODRIGUES:  Yeah.  The Bureau of Prisons

9    certainly has no objection to that.

10         MR. ISAACSON:  So I can do that?

11         THE COURT:  Yeah.

12         MR. ISAACSON:  And so that may take care of that one

13   access issue, Judge.

14         THE COURT:  All right.  Mr. Johnson?

15         MR. JOHNSON:  It's not unusual, Your Honor, for us

16   to hear, like, months after we provide discovery that someone's

17   looking for the password which is actually in the production.

18   So it's routine that my legal assistant has to provide the

19   passwords.

20      So I'm not sure whether it might have been a password

21   access issue, because when we provide those discs, even though

22   a lot of information is redacted, it still contains, you know,

23   the full investigation of the criminal case with names and

24   other information of individuals who, you know, would not want

25   that information to be out there.  So we redact it, but in

1    context you still have a lot of information that's not in the

2    public realm, and we want to make sure that's protected.

3         So to the extent that it's a password situation, we're

4    more than willing to try to assist with that, but we appreciate

5    Mr. Isaacson's effort.

6         THE COURT:  All right.  So at least then with

7    regards to Mr. Williams's access to word processing and legal

8    research, you're going to continue to work with Mr. Williams on

9    that, Mr. Rodrigues?

10        MR. RODRIGUES:  Yes, Your Honor.  And if I could

11   just bring a few things to the Court's attention?

12        Following the October 6th hearing on these issues, it

13   seems that the defendant left with the understanding that the

14   Court had issued multiple orders on the United States related

15   to his legal access, and I have several emails that I can

16   provide to the Court where he makes that representation to our

17   staff and he's also done so verbally.

18        But of particular concern was an email that he sent on the

19   18th where he discusses Your Honor's reported order to grant

20   him multiple types of access, states that, "Drastic measures

21   must be taken to get someone's attention.  I'm not weak by any

22   stretch of the imagination.  If this problem doesn't get

23   resolved immediately, those responsible will see firsthand that

24   I'm not the type of person you can violate without there being

25   consequences and repercussions.  I have to do what I have to do

1    to protect myself and get people's attention who think I'm

2    someone to play with."

3         And this type of communication cannot continue, Your

4    Honor.  We did not place Mr. Williams in a SHU or discipline

5    him in any way, but I would ask in the presence of the Court

6    that he acknowledges that this is not permitted.

7         In terms of the other issues that were raised, we do have

8    a nationally set two-hour window during which you can use the

9    computer terminal.  You are locked out for 15 minutes.  And to

10   the extent that other inmates are using the terminal, what I

11   had done in his previous housing unit and what I will request

12   be done immediately in this housing unit that he's currently in

13   is have the computer set so it can only be used for law library

14   access, so no other inmates will use it for email or anything

15   of the sort.

16        And we do not provide word processing capability to

17   inmates, but I have explained to a letter -- in a letter to

18   Mr. Isaacson how Mr. Williams can use a makeshift word

19   processing system, save drafts, etc.

20             THE COURT:  I think you explained that at the last

21   hearing --

22             MR. RODRIGUES:  Yes.  Yes, Your Honor.

23             THE COURT:  -- (inaudible).

24        All right.  Let's move on to the bill of particulars.

25   Mr. Williams?

1          MR. ISAACSON:  Judge, may I?  Is there an order that
2   you are making here, Your Honor, or --
3          THE DEFENDANT:  Yeah, 'cause I definitely wanted to
4   have a order from the Court because I've had this problem in
5   the other states when I represented myself where they've been
6   basically doing what the FDC, denying me the access to the
7   computers, the printing, you know, the access to the research,
8   and I actually had to get a court order.  And once the order
9   was in, then I was able to get the access I needed so I could
10  win my case.  And I feel like they know that with me having the
11  access, they knew I would win this case.
12         But so to prevent me from using the proper tools, like a
13  typewriter -- and my thing is if I have to use a typewriter,
14  then why isn't the government not using a typewriter when they
15  got all these computers with word processing documents?
16         Now, they do have a word processing document computer in
17  the law library which the one that I use has Word capabilities,
18  but they say I wasn't allowed to use that Word document because
19  I needed a court order in order to use the Word document that's
20  on that computer that's designated for research.
21         THE COURT:  My recollection is from the last
22  hearing -- and I don't believe there was a formal motion before
23  the Court at the last hearing -- my recollection is that this
24  was an open discussion amongst all of us here with regards to
25  trying to see if we could facilitate the situation so that

1    Mr. Williams would have better and improved access so that he

2    could do what he needs to do.  That's the context in which I'm

3    addressing this matter this morning.

