1                IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF HAWAII

3

UNITED STATES OF AMERICA,      ) CR 17-00101 LEK
4                               )
            Plaintiff,          ) Honolulu, Hawaii
5                               ) November 30, 2017
    vs.                         )
6                               ) MOTION HEARING
ANTHONY T. WILLIAMS,            )
7                               )
            Defendant.          )
8    _____)

9

                    TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE RICHARD L. PUGLISI
                UNITED STATES MAGISTRATE JUDGE

11

APPEARANCES:

12

For the Government:        ROBERT G. JOHNSON, AUSA
13                         Office of the United States Attorney
                           PJKK Federal Building
14                         300 Ala Moana Boulevard, Suite 6100
                           Honolulu, Hawaii 96850

15

Also Present:              TIMOTHY A. RODRIGUES, BOP
16  (By telephone)

17

For the Defendant:         ANTHONY T. WILLIAMS, *Pro Se*

18

Standby Counsel:           LARS ROBERT ISAACSON, ESQ.
19                         547 Halekauwila Street, Suite 102
                           Honolulu, Hawaii 96813

20

21

Official Court Reporter:   Debra Read, CSR CRR RMR RDR
22                         United States District Court
                           300 Ala Moana Boulevard
23                         Honolulu, Hawaii 96850

24

Proceedings recorded by electronic sound recording; transcript
25  produced with computer-aided transcription (CAT).

UNITED STATES DISTRICT COURT

1     THURSDAY, NOVEMBER 30, 2017                    2:43 P.M.

2          THE COURTROOM MANAGER:  Criminal 17-00101, United

3     States of America versus Defendant(1) Anthony Williams.

4          This case is called for a hearing for clerk to issue blank

5     subpoena and defendant's motion to compel.

6          Appearances, please, counsel for the record.

7          MR. JOHNSON:  Good afternoon, Your Honor.

8          Ronald Johnson, Assistant United States Attorney, on

9     behalf of the government.

10          THE COURT:  Afternoon, Mr. Johnson.

11          THE DEFENDANT:  Good afternoon.

12          Private Attorney General Anthony Williams, counsel for the

13     defendant.

14          THE COURT:  Good afternoon, Mr. Williams.

15          MR. RODRIGUES:  Your Honor, Lars Isaacson, Standby

16     Counsel.

17          THE COURT:  Good afternoon, Mr. Isaacson.

18          Okay.  Mr. Williams, this is your motion.  You want the

19     court to issue blank subpoenas which we don't do that, but you

20     have a number of other requests here, so I'll let you outline

21     exactly what you want.

22          THE DEFENDANT:  Well, I mean, I did the motion for

23     the clerk to issue the blank --you know, subpoenas 'cause I had

24     a problem with this in Florida where they did not issue the

25     subpoenas and I wasn't able to get the witnesses at my trial.

1          According to Rule 17(a), the clerk is to issue me blank

2    subpoenas, you know, that's signed by the clerk where I can

3    fill them in, and that's basically what I filed the motion for

4    to be able to get those blank subpoenas so I can have the

5    witnesses that I need present on my behalf.

6          THE COURT:  Yeah, I understand why you filed the

7    motion, it's just legally there's no basis for that.  But go

8    ahead.  What was the next issue?

9          THE DEFENDANT:  Uhm, the -- so I can be provided pro

10   se phone at the jail so that I will be able to correspond and

11   communicate with my standby counsel, witnesses, and also the

12   Court, also to have a printer provided so that I can print out

13   the legal documents -- the government provided me with 13 discs

14   of discovery.  Right now I do not have the capability to be

15   able to print any of those things out, which I been through the

16   CDs and there's a lot of things in there that I would need to

17   print out so I can have those entered in as exhibits.

18        I would like to use -- they did provide me with a computer

19   to -- actually a dedicated computer to actually see the CDs.

20   The computer does have word processing on it, but anything that

21   I type, I can't save it because the computer reboots every two

22   hours and erases everything that you've typed.  So I haven't

23   been able to type my motions and do the research properly

24   because the computer reboots every two hours.

25        As outlined in Title 28, CFR 543.11(d)(1), I would like to

1    have some legal materials sent in to me from the outside that

2    the facility failed to provide or just would not provide in the

3    preparation of my defense, and also to be provided the same

4    opportunities to have visitors which I have been denied so far

5    from the officer that in the unit he says that the BOP policy

6    from his -- from his standpoint basically trumps federal law,

7    that BOP makes their own policy, and that even if it's written

8    in a law, that they don't have to follow it if it's their

9    policy.  And I know that's incorrect.  The Federal Bureau of

10   Prisons have to follow federal law.  And so right now I haven't

11   been afforded visitation that I'm entitled to because of their

12   policy.

13              THE COURT:  Okay.

14              THE DEFENDANT:  And also to have the FBI to answer

15   the deposition that I filed on September 29th.  They still

16   haven't answered the deposition that I sent to them.

17              THE COURT:  All right.  Is that it?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Okay.  Mr. Johnson?

20              MR. JOHNSON:  Your Honor, with respect to the

21   defendant's ability to subpoena witnesses, we do believe that

22   he should have the opportunity to subpoena witnesses and we

23   believe he can coordinate that through his standby counsel and

24   the Court.  Routinely the public defender's office and other

25   court-appointed attorneys seek subpoenas and approach the Court

1    ex parte to subpoena documents, people, or those types of

2    things.

3         Our only concern -- and we would express this to the

4    Court -- is that the defendant shouldn't be provided blank

5    subpoenas which are valid documents to be served out in the

6    community with the full force and effect of the Court to be

7    directed at anyone the defendant should so choose.  He comes

8    into court and claims to be a private attorney general.  We're

9    not aware of even what that means or how he puts that title on

10   himself.

11        We are aware that he believes the whole -- the entire

12   banking system is corrupt and he's stated that in court several

13   times.  We have a serious concern he'll issue subpoenas to, you

14   know, the Federal Trade Commission, the head of the Federal

15   Reserve, corporate bankers, and that sort of thing.

16        We don't have any objection to him issuing subpoenas in

17   his defense that the Court deems are reasonable and

18   appropriate, but we don't believe he should be given a stack of

19   subpoenas to send out into the world to drag anyone and

20   everyone he might think is appropriate into court in this

21   matter.

22        That's our concern, not that he not be given subpoenas,

23   just that there be some checks and balances on that.

24        And also provision (b) of Rule 17 provides that when a

25   defendant is indigent and can't afford that, that should be

1    done through the court and the court can pay for that process

2    through its normal channel.

3         That's the government's only, you know, concern about

4    issuing blank subpoenas.  We believe he should have the right

5    and does have the right to issue subpoenas in his defense and

6    that he be given some access to that.

7         Your Honor, on the other issues which he's raised, and

8    this is with respect to the November 29th filing which was

9    yesterday, he has eight subparts in that.  Most of those deal

10   with his conditions and access to computers and other items

11   which he believes he should have at the Federal Detention

12   Center.  I did speak to Tim Rodrigues who is the Bureau of

13   Prisons counsel or at the Federal Detention Center, and he's

14   actually standing by.  He's aware of this hearing.  I spoke to

15   him earlier.  I did send him a copy of this motion.  He's

16   standing by.  He can be reached by phone if the Court wanted to

17   do that, and your courtroom manager has that number, if you

18   want to do that.

19        With respect to this, some of these items hinge in and are

20   connected to or intertwined with issues that Judge Chang has

21   been dealing with previously because this first started with

22   Judge Chang.  He was provided discovery.  He wanted a computer,

23   and actually Mr. Rodrigues was in court in front of Judge Chang

24   and we were working through these things.  The defendant was

25   actually moved from one module or unit to another so that he

1    could have greater access.  So there have been significant

2    accommodations made for him, and he's asking for more.  So we

3    would defer to the Court as to how the Court would want to

4    address those matters.

5         With respect to No. 8, to my knowledge the FBI has no

6    obligation to answer the defendant sending any type of written

7    interrogatory or deposition.  We have provided the reports from

8    the Federal Bureau of Investigation and we provided voluminous

9    discovery in this case to him.  We don't believe he has a right

10   to depose people or send interrogatories to the FBI.  This is

11   not a civil case; it's a criminal case.  If he wants to

12   subpoena someone for the trial, he can do that.

