1             IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAII

3
   UNITED STATES OF AMERICA,        ) CR 17-00101 LEK
4                                   )
              Plaintiff,            ) Honolulu, Hawaii
5                                   ) January 29, 2018
       vs.                          )
6                                   ) (79-1) APPEAL OF MAGISTRATE
   ANTHONY T. WILLIAMS,             ) JUDGE DECISION TO DISTRICT
7                                   ) COURT BY U.S.A. AS TO
              Defendant.            ) ANTHONY T. WILLIAMS
8     _____)

9
                    TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE LESLIE E. KOBAYASHI
                  UNITED STATES DISTRICT JUDGE
11
   APPEARANCES:
12
   For the Government:        ROBERT G. JOHNSON, AUSA
13                            AMALIA L. FENTON, AUSA
                              Office of the United States Attorney
14                            PJKK Federal Building
                              300 Ala Moana Boulevard, Suite 6100
15                            Honolulu, Hawaii 96850

16  Also Present:            TIMOTHY A. RODRIGUES, BOP

17  For the Defendant:        ANTHONY T. WILLIAMS, *Pro Se*

18  Standby Counsel:          LARS ROBERT ISAACSON, ESQ.
                              547 Halekauwila Street, Suite 102
19                            Honolulu, Hawaii 96813

20

21

22  Official Court Reporter:  Debra Read, CSR CRR RMR RDR
                              United States District Court
23                            300 Ala Moana Boulevard
                              Honolulu, Hawaii 96850
24
   Proceedings recorded by electronic sound recording; transcript
25  produced with computer-aided transcription (CAT).

1    MONDAY, JANUARY 29, 2018                        2:01 P.M.

2            THE COURTROOM MANAGER:  Criminal 17-00101 LEK,

3    United States of America versus Defendant(1), Anthony T.

4    Williams.

5        This case has been called for a hearing on the United

6    States' Appeal of a Magistrate Judge Decision.

7         Counsel, please make your appearances -- and parties --

8    for the record.  Please speak into a microphone.

9            MS. FENTON:  Good afternoon, Your Honor.

10       Mali Fenton and Ron Johnson for the United States.  Also

11   at counsel table is Tim Rodrigues who is Senior Counsel at FDC

12   Honolulu, and the case agent Megan Crawley from the FBI is also

13   here.

14           THE COURT:  All right.  Good afternoon to all of

15   you.

16       Mr. Williams.

17           THE DEFENDANT:  Good afternoon, Judge.

18       Private Attorney General Anthony Williams representing

19   myself.

20           THE COURT:  All right.  The record will reflect your

21   presence.

22           MR. ISAACSON:  Lars Isaacson, here as Standby

23   Counsel.

24           THE COURT:  So all right.  You may be seated.

25       We're here on the government's motion, an appeal, and I

1    understand that you have some evidentiary evidence that you'd

2    like to present to the court, Ms. Fenton?  Or is it just

3    argument?

4             MS. FENTON:  Your Honor, we are planning on just

5    argument, but we did want to make these two people available to

6    the extent the Court had questions or anything like that.  But

7    I am just planning on argument.

8             THE COURT:  All right.  Very good.

9        And, Mr. Williams, is there anything in addition to what

10   you filed that you plan on presenting to the court?

11            THE DEFENDANT:  No.

12            THE COURT:  All right.  Thank you.  So I've read

13   through all of the submissions and so -- and the exhibits and

14   so forth, so I believe I'm fairly familiar with that.  So I'm

15   going to limit each of you to 15 minutes each.  All right?

16   I'll hear it, then I'm going to rule.

17            MS. FENTON:  Okay.  Thank you, Your Honor.

18            THE COURT:  All right.  So if you want to, you can

19   come up to the podium.  We have this new system.  I'm not sure

20   exactly how to do it, but I think Mr. Nakamura knows how, and

21   we can actually put in the time and then it'll actually give

22   you the time so you can know as it's counting down.  Does that

23   sound okay with everyone?

24            MS. FENTON:  Yes, Your Honor.

25            THE COURT:  All right.  So 15 minutes for each side,

1    Mr. Nakamura.

2              MS. FENTON:  Thank you, Your Honor.

3        So as a preliminary matter, I just did want to bring to

4    the Court's attention that we did file a supplemental filing

5    today just very briefly addressing the standard of review in

6    this case.

7              THE COURT:  I did see that.  And did Mr. Williams

8    get a copy of that?

9              MS. FENTON:  I believe he did.

10             MR. JOHNSON:  Your Honor, what we did is

11   Mr. Williams had been transported down here, so we sent an

12   electronic copy to Mr. Isaacson and we also sent a copy to the

13   U.S. Marshals Service indicating that Mr. Williams needed to

14   receive it.  So I don't --

15             THE COURT:  All right.  Let me check.  Mr. Williams,

16   did you receive that filing today?

17             THE DEFENDANT:  About three minutes ago, ma'am.

18             THE COURT:  All right.  Do you want additional time

19   to review it?