4        I brought it up myself sua sponte, this follow-up.  So

5    there is no motion, there is no order.  That's the situation we

6    have.

7            MR. ISAACSON:  Your Honor, at the last hearing there

8    was a discussion and -- if I may -- that if -- so there was a

9    discussion that he'd be able to use the thing he's talking

10   about for word processing.  And my recollection is that you

11   said, "Mr. Isaacson, prepare an order.  If you need" --

12   basically, if there's the need for an order for him to be able

13   to use that, to do that.

14           THE COURT:  And did you submit the order to me?

15           MR. ISAACSON:  Well, if I may, I've been trying to

16   deal with Mr. Rodrigues 'cause he requested that we try to -- there

17   have been a number of things.  We've had probably -- a lot of

18   communication back and forth.  I have not, Judge, because I

19   thought we were on the path to resolving these things.

20           THE COURT:  And that was why I followed up this

21   morning to see if in fact --

22           MR. ISAACSON:  Right.

23           THE COURT:  -- there was.

24           MR. ISAACSON:  But may I make inquiry, Judge, if I

25   may?

1             THE COURT:  Sure.

2             MR. ISAACSON:  What is the -- is he going to be able

3    to have word processing capability?  I don't -- what's the

4    final answer, if I may get to that?  I don't know if we're

5    there.

6             MR. RODRIGUES:  Your Honor, there is no Word program

7    or word processing software.  There is a way to type saved

8    drafts, print those saved drafts.  There is a makeshift word

9    processing system in place that I've described in my letter to

10   you.

11            THE COURT:  All right.

12            THE DEFENDANT:  But can I respond to that?

13            THE COURT:  Well, let me see if Mr. Isaacson's

14   finished.

15            THE DEFENDANT:  Okay.

16            MR. ISAACSON:  I'm sorry -- my brain.  Is that -- is

17   that on the regular computers or a special computer?

18            MR. RODRIGUES:  That is in any of the -- any of the

19   computers in the housing unit.

20            MR. ISAACSON:  So any computers he can type it out,

21   cannot save it; is that correct?

22            MR. RODRIGUES:  He can.  This is using --

23            MR. ISAACSON:  Oh, sorry.

24            MR. RODRIGUES:  -- the TRULINCS email system.  He

25   can write a draft email, save it, come back to it as many times

1    as he likes.

2                MR. ISAACSON:  I see.

3                MR. RODRIGUES:  And that is a -- it's $3 an hour,

4    $0.05 a minute.  But given his account balance, I don't see

5    that being a problem.

6                THE DEFENDANT:  It's certainly a problem.  And what

7    they're attempting to do is basically restrict my access

8    because on that system you can't research while you're typing.

9    So I can't have a LexisNexis up researching, copy and paste,

10   and put it on that TRULINC system.  It's impossible to do.  And

11   that's the reason why I said they don't want me to have access

12   to a proper PC.

13       And this was the whole thing.  I got a letter from him the

14   reason I was moved to this unit is to have a PC-equipped unit

15   that I could use the PC that would have everything that we

16   discussed in the first hearing.  And I've been met with nothing

17   but roadblocks, excuses, and just flat-out lies about what I've

18   done and what I haven't done.

19       And I would like to address the letter that he said that I

20   wrote.

21               THE COURT:  Let's stick with your bill of

22   particulars because that's on the calendar this morning,

23   Mr. Williams.

24               MR. ISAACSON:  May I -- one other thing and I'll sit

25   down, Judge.

1            THE COURT:  Yeah.

2            MR. ISAACSON:  There is an issue.  He had two boxes

3    with him of documents related to this case when he was taken to

4    the airport in Miami to be transported here.