13             THE COURT:  Okay.  Mr. Williams?

14             THE DEFENDANT:  Yes, I would like to respond to both

15   of his objection -- first objection to the blank subpoenas.  I

16   don't feel like it's constitutional to be deprived of the same

17   courtesy that the government is provided and afforded as far as

18   being issued blank subpoenas.  The subpoenas that I will be

19   sending out -- and the reason why he mentioned those federal

20   agencies, because those are federal agencies that I have

21   contacted in the course of my business and actually got

22   approval for the operation of my business.  So they don't want

23   those governmental agencies being subpoenaed to verify that not

24   only is my company not fraudulent, but everything that I did

25   was based on approval by these governmental agencies, and

1  therefore, they would be vital to my defense to show that

2  nothing I did was illegal or fraudulent and that everything

3  that I did was approved by these governmental agencies.  So I

4  would need the subpoenas to be able to issue to those -- only

5  those agencies that I had actually directly dealt with in

6  dealing with my business.

7          THE COURT:  Okay.  Well, Mr. Williams, as

8  Mr. Johnson points out, he's not opposing your right to

9  subpoenas 'cause everybody's got the right to subpoena

10  witnesses in their own defense.  I mean, that's a

11  constitutional right, so there's -- nobody's debating that.

12  It's just that before you can do that, you have to submit to

13  the court an ex parte request -- to the court, so to a judge in

14  this building, and then you have to set forth a name of the

15  person, or if you don't know the name of the person, the

16  organization that you want a representative to appear on your

17  behalf.  And you have to explain why that person is relevant to

18  you because the court's not going to allow subpoenas to be

19  issued willy-nilly, okay?

20          THE DEFENDANT:  I understand that.

21          THE COURT:  And so we routinely will get these

22  requests.  They're generally filed as ex parte motions

23  for -- to issue subpoenas.  And we go through them and if

24  everything is in order, if these appear to be witnesses that

25  are necessary for a defense, we'll issue the subpoenas.  That's

1    not a problem.

2              THE DEFENDANT:  Okay.  I have --

3              THE COURT:  And so anyway, I think you and I are on

4    the same page.  But let me also point out, you would have known

5    this if you allowed your standby counsel to help you because

6    this seems like it would be a fairly easy exercise to

7    accomplish if you had the help of Mr. Isaacson as standby

8    counsel.

9              THE DEFENDANT:  Well, he did -- he did advise me

10   that we would have to do a ex parte motion.

11             THE COURT:  Okay.

12             THE DEFENDANT:  I filed this motion prior to talking

13   to him 'cause I went through a state trial, but we didn't have

14   to do the ex parte for the subpoenas --

15             THE COURT:  Okay.

16             THE DEFENDANT:  -- in the state trial, so I was

17   under the impression that the subpoena procedure would

18   basically be the same in the federal.  But I see that it's not,

19   it's just a little variation.  So I have no problem with, you

20   know, filing the ex parte communication to get the subpoenas.

21             But also, the reason why I needed the -- to be provided

22   the printer is because with me presenting that ex parte

23   application to the Court, I wanted to show the evidence why I

24   would need these governmental agencies as a witness so the

25   Court don't think I'm just, you know, subpoenaing some just

1    arbitrary governmental agency.  But these are the agencies I

2    was dealing with that I had approval, you know, for to operate

3    my business and that actually scrutinized my documents, you

4    know, to make sure that there was nothing fraudulent about it

5    because anything I did I made sure that, you know, I contacted

6    the proper authorities before I did it.

7              THE COURT:  Okay.  Now, the rest of these with the

8    exception of the deposition to the FBI -- the rest of these go

9    to the conditions of your incarceration with the Federal

10   Detention Center.  And there are a couple of Supreme Court

11   cases -- Supreme Court of the United States cases and a lot of

12   other cases that do not allow us to essentially micromanage

13   your conditions of confinement unless they clearly violate

14   federal law, as you point out.

15        Now, when you're asking for things like your own phone,

16   your own printer, your own computer, your own cell, this goes

17   way beyond my ability to order an institution to provide all of

18   these things because we don't and cannot get involved with the

19   operation of a jail.

20        Now, I note from reading the notes from your last

21   conference with Judge Chang in October that he did direct the

22   issuance of these discs, these discovery discs to you, and

23   there was considerable discussion about access to word

24   processing and legal computer.  So we can to some extent get

25   involved in this, but I can't, for instance, direct the jail,

1    unless it's for your own personal safety, frankly, to put you

2    in your own cell.  I mean, I suppose I could, but there

3    wouldn't be any legal basis for me to do that.

4              MR. ISAACSON:  Judge, can I be heard on this?

5              THE COURT:  Yeah, sure.

6              MR. ISAACSON:  You don't mind, Mr. Williams?

7              THE DEFENDANT:  No.

8              MR. ISAACSON:  Judge, we've been with Judge Chang,

9    and I know a lot of the issues actually have been brought up

10   and some have been worked on I know by the jail.  Mr. Rodrigues

11   certainly has, you know, tried to do certain things and some

12   things have been achieved.  I think discovery has been -- the

13   discs are there.  He's able to access them, the passwords work.

14   That was a big issue.  We've gotten past that and we appreciate

15   Mr. Rodrigues doing that and the government.

16        These are -- this was just filed yesterday.  I

17   might -- but some of these are pretty significant.  I mean, one

18   of the issues that we tried to broach is hey, can at least I

19   give Mr. Williams a blank CD he can save his things on 'cause

20   they keep his discs away from him.  They give it to him when he

21   uses them; they take it back.  Maybe allow him, you know, to

22   have a disc, the blank disc he could save things on.

23        So I might suggest, Judge, that it would be wise the Court

24   perhaps could reset this in a week so that we

25   can -- Mr. Rodrigues can have a chance to look into these

1    matters and see if there's a way because he does need to be

2    able to save.  I don't think that's an unreasonable thing.  I

3    mean, a lot of these things have been done, but maybe

4    Mr. Rodrigues can solve these things and we can come back in a

5    week and see if he can come back to see if some of these things

6    can be worked out.

7                THE COURT:  Mr. Williams?

8                THE DEFENDANT:  Yeah, I would just like to state

9    under the federal law under Title 28, CFR 543.11, it

10   specifically states that any type of legal material that I need

11   can be sent in from the outside.  And so I just don't want to

12   be prevented from, like, my secretary from sending me, you

13   know, legal books or, you know, things like that that I would

14   need for my defense.  You know, I just want to be provided

15   those things so I can, you know, properly prepare.

16       Like I said earlier, they got the word processing program

17   on the computer for me, but I can't save 'cause it's going to

18   delete it.  So it really defeats the purpose to have a word

19   processing, you know, program and I can't save my motions.  So

20   if I work on something, it's lost.  I can't --you know, and

21   it's just -- it's double work and then I can't print it out, I

22   can't save it, you know, put no exhibits to it 'cause I don't

23   have that ability to copy anything right now.

24               THE COURT:  Okay.  Well, I think Mr. Isaacson makes

25   a good suggestion.  But I think, Mr. Isaacson, before we

1    adjourn and sort of let these issues hopefully be resolved over

2    the next week, maybe we ought to get Mr. Rodrigues on the phone

3    and we'll just go down these line items and at least everybody

4    will know what the issues are.  Is that -- can we do that?

5             THE DEFENDANT:  Yeah.

6             THE COURTROOM MANAGER:  Mr. Rodrigues, can you hear

7    me?

8             MR. RODRIGUES:  Yes.

9             THE COURT:  All right.  Good afternoon,

10   Mr. Rodrigues.

11            MR. RODRIGUES:  Good afternoon, Judge.

12            THE COURT:  I appreciate you being available here.

13        Mr. Williams has filed a motion with the court, a formal

14   motion with the court relating to a number of issues that

15   pertain to his conditions of confinement at the Federal

16   Detention Center and how they relate to his ability to prepare

17   his defense.

18        And so normally we don't get involved in telling you folks

19   how to accommodate pretrial detainees, but he has raised a

20   number of issues and I would like to go down these various

21   complaints that he has -- or concerns I think more accurately

22   describe his concerns -- and then maybe you can help us out a

23   little bit.

24            MR. RODRIGUES:  Yes, Judge.

25            THE COURT:  He has indicated that he needs a printer

1    to print out legal documents.

2         And I'm not sure, Mr. Williams, if you're asking for your

3    own dedicated printer, but what exactly are you asking for?

4              THE DEFENDANT:  Yes, sir, because the way

5    the -- it's set up in the unit right now, they have six

6    computers that's on the floor.  They have one printer that's

7    dedicated for all six computers.

8         Once the inmates are on those computers, you know, you

9    can't print from that computer.  Also there's a charge.  It's

10   $0.15 for every time you print a page from that document.