20             THE DEFENDANT:  I would ask that the Court actually

21   strike this motion as untimely.  The government had over a

22   month-and-a-half if they wanted to file this and give me an

23   opportunity to be able to respond to it.  Now they giving it to

24   me three minutes before we have the hearing.  I think that's

25   unfair and I think it's prejudicial against me.

```
 1              THE COURT:  All right.  Do you want to file a

 2   response to that submission?

 3              THE DEFENDANT:  I would, but I would ask that the

 4   Court strike it since it's untimely.

 5              THE COURT:  All right.  So I'm not going to strike

 6   it.  Do you wish to write an opposition to that submission?

 7              THE DEFENDANT:  Would that delay this hearing?

 8              THE COURT:  No.  I would receive it and hold off on

 9   my decision until I receive your submission.

10              THE DEFENDANT:  No, I rather we -- 'cause it's been

11   almost three months with this -- us going back and forth.  I

12   would rather this get resolved today so I can basically defend

13   myself properly.

14              THE COURT:  Okay.

15              MR. ISAACSON:  Your Honor, one second.

16              THE COURT:  If you could speak into a microphone.

17              MR. ISAACSON:  If I could talk to Mr. Williams for a

18   second?

19              THE COURT:  Yes, absolutely.

20              MR. ISAACSON:  I'm sorry, Your Honor.  Thank you.

21              THE COURT:  Thank you.

22         All right.  So, Mr. Williams, it's my understanding that

23   you made an oral motion to strike the government's recent

24   filing.

25              THE DEFENDANT:  Yes, ma'am.
```

1          THE COURT:  And that you do not wish to file an

2     opposition to it.

3          THE DEFENDANT:  Not if it's going to delay the

4     hearing.

5          THE COURT:  It's not going to delay the hearing.  I

6     will go forward with the hearing today and then I would give

7     you a week to file your opposition to it, if you want to.

8          THE DEFENDANT:  But it would delay --

9          THE COURT:  I'm not saying you have to.

10         THE DEFENDANT:  It would delay your order, though.

11         THE COURT:  I wouldn't rule from the bench today,

12    correct.

13         THE DEFENDANT:  No, 'cause I want a ruling today.

14         THE COURT:  Okay.  All right.  So your oral motion

15    to strike is denied and we will proceed.  All right.

16         MS. FENTON:  Thank you, Your Honor.

17         And just for the record, that supplemental filing, it was

18    really just addressing the standard of review here.  It wasn't

19    bringing any additional arguments.  And the government had

20    addressed before the magistrate this issue of whether this was

21    more of an injunctive or a non dispositive motion, and that

22    just simply goes to this Court's review whether it's de novo or

23    a clear error.  But in any event, our argument is that under

24    either standard the Court should reverse the magistrate's

25    decision.

1          Essentially, our argument is simply that there's no

2    violation of Mr. Williams's access to the courts here.  As a

3    preliminary matter, the cases that we've cited make clear that

4    the Court should grant the BOP substantial deference in matters

5    like this and shouldn't be sort of micromanaging the day-to-day

6    operations at BOP.  And as to the way the BOP personnel have

7    addressed this particular issue of Mr. Williams's access to

8    legal resources and the Court, it's clear that he already has

9    far more than what's constitutionally required.

10          So as our appeal makes clear, what the law requires is

11    simply that an inmate can communicate with the courts, can

12    communicate with counsel, and that he's equipped with the

13    minimal tools necessary for the preparation of his defense.

14          Here it's clear BOP is exceeding that standard by quite a

15    lot.  Mr. Williams has access to a stand-alone computer with

16    LexisNexis in his housing unit.  He has a printer that he can

17    use to print out his legal research.  He also has on a separate

18    stand-alone terminal access to his ediscovery materials.  This

19    is also in his housing unit.  He has access to a photocopier in

20    the Education Department; he can make copies of any documents

21    he wishes.  He has access to a typewriter both in his housing

22    unit and in the Education Department.  And he has access to an

23    email word processing program should he wish to use that to

24    type up his filings.  Of course, he also has access to pen and

25    paper, and it's clear from his filings in this matter alone

1    that they're adequately providing him with access to court.

2    He's been making many filings.

3        So the bottom line is, you know, clearly he has the

4    ability to do legal research, to print out cases, to review his

5    discovery, and to draft and file documents with this Court.  So

6    this, in our view, more than meets the constitutional standard.

7        And moreover, it's important to remember that not only,

8    you know, must we meet the standard, but he needs to be able to

9    show actual injury, which he clearly can't do in this case.  I

10   think his filings in this matter alone demonstrate eminently

11   that he has ample access to the tools necessary to petition the

12   Court for redress and prepare his defense.

13       So that's our position.  And it's important to point out

14   that our view is not only is there no constitutional violation

15   here, but we believe as the materials we've provided in

16   association with our appeal show, that really the magistrate

17   judge's order raised significant issues for the BOP and, you

18   know, the more they looked into trying to put this together and

19   comply with the order, the more issues arose.  So we thought

20   that was important to get before Your Honor.