5            THE COURT:  I do recall that from the last time.

6            MR. ISAACSON:  And we don't have those now.  We

7    still don't have them.

8            THE COURT:  Mr. Rodrigues?

9            MR. RODRIGUES:  Yes, Judge.  I have looked into that

10   and supervisory that the -- with the U.S. Marshals, Russ

11   Jacobs, told me that the U. S. Marshals had no information on

12   it.  I have confirmed, however, with the private facility in

13   Pahrump that they do have these boxes.  I just got -- after

14   leaving multiple voice mails got a response this morning, and I

15   will be hounding them, if needed, through the U.S. Marshals

16   headquarters to get these materials sent.  But they are in

17   Pahrump at -- right now.

18           THE COURT:  All right.  On to the bill of

19   particulars.  Mr. Williams?

20           THE DEFENDANT:  I mean, I -- my bill of particulars

21   was -- 'cause I didn't know we was doing the bill of

22   particulars today, too.  I thought we was just going to do

23   the -- 'cause we went before another judge Friday and he

24   actually put it off.

25       The -- as I told the judge on Friday, the indictment that

1   was charged against me, the body of the indictment and what I

2   was actually charged with are two separate things.  In the

3   indictment they're basically charging me with filing fraudulent

4   mortgage documents and things like that in the body of the

5   indictment and purported to say on certain dates that I

6   misrepresented to clients that the mortgage was valid and when

7   it -- the mortgage, according to the government, was

8   fraudulent, which it was not -- but I wasn't charged with that.

9       What they're charging me in the indictment is is for -- 12

10  of the counts was payments that were made from one client, 12

11  payments that client mailed to our corporate office in Texas.

12  So those are 12 counts of mail fraud for him mailing his

13  payment for the services I did for saving his house from

14  foreclosure.

15      Four of the other counts was one client that mailed their

16  payment for our services, and then one of the accounts was a

17  letter from OCWEN to my common law office regarding a client.

18  And this is what they're charging -- these are the counts

19  they're challenging me with, but none of that was outlined in

20  the indictment.

21      So my bill of particulars is to state -- is for them to

22  demand to state what particularly did I did that constitute the

23  mail fraud for OCWEN sending me a letter, the wire fraud

24  they're charging me with, basically emails between me and my

25  mom, a email between me and a client asking me a question and

1    I'm answering a question on email.

2        A couple of the wire fraud counts was emails from

3    employees that I answered, you know, as -- in regards to the

4    standard operating procedure because there had been a conflict

5    with some of the people that I hired here that I end up

6    actually going to the FBI office and making a complaint against

7    former employees that used my company name and my good

8    reputation and defrauded some people, and the FBI did

9    absolutely nothing to these employees.  So I wanted just to

10   protect my name and my company's name from any fraudulent

11   activities that these former employees did, which the FBI or

12   the DCCA didn't do anything even though I made numerous

13   complaints to them.

14       So the indictment is -- doesn't say anything about what I

15   actually did on the counts.  And so I'm trying to get the

16   actual particulars on what I did for the mail fraud and the

17   wire fraud 'cause it's not in the indictment.

18       MR. JOHNSON:  Yes, Your Honor.  Pursuant to our

19   response, we feel that Paragraphs 11 through 32 of the

20   indictment state the scheme and artifice to defraud, including

21   the object of the scheme, and then describe in detail the

22   material false -- materially false pretenses, representations,

23   promises, and omissions of material fact.  The indictment

24   describes the actions of the two defendants and others who were

25   not charged.

1       At Paragraphs 22 to 32 of the indictment, there are

2   specific allegations as to individual homeowners that

3   participated in the defendant's fraudulent scheme and the

4   documents which we allege to contain misrepresentations, as

5   well as misrepresentations and materially false statements that

6   the defendants made to the homeowners.

7       The scheme and artifice is alleged to have occurred from

8   an earlier date unknown but by May of 2013 and continuing

9   through December of 2016.  The specific wirings that

10  constitutes separate counts of the indictment are listed in

11  table form as part of Paragraph 33.  The count number, date,

12  and a brief description of the wire communication is contained

13  within the table.