11   Where my computer that they had to dedicate for me is upstairs,

12   so I'm upstairs, but it's not hooked up to that printer.  So

13   it's not -- so I can't print nothing from the computer that I'm

14   working on right now.

15             THE COURT:  All right.  So the Federal Detention

16   Center got you your own computer?

17             THE DEFENDANT:  Right.

18             THE COURT:  But it doesn't have a printer?

19             THE DEFENDANT:  Right.

20             THE COURT:  All right.  Well, let me just cut to the

21   chase here, Mr. Rodrigues.  Is it possible for him to get his

22   own dedicated printer?

23             MR. RODRIGUES:  Your Honor, just to correct

24   something, Mr. Williams doesn't have his own dedicated

25   computer.  There is an electronic discovery computer in the

1    unit that currently he is only making exclusive use of, but all

2    of the issues here, including this printing issue, we've

3    addressed with Judge Chang and we've explained how he can print

4    his legal research, but we don't have a way of providing a

5    printer for the discovery.  That's something we hope he can

6    arrange through his standby counsel.

7         THE COURT:  Okay.  Mr. Isaacson, is that something

8    that you can help him with?

9         MR. ISAACSON:  Well, I'm a little -- I think

10   Mr. Williams is talking about printing out the documents he's

11   creating, pleading.

12        THE DEFENDANT:  Right.

13        MR. ISAACSON:  I think that's what --

14        THE DEFENDANT:  Right, 'cause I can't print out

15   'cause it's not hooked up to no printer, anything.

16        THE COURT:  Yeah, that's a little different,

17   Mr. Rodrigues.  He's asking for -- to be able to print the

18   stuff that he's actually drafting for court.

19        MR. RODRIGUES:  Just to unpack that a bit, Judge,

20   the -- we don't have inmate word processing.  Now, I've

21   learned -- Mr. Johnson did provide me a copy of his filing and

22   it does state that he's typing documents on Microsoft Word

23   which is something we made quite clear he wasn't entitled to

24   use.  I'm only now realizing he's using Word software on that

25   discovery PC.

1          He can type on a word processing on the other computers

2     that are connected to a printer through the TRULINC system, the

3     inmate email system.  To the extent that he would rather use

4     Word as opposed to that, that system to type, that's his

5     choice.  But he can type, he can save, and he can print from

6     the computers that are connected to the printer.

7          THE COURT:  You said he can save?  'Cause he's

8     saying he can't save.

9          MR. RODRIGUES:  That's right.  The TRULINC system

10    I'm describing, Judge, is the inmate email communication system

11    and he can type what he likes, save it as a draft, and come

12    back to it later on and continue to work on it.

13         But we don't have inmate word processing.  None of our

14    computers for inmate use are set up with Word.  I'm only now

15    learning, as I said, that this computer happened to have Word

16    on it, but that's not something we intend for inmates.

17         THE DEFENDANT:  The TRULINC system that he's talking

18    about --

19         THE COURT:  Yeah.

20         THE DEFENDANT:  -- each time you log in there, you

21    got to pay for that.  Every time you log on that system, you're

22    paying for that.  And so according to U.S. Supreme Court case

23    *Bound v. Smith*, *Johnson v. Avery*, *Lewis v. Casey* and *Younger v.*

24    *Gilmore*, I cannot be charged for drafting legal documents in

25    the preparation of my defense, and that's what the FDC is

1    attempting to try to make me do when I just came from another

2    federal -- well, Federal Detention Center in Pahrump where they

3    had all this available for me.  I mean, I could print, I could

4    save, I could type on a Word document, and they also had the

5    LexisNexis program on the same computer where I can copy and

6    paste instead of having to get a blank piece of paper and pen,

7    write down on what I'm researching, then leave this

8    computer -- 'cause this is what I have to do now.  I have to go

9    downstairs to view the LexisNexis -- well, first I got to get

10   in line, so if nobody's on the computer then I can get on.  But

11   if somebody's on there, then I got to wait at least two hours.

12   So then once I get on it, I research, I have to write down,

13   then go back upstairs to the dedicated computer they have for

14   me and I can type, but I can't save it.

15       So I still can't print out the documents that I, you know,

16   done research on and, you know, if I'm going through my

17   discovery, I like to be able to highlight and copy and paste

18   it.  I don't have that ability to do that because of the way

19   they got the computer set up and I don't have a printer that's

20   connected to the computer.

21       And it's -- I don't understand what's the problem in this

22   facility -- and this is the only facility that I've been in

23   that actually does this, that deprives us of using this.

24   That's things that the U.S. Supreme Court has said, that we

25   need that to have meaningful access to the courts.  I mean, a

1    word processing, a Word document to draft your motions is not

2    against any penological interest, it's not against the security

3    of the facility, anything like that.  It's strictly for the

4    preparation of my defense.  And so I don't feel like that it

5    would be asking too much to be able to provide that.

6         If the FDC do not want to provide me with a dedicated

7    printer, I can have one sent in from the outside to be able to

8    accommodate myself to be able to print out my own and use my

9    own printer.

10            THE COURT:  All right.  Mr. Rodrigues, he's -- since

11   he's defending himself and the Federal Detention Center is

12   mostly comprised of pretrial detainees who are represented by

13   lawyers -- but since he's representing himself, he does do a

14   considerable amount of drafting and research and word

15   processing, and it does seem as if the system that you have

16   there is not accommodating him as well as it probably should.

17        Is there a way that you can get for Mr. Williams a printer

18   attached to that computer that even though you say it's not

19   his, it is apparently a little more convenient for him to use

20   since it's on his level?

21            MR. RODRIGUES:  Judge, before I respond to that, all

22   of these issues have been briefed thoroughly before Judge Chang

23   and I did provide a quite detailed letter to Mr. Isaacson,

24   which Mr. Williams was provided a copy, of about six

25   single-spaced pages where I responded to each and every one of

1    these requests and described what the FDC could do.  We've

2    already made extraordinary accommodations just for him,

3    including moving this PC into the unit for his use.

4         We've also switched the legal research computer in his

5    unit to only be able to perform legal research.  It can't do

6    anything else.  It can't do inmate emails or anything of the

7    sort.

8         And just before this call, I spoke to the officers in that

9    unit and they confirmed what I know to be the case, which is

10   that there is never a wait on this computer.  It can only do

11   legal research and that's not what -- as you said, inmates are

12   not typically doing this research themselves.  So I'm really

13   not sure about the wait, especially a two-hour wait.

14        But we have made accommodations, Your Honor, and he can

15   print his legal research.  He can also type through the TRULINC

16   system and print from those PCs.  But what he's requesting here

17   I certainly am not aware of any case law that would permit it,

18   but there's no BOP system detention center with pretrial

19   detainees that is providing the kind of accommodation that he

20   seeks, at least not that I'm aware.

21        And I did call our detention centers in SeaTac and

22   Los Angeles to find out what kind of accommodations they've

23   made for pro se inmates, and they don't approach anything of

24   the kind that Mr. Williams is asking for.

25        So we'll continue to work with him to provide him use of

1    the discovery PC, make sure that he can do his legal research

2    on the other computer, but we really have to draw a line that's

3    consistent with our other facilities and we'd be going far, far

4    beyond that on what he's asking.

5            MR. ISAACSON:  Your Honor, may I make a suggestion?

6            THE COURT:  Okay.

7            MR. ISAACSON:  Your Honor, at least -- at the very

8    least -- I may have raised this before -- I am able to send

9    Mr. Williams a blank CD.  'Cause what happens is he gets -- the

10   discovery CDs are kept away, locked up, and then he can access

11   them during the time.

12       I can send him a blank CD that he could use hopefully to

13   save his documents and it could be kept in the custody of the

14   other CDs so, you know, it would never be out of the BOP's

15   control.  He would just have it when he had access to the other

16   CDs, and he would turn it in so there could be no security

17   problem, and maybe it would help solve this problem without any

18   additional work by the BOP.

19           THE COURT:  Okay.

20           THE DEFENDANT:  And see, what Mr. Rodrigues is not

21   stating is that the way they got the TRULINC system and that

22   system, you can only be on that computer two hours.  Once

23   you're on that computer two hours, it locks you out.  You can't

24   log back in and do no more research on that.  It's a time

25   frame.  You gotta wait a hour before you can log back in even

1    just to check your email.  And, see, that's restrictive.  See,

2    the other inmates, they have attorneys, so they don't really

3    need access like I have.  I have to have that access.  I have

4    to do the research because I've never done a federal case.