21       I'm not going to go through, you know, all the reasons why

22   that is.  I think the declarations do a really good job of

23   setting that out.  You know, the declaration from Associate

24   Warden Card talks not only about the access that Mr. Williams

25   already has, but about the administrative and security concerns

1   that would be associated with providing the technology that the

2   magistrate's order is requiring.

3        Likewise, to Mr. Simo's declaration, the BOP, as one would

4   expect, has national procedures for these ediscovery terminals

5   and, you know, these standardized national work stations would

6   essentially have to be reconfigured in order to comply with

7   this order, and we believe that raises serious concerns.

8        So for all of these reasons, we're asking that the Court

9   take a second look at the magistrate judge's order and deny

10  Mr. Williams's motion to compel.

11           THE COURT:  All right.  So, Ms. Fenton, I have a

12  question.  I'm looking at Judge Puglisi's order and this is at

13  page 2.

14           MS. FENTON:  Yes.

15           THE COURT:  And he has a sentence there says, "If

16  there's a technological reason why this cannot be done, the BOP

17  shall file a detailed explanation of their inability to comply

18  no later than December 22, 2017."

19       Was anything filed by the BOP by that deadline?

20           MS. FENTON:  No, Your Honor.  And I can tell you

21  that we did have discussions with BOP counsel about this.  And

22  our determination was really that in terms of just a purely

23  technological reason why this could not be done, perhaps

24  technologically it could be done, but this would raise a whole

25  host of other security and top-down administrative issues for

1  BOP.  So our conclusion was that it wasn't appropriate to file

2  something sort of termed a technological reason when really

3  there are these other concerns at play.

4          THE COURT:  All right.  Thank you very much.

5      All right.  Mr. Williams.

6          THE DEFENDANT:  Good morning again, Judge.

7          THE COURT:  Yes.

8          THE DEFENDANT:  Everything that the government said

9  basically is fabricated.  I do not have adequate access to the

10  courts.  We've been through this issue maybe four or five

11  hearings between two judges who already heard their arguments.

12  We both extensively argued our position.  They argued their

13  position.  We had two judges who are very competent to hear

14  both sides and basically ruled in my favor stating that -- both

15  judges stated that it would be a violation of my constitutional

16  rights as a pro se defendant to deny me access to the

17  technology, the adequate technology to be able to adequately to

18  draft my motions, save my motions, print out.

19      She's saying that I have access to a copier.  I do not

20  have access to a copier at the BOP.  In order to be able to

21  even be able to copy anything, you have to purchase a copy

22  card, which I don't have.  We don't have the access that she

23  said.  The typewriter that she mentions does not work.  It does

24  not have a ribbon that you can even use to type on it.  To be

25  able to print out from the discovery disc, I do not have that

1    capability because the computer that was allowed, that I had to

2    come to court to actually get a computer, a dedicated computer

3    that they put in there, does not have printing capabilities.

4    It's not hooked up to the printer that's in the unit or on the

5    network.  So that's the reason why we came for another hearing

6    so I can at least have a printer so I can print out my motions.

7        And right now she said that I basically had a adequate

8    access to the court, which I don't.  In *Bounds v. Smith*, U.S.

9    Supreme Court basically outlines the specifics on what's

10   adequate law library access, and the BOP does not have that.  I

11   just came from a facility in Pahrump that did provide the

12   adequate access, where we did have word processing

13   capabilities, save capabilities, I could print, I can do

14   everything -- research from the same computer.  It was

15   considered a security risk.  And the government is purporting

16   that to provide me with a printer is a -- somehow is a security

17   risk when they fail to mention that they got a typewriter that

18   if one wanted to basically take some parts off to use as a

19   weapon, we could use the parts off of the typewriter.

20       We also have access to unlimited amount of razors.  We

21   also have a iron, a steel iron that we use to iron our clothes,

22   that if we wanted to use that as a weapon, we could actually

23   use that as a weapon to harm either an employee or an inmate.

24       So for the government to purport that using

25   this -- providing this printer is a security risk is really

1    frivolous, it's baseless, it's meritless because we have a

2    whole plethora of things we could use if we wanted to use

3    something as a weapon.

4              THE COURT:  Can you currently print research from

5    the LexisNexis terminal?

6              THE DEFENDANT:  You have to pay for it.  You have

7    to -- you can't -- like, I been considered indigent, so I can't

8    be able to pay for anything.  So unless you pay for it, you can

9    only print out, like, something that you research.  But I can't

10   print out a motion from that terminal.  I can't print out

11   anything on my discovery disc that I need to put as an exhibit.

12   Like even the handwritten motions, I couldn't provide the Court

13   with the exhibits to actually prove my point because I can't

14   print out anything from --

15             THE COURT:  So you have access to a typewriter, but

16   the typewriter doesn't work.

17             THE DEFENDANT:  Right, the typewriter doesn't work.

18             THE COURT:  Okay.  And you have access to a computer

19   with word processing and document saving capability in the form

20   of inmate correspondence email system; is that correct or not

21   correct?