14      Likewise, specific emailings that constituted separate

15  counts of the indictment are presented in a table form as part

16  of Paragraph 35.  The count number, the date, and a brief

17  description of the nature of the mailing is contained in the

18  table.

19      In addition, the introductory of the indictment 1 through

20  10 describe the defendant's businesses, their relation to the

21  District of Hawaii, the connection to Texas and other

22  locations.

23      Your Honor, the defendant has been provided with discovery

24  which we were previously discussing here this morning.  Over

25  50,000 pages we've provided as part of the -- or as an

1    attachment to the motion -- response, Exhibit A, which is the

2    index of the discovery provided to date.  And we haven't just

3    given him 53,000 pages; we've indexed what has been provided in

4    fairly significant detail so that he can tell what is on -- or

5    what is part of a particular document, what is part of a

6    particular series of documents, where they originate from, and

7    the nature of those documents, and they're all Bates stamped.

8         So I think once he has full access to the discovery, he

9    will see the completeness of the -- both the indictment, and

10   given the material that's provided, which is very complete

11   discovery or very full discovery, that -- and we're still

12   working on one or two other things; there probably will be a

13   supplemental -- but he has the vast majority including witness

14   statements and that sort of stuff.

15        The defendant seems to have a misconception that the

16   wirings and mailings themselves have to contain materially

17   false representations and that they are the charge.  The

18   wirings and mailings are done in execution of the scheme, and

19   the wirings and mailings were either -- he either did knowingly

20   transmit or cause to be transmitted, meaning that by his

21   actions in demanding payment or saying, "We've signed you up,"

22   you know, "Send us the money," the individuals sending the

23   money, he caused that to happen.

24        So I think he has a little bit of a misunderstanding of

25   the nature of the charge and how each count is charged and what

1   constitutes an execution of the scheme.  And I'm sure he has

2   access to legal research.  If he looks up Title 18, United

3   States Code, Section 1341 and 1343, wire fraud and mail fraud,

4   he'll find the elements and he might have a better grasp of

5   what has been charged.

6       The indictment is a speaking indictment.  There's a lot of

7   information in there.  We don't believe that he is in a

8   situation where he does not have enough information to know

9   what the charges are to mount a defense and to claim double

10  jeopardy.

11          THE COURT:  Mr. Williams, last comment?

12          THE DEFENDANT:  Yes.  On No. 6 of my motion for bill

13  of particulars, I specifically say, "Set forth the statement or

14  statements made by Anthony Williams in the articles that were

15  mailed which was false, fraudulent or misrepresented the

16  services his company offers to consumers."  The indictment

17  never says -- states what was false in there, what was

18  misrepresented, anything on any of the counts.

19      And so for me to be able to prepare a defense, what's

20  false?  What was misrepresented?  'Cause nothing was false,

21  nothing was misrepresented because all my documents had already

22  been proved by previous district attorneys, county's attorneys

23  and government agencies, including the FBI.

24      So what was misrepresented or false in these documents

25  that they're saying that are fraudulent but they haven't

1    charged me with?  They charged me with some mailings.  That's

2    not the actual documents.

3            THE COURT:  In this case the defendant has filed a

4    motion for a bill of particulars, the motion being filed

5    September 29, 2017.

6        The court, after reviewing the written submissions from

7    defendant, government, having reviewed the indictment filed,

8    states the following:

9        The purpose of a bill of particulars is to minimize danger

10   of surprise at trial and to provide sufficient information on

11   the nature of the charges to allow preparation of a defense.

12       In this case, the court finds that the indictment itself

13   provides sufficient details of the charges and to inform the

14   defendant of the offenses charged against him.  Further, the

15   government is providing full discovery to the defense of this

16   case, the discovery having been the subject of discussion with

17   counsel at the previous hearing and this morning.

18       The court having found that the indictment does provide

19   sufficient detail and information with regard to the offenses

20   charged denies the motion for bill of particulars.

21       You prepare the order, Mr. Johnson.

22           MR. JOHNSON:  Yes, Your Honor.

23           THE COURT:  With regards to the pretrial, Mr. Green?

24           MR. RODRIGUES:  Oh, Your Honor, as the government

25   says, they've provided me with over 50,000 pages of discovery

1  and this case has been ruled complex.  I'm not even close.  To

2  be effective counsel for my client, I'll need time to go

3  through everything and decide what our defenses are, if any.