5    I've done state cases.  I won a whole bunch of state cases, but

6    I've never done a federal case.  So I do need more time.

7         And the computer that they have me -- they gave me does

8    not have access to legal research.  There's no LexisNexis on

9    the computer.  I have to leave out the office, come downstairs,

10   then get on one of those computers that only got a maximum of

11   two -- two hours on that computer and that's it, and it logs

12   you out.

13             MR. RODRIGUES:  Judge, the lockout is 15 minutes and

14   we have, of course, electronic logs kept of all of

15   Mr. Williams's activity.  But it's a 15-minute lockout and he

16   can log back in right after that time is concluded.  It's not a

17   one-hour lockout.

18             THE DEFENDANT:  On that one computer.  The other

19   ones you can't.  And, see, he's not in the unit.  He don't have

20   access to what I'm telling you.  It's one computer that if you

21   log out, in 15 minutes you can get back on there.  The other

22   ones you can't come back on there in no 15 minutes.  It logs --

23   you logout, period.  But if somebody else is on computer, then

24   you got to wait till they're finished.  And so I'm saying I

25   shouldn't have to deal with that when I already have a

1    dedicated computer that is very simple for them to get the

2    LexisNexis CD, install it on the computer where I don't have to

3    go downstairs.  I don't understand what's the problem in having

4    that same program but on that same computer.

5            MR. RODRIGUES:  Judge, Mr. Williams commented that

6    he was at another federal facility before this.  He's actually

7    talking about the Corrections Corporations of America private

8    facility in Pahrump, Nevada.  That is not a federal facility.

9    And what sounds like very lax information technology procedures

10   on their part is not how the BOP operates.

11       So I do understand that he may have had an experience

12   that's inconsistent with what he is facing now with the FDC,

13   but that was not a federal facility.

14           THE DEFENDANT:  But not only the federal prison,

15   even in state prison.  The state prison inmates are not charged

16   for anything legal, whether it's mailing out mail, drafting

17   documents, printing.  And so I get here with the FDC and

18   they're charging inmates for legal research to print out the

19   legal documents, which is specifically against the law.  I

20   mean, I got about four or five Supreme Court rulings that said

21   we can't be charged for that, especially being indigent, and I

22   been already declared indigent by the Court.

23       So I shouldn't have to log into a pay-for-usage system to

24   draft a document that I'm going to have to keep going in and

25   editing it and I'm having to pay for this.  It ain't like it's

1   go on a TRULINC system and it's free.  It's not free.  I have

2   to pay for this.  And I don't feel like -- especially being

3   pretrial I'm innocent till proven guilty which, again, I don't

4   see how I can be found guilty of something that I already been

5   approved by the government to do.  But I shouldn't have to pay

6   in order to draft motions and do research.

7           MR. RODRIGUES:  Your Honor, I don't want to make

8   this a back and forth.  I'm speaking to you.  I'm speaking to

9   the Court and not Mr. Williams.  But I must stress that we

10  don't charge for legal research.  The legal research system is

11  not a paid system either in the Education Department or in the

12  housing unit.

13      And Mr. Williams, he's had about $700 in financial

14  deposits onto his books.  He spent the vast majority of that on

15  an MP3 player and music which he purchases frequently.  He

16  currently has about 200 -- as of today he has $197.  He is able

17  to pay the $3 an hour to use the TRULINC system, and as I said,

18  the legal research is at no cost.

19          THE COURT:  All right.  Well, here's what I think

20  I'd like to do, Mr. Rodrigues.  And as you know, we don't

21  micromanage you folks because that's really not our business.

22  But when the conditions of a pretrial detention arguably have

23  an impact on an individual who is representing himself's

24  ability to defend himself in court, it does come right within

25  our purview.  And rather than me just start issuing orders that

1   may not be advisable at this point since you're on the phone

2   and I don't really know how your system works, I'm going to ask

3   that you try to accommodate Mr. Williams because it does strike

4   me that given his -- the demands on him representing himself,

5   he is getting frustrated with his ability to save word

6   processing and his ability to print.

7        Now, I'm -- I heard what you said about printing out

8   discovery and I think certainly Mr. Isaacson can print out

9   everything that's on those CDs and truck it over to the Federal

10  Detention Center, so that's not what I'm talking about.  But he

11  should have ability, particularly with his drafting, to be able

12  to print things out in order to assist with his -- or not

13  assist -- to actually defend himself.

14       And what I'd like to do -- 'cause I -- before I actually

15  make any order that would affect his confinement, I'd have to

16  have an evidentiary hearing and completely understand exactly

17  how the Federal Detention Center provides assistance to

18  pretrial detainees, and I'd like to avoid that.

19       So if -- if you could work with Mr. Williams and see if a

20  number of these concerns can be worked out, like I said,

21  particularly in the word processing and printing area, I think

22  most of these other issues would fall to the wayside,

23  particularly since he does have standby counsel.

24       But what I'd like to do is set a status conference in two

25  weeks, and then at that point in time I think I can determine

1    whether I have to proceed with an evidentiary hearing.

2              MR. RODRIGUES:  Thank you, Judge.  May I ask one

3    question for clarification?

4              THE COURT:  Sure.

5              MR. RODRIGUES:  If the FDC is able to provide

6    printing of Mr. Williams's legal work, is it essential to the

7    Court that that be from the same computer that he view his

8    discovery?  Because that, I think -- that's very important to

9    the FDC.

10             THE COURT:  You know, I'm not familiar enough with

11   the issue in terms of whether the printing should be from the

12   same computer as the discovery, so I can't tell you.

13             MR. RODRIGUES:  Okay.

14             THE COURT:  'Cause I --

15             THE DEFENDANT:  Can I --

16             THE COURT:  Yeah, Mr. Williams.

17             THE DEFENDANT:  The reason why I would rather have

18   it attached to this computer 'cause if I have to depend on this

19   staff to print out something that I need, my experience with

20   them, they don't answer their emails.  I've sent emails for

21   about two months ago that still hasn't been answered.

22             THE COURT:  Emails about helping you with --

23             THE DEFENDANT:  Right.

24             THE COURT:  -- printing and that kind of stuff?

25             THE DEFENDANT:  Right.  They don't answer the emails

1   properly.  I did the email, I did the actual manual paper

2   copout, and it takes at least three to four weeks.  If I have a

3   document that I need to print to be able to issue --you know,

4   submit to the Court, I would miss a deadline having to depend

5   on this staff, and that's the reason why I wanted to have where

6   I can go ahead and draft my motion, print them out, and go

7   ahead and mail what I need to mail, you know, to the Court

8   because my experience, just the few months I been there, is

9   that this staff is in no hurry to answer their emails, to get

10  back with you.

11      Not only that.  I mean, I've emailed the chaplain, still

12  haven't heard.  My people have called the chaplain about 20

13  times.  Still hasn't received a phone call, hasn't --you know,

14  I mean, to get someone there to respond, it's almost nearly

15  impossible.

16          THE COURT:  Okay.  Well, Mr. Rodrigues, I appreciate

17  you being available here by phone to hear all of this.  And I

18  also understand that Judge Chang has been involved in this

19  which is why I think when I have the status conference in two

20  weeks, I think I'll just keep this case and that way we don't

21  have to reinvent the wheel every time.

22          MR. RODRIGUES:  Yes, Your Honor.

23          THE COURT:  Mr. Johnson?

24          MR. JOHNSON:  Yes, Your Honor.  I'd just like to

25  state for the record, because I know Your Honor was involved in

1    this case briefly and then Judge Chang handled a lot of the

2    issues which are kind of at the root of this, Mr. Rodrigues

3    gathered emails and other information, communicated with

4    standby counsel and myself, and actually came into court and

5    was with me for a hearing before Judge Chang to explain.  So,

6    you know, a characterization that over the last several months

7    BOP has been unresponsive I believe is just utterly without

8    merit.  Mr. Rodrigues has been -- and Mr. Rodrigues, correct me

9    if I'm wrong, but have you been to court at least twice?

10            MR. RODRIGUES:  That's right.

11            MR. JOHNSON:  Yeah.

12            THE DEFENDANT:  That's --

13            MR. JOHNSON:  He's accompanied me twice to court to

14    inform the Court, he produced their internal policies and

15    regulations, BOP's regulations, to assist the Court in

16    understanding what they're doing and how they're doing it and

17    also to answer the Court's questions.  And he's contacted me

18    several times and has been in contact with Mr. Isaacson.  So I

19    just want to put that on the record.