22             THE DEFENDANT:  No, the email system it's -- it's a

23   pay -- you have to pay to get on the email system.  So you have

24   to have money to basically pay.  But it's not a word

25   processing.  It's a email.  So you just -- basically, like, if

1  you going to email your family, your friends, you go in there.

2      What they -- it's purported that I can use that to try to

3  draft my motions, but I still wouldn't be able to print out no

4  documents from the CD, from a discovery CD, to attach as

5  exhibits.

6      And this whole argument was placed before, you know,

7  Judge Chang and Judge Puglisi, and both of these judges

8  basically ruled the same thing, that it's a violation of my

9  constitutional right to not provide me as a pro se defendant.

10  I'm not a defendant that has a counsel that can do all these

11  things for me.

12          THE COURT:  But you do.

13          THE DEFENDANT:  Well, no.  I'm pro se.

14          THE COURT:  I know.  You have standby counsel who

15  will assist --

16          THE DEFENDANT:  I have standby --

17          THE COURT:  -- you in any way.  So if you want to

18  draft something in an email and send it to Mr. Isaacson with

19  directions for him to make copies or to file it for you or what

20  have you, you can do that through the email system.

21      But you're saying you can't afford to get on the email

22  system.

23          THE DEFENDANT:  Not only cannot afford to do that,

24  but the way the BOP has done, they're holding my emails for up

25  to seven days.  So when I email him something, he might not get

1    it for seven days.  And I can actually prove that I been

2    printing out –– so what I do is I put the date on the email

3    within the email when I send it so when the people get it –– my

4    family, friends or –– they'll know exactly when I sent it.

5                THE COURT:  Oh, so you are on the email system.

6                THE DEFENDANT:  Yeah, on the email system.

7                THE COURT:  Oh, okay.  So you don't have to pay to

8    be on the email system?

9                THE DEFENDANT:  No, I have to pay for that.

10               THE COURT:  Okay.  So you can afford to do that?

11               THE DEFENDANT:  Well, I really can't, but I –– it's

12   limited.

13               THE COURT:  But you are able to get on the email

14   system and you, in fact, indeed, have sent out emails?

15               THE DEFENDANT:  Right.  I have sent out emails,

16   right.

17               THE COURT:  Okay.  So you have not been prevented

18   from sending out emails?

19               THE DEFENDANT:  No.  It's just they hold the emails

20   for up to seven days.  And the cost –– I can't send a whole

21   bunch of emails because it costs.  Every time you log on it

22   costs I think it's 5 cents every 2 lines and 5 cents a minute,

23   you know, that you're on the system.  So you basically have to

24   pay for your justice.  And me being an indigent defendant, by

25   law, by Supreme Court case *Bounds v. Smith*, I'm not supposed to

1   be able to be charged for these things and they're still

2   charging me.

3           THE COURT:  Well, it doesn't say it can't be charged

4   for emails.  It says you can't be charged in order to do legal

5   research, right?

6           THE DEFENDANT:  Well, that's what they 're

7   charging --

8           THE COURT:  They're not charging you for LexisNexis,

9   right?

10          THE DEFENDANT:  Well, to print out the research from

11  Lexis they are charging me.

12          THE COURT:  Right.  But they're not charging you to

13  get on and do legal research on LexisNexis, correct?

14          THE DEFENDANT:  No, I can get on it, but once if I

15  want something to print out to look, then I have to pay for

16  that.

17          THE COURT:  Right.  And you can write down the name

18  of the case and the citation number; you're not prevented from

19  doing that or have to pay for that?

20          THE DEFENDANT:  I could do that, but the time --

21          THE COURT:  And has Mr. Isaacson visited you at FDC

22  Honolulu?

23          THE DEFENDANT:  He's come visited me several times.

24          THE COURT:  Okay.  And are you able to give him

25  notes or written instructions?

1            THE DEFENDANT:  We have to mail -- I have to mail

2    that to him.

3            THE COURT:  So you have access to stamps and

4    envelopes?

5            THE DEFENDANT:  Uhm, I have to purchase that also.

6            THE COURT:  Okay.  So you have not been able to mail

7    anything to Mr. Isaacson?

8            THE DEFENDANT:  Yeah, I've mailed him two or three

9    things.  I just mailed him something.  He said he haven't

10   received it yet, but he say he have to check to see.

11       But they're preventing even the mail.  My mail is not

12   getting to -- that's why if the Court looked at my mailings, I

13   had put on there, "Upon receipt please make a copy of the front

14   and back," because a lot of my mail has been tampered with to

15   the Court or some of the mail hasn't even been mailed out, some

16   of the people haven't even received some of the things that I

17   have mailed out.  And this is one of the problems.

18           THE COURT:  For this particular motion is there

19   something that you believe the Court has not received that

20   you've mailed or you've asked Mr. Isaacson to mail on your

21   behalf?