4       I can tell you that we don't anticipate going to trial

5  unless we're ordered to do so for a substantial period of time

6  until I complete the discovery, Your Honor.

7            THE COURT:  So are you making an oral motion to

8  continue?

9            MR. RODRIGUES:  I am.  And I don't know if -- what

10  your ordinary course is, but I understand he's in custody, but

11  it's not on this case.  I mean, he's in custody on something

12  else, and whether they've denied bail in this case, I don't

13  know.

14       But I am making an oral motion to continue the case, and

15  depending on what your calendar is, Your Honor, I have my

16  client's permission to so move.

17            THE COURT:  Mr. Williams, with regards to

18  Mr. Green's oral motion to continue, do you have an opinion?

19            THE DEFENDANT:  Yes.  I object because I'm ready to

20  go to trial November 21st.  The government has wasted enough of

21  my time.  They've illegally and unlawfully incarcerated me

22  without no bond or no bail, which I'm not a flight risk,

23  neither am I a danger.

24       The Court did not issue a findings of facts and

25  conclusions of law which is by law was supposed to be issued on

1    the reasons why I was denied bail which my defendant was

2    afforded bail and she's actually from the Philippines.  I'm

3    from here.  I don't have a passport, so I can't go anywhere.  I

4    don't have no reason to go anywhere.  I have a record that

5    speaks for itself.

6          When I was illegally and unlawfully charged for rape and

7    child molestation by the State of Hawaii and the State of

8    Georgia, I was given a bond.  I didn't run then.  I was facing

9    life in prison.  I showed up for every court hearing until I

10   got the case dismissed on my own.

11         So I'm being illegally held.  It's causing great financial

12   harm.  My sister has died in this process while I was locked up

13   because of the stress that me being locked up put on her.  She

14   already had a bad heart, so that basically put her over the

15   top.  So my sister passed away while I was locked up.  I was

16   not able to go to the funeral, received a email from my

17   daughter stating that she's contemplating committing suicide

18   because I'm not there, and it's just stressful what they're

19   doing to me and I'm not there to help her.

20         So, you know, I don't want a continuance.  I want my day

21   in court.  The government is the one that brought this

22   malicious prosecution against me and I'm ready for my day in

23   court so I can expose the corruption that I've been doing for

24   the last 15 years.

25              THE COURT:  Mr. Johnson?

1          MR. JOHNSON:  Yes, Your Honor.  Your Honor, for the

2    record, we were waiting certified documents.  We at our -- the

3    motion to detain the defendant, we had to writ the defendant

4    from Florida.  He has been convicted and sentenced to 15 years

5    in prison for theft and I believe fraudulent statements.  The

6    FBI has recently received certified copies of those documents.

7    We intend to append them to the order.

8       He has denied multiple times that he was convicted in

9    Broward County and that he's serving a substantial sentence for

10   fraud in that location.

11         THE DEFENDANT:  No, I object.  I'm not serving a

12   sentence for fraud in anything.  There's no conviction for

13   fraud on anything.  The one thing I was convicted of which is

14   in appeals court was unlicensed practice of law, unlawful

15   filing of documents, and a bogus grand theft of a house which

16   was a foreclosure case that I saved the client's house from

17   being evicted out of their house and then they charged me that

18   since I saved the client's house, and then let the bank take

19   the house, that constitutes grand theft.  That's what I was

20   charged with and that's in appeal right now.

21         THE COURT:  Mr. Johnson?

22         MR. JOHNSON:  Yes, Your Honor.

23         THE COURT:  Go ahead and finish.

24         MR. JOHNSON:  So apparently now he's acknowledging

25   that.

1          The issue is, you know, we have the documents now.  He is

2     serving a term.  He's not subject to immediate release in terms

3     of detention.

4          THE DEFENDANT:  Yes, I have superseded bond that's

5     being ordered right now.