20            THE COURT:  Okay.

21            THE DEFENDANT:  May I say something, sir?

22            THE COURT:  Yes, sir.

23            THE DEFENDANT:  That's the reason why I had to have

24    FDC come to court because of the nonresponse.  And what I would

25    like to do so you, Judge, can actually see what I'm talking

1   about, what I will do when I get back to the unit, I will

2   actually print out my request that I have requested for staff

3   to do certain things, and I will print that out and present

4   that at our status so you can see where the sides that I've

5   presented things and my complaints and on this side where it

6   says "Response" where you'll see hardly any responses, or when

7   you do see the response, you'll see the length between the

8   responses.

9        And my trial is set for May.  May will be here like this.

10  So I'm trying to make sure that I have everything that I need

11  to be able to properly prepare for this trial, that I'm not

12  deprived of what I need to in order to be prepared -- properly

13  prepared, and I don't think I'm asking anything that's, you

14  know, not feasible and that can be accommodated.

15            THE COURT:  You know, I tend to agree with you,

16  Mr. Williams.  So -- but let's give the Federal Detention

17  Center the ability to work with you a little bit longer because

18  I think a number of these issues, if not all of them, can be

19  worked out.

20       As I said earlier, most people have lawyers that will

21  essentially take the laboring oar and represent them and so

22  that they don't run into a lot of these issues that you're

23  running into.  And since you exercised your constitutional

24  right to defend yourself, albeit with standby counsel, it makes

25  it a little more difficult to do that with the kind of case

1   you're involved in being in pretrial confinement.  It makes it

2   a challenge.

3          THE DEFENDANT:  Yes, sir.  I would like to, you

4   know, state this for the record, too, that in 2013 I was

5   charged with rape and child molestation by the State of Georgia

6   with the --you know, in complicity with the FBI.  I represented

7   my case in that also.  But the jail that I was at was doing the

8   exact same thing that FDC is doing right now to prevent me

9   from, you know, having the pro se phone access, having a

10  computer.

11         And I went before -- his name is Judge Robert McBurney in

12  Fulton County, Georgia, and he issued a order to the Fulton

13  County letting them know since I was pro se that under the

14  Constitution and the Supreme Court ruling that I was entitled

15  to just, you know, have a computer that I can type, draft, you

16  know, and do my legal research.  So he actually issued that

17  order and they actually allowed me to do that and I was allowed

18  to basically prepare my defense and I won my case.  I

19  represented myself, got the case dismissed and all the charges

20  dropped because I had access to the materials that I needed.

21         And that's all I'm asking here is to have the same access

22  to be able to, you know, do my proper research without having

23  to leave, go downstairs, do this, don't have the research on

24  the same computer where I can just do everything right there,

25  you know, take my notes, do my motions, print it out, send it,

1   whatever I need to do to the Court.

2        And also with the telephones, I did just a little research

3   on the Title 28 CFR 540, the inmate calls to the attorneys.

4   Now, I've sent several requests to be able to use the pro se

5   phone so I can correspond with my standby so he can kind of

6   advise me, you know, on the things I can do.  And they

7   basically told me that I don't -- I'm not entitled to that.

8   But I actually showed them the law which says that my telephone

9   calls to any attorneys cannot be limited by the warden.  But

10  they still -- I still not been answered on the email.

11       I talked to one of the unit managers, Mr. Williams, and he

12  basically told me, "Well, Mr. Williams, they're not going to do

13  that.  They're not going to let you use their phone just to

14  call your standby attorney."

15       And I said, "Well, sir, this is the federal law that

16  states that I have to, you know, be able to do that and they're

17  still denying me to be able to correspond because he can't come

18  up there every day."

19       But it would be simpler if I could call him, you know, on

20  that pro se phone to be able to, you know, get some advice from

21  him, you know.  I'm not saying that I know everything about

22  federal law.  That's why I appreciate Mr. Isaacson 'cause he's

23  been a really a godsend because he's really been helping me a

24  lot, you know, and giving me a lot of research that I can do to

25  help me out and help me along.

1      But it would serve me better where I could at least talk

2    to him.  And I don't want to do it on the TRULINC system 'cause

3    it costs.  And I don't want to violate the --you know, where

4    they -- you can see what he's telling me and, you know, it's

5    attorney-client privilege, so I don't want to put it on there,

6    you know, out there in the public email like that.

7      So I really need that.  I mean, they don't have to have a

8    phone right in the office with me, but just to take me

9    somewhere where I can have access to a phone where I can talk

10   to him.

11           THE COURT:  Well, Mr. Williams, let's see what

12   progress can be made in the next two weeks and then I'm happy

13   to revisit some of these issues with you.

14           THE DEFENDANT:  So it wouldn't be a problem for him

15   to send me the disc, the blank disc?

16           THE COURT:  Not from my viewpoint.

17      Mr. Rodrigues, is there a problem with that?

18           MR. RODRIGUES:  Your Honor, I would greatly

19   appreciate it if we could hold on on any agreement until the

20   status conference in the next two weeks, if the Court is

21   comfortable with that.

22           THE COURT:  Okay.

23           THE DEFENDANT:  'Cause the reason why I'm saying

24   that is because under Title 28 it says I can receive legal

25   materials from the outside.  So why would that be a problem to

1    have a disc that I'm saving my legal documents on?  You know,

2    and to me it just shows that the FDC is trying to prevent me

3    from doing anything that's going to help me prepare for my case

4    to be properly prepared.  And that's why it is baffling me that

5    I have to go through this when I went through this before and

6    didn't have no problem in one of the other jurisdictions that I

7    went through a false charge and was allowed to have all this,

8    you know, which the judge when he saw the U.S. Supreme Court

9    case that I cited and he read it himself he said well, yeah,

10   the Supreme Court is saying that he has to have access to this.

11   So I don't understand why the FDC is fighting me so hard for

12   something that they already have there at the facility now.  It

13   ain't like they have to go out and get something or spend some

14   money or do something special for me.  These are things that

15   they already have.  And I'm like well why you just trying to

16   just deprive me so you can handicap me from being prepared?

17            THE COURT:  Well, like I said, Mr. Williams, about

18   everything you said, I agree with.  But I have to also have a

19   lot more information 'cause I don't know, for instance, what

20   the problem would be with a blank disc.  Maybe there is a issue

21   that the FDC would like to talk about at an evidentiary hearing

22   about problems relating to providing you with a blank disc, so

23   I don't know.  I mean, I have to educate myself on this stuff,

24   and so that's why I'm not going to just allow that to happen at

25   this point.

1    But this is also the reason why the courts don't get into

2  micromanaging the jail because we don't have the expertise.

3  I'm going to have to have an extensive evidentiary hearing on

4  this if you folks cannot work out your accommodation.

5         THE DEFENDANT:  Well, this is the reason why --

6         THE COURT:  'Cause I'm not going to just order them

7  to give you a printer, give you your own phone, give you

8  essentially a private office in the FDC to do your defense.  I

9  mean, I'm just not going to do that.

10         THE DEFENDANT:  Well, they already gave me the

11  office with the computer.  I mean, I have my own dedicated, you

12  know, office that's off to the side with the computer in there.

13  They already have that.

14         THE COURT:  Well --

15         THE DEFENDANT:  It's just the conditions of the

16  computer.  And like I was saying, what I was just quoting with

17  the 28 CFR 543-11, and this is what it specifically states in

18  that federal law.  It just says, "An inmate may solicit or

19  purchase legal materials from outside the institution," and,

20  "The inmate may receive the legal materials in accordance with

21  the provisions on incoming publications or correspondence (see

22  28 CFR part 540, subparts B and F) or through an authorized

23  attorney visit from a retained attorney."

24    So it's saying that if my attorney has some legal material

25  that he needs to give me, he can give it to me in a legal visit

1   or mail it through correspondence.

2        But they're trying to prevent me from getting a legal

3   blank disc to save my legal documents on, and I don't

4   understand what is the problem with having -- when I got 13

5   discs right now.  I have 13 discovery discs from the government

6   that I have access to all day from 8:00 in the morning to 8:00

7   at night.  What would I do with a blank disc that I can't do

8   with the --you know, the discovery disc?  They're the same

9   disc.

10        THE COURT:  I --you know, you're asking the wrong

11   guy.  I don't know.  But that is the problem, I don't know.  So

12   I would have to give Mr. Rodrigues, if he has a issue with

13   that, the ability to come in and tell me why it is a problem.

14   I can't just issue an order requiring the FDC to breach

15   protocols just because it happens to be convenient for this

16   case.

17        I mean, you know, you have exercised your constitutional

18   right to defend yourself and we all respect that, believe me.