22           THE DEFENDANT:  I think the Court has received all

23   the other -- the things that I sent to it.  I don't know if the

24   Court has not received, but, like, I received other -- you

25   know, like, sent some things to other places that they still

 1    haven't received the mail.  So I don't know --

 2             THE COURT:  Okay.  But I'm particularly interested

 3    in what you've submitted to me 'cause I want to make sure that

 4    I have all of your filings.

 5             THE DEFENDANT:  Well, I sent -- I think I sent a

 6    motion for --

 7             THE COURT:  Right.  I have your handwritten Motion

 8    in Opposition to Government's Appeal --

 9             THE DEFENDANT:  Right.

10             THE COURT:  -- and Request to the District Court to

11    Reconsider Pretrial Matter Determined by Magistrate Judge.

12             THE DEFENDANT:  Right.

13             THE COURT:  Right.  That's what you filed for this?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Okay.  Very good.  I want to make

16    sure that I have --

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  -- everything that you've submitted.

19        And do you believe that you've received everything that

20    the government has filed in this case, which is the

21    Government's Appeal and Request on the District Court to

22    Reconsider a Pretrial Matter Determined by the Magistrate Judge

23    that was filed on December 29, 2017?

24             THE DEFENDANT:  Uh-huh.

25             THE COURT:  Exhibit B of Jonathan Simo's declaration

1   that was filed on December 28, 2017, and then of course what

2   you just received today in the courtroom?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  Those are all the filings that I have

5   had from the government in this case.  I want to make sure that

6   you got those.

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  Okay.  Good.  Okay.  I'm sorry.  I took

9   out some of your time.  What else do you want to tell me?

10           THE DEFENDANT:  Well, the government is saying that

11  they provided proper or adequate tools for me to be prepared

12  for trial, and they haven't provided it.  That's the reason why

13  we've had to have these hearings and that's the reason why two

14  judges prior have already ordered and ruled.

15       What he's ordered is not something outside of the scope,

16  is not a security risk to the BOP.  There's no technological

17  reason why they can't do it.  That's the reason why they

18  couldn't respond to his order to where if they can show a

19  technological reason why it's not possible, then they could

20  have provided it.  They can't provide it because it's really

21  simple.  They have enough free printers right now that's just

22  sitting in a room that they could use one of those printers to

23  provide to me to be able to use to print out, you know, my

24  discovery on the discovery disc -- off the discovery disc to be

25  able to attach as exhibits to my motions, 'cause right now I

1   can't even do a proper motion to be able to attach the exhibits

2   from the discovery 'cause I have no ability to print from the

3   discovery.

4           THE COURT:  Right.  But you don't need to personally

5   print it.  You could direct Mr. Isaacson to print it for you,

6   couldn't you?

7           THE DEFENDANT:  No.  I mean, not being pro se

8   because I would like to be able to attach it when I do my

9   motion, draft my motion, attach the exhibit and mail it.  I

10  don't see why --

11          THE COURT:  But that's your preference.  But it

12  doesn't inhibit your ability to defend yourself if you direct

13  Mr. Isaacson.

14          THE DEFENDANT:  Well, to me it does because the time

15  frame that I have.  We're talking about my trial is in May and

16  I have a lot of things that I have to still draft up right now,

17  and I can't draft something up, have to mail it to him --

18  that's going to take a week for him to get it.  And then --

19          THE COURT:  Well, I'm sorry, you said he comes and

20  visits you.  Why can't you tell him to do it when he visits

21  with you?  You guys can strategize and you can give him

22  explicit directions.

23          THE DEFENDANT:  Well, he doesn't have the time to

24  come visit me as often as he would like or that I would like

25  because my trial is rapidly approaching.  So I should be able

1   to be provided with the tools where I can prepare my trial --

2   prepare for trial right now without having to mail something

3   out or wait for him to come because he's -- I'm not -- I know

4   I'm not his only case.  I know he has a whole lot of cases that

5   he has to deal with.

6           THE COURT:  But the court's experience with

7   Mr. Isaacson is he's very diligent in terms of, you know,

8   meeting with his clients.  So, you know, yeah, it wouldn't be

9   immediate like you doing it yourself or having the convenience

10  of a printer, but, you know, I have to balance that against

11  what the BOP is indicating in terms of security risk and being

12  overwhelmed by every other, you know, person at BOP FDC

13  Honolulu wanting the same thing.

14      So I have to take all of these things into consideration.

15  And of course above all is the constitutional requirement that

16  you be able to have access to legal materials in order to

17  defend yourself in this case.

18      So those are the considerations that I'm looking at.

19  Overarching is do you have appropriate and reasonable access to

20  legal materials with which to defend yourself?

21          THE DEFENDANT:  No, I do not, and that's the reason

22  why two magistrate judges already ruled that I do not, and

23  that's the reason why I feel like the government appeal is

24  basically a knock against these judges' competency, that

25  they're not competent enough to hear the facts of the case

1   which they both heard the facts.

2       There is no security risk.  If they was really concerned

3   about security, like I said in my response to them, they would

4   not have provided us with razors, they would not provide us

5   access with a iron that we could use, they would not provide us

6   access to a mop, a broom --

7           THE COURT.  Right.  But that's physical danger,

8   right?

9           THE DEFENDANT:  Right.

10          THE COURT:  There's also a legal danger to others

11  that they've set forth in terms of using materials and the

12  printer and a word processing capability that's altered to harm

13  others through those uses.