6          THE COURT:  Mr. Williams.

7          MR. JOHNSON:  In terms of -- in terms of the trial

8     date, Your Honor, he's pro se.  There is an issue which at some

9     point I think we're going to need to address.  Mr. Williams is

10    not -- despite the fact that the indictment is very clear on

11    its face and alleges the fraudulent statements and the

12    execution by wiring and mailing, Mr. Williams is not either

13    understanding it or refusing to accept that that's the law, and

14    that poses a problem for his preparation.

15         We're not saying that he needs more time to prepare, but

16    clearly he hasn't had access to the 53,000 pages.  He's making

17    statements in court that he doesn't either understand the

18    charges or that the charges are insufficient because he hasn't

19    looked at the elements of the offense.  You know, that -- we'd

20    like to do this one time and give Mr. Williams a fair trial and

21    have him have his day in court so that he's prepared, he's

22    understanding what's going on, he's had access to the discovery

23    and can review it.

24         If we were to rush this to trial, certainly there would be

25    numerous issues presented.  We agree that the case should be

1    continued.  Mr. Green, a very seasoned trial attorney who's

2    been looking at this case and who appeared much earlier than

3    Mr. Williams in this case with his client, has looked at the

4    early discovery we provided and is now poring through the

5    charger disclosures that have been made in three separate

6    efforts by the United States to push out the information.

7         It's a lot of material.  We agree with Mr. Green's motion

8    to continue.  We do think the matter should be put out such

9    that all parties can prepare.

10            THE COURT:  Now, Mr. Williams, your last comment.

11            THE DEFENDANT:  They can -- they can continue it on

12   his client's case but not mine.  We can do a motion for

13   severance of defendants and let them continue theirs, but I

14   will not let them violate my speedy trial right because they

15   had since February.  Then indicted me on February 15th.  So

16   right now it's already eight months that they had time to

17   prepare for this trial.

18        So they can't complain that it's complex or it's 50,000

19   pages of documents.  That's their problem that they copied all

20   of my emails and got all the documents out of my office, which

21   none of them were fraudulent, and now they're trying to claim

22   that it's complex.  There's nothing complex about this case.

23   It's mail fraud and wire fraud.  There's nothing new about this

24   charge.  They've prosecuted this charge plenty of times.  So

25   there's nothing complex about this.

1          So I will not allow them to violate my speedy trial rights

2     and I'm not waiving my speedy trial right.

3               THE COURT:  Mr. Green, anything else before I rule?

4               MR. RODRIGUES:  I'm exhausted.  No, there's nothing

5     further.

6               THE COURT:  Mr. Isaacson?

7               MR. ISAACSON:  Your Honor, the only thing I would

8     say is I certainly have known Mr. Williams as his counsel.

9     He -- I have no position on his motion, only to say that if I

10    am somehow -- not that I -- if I become semicounsel is you

11    stand by, you do the junket.  I would not be ready for a

12    November trial date if that comes to pass.  That may not never

13    come to pass.  Mr. Williams is certainly very determined, but I

14    at least want that to be on the record, Your Honor.

15              THE COURT:  All right.  After considering the

16    arguments and comments made by Mr. Williams and counsel, the

17    court finds that the interests of justice are served by a

18    continuance in this matter because a continuance ensures the

19    continuity of counsel, Mr. Green, and a failure to grant the

20    continuance would deny both defendants reasonable time for

21    effective preparation, taking into account the exercise of due

22    diligence.

23         The court will note that at the last two hearings which I

24    presided over, there has been discussion in order to facilitate

25    the provision in an opportunity -- a reasonable opportunity to

1   review the 50,000 pages of documents which have been produced

2   on disc to Mr. Williams and also to Mr. Green.  So that has not

3   been completed and certainly not sufficient time to review

4   those 50 pages -- 50,000 pages of documents has taken place.

5       So the court does find that the ends of justice are

6   served by granting a continuance and that they outweigh the

7   interest of the defendants and the public to a speedy trial,

8   and therefore, the oral motion to continue made by Defendant

9   Cabebe is granted.

10      A new trial date, counsel.  I'm thinking six months.

11          MR. RODRIGUES:  That's somewhat reasonable, yes,

12  Your Honor.  Certainly nothing shorter.

13          THE COURT:  Toni?

14          THE COURTROOM MANAGER:  May 15, 2018, at 9 o'clock.

15  Pretrial will be April 16th at 1:30 before Magistrate Judge

16  Mansfield, defense motions April 2nd, and government's response

17  April 16th.

18          THE COURT:  The court specifically finds and directs

19  that the period of time from November 21, 2017, to May 15,

20  2018, is excludable from computation required by the Speedy

21  Trial Act under Title 18, United States Code Sections 3161(8),

22  (7)(A) and (B).