19   And frankly, you're doing a pretty darn good job of it.  You're

20   very articulate.  You're obviously organized and you're very

21   bright.  So I have no doubt you can defend yourself and maybe

22   you can defend yourself better than an attorney could defend

23   you.  I'm not sure.

24        But at the same time, there's going to be some limitations

25   on your ability to defend yourself because you're locked up.

1    The attorneys that represent other inmates -- not

2    inmates -- but pretrial detainees, they're not locked up so

3    they have a lot of ability to get things done faster and

4    probably more professionally than what you're experiencing

5    right now.

6         So I think to some extent you are experiencing the

7    frustration involved in representing yourself while being

8    locked up, but that's your call.  That's your call.

9         So you do have the ability to use to a considerable degree

10   to the extent that you want to use Mr. Isaacson.  He is right

11   there and very helpful, very knowledgeable and I think could

12   solve a number of these issues that you're going through right

13   now.

14             THE DEFENDANT:  I don't have the resources --

15             THE COURT:  So in many respects, you know, your

16   problems are sort of of your own making.

17             THE DEFENDANT:  But I don't have the access to

18   him --

19             THE COURT:  Right.

20             THE DEFENDANT:  -- in order to --

21             THE COURT:  And I do want to be very fair and I do

22   want to make sure that we're helping you to the maximum extent

23   under the law.  I really do want to do that.

24        But given that there's a lot of issues here that I don't

25   know in terms of the impact on the FDC whether they can do some

1    of these things, whether some of these things would violate

2    national standards and that kind of thing, if you can't get an

3    agreement to proceed with Mr. Rodrigues, then we'll have

4    probably a day-long evidentiary hearing and we'll find out all

5    about how all of this works.

6            THE DEFENDANT:  Okay.  What I could do, Judge, is I

7    will try to get Mr. Isaacson actually to call on my behalf

8    Judge Robert McBurney in Fulton County 'cause I experienced the

9    same thing where the jail was like, "Well, this is not our

10   policy," and things like that, and I actually provide you with

11   the actual Supreme Court rulings that he used and relied on to

12   basically make them provide to me that computer and processing

13   and printing.  And, see, at that time they didn't even have a

14   notary --

15           THE COURT:  Actually, you don't even need to do

16   that.  You can just ask Mr. Isaacson to get you all of those

17   cases.  You just need to ask, that's all --

18           THE DEFENDANT:  I have --

19           THE COURT:  -- and it'll actually be done for you.

20           THE DEFENDANT:  Okay.  'Cause I have -- I know those

21   cases by heart.

22           THE COURT:  But, you know, as far as how you were

23   treated in Fulton County, Georgia, I could care less, okay?

24   That is not a precedent in this case.  It has no impact in a

25   federal court.  It's not a federal court.

```
 1          So even though I appreciate what you're saying, that the
 2   court bent over backwards to help you defend yourself and you
 3   eventually did so successfully, that's fine.  But what a judge
 4   in Fulton County did on, you know, December 13th, 2006, it has
 5   no impact here.
 6          THE DEFENDANT:  I was just saying --
 7          THE COURT:  I'm interested in if you're going to
 8   cite Supreme Court cases --
 9          THE DEFENDANT:  Right.
10          THE COURT:  --  or a Ninth Circuit case.
11          THE DEFENDANT:  Right.
12          THE COURT:  I'm happy to read all of those cases
13   that you provide or that Mr. Isaacson provides.
14          THE DEFENDANT:  Okay.
15          THE COURT:  But I think that to some extent,
16   Mr. Williams -- and I'm somewhat talking out of school here
17   because I have not held my evidentiary hearing yet -- I think
18   you've created some of these issues yourself because you're
19   trying to do everything yourself.
20          THE DEFENDANT:  Well, I mean, but that's -- I feel
21   like I'm being punished for exercising this constitutional
22   right, and I --
23          THE COURT:  Well, nobody's punishing you on purpose.
24   You're probably feeling like you're being punished because it's
25   hard and you're not getting things done at the speed at which
```

1    you want it done and you're unable to store documents and

2    retrieve them and, you know, make progress every day.  And

3    we'll look into those issues 'cause those are issues that

4    bother me a lot.

5         But in terms of the frustration that you probably feel

6    because you can't get all of this done yourself on a very big

7    case, that's your doing.  And you have the right to do it and

8    every judge in this building's going to advise you don't

9    represent yourself; that's not a good ideal; it's very, very

10   nonadvisable.  We say that to everybody because you're much

11   better off with someone who's actually learned in the law.

12        Now, having said that, you're incredibly bright,

13   articulate, knowledgeable, and organized.  I have had a couple

14   of opportunities to be in court with you and have been very

15   impressed.  You are quite capable of representing yourself,

16   there is no question about it.  But, there are the -- there's

17   the easy way and then there's the hard way, and a lot of what

18   you're trying to do is you're just trying to do it all yourself

19   and you ought to just take advantage of Mr. Isaacson and have

20   him --

21             THE DEFENDANT:  Well --

22             THE COURT:  -- do some stuff for you.

23             THE DEFENDANT:  Well, I mean, he has.  I mean, the

24   things that I have written to him that I needed him to do,

25   he's -- he's the best standby attorney that I've ever had, I

1    mean, by far, because the other ones didn't do probably

2    20 percent of the stuff that he's done that I've asked him to

3    do.  So I do appreciate what he's done.

4        But my -- this is my problem in being represented by

5    someone else as far as an attorney because I know -- I can

6    explain it to him, but I know the intricate details.  And

7    that's the reason why I wouldn't accept an attorney in my rape

8    and child molestation, you know, even at the, you know -- my

9    mom was like, "Please go get an attorney," you know.

10       My family, friends, you know, people that's -- I got law

11   enforcement friends like, "You don't want to go, you know, into

12   court by yourself.  You're not trained in law like this.  They

13   going to murder you even though you're innocent.  We know

14   you're innocent.  But if you go in there, you're going to

15   lose."

16       And I said no, because the truth will always stand.  You

17   cannot create evidence for a lie 'cause a lie doesn't exist.

18   But the truth going to all come out whether it's going to come

19   out in the lower court or it's going to come out in the appeals

20   court or if I have to take it to the Supreme Court.  The truth

21   is going to come out, and that's the reason why I've always

22   been to where I had to represent myself because I know the case

23   more than I can explain it to an attorney at law.

24       And another thing I would like to address before we end is

25   something that Mr. Johnson said.  He said that I refer to

```
1    myself as a private attorney general.  He said he don't know
2    what that is.  Well, what I will do this conference or this
3    evidentiary hearing, I will provide to Mr. Johnson and the
4    Court what a private attorney general is, the Supreme Court
5    rulings that give me the authority to be a private attorney
6    general, and my standing in law as a private attorney general,
7    'cause I been doing this for 15 years.
8        And I haven't had the problem going into court even
9    representing clients except in Hawaii and Florida.  The other
10   seven states I have offices, I haven't had this problem.  When
11   I showed them the law, whatever judge I'm in front of, when he
12   see those Supreme Court rulings when I file my notice of
13   appearance, they've always allowed me to represent my clients.
14   It's just these two states have been the only two states that
15   have denied me the access, you know, to the courts, and
16   consequently these are the only two states that I've had to
17   remove judges in cases.  So I think that has a lot to do with
18   why the two states are -- basically came after me.
19             THE COURT:  Well, Mr. Williams, I wouldn't waste any
20   time researching whether you can call yourself a private
21   attorney general for my sake, 'cause I could care less.  You
22   can call yourself the Emperor of Mongolia for all I care.
23       You have the absolute right to defend yourself.  I
24   don't -- and as far as I'm concerned, that's Anthony T.
25   Williams defending himself.  I don't need to have any knowledge
```

1   about other capacities as a private attorney general or pro se

2   or any of the other fancy words.  You do have the right to

3   defend yourself and I'm going to ensure that you defend

4   yourself in the most constitutionally and effective and fair

5   way possible.  Okay?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  So I will certainly make that promise to

8   you.

9           THE DEFENDANT:  Okay.  Thank you.

10          THE COURT:  But let's don't waste a whole lot of

11  time on what we're -- or titles and all that stuff.

12      Okay.  So the evidentiary hearing, I'm thinking one on

13  December 14th, but let me ask Mr. Rodrigues first.  Are you

14  going out of town or --

15          MR. RODRIGUES:  December 14th I will be here.

16          THE COURT:  Okay.  And can we do this in the

17  afternoon?

18          MR. RODRIGUES:  Any time.

19          THE COURT:  Well, what's the 15th?

20          MR. RODRIGUES:  Provided, of course, that

21  Mr. Johnson -- whatever time Mr. Johnson is comfortable with, I

22  can make it.