14          THE DEFENDANT:  And my argument to that is if

15  someone wanted to do that, then I would not have to use a

16  personal printer to do that.  I could write somebody on the

17  outside to do the same thing and do just as much damage that

18  they're saying that I could use with the computer or with the

19  printer, and I still have access to a printer right now.

20      If they're saying I can use the TRULINCS system, I can

21  still use that system to do that.  So that's not a security

22  risk that they're using.  That's a baseless argument because I

23  just came from a facility that gave me the same access that

24  never was a problem, it never was a security risk, just like in

25  the other FDCs I came from, that never was a security risk.

 1          It's only a security risk here because they don't like

 2    that I'm a pro se defendant and that I've forced them to come

 3    to court in order to protect my constitutional rights to

 4    protect myself to be prepared for trial.  And that's the only

 5    thing I need these for is to prepare for trial.  And that's the

 6    reason why both judges ruled in my favor 'cause it's not asking

 7    for something that they can't provide that's going to be a

 8    security risk, that's not something outside of the scope that

 9    they already have, it's not going to cost them any additional

10    money, it's not going to cost them additional staff, time, or

11    anything like that.

12          This is a basic simple thing just to have a computer

13    hooked up to a printer, to a computer, and where I can actually

14    print and save my documents on a blank CD.  They're saying that

15    the blank CD would be a security risk when I already have

16    access to 13 CDs that I have access to every day but I have to

17    give it to the officer at the end of the day.  They count them

18    before so I would have to still give them my blank CD I'm

19    saving my work on so I can least have copies of my work.

20          They're not using a typewriter.  They're not using three

21    different computers to do their work.  They have the same

22    access.  If this was going to be a fair trial, then I should

23    be -- at least have the minimum access that they have as far as

24    having a word processing capability to be able to save my work,

25    to be able to print out my work, and to be able to attach

1  exhibits from that discovery in order to properly defend myself

2  and be ready for trial.

3       And to deny this is to me it's a denying me basic

4  constitutional rights that was already outlined in *Johnson v.*

5  *Avery, Lewis v. Casey*, and *Bounds v. Smith* Supreme Court

6  rulings.

7            THE COURT:  All right.  Thank you very much.

8       I just have a question with regard to the typewriter,

9  though, for --

10           MS. FENTON:  Yes, Your Honor.  So I can let Tim

11  Rodrigues address this question.  But it's my understanding

12  it's true the typewriter needs a new ribbon.  It's been

13  ordered, it's on its way, and they are expecting it I think in

14  a couple days.  But let me allow Mr. Rodrigues to address this.

15           THE COURT:  That is concerning to the court, you

16  know, because if there's one typewriter and everybody, you

17  know, needs to use it, it needs to be usable.

18           MR. RODRIGUES:  Good afternoon, Your Honor.

19       There are three typewriters that Mr. Williams may make use

20  of.  There are two in the Education Department, one in the

21  housing unit that he can check in and out.

22       On Friday afternoon the Education -- I requested that he

23  be given a free ribbon for use.  Typically inmates have to

24  purchase, and according to his account balance, he is capable

25  of that.  But given his concerns about legal access, we're

 1  giving him free ribbon for the typewriter and it was delivered

 2  to the housing unit on Friday and will be installed today or

 3  tomorrow morning, so he will be able to use it and it will have

 4  ink tomorrow.

 5          THE COURT:  Okay.  Thank you very much.

 6          MR. ISAACSON:  Your Honor, may I address --

 7          THE COURT:  Absolutely.  If you could use the

 8  microphone.  You have a nice booming voice, but it helps all of

 9  us and the court reporter if you could use the microphone.

10  Thank you.

11          MR. ISAACSON:  Your Honor, Lars Isaacson, Standby

12  Counsel.  I asked Mr. Williams if I might add a couple points

13  because I've been at the hearings before.

14          THE COURT:  Thank you.  Is that all right with you,

15  Mr. Williams?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  All right.

18          MR. ISAACSON:  There's a couple things.  We've

19  gone -- we've had, I think, four hearings with Judge Chang, and

20  then Judge Puglisi basically took it over.  The thing I think

21  Judge Puglisi was concerned most about is that this is

22  pretrial, not postconviction.  I think a lot of the authorities

23  and the concerns the Bureau of Prisons has is for

24  postconviction folks who are, you know, 50 years and they have

25  nothing better to do.

1       But he's preparing for a white collar trial with a lot of

2   documents that he's got to deal with, and it's a pretty

3   voluminous case.  Initially I think the concept was he couldn't

4   have the paper documents in his room.  I think that's changed.

5   But then we were allowed to bring in the CDs, the discovery

6   CDs.  I was able to provide them.  Okay.  He can look at those.

7   And then so we were able to look at those and that took a while

8   to get that taken care of.

9       And then -- so the suggestion was for him to be able to

10  type something.  I'll just bring a blank CD, and I offered to

11  do that.  And I think Judge Puglisi, if I can just paraphrase,

12  went, "That sounds okay to me 'cause they could just take it

13  back when they take back the other CDs."