23      Mr. Johnson, you prepare the order with regards to the

24  trial date and also with regard to the denial of defendant's

25  motion for bill of particulars.

UNITED STATES DISTRICT COURT

1          MR. JOHNSON:  Yes, Your Honor.

2          THE COURT:  Mr. Green, anything else?

3          MR. RODRIGUES:  Yes, there is.  Instead of going

4    back and forth with the government and the Court, my client has

5    asked that I try to obtain permission for her to visit her

6    95-year-old father in the Philippines.  Apparently he's ill and

7    my sense is he probably won't live much longer.

8        She has a tentative departure date of November 5th, on a

9    Sunday, and a return on November 15th, which is a Wednesday.  I

10   only ask that so if Mr. Johnson and the government has an

11   objection, instead of going back to you to see whether or not

12   you would allow it, I thought I would just do it all at one

13   time.

14         THE COURT:  Well, I'd like Pretrial Services to at

15   least review the request.

16         MR. RODRIGUES:  I'll do so.

17         THE COURT:  If counsel can agree on a stipulation

18   and Pretrial Services approves the stipulation, I'll consider

19   it.

20         MR. JOHNSON:  Your Honor, Pretrial Services thinks

21   that she's been compliant and that it's advisable to permit the

22   travel.  We would be in agreement.

23         MR. RODRIGUES:  Fair enough.

24         THE COURT:  All right.  Thank you very much.

25         MR. RODRIGUES:  Thank you, Your Honor.

 1          THE COURT:  Next case, please.

 2          THE DEFENDANT:  I have something to say before we

 3  end.

 4          THE COURT:  Yes, Mr. Williams.

 5          MR. RODRIGUES:  Your Honor, if I may be excused?

 6          THE COURT:  You're excused, Mr. Green.

 7          THE DEFENDANT:  I would like to have a oral motion

 8  to be given a bond since my speedy trial right has been

 9  violated.  According to the Sixth Amendment and also the

10  Federal Rules of Criminal Procedure, I was supposed to have

11  been taken to trial.  The government should have never indicted

12  me if they wasn't ready to go to trial.

13      So now they're saying I got to wait another six months for

14  my family -- to get back to my family and still holding me

15  without no bond, without any factors that are considered in the

16  1984 Bail Reform Act.  I'm not a danger, they never proved I

17  was a danger, and I'm not a flight risk.

18          THE COURT:  Your oral motion, Mr. Williams, is

19  denied; however, you may file a written motion and then

20  Pretrial Services will have an opportunity to review it and

21  comment on it, prepare a supplemental report, and the court

22  will consider it in due course.

23      Mr. Johnson, anything else?

24          MR. JOHNSON:  Yes, Your Honor, just for the court's

25  information.  The defendant has made this argument within one

1  of his two motions to dismiss which are currently pending

2  before Judge Kobayashi which the United States has to respond

3  to by the 25th.

4           THE COURT:  All right.  Thank you.  Next case.

5           THE DEFENDANT:  And the order for the FDC about the

6  computer, 'cause we never got to --

7           THE COURT:  Mr. Isaacson, if he believes one's

8  necessary, he'll submit it to the court for consideration.

9  Thank you.

10           MR. JOHNSON:  Thank you, Your Honor.

11           (Proceedings concluded at 10:49 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATE

2

3          I, DEBRA READ, court approved transcriber, United

4    States District Court, District of Hawaii, do hereby certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the

7    above-entitled matter and that the transcript page format is in

8    conformance with the regulations of the Judicial Conference of

9    the United States.

10

           DATED at Honolulu, Hawaii, January 31 2018.

11

12

              /s/ Debra Read

13

           DEBRA READ, CSR CRR RMR RDR

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**