23          THE COURT:  How about the 15th?

24          MR. RODRIGUES:  Sure.

25          THE COURT:  How about the -- that's a Friday, so --

1          MR. ISAACSON:  Your Honor, I'm going to have to see

2     my phone if that's okay?

3          MR. JOHNSON:  I was just looking at the same --

4          THE COURT:  Oh, of course, yeah.

5          MR. ISAACSON:  I'll be here, Judge.

6          MR. JOHNSON:  What time is the Court contemplating?

7          THE COURT:  I was thinking sometime in the morning,

8     like 9:30.  Is there something else scheduled?  Just fake it.

9          MR. JOHNSON:  I could do that, Your Honor.

10          THE COURT:  And so 9:30 on the 15th?

11          MR. ISAACSON:  That's fine, Your Honor.

12          THE COURT:  So the intent here is a status

13     conference, and if we're going to need an evidentiary hearing,

14     we'll set that after the status conference, okay?  'Cause what

15     I don't want is to have all kinds of people lining up to

16     present evidence without me knowing exactly what the issues

17     are.

18          So what I want is I just want to be briefed as

19     to -- particularly as to the issues regarding drafting and

20     saving, word processing, and access to the discovery materials.

21          MR. RODRIGUES:  Judge, may I just make a brief

22     comment?

23          THE COURT:  Yeah.

24          MR. RODRIGUES:  First of all, I regret that I'm not

25     there.  I think as Mr. Johnson only found out about this a

1   short time ago, I would have liked to be present, particularly

2   because, as I mentioned before, all of these issues were

3   discussed and so far as I was concerned disposed of before.  I

4   understand that, Judge, you would like to get further

5   information and of course we will provide that.

6        You did mention the relevance of Ninth Circuit court

7   precedent.  Mr. Williams did mention some cases and I do hope

8   we can look to what the standards are and whether FDC Bureau of

9   Prisons has satisfied those standards.  And I will try to make

10  sure that I look at the case law and can explain our actions in

11  the context of that law the next time we meet.

12            THE COURT:  Okay.  And that's why I want to have a

13  status conference because I think that if -- well, first of

14  all, you guys may actually work out all these issues.  But if

15  you haven't worked out some issues, then provide me with the

16  law and the explanation and then I'll decide after that whether

17  we proceed with an evidentiary hearing and whether any further

18  briefing would be necessary.

19       But, you know, this case presents itself in somewhat of a

20  unique context because of the complexity of the case and the

21  fact that we have a pretrial detainee who's elected to defend

22  himself.  So against the advice of the court for sure, but he

23  does have that right.  He's correct in that respect.

24            MR. JOHNSON:  Your Honor, just so that everybody is

25  clear, my understanding is that the Court wants specifically

1    probably three things addressed.  Number 1 is whether or not a

2    disc, a blank disc could be provided and utilized to store

3    information so that he would be able to maintain his place

4    while producing documents?

5            THE COURT:  Well, among those three things, but I

6    would actually like all of his concerns listed on his motion

7    addressed.

8            MR. JOHNSON:  Okay.

9            THE COURT:  All of them with -- and the deposition

10   of the FBI isn't outside the context of the FDC conditions.

11   But anything that is a complaint of his regarding his inability

12   to effectively defend himself in the FDC I would like to be on

13   the table and subject to discussion.

14           MR. JOHNSON:  And if I can, Your Honor, though, you

15   want Mr. Rodrigues to work with him on being able to draft and

16   save documents whether it be a disc or some other mechanism and

17   his ability to print items that he is producing so that he can

18   file his documents with the Court?

19           THE COURT:  Right, 'cause everything that I've seen

20   from Mr. Williams has been handwritten, so there's been no word

21   processing.

22           THE DEFENDANT:  Well, when I was at Pahrump I was

23   able to type, you know.  If you see the motions I filed when I

24   first got here, that's when I was at Pahrump, I was able to use

25   the word processing, you know, do the research and, you know,

1   properly put together my motions properly, you know.  And I

2   hate having to, you know, handwrite out.  I really would like

3   to present my documents professionally, you know, 'cause that's

4   a matter of public record.  And to me it's easier for a judge

5   to read and go through if it's typed properly, you know,

6   double-spaced and things like that.  But I actually, you know,

7   have the proper tools to be able to provide the Court with my

8   documents, you know, to submit.

9        So -- and I wanted to just kind of comment on why I was

10   requesting the -- the cell, because like right now with me

11   having a cell mate, I'm up late at night, you know, going

12   through my -- and so, you know, it's kind of a conflict, you

13   know, with the light, you know, being on, you know, and I'm

14   going through all my law work and he wants to sleep.  And I'm

15   going to keep having this problem with, you know, whoever's a

16   cell mate with me 'cause my trial is in May, so all day I'm

17   doing my law work, you know, I'm on the computer during the

18   day, then at night I'm going through, you know, my notes and,

19   you know, the books that Mr. Isaacson had provided me, the

20   federal criminal trial books.  I'm going through that at night

21   so it kind of makes a conflict between me and my cell mate.

22   You know, they want the lights off, and I need them on to --

23   you know, to properly go through whatever I want to go through,

24   you know, as far as my law work, you know, and the laws, and

25   I'm still trying to verse myself on the federal law.

1    I'm very versed in state law, but, you know, some of the

2    laws are, you know, kind of correlated to each other, but a lot

3    of procedures in the federal is somewhat different than state,

4    so I'm trying to educate myself on that to be, you know, better

5    prepared for trial.  So that's the reason why I was requesting

6    just to have my own cell so I don't have this conflict between

7    whoever my cell mate is.

8         THE COURT:  I think I understand, Mr. Williams.

9         All right.  So we'll see everybody on December the 15th at

10   9:30 for the status conference.

11        MR. ISAACSON:  Your Honor, are you ruling on the

12   motion at this time or are you going to wait until then?

13        THE COURT:  Yeah, I'm going to wait.  On the

14   subpoena issue, you're just not entitled to blank subpoenas, so

15   I don't know what law you're reading, but you're just not

16   entitled to blank ones.

17        You're entitled to -- as I've already stated -- to file an

18   ex parte motion explaining those witnesses that you need to

19   subpoena in order to properly defend yourself, and if your

20   motion outlines the need for specific witnesses, then you'll

21   get your subpoenas.

22        But I'm not going to rule on this, on the whole motion

23   piecemeal, Mr. Isaacson, but I think he -- and the deposition

24   of the FBI, we didn't really get into that, but I don't know

25   what you're talking about there.  But there are very few

1    opportunities for a deposition in the criminal case in federal

2    court.  Civil they take depositions.  I mean, that's how

3    lawyers make their living is they're in depositions

4    continuously, but not in criminal cases for a number of

5    reasons.  Because when you take a deposition outside the

6    presence of a jury, it can compromise your right to trial by

7    jury, and most witnesses are compelled to come in and testify

8    live.

9         Now, if you are wanting to take a deposition purely for

10   discovery, you know, you would have to have an extraordinary

11   circumstance for a ruling like that.  So I don't know exactly

12   what you're talking about with that, but --

13             THE DEFENDANT:  Well, on the depositions, because

14   like I was saying in -- when I went through my state case, you

15   know, I was able to depose the officer, the arresting officer.

16   And so when he got on the stand, I was able to use his

17   deposition to show that his story changed, you know.  And so

18   that's -- I didn't know that the federal law was different as

19   far as opposing witnesses --

20             THE COURT:  Why was his deposition -- not that it

21   makes any difference -- but I'm just curious.  How did -- this

22   was a police officer?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Who -- and the police officer had been

25   deposed?

1                THE DEFENDANT:  Yes.

2                THE COURT:  By whom?

3                THE DEFENDANT:  By me.

4                THE COURT:  Okay.

5                THE DEFENDANT:  'Cause I represented myself.  You

6    know they had to transport me to their building and they --you

7    know, they had a transcriber.  You know, the state had to

8    provide a transcriber so I was able to ask him the questions,

9    you know, based on --

10               THE COURT:  And this was before trial?

11               THE DEFENDANT:  Right.  This was before trial.

12               THE COURT:  Okay.  You clearly are not entitled to

13   that in this building.  But, see, if you were represented by a

14   lawyer, you'd know that 'cause the lawyer would tell you that.