14          THE COURT:  That assumes, though, that there's a

15  word processing capability on a computer that he's using.

16          MR. ISAACSON:  I assume so.  But that was something

17  he was saying.  Well, I think the way it was described is that

18  there's -- it has to be deactivated or activated.  If it's just

19  activated, push a button, hence the order, and the CD goes in

20  and he could take it home, and there's all these printers lying

21  around.  It just seemed like a very small accommodation to make

22  for him who's facing, again, not postconviction.  And this is a

23  significant white collar case he's choosing to do on

24  his -- to do -- represent himself.  So I think that's, if I

25  could just say, Judge Puglisi's biggest concern.

1        I have -- I tried to order on December 24th or 26th the

2   transcripts of the hearings.  I'm -- something went wrong.

3   I've reordered them.  As of the 22nd they have been -- I got a

4   14-day and it'll be ready next week.  So if this Court has

5   any -- would like to see what Judge Puglisi -- 'cause it was

6   quite -- most of the hearings were pretty long.  I think it

7   took us a while to get to this stage.  It may be helpful to the

8   Court, if that is necessary.

9        And I might say, Judge, looking at the Court's -- the

10   pleading of this morning seems to talk about the deference that

11   if a findings of fact need to be done, if this Court is

12   concerned about, you know, I would say at least look at the

13   transcripts, Judge.  Or if not, remand maybe under Judge

14   Puglisi for him to enter those findings of fact.  Obviously

15   he's not -- judge Puglisi's not the kind of person just to jump

16   to something and do something.  It took four hearings for us to

17   get to this stage.

18        So I might suggest, Judge, either if you're inclined to

19   rule against Mr. Williams to either wait and review the

20   transcripts yourself, which you should have next week, or to

21   ask Judge Puglisi to do findings of fact to clarify exactly why

22   he did what he did.

23            THE COURT:  All right.  So any objection to me

24   reviewing the transcripts?

25            MS. FENTON:  No, we have no objection.

1            THE COURT:  All right.  So I'm not going to rule

2      today then.  I'm going to look at the transcripts and take up

3      Mr. Isaacson's suggestion.

4           I'm not so sure that I would remand for findings of fact

5      and conclusions of law if I review the transcripts.  I think

6      that would be -- I don't know if it just is going to create

7      more make work in terms of the time of getting these resolved.

8      And he did do a written order that sets forth his thoughts and

9      his reasons, so I think that's sufficient.  I don't know if I

10     necessarily needed a findings of fact and conclusions of law,

11     but I'll think about that.  But I certainly think based on what

12     Mr. Isaacson says, I should take a look at the transcript.

13          Mr. Johnson.

14          MR. JOHNSON:  Your Honor, I want to clarify

15     something.  I was at all the hearings, and one of the things is

16     that Mr. Williams repeatedly indicates that both judges ordered

17     that his constitutional rights were being violated and certain

18     things should be done.  We were working cooperatively with the

19     defense on these issues before Judge Chang and things were

20     moving along.  There were some issues because of the voluminous

21     discovery.  Things were being contemplated such as having

22     Mr. Isaacson print out several thousand pages at a time, and

23     that would be billed to the court because he's CJA, and that

24     there would be ways for these costs to be borne by the court

25     and CJA counsel as opposed to Mr. Williams directly.  And we

1    fully support that because the defendant shouldn't be worried

2    about if he has enough money to pay for time on a terminal or

3    for copies or things like that.  We do want to see if perhaps

4    the court and Mr. Isaacson, through either the magistrate judge

5    or yourself, Your Honor, can work out some way where, you know,

6    that can be worked into the billings, because we fully agree

7    with that point.

8        But Mr. Williams misstates the fact that Judge Chang

9    issued an order.  He never did.  We were in the middle of

10   negotiations.  We were in the middle of working through these

11   issues.  Another motion was filed, Judge Puglisi got that other

12   motion, and everything got pulled over to Judge Puglisi and he

13   decided this issue.

14       So, you know, there's --

15            THE COURT:  Well, I only have one order on this.

16            MR. JOHNSON:  Right, exactly.  And that's all there

17   is is the one order.  So I just want to clarify that.  It's not

18   as if the government had an adverse decision, ignored what

19   Judge Chang might have done and only, you know, suddenly

20   appealed this second order.  And we are working cooperatively

21   with the defense to try to facilitate this.

22       Another thing that we would highlight that's going to come

23   up in the transcripts is that he -- Mr. Williams can have boxes

24   of printed discovery material in his cell, and the only

25   limitation is the cubic square footage.  So if he wants, you

1    know, hard copy of the discovery, he can store thousands of

2    pages at a time, access it, do his research and this sort of

3    thing.  He's not being deprived of that access, and the

4    transcripts will bear that out.

5         Many times Mr. Rodrigues on behalf of the BOP was

6    explaining the process and the rules within which, you know,

7    they work with defendants who are representing themselves.  So

8    we would also encourage the Court to look at, you know, the

9    transcripts and the representations that were made by Bureau of

10   Prisons' counsel and how he was working cooperatively

11   throughout that process.