15   Now you might not believe the lawyer, but, again, this

16   is -- this is another reason why you don't represent yourself,

17   Mr. Williams.

18               THE DEFENDANT:  Well, from what I read in the

19   federal criminal trials book that he gave me, it said that I

20   could either submit written depositions to be answered by, you

21   know, different witnesses, you know.  So I don't know if that

22   book is outdated and that's been deleted or repealed or --

23               THE COURT:  No, depositions are allowed in certain

24   well-defined contexts, but not this one.  I mean, you don't

25   have a right to go out to the FBI and just have them answer a

1    dozens questions for you before trial.  I mean, it's just not

2    the way we do it.

3              THE DEFENDANT:  So, I mean, in the federal court so

4    you wouldn't be able to impeach a witness for --

5              THE COURT:  On a prior inconsistent statement or

6    something?

7              THE DEFENDANT:  Right.

8              THE COURT:  Yeah, you would, but not just by taking

9    a discovery deposition.  It's just not the way it's done.

10             THE DEFENDANT:  Okay.

11             THE COURT:  Now, in a civil case you could do that,

12   but assuming the witness is marginally relevant, material and

13   proportional, but not in a criminal case.

14             THE DEFENDANT:  Right.  Now some of the subpoenas

15   I'ma need, too, I probably have to get with Mr. Isaacson.  I'ma

16   have to have subpoena duces tecums issued to several federal

17   agencies to produce the documents that I been --you know, that

18   I was in contact with, like, you know, a lot of the documents

19   that I sent to them, the documents that they sent to me in

20   response, you know, 'cause when they raided my office they took

21   all my, you know, files and stuff.  So I would need those

22   documents to prove that I was in contact with these agencies in

23   regards to my conduct to show that there was nothing fraudulent

24   about my conduct, there was nothing, you know, fraud, anything

25   that was involved in the conduct.  My conduct was conducted

1  based on my, you know, communication and approval by these

2  governmental agencies.

3       So I would need those, you know, subpoena duces tecum

4  issued, you know.  But me and Mr. Isaacson, I'll get with him

5  as far as the -- you know, issue those subpoena duces tecums.

6            THE COURT:  Yeah, that'd be the easiest way to do

7  it.

8            MR. JOHNSON:  Your Honor, if we seized it from him,

9  it's probably within the discovery that he's yet to review.

10      Your Honor, just so there's some priority, with respect to

11  the Rule 17 request he is making, the rule does say, "The clerk

12  must issue a blank subpoena signed and sealed to the party

13  requesting it, and the party must fill in the blanks before the

14  subpoena is served."

15      The next paragraph (b) is the one I referenced and that is

16  Defendant Unable to Pay, which is Mr. Williams's situation,

17  "Upon a defendant's ex parte application as the court noted,

18  the court must order that subpoena be issued for the named

19  witness if the defendant shows an inability to pay the

20  witness's fees and the necessity of the witness's presence for

21  an adequate defense."

22      And we think that that's the way to proceed.  That's why

23  we don't have any objection to him getting subpoenas, and we

24  would ask that the Court inform Mr. Williams that he should try

25  to -- if he feels some of these need to be issued immediately,

1    he should work with Mr. Isaacson and those can be presented to

2    the Court and go out already.

3            THE DEFENDANT:  But, see, that goes with the being

4    able to call him because -- and I'ma have this information

5    ready for you when we have the conference.  The TRULINCS email

6    system, when I send emails out, sometimes the people don't get

7    it till seven days later after I sent the email.  And sometimes

8    I'm not getting their response anywhere from four to seven

9    days, which I don't understand why it's taking that long for

10   the FDC to release the emails that I'm sending to him, to my

11   parents and, you know, to other people.

12       So what I've had to start doing, I just tell them, Look,

13   when you email me, put the date and time within your email that

14   you're sending it had to me so when I get it, I can see exactly

15   how many days it was before they remanded it and sent it to me.

16   And it's been three, four, sometimes seven days that I'm just

17   receiving the email that I was supposed to got last week.

18       And this is why I'm saying the frustration that I'm having

19   that simple things that -- I talk to Officer Nauf(phonetic).

20   He said, "No, the email's only supposed to be held for an hour

21   once you send it, and then they just, you know, scrutinize and

22   make sure you're not, you know, sending a bomb threat or things

23   like that and then they send the email through."

24       And I said, "Well, sir, that's not what's happening to me.

25   What's happening to me is it's taking four to seven days for my

1    emails to be sent out and four to seven days for me to receive

2    the emails that's been sent to me."

3         And it's really handicapping me 'cause when I get it, I

4    get my mom, you know, emailing me like, "What's going on?  Why

5    you not responding?"

6         And I just say, "I just sent you an answer to that three

7    days ago."

8         And, you know, they're not -- and so I need that addressed

9    that why is my emails being withheld so long before they're

10   being sent out, when I talked to Officer Nauf, he said it's

11   only supposed to be an hour?

12        So, you know, it's -- these are the things I'm dealing

13   with, with the roadblocks and obstacles that I'm facing, and I

14   just want these things alleviated so I can just get to

15   preparing for my trial.

16             THE COURT:  Well, we'll address all of those issues

17   as necessary, Mr. Williams.  But I go back to my primary

18   comment and that is this was your choice.  You're exercising

19   your right to defend yourself and it's hard, and it's not going

20   to get any easier.  And I'm not going to mess with some system

21   that's set up across the United States for email deliveries.

22        And you can look at all the Supreme Court cases that have

23   discussed court's authority over pretrial detention and you can

24   see why the Supreme Court in particular is very adamant that we

25   should not get involved with things like the quickness of an

1   email system.  It's way outside of our expertise.  It's way

2   outside of our ability to handle.  Like, if I were to take this

3   on, it would take way, way too much time.

4        So there's all kinds of real valid practical reasons why

5   we just can't do that.  So -- and in large extent that's why

6   you got standby counsel.  And for instance, if you chose not to

7   use standby counsel, then sorry, that's just life, you know.

8   If you want to make life harder on yourself, then that's your

9   constitutional right as well, I suppose.

10       So a lot of the stuff I'm just not going to be able to

11  help you with, so -- and I'm guessing the quickness of the

12  email delivery system's one of them.  But -- and I'm not going

13  to be able to help you with quite a few other things, I'm sure.

14  And I am real concerned about your ability to write and access

15  discovery and print things, and I'm real concerned about that

16  because that's -- that directly involves your ability to defend

17  yourself.

18       And beyond that, if you don't want to take advantage of

19  Mr. Isaacson who's paid for at government expense to help you

20  as essentially your assistant, if you don't want to do that,

21  then it's your call.  So you'll just have to live with whatever

22  happens as a result of some of these decisions.

23            THE DEFENDANT:  I also had filed a motion for funds

24  to hire a private investigator.  The Court didn't receive that

25  yet?

1          THE COURT:  I haven't seen anything.

2          THE DEFENDANT:  I mailed that out I think Monday or

3  Tuesday.

4          THE COURT:  That would also be one of these ex parte

5  things that I was telling you about.  We take a look at it

6  because you're indigent, so the government's going to be paying

7  for the private investigator if it's appropriate.  So we have

8  to read why you need a private investigator, and if it's

9  reasonably necessary after we read what you've provided us,

10  then we would authorize the private investigator.

11      But it's ex parte so that Mr. Johnson doesn't even know

12  that it's going on, and that's to preserve certain rights that

13  you have to prepare your case.

14      But again, that sort of thing, that's ideal for an

15  assistant like Mr. Isaacson here.  That would be -- that's

16  exactly what I would use him for if I was trying to commandeer

17  my own defense which, again, I'm advising you against.  I think

18  it's a really bad idea, but, you know, have at it.

19      All right.  Anything else, Mr. Williams?

20          THE DEFENDANT:  No, sir.  I just appreciate you.

21          THE COURT:  I appreciate you as well, and we'll see

22  you folks on the 15th at 9:30.  And I appreciate you also,

23  Mr. Rodrigues.

24          MR. RODRIGUES:  Yes, Your Honor.  Thank you.

25          THE COURT:  Okay.  Court's in recess.

1              MR. ISAACSON:  I'll see you next week.

2              (Proceedings concluded at 4:07 P.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    TRANSCRIBER'S CERTIFICATE

 2

 3              I, DEBRA READ, court approved transcriber, United

 4   States District Court, District of Hawaii, do hereby certify

 5   that the foregoing is a correct transcript from the official

 6   electronic sound recording of the proceedings in the

 7   above-entitled matter and that the transcript page format is in

 8   conformance with the regulations of the Judicial Conference of

 9   the United States.

10
                DATED at Honolulu, Hawaii, February 1, 2018.
11

12
                     /s/ Debra Read
13
                     DEBRA READ, CSR CRR RMR RDR
14

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**