12            THE COURT:  All right.  Mr. Williams, I'll give you

13   an opportunity --

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  -- to Mr. Johnson --

16            THE DEFENDANT:  Judge Chang didn't issue a written

17   order, but he in essence said the exact same thing that judge

18   Puglisi said:  The BOP has not been cooperative in any of these

19   proceedings, as Mr. Isaacson can testify.  This is the reason

20   why we're still wrestling with this from October.  It's January

21   right now.  And we went through with Judge Chang, we went

22   through this with Judge Puglisi, now you're the third judge

23   that we're going through this for something that's basic,

24   something that's very simple.

25         The government basically offered fabricated testimony with

1   regards to whether it's going to be a security risk or anything

2   like that which both judges heard both arguments --

3          THE COURT:  So I'll be able to see this in the

4   transcripts.

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Okay.

7          THE DEFENDANT:  You'll be able to see all that in

8   the transcripts, and that this is not something that was done

9   to cause the BOP any extra added expense 'cause I'm not trying

10  to make -- you know, print out 50,000 pages.  I don't need all

11  those pages.  I need to be able to just print out what I need

12  to to be able to attach, you know, my motions and be able to

13  save my draft and motions, 'cause right now I can't -- I don't

14  have anywhere to save anything.  So right now I'm handwriting,

15  and I've actually got calluses on my finger from writing so

16  much.

17         THE COURT:  Well, now you can use a typewriter.

18         THE DEFENDANT:  But the typewriter's not adequate

19  either.  I can't save what I type.  If I type, I can't save it.

20         THE COURT:  You can make a copy of it.

21         THE DEFENDANT:  But --

22         THE COURT:  Or you can send it to Mr. Isaacson.  He

23  can make as many copies as you want of it and he'll charge it

24  to the CJA bill.  It's just that you won't be able to print it.

25  That's your problem right now.  You won't be able to print it.

1   So the way you want to copy it you're being denied, but it

2   doesn't mean that you're not able to copy it.

3          THE DEFENDANT:  Well, it's just using the technology

4   of the day because like if -- I don't know if you're familiar

5   with the *Bounds v. Smith* Supreme Court ruling.  When that

6   ruling was made, there was no computers; there was only

7   typewriters at that time.  So that was the only technological

8   advance, you know, equipment --

9          THE COURT:  Understood, understood.  So that doesn't

10   mean you're only limited to typewriter, but they brought up

11   other arguments in terms of a danger to others and so forth

12   with regard to the computer.

13      The whole thing that we're exploring and what I'll look

14   for in the transcript is, you know, are you able to reasonably

15   represent yourself.  And your position is no, the government's

16   position is you are, and you have these alternatives to do what

17   you want and -- but not necessarily do what you prefer to do.

18   And so that's the issue before me and looking at it.

19      So I think looking at the transcripts is a good idea, so

20   I'm going to receive that from Mr. Isaacson and I'll review

21   that, and then I'll issue a decision on this motion right after

22   I review that.

23          THE DEFENDANT:  Okay.

24          THE COURT:  All right.  With regard to the two other

25   motions you filed, motion to dismiss, I'm long overdue to give

1  you a ruling on that.  So we will get that out right away, but

2  both are denied.

3           MR. JOHNSON:  Your Honor, maybe to expedite

4  matters. --

5           THE COURT:  Yeah.

6           MR. JOHNSON:  -- if we can respectfully request that

7  Mr. Isaacson email us which transcripts he's including so that

8  if there is another transcript sitting out there that we

9  believe is important for the Court to review, we can make sure

10  that we get that to the Court expedited also.

11           MR. ISAACSON:  Judge, I just ordered the four

12  hearing transcripts that we -- that were in this case.

13           THE COURT:  All of them, yeah.

14           MR. ISAACSON:  I don't know if there's anything

15  else.

16           MR. JOHNSON:  Yeah.  Thank you, Your Honor.

17           THE COURT:  Is that all right?

18           MR. JOHNSON:  Yes.

19           THE COURT:  If there's nothing else, I'll take the

20  matter under advisement subject to receiving the transcripts,

21  reviewing it.

22        And I remand Mr. Williams back to the custody of the U.S.

23  Marshals Services, and I wish all of you a very good day.

24  We're in recess.

25           MR. JOHNSON:  Thank you, Your Honor.

1          THE COURT:  Thank you.

2              (Proceedings concluded at 2:38 P.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   COURT REPORTER'S CERTIFICATE

 2

 3              I, DEBRA READ, Official Court Reporter, United

 4   States District Court, District of Hawaii, do hereby certify

 5   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 6   true, and correct transcript of the stenographically reported

 7   proceedings held in the above-entitled matter and that the

 8   transcript page format is in conformance with the regulations

 9   of the Judicial Conference of the United States.

10              DATED at Honolulu, Hawaii, March 22, 2017.

11

12

13                        /s/ Debra Read

14                   DEBRA READ, CSR CRR RMR RDR

15

16

17

18

19

20

21

22

23

24

25
```