1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF HAWAII

3
UNITED STATES OF AMERICA,        ) CR 17-00101 LEK
4                                )
              Plaintiff,         ) Honolulu, Hawaii
5                                ) March 2, 2018
     vs.                         )
6                                ) MOTIONS HEARING
ANTHONY T. WILLIAMS,             )
7                                )
              Defendant.         )
8    _____)

9
                    TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE KENNETH J. MANSFIELD
                  UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Government:       ROBERT G. JOHNSON, AUSA
13                             Office of the United States Attorney
                               PJKK Federal Building
14                             300 Ala Moana Boulevard, Suite 6100
                               Honolulu, Hawaii 96850
15
     For the Defendant:        ANTHONY T. WILLIAMS, *Pro Se*
16
     Standby Counsel:          LARS ROBERT ISAACSON, ESQ.
17                             547 Halekauwila Street, Suite 102
                               Honolulu, Hawaii 96813
18

19

20

21
     Official Court Reporter: Debra Read, CSR CRR RMR RDR
22                             United States District Court
                               300 Ala Moana Boulevard
23                             Honolulu, Hawaii 96850

24
     Proceedings recorded by electronic sound recording; transcript
25   produced with computer-aided transcription (CAT).


                    UNITED STATES DISTRICT COURT

1    FRIDAY, MARCH 2, 2018                          10:02 A.M.

2          THE COURTROOM MANAGER:   Criminal 17-00101 LEK,

3    United States of America versus Defendant(1) Anthony T.

4    Williams.

5          This case has been called for a hearing on a motion for

6    order to show cause and request for expedited hearing, and also

7    for a hearing on a motion for funds to purchase legal supplies

8    at government's expense.

9          Counsel and parties, please make your appearances for the

10   record.  Please speak into a microphone.

11          MR. JOHNSON:  Good morning, Your Honor.

12           Robert Johnson, Assistant United States Attorney, on

13   behalf of the government.

14          THE COURT:  Good morning, sir.

15          THE DEFENDANT:  Good morning.

16          Private Attorney General Anthony Williams.

17          THE COURT:  Good morning, Mr. Williams.

18          MR. ISAACSON:  Your Honor, Lars Isaacson as Standby

19   Counsel.

20          THE COURT:  Okay.  Good morning, Mr. Isaacson.

21          All right.  Mr. Williams, these are your two motions.  I

22   have two questions that I'd like both you and Mr. Johnson to

23   address at some point in your remarks.

24          One is is there overlap?  It appears to me there's at

25   least some overlap between the issues raised in your two

1   motions and the issues pending before Judge Kobayashi right now

2   on her motion for injunctive relief and the appeal for the

3   motion to compel.

4        And then the second issue I have questions about is

5   exhaustion.  I did not see exhaustion addressed in your papers.

6   The government did comment on it, in particular I think

7   referred to prior arguments it had made.

8        So those are the two things I'm most interested in.  But

9   you can make your record, Mr. Williams, and you may proceed.

10           THE DEFENDANT:  Okay.  Yes, sir.  The reason why I

11  did this, this hearing, is because the FDC has further

12  retaliated against me by placing me in solitary confinement.

13  Now I do not have the access that I had, that I had to go to

14  court to get, so now I'm in solitary confinement, don't have

15  the access to the computer, the printer, the things that I need

16  to be prepared for trial.

17       I brought a copy of the disciplinaries that they gave me,

18  and I would like to read them to you so you can kind of

19  understand where my position is and why they wrote -- this

20  disciplinary was given to me on February 20th.  It says -- it's

21  from the Associate Warden Card.  It says, "I received an Inmate

22  Request to Staff from inmate Williams, Anthony, Register

23  No. 05963-122 dated 2-18-2018.  In it he asserts running a

24  business, a prohibited act.  Specifically he wrote, 'I can't

25  use a video visit because it is recorded and my visitor is a

1    client of mine and I have to discuss sensitive legal matters

2    that are not subject to monitoring and have proprietary

3    information that is not for public information regarding my

4    company's process.'"

5         Now, I was given this disciplinary and the federal law

6    on -- states in 28 CFR 540.45 Business visitor, and it says,

7    "Except for pretrial inmates, an inmate is not permitted to

8    engage actively in a business or profession."

9         I am a pretrial inmate, so according to the federal law, I

10   still can be able to conduct my business, but I was still given

11   a disciplinary for following the federal law.  And basically my

12   rights have been violated.  My access have been restricted

13   basically for following the law.

14        That's not all.  I was given another disciplinary for

15   threatening bodily harm, which I did not threaten anyone with

16   bodily harm, and this is the disciplinary that I was given for

17   that.  It says, "At 7:15 A.M., 11-20-2017, I read a message

18   from inmate Williams, Anthony, Register No. 05963-122, which

19   states, 'There was nothing unprofessional, illegal or

20   physically threatening about my statement.  If you don't know

21   what the consequences of your actions of opening my legal mail

22   then maybe you should seek the advice of an attorney so you

23   will find out that tampering with mail is a federal offense

24   which can carry 5 years of federal prison time.  Like I said

25   before and I will reiterate it again because I received another

1    letter from the district court which was opened by your office,

2    there will be consequences for these violations.  I strongly

3    suggest you seek legal advice so you will understand exactly

4    what you or whoever in your office continue to do that

5    potentially will be facing.  That's as professional as I can

6    get.'  This was written in response to my informing inmate

7    Williams his prior threatening communication which states, in

8    part, 'there will be consequences for this violation,' was both

9    unprofessional and perceived by me to be threatening.  He chose

10   to threaten me a second time again with 'consequences' this

11   time escalating his threats to include legal actions against

12   me.  His correspondence was insolent in both substance and tone

13   as well."

14        And I was given additional solitary confinement time

15   stating that this email that I bodily threatened someone.  And

16   as you can see, I didn't threaten anyone.  I'm saying that

17   there will be legal consequences for people tacking on my mail

18   because I've had a problem with my mail being mailed out.

19        I brought this to court today.  This was a mail that I

20   sent out the beginning of this week.  I put four stamps on it.

21   These stamps I had to take off one of my mails that I was going

22   to prior, you know, mail, but I didn't have to use it, so I

23   took it off that and put it on here.  But the little sticky

24   portion was kind of, you know, messed up, so I had to put like

25   some toothpaste to try to stamp it.

1        But then they're saying these stamps has already been

2    used, which they weren't.  You can look at the stamps; they

3    haven't been used.  But they wouldn't mail out my mail and sent

4    it back to me.  And this is the problem that I've had now.  I

5    can't mail out mail to my standby attorney.  I can't mail out

6    mail to the Court because it keeps getting sent back to me.

7        So they've done everything to basically restrict my way I

8    can, you know, defend myself or be able to be prepared for

9    trial.

10        Now the government is saying that I didn't exhaust my

11    administrative remedies.  Here are several of the inmate

12    requests to staff which is what I'm supposed to do and what I'm

13    supposed to submit when I have a grievance.

14        This first one was for my deprivation of rights.

15    It's -- and I was talking about, "According to 28 CFR 541, says

16    we will receive visiting privileges according to part 540

17    subpart D, and nowhere does it state that being in the SHU we

18    can't continue to have our regular contact visits.  And I can't

19    use a video visit because it's recorded and my visitor is a

20    client of mine and I have discussed sensitive legal matters

21    that are not subject to monitoring and have proprietary

22    information that is not for public information regarding my

23    company process.

24        I expect to be afforded the same visitation as when I was

25    in general population.  I also need to be able to make daily

1   unmonitored calls to my standby attorney because my trial is

2   less than three months now.  And then I put a note, "Why does

3   the computer not save request to staff on the SHU computer and

4   why is there only two departments you can contact, which are

5   SIS and DOJ prison rape?"  That's one of my requests.

6       The second request I said, "I am requesting a BP-8, BP-9,

7   and BP-10 form as instructed by the lieutenant to make my

8   complaint about the mailroom refusing to mail my letters with

9   the proper postage attached to them."

10      Another one was, "And I have a court order which stated

11  that I'm supposed to have access to my discovery DVD seven days

12  a week from 8 A.M. to 8:45 P.M.  Being placed in a SHU does not

13  override my court order directing the FDC to provide me access

14  to computer during those times.  Solitary confinement does not

15  bother me and I have no problem as long as I have access to a

16  computer, my discovery to work on my case daily from 8 A.M. to

17  8:45 P.M.  If I'm not given access then I will have my standby

18  set a hearing with the court to issue an order to remove me

19  from the SHU back to the unit 4B which was provided for me to

20  have an office computer and a printer by court order to

21  properly be prepared for trial.  I did not threaten anyone with

22  any bodily harm to be given a 203 disciplinary but gave a

23  warning for whoever was breaking the law could be facing jail

24  or lose -- or the loss of their job."

25      I sent another administrative request, "The administrative

1    detention under federal law, Title 28 CFR 551.22 states it's
2    non-punitive, however, I have been subjected to punishment
3    because I have been deprived the access other inmates are
4    entitled to.  I can't  print any legal research because there's
5    no printer provided.  I have been unable to make phone calls
6    because your system says I have reached my limit in which I
7    haven't made any calls and according to 28 CFR 541.31 subpart
8    B(2)(j) states I will receive telephone privileges according to
9    to part 540, subpart I, which has no restrictions or different
10   access than what's provided to inmates in general population.
11   Nowhere in the federal law does it state that if you are in the
12   SHU you are entitled to one phone call every 30 days.  So I
13   need daily access to make phone calls because you all know that
14   I'm representing my own case and to deprive me daily access
15   would deprive me of a guaranteed right."
16       I did another request, another complaint, "According to 28
17   CFR 541.31(h)(1), we are allowed a reasonable amount of
18   personal property and access to commissary which I have been
19   denied thus far.  I need my personal hygiene items, such as my
20   toothbrush, shaving cream and razor to properly groom myself
21   and stay looking presentable as a minister of Yahweh.  I also
22   haven't been given the administrative remedy forms to contest
23   my illegal confinement in the SHU because I did not threaten
24   anyone with bodily harm and the email speaks for itself
25   regarding the actions I would have to take in order to obtain

1   relief from this facility, not mailing my mail and tampering

2   with my legal mail.  This detention is discriminatory and

3   retaliatory in nature because every officer that read the email

4   state they can't see where anything could have been interpreted

5   as threatening bodily harm to anyone."

6       So I have, you know, used the administrative process.

7           THE COURT:  And where does that process stand?

8           THE DEFENDANT:  They -- this -- I mean, she -- this

9   is what she said on her response is, "You have been issued

10  correctly and have access to the property you are authorized.

11  Your Unit Team can provide you with Administrative Remedy

12  Forms.  They conduct rounds each day.  If you are dissatisfied

13  with the property issued to you, you may use Administrative

14  Remedy Process and are encouraged to do so."

15      But I still haven't gotten the forms.  I've been

16  requesting the forms.  I still don't have the forms.

17          THE COURT:  Okay.  So the process hasn't concluded?

18          THE DEFENDANT:  They've never given it -- given it

19  to me.

20          THE COURT:  Yeah.

21          THE DEFENDANT:  Okay.  So, you know, I just feel

22  like I just did the initial motion for the Court to file an

23  injunction because I knew this would happen.  So I sent a

24  letter to Judge Puglisi basically, you know, stating those

25  concerns, and I'll just kind of briefly just read some of the

UNITED STATES DISTRICT COURT

1    things that I had wrote to him in the letter.

2         I said, "Dear Judge Puglisi, I have been placed in

3    solitary confinement as retaliation for taking the FDC to

4    court.  I have previously expressed my concerns that this would

5    happen and it has happened just as I thought it would.  My

6    confinement further hinders me from doing research and prepare

7    for trial.  Now I am only given 3 to 4 hours of law library a

8    day and the room that they take me to does not have a printer,

9    so now I can't even print out research and case law from

10   LexisNexis.  The typewriter does not have any paper nor

11   instructions on how to use it.  My mail has been continued to

12   be sent back to me stating not enough postage when I place the

13   same amount postage as before and it was never a problem.  But

14   now it become a problem and I'm told now I need more postage."

15        And so now when I would -- you know, before I went to

16   court with the FDC, I never had a problem with mailing out

17   anything, putting the postage, everything got sent to where

18   it -- but now after the court order, now the same postage I'm

19   putting on the same, you know, envelopes, now it's not enough

20   postage and they're sending it back without it going to the

21   post office and the post office is the one supposed to be the

22   one that notify you if there's not enough postage.  But the

23   mailroom is doing that and sending it back to me and not

24   mailing my legal mail or even my personal mail.  They're not

25   doing it.  I keep a log of all of it in my notebook.

1          And so the reason why I wanted this hearing is because I

2    been placed in the SHU which further hinders me from, you know,

3    being able to prepare for trial.  Now, the hearing that we got

4    for -- with Judge Kobayashi is for me to be to have the printer

5    and stuff.

6                THE COURT:  Right.

7                THE DEFENDANT:  That's still on.  But this hearing

8    is basically for they've placed me in the SHU --

9                THE COURT:  Sure.

10               THE DEFENDANT:  -- since that time, you know.

11   'Cause had they not placed me in the SHU, we wouldn't

12   be -- have this hearing right now.

13               THE COURT:  Okay.

14               MR. ISAACSON:  Your Honor, may I be heard a little

15   bit on that?

16               THE COURT:  Absolutely, sir.

17               MR. ISAACSON:  So, Judge -- is that okay,

18   Mr. Williams?

19               THE DEFENDANT:  Yes, sir.

20               MR. ISAACSON:  The only thing I might add, again,

21   what I had asked about the order to show cause, I think -- the

22   Court just asked is it related to the matters before

23   Judge Kobayashi.  I think the answer is yes.

24          And the distinction I think is going on here, if I may, is

25   that this is not a 2255 postconviction release situation where

1   he's at, he's already been convicted, and now we're down the

2   road somewhere --

3           THE COURT:  Right.

4           MR. ISAACSON:  -- and, you know, trying to -- or do

5   get resources at some FDC or someplace on the mainland.

6       This is he's getting ready for trial.  This is a white

7   collar case with a ton of paper and we've been -- you know, I

8   know the Bureau of Prisons has been trying.  They've made some

9   accommodations which, great, but some of the things -- you know

10  that Judge Puglisi did order the one -- you know, we

11  were -- first off, we were not able to get -- there's a huge

12  amount of paper, right?  And then so we had the CD, and then

13  the answer was, "Well, how about he can save his stuff on a CD

14  so he can help process the stuff?"  Because he's obviously very

15  active.

16      And they said, "No, you cannot."

17      And then Judge Puglisi said -- I said We can just keep it

18  with the CD, you know, for safety reason.

19      Then the answer was that they -- so that's what

20  Judge Puglisi, I believe, ordered and that was objected as

21  before Judge Kobayashi.

22          THE COURT:  Right.

23          MR. ISAACSON:  So this is kind of -- it is -- it's

24  not just -- I don't think it would exhaust the administrative

25  remedies as a predicate for some kind of Civil Rights Act --

1           THE COURT:  Sure.  And I recognize this is a

2    different setting.  Some of the policies still apply.  I'm not

3    technically well equipped to tell the Bureau of Prisons how to

4    do its job.  So that is really my concern.

5           MR. ISAACSON:  Well, if I can, Judge Puglisi was

6    going through this, and what he kept getting into, with all due

7    respect, is yes, it's important to do things, but you can't do

8    them, you know.

9       But technology, can we just put a blank -- whole kinds of

10   blanks that he can put into the machine so he could have it and

11   have access to it?

12      No, no, no, no, no, no, no.

13      And so we come up -- that's why Judge Puglisi went the

14   extraordinary step with that order.

15          THE COURT:  Right.

16          MR. ISAACSON:   Now we have a situation where in

17   terms of him being in the SHU for these things -- you know,

18   obviously I understand the hesitance this Court would have in

19   terms of getting involved in BOP, but I will say to you that

20   this is -- the situation that we've had, the history that we've

21   had, the fact that he's been put in the SHU, I don't think -- I

22   don't think any of the exhibits have been presented in

23   opposition saying, "Oh, you -- oh, you were violated.  You

24   actually have been violated."

25          But this really -- you know, the context of the situation

1    here, this is going to extend, I believe, his in the SHU to the

2    trial date or past -- up to it or nearby.  This is significant

3    stuff 'cause it does affect -- and maybe Mr. Williams can -- I

4    don't want to speak for him.  He's indicated to me he has less

5    time with his discovery, less time to do this, even more

6    difficult than before.  And it does affect the trial ability.

7    And without a good reason, I think we've smacked into some

8    issues.

9            THE COURT:  Right.  And so ultimately you think I

10   should tell the Bureau of Prisons where to house him?  You want

11   an order from me saying, "Take him out of SHU right now"?

12   Where's my -- how can I do that?

13           MR. ISAACSON:  Well, one less -- to answer your

14   question is I think they should present evidence to justify in

15   this situation.  And without some clear -- you know, somebody

16   stab -- you know, I understand there's a fight, there's a

17   ruckus --

18           THE COURT:  Right.

19           MR. ISAACSON:  -- "I'm going to kill you," knife,

20   things like that.  I get it.  But in the context of this, I

21   think getting factual information or requiring the government

22   to at least show it would not be unreasonable.

23           THE COURT:  I don't know that I should become their

24   appellate court for every disciplinary action that they take.

25   That's -- I'm looking for my authority to do that --

1          MR. ISAACSON:  Well, we --

2          THE COURT:  -- here in this proceeding.

3     I understand the concern that he's pretrial and he's

4     trying to get ready for trial, and if he's unable to get ready

5     for trial, that's a problem.  So I respect that.

6          But I have trouble with me telling FDC whether or not he

7     gets a stapler, which is one of these motions.  Like who am I

8     to do that?

9          MR. ISAACSON:  Let me -- if I could just backup.

10         THE COURT:  Go ahead.

11         MR. ISAACSON:  The only other thing, so I -- my

12    suggestion would be -- Mr. Williams, just want to make sure you

13    agree with this -- but I would suggest that because of the

14    predicate of this case which is Judge Puglisi's order, that the

15    government should have to respond, at least give some

16    explanation as to why they're doing what they're doing.

17         The second thing, Judge, is the mail.  I -- he has

18    got -- he showed me his envelope and the idea of messing with

19    his mail.  My suggestion is I think if the post office wanted

20    to reject it, let the post office reject it.  I think once he

21    puts it in the mail slot at FDC, it should be -- unless, you

22    know, something, obviously, horrific.

23         THE COURT:  Right.

24         MR. ISAACSON:  But if he puts something in the mail,

25    the FDC has no business messing with postage.  I mean,

1    Mr. Williams, if I may, he has mailed me things -- I should

2    have brought one today -- he put a one cent stamp on it and the

3    postal service delivered it.  And he has a belief, you know,

4    that he could do this.  The post office wants to deliver it,

5    great.  I just don't think FDC should be getting involved

6    'cause now we're getting into much more constitutional stronger

7    grounds.  And he has a right to put something in the mailbox,

8    as long as it's not dangerous or threatening, and if the post

9    office rejects it, great.

10       But when they do this, this goes again to Why are you

11   doing this?  Maybe it's because of who he is and the way they

12   perceive him.  And I think maybe an explanation should be again

13   requested because it affects his trial preparation.  I would

14   just suggest the government should be able to be required to

15   respond to these allegations.

16             THE COURT:  All right.  Thank you.

17             MR. ISAACSON:  Is that okay, Mr. Williams, what I

18   just said?

19             THE DEFENDANT:  Yeah.  But I would also like to say

20   this.  I feel like you do have the authority because if you

21   look at the -- if you read, you know, what I read on as far as

22   the disciplinaries, they've disciplined me for something that I

23   have a right to do; that's under federal law.

24       And my problem with this particular FDC -- I've never had

25   a problem with the other FDCs; it's this particular FDC -- they

1   feel -- and this is what's stated to me by Unit Manager

2   Williams -- that they don't have to follow federal law, that

3   whatever their policy is, that's what it is.  And I know that's

4   wrong because the FDC is bound by federal law.  That's where

5   the FDC gets the authority and they have to follow federal law.

6        But he's saying, Even if federal law says you have a right

7   to this, we can say, No, you don't, and that's not true.  And

8   so that's the reason why I brought the incident reports that

9   they wrote me up and I brought the actual printout of the law

10  from the LexisNexis proving that I have a right to do that, but

11  they still write me up disciplinaries for things I have a right

12  to do or write me up for complaining about them not, you know,

13  giving me my mail or opening up my legal mail outside of my

14  presence.

15       And so this goes beyond the injunction that I had already

16  put in.  Now they've locked me up to where I can't even have

17  access to the things that I already had.  Now they restricted

18  me now so I can't do -- I can't even print out now.  So as long

19  as I'm in the SHU, I won't be able to print anything.

20       I can't even send emails to the warden, to associate

21  warden, 'cause they got that disabled.  So I can't even send

22  them.  Only thing I can do is, you know, send handwritten ones

23  like this.  But I don't have a record like on the email, 'cause

24  I like using that because it usually have a record of it.  But

25  now I can't even use that.

1      And so they doing that to me is all the retaliation for me

2    bringing into court and getting that court order from

3    Judge Puglisi.  Because when he put this whole scenario again

4    with, you know, Judge Puglisi and he heard their argument,

5    hearing my argument, and he basically stated that they had

6    basically violated by constitutional right to restrict me like

7    that, and now for them to do this to me is clearly retaliation

8    and it's on the record.  It's not just I'm just stating this; I

9    mean, this is in writing.

10            THE COURT:  Okay.  All right.  Thank you, sir.

11    Anything further?

12            THE DEFENDANT:  No, sir.

13            THE COURT:  Mr. Johnson.

14            MR. JOHNSON:  Yes, Your Honor.  Your Honor, I think

15    the Court's question is are these related to the matters that

16    sit before Judge Kobayashi right now.  Before Judge Kobayashi

17    are a couple things.

18        Number one, there was a motion to compel filed by

19    Mr. Williams.  We ended up in front of Judge Chang originally

20    on some of these issues; Judge Puglisi then grabbed on to it.

21    Judge Puglisi rendered a ruling.  That ruling was appealed.  We

22    filed a memo in support of our motion to reconsider.  It went

23    up to Judge Kobayashi.  We had a hearing.  Judge Kobayashi

24    indicated she wanted to review the transcripts of the prior

25    proceedings before she made a ruling.

1        As a matter of fact, Mr. Isaacson made sure that she was

2  going to get all those transcripts and requested, "Please

3  review that before you rule."  We are waiting a ruling on that.

4        That motion to compel included some of the same issues

5  that are being raised here about access to legal research and

6  printers and contact with counsel and mail and email and those

7  types of things.  And so she has that under advisement.

8        In addition, the motion for injunctive relief which was

9  filed by Mr. Williams after the motion to compel was responded

10  to by the United States with numerous exhibits and -- uhm, let

11  me just check the date, Your Honor.  I apologize.  That was

12  Document 98 filed on February 1st.

13        THE COURT:  I have that.

14        MR. JOHNSON:  That matter is still pending before

15  Judge Kobayashi.  And I believe that a lot of the issues raised

16  again here, and now the issue of retaliation which is clearly

17  being raised in court this morning and within his motion for

18  order to show cause, they're all inextricably intertwined.

19        And the problem is Mr. Williams will raise in front of any

20  judge in form of -- it's almost like forum shopping.  If you

21  seem to pay attention to what he's saying, he'll try to get you

22  to render an order.

23        Now, the problem is -- this is with all due respect, Your

24  Honor -- injunctive relief is something that should be decided

25  by the district judge.

1           THE COURT:  Agreed.

2           MR. JOHNSON:  And based upon the things that the

3    district judge can delegate to the magistrates, the decision

4    itself has to sit with the district judge.  While this Court

5    might have the ability, if so ordered by the district judge, to

6    do a report and recommendation and have a full-blown

7    evidentiary hearing, it would seem to be almost redundant or

8    cumulative.  We have done some of that.  We've presented

9    information to the Court.  We're going to have a mini trial

10   down here only to repeat it before the district judge, and some

11   of those issues have been briefed and raised.

12          The -- you know, Mr. Williams is articulate and

13   intelligent and he's a game player.  I got to call him on this.

14   Somehow as attachment No. 5, Document 125, filed on 2-22-18,

15   connected apparently -- I don't know if it got connected to the

16   right motion -- but it's connected to Document 120 which is the

17   ex parte application and motion for funds to purchase legal

18   materials, it's from the Common Law Office of America.  It's an

19   envelope and it says, "First Class U.S. Mail, Statutory

20   Non-Domestic Fully Pre-Paid," and it's like several sections,

21   none of which are applicable to his Common Law Corporation of

22   America or his claimed status of being a private attorney

23   general.  And it says, "No Postage Necessary If Mailed In The

24   United States."

25          He has a history of not paying postage and of messing with

1    the system.  This is an illegal act.  He put a penny on -- a

2    penny stamp on mail that he sent to his counsel.  Now, FDC is

3    looking at this and they know that if the postal service pays

4    attention, it's insufficient postage.  And his position is if

5    they want to mail it, it's their fault; I don't have to pay

6    them the 48 or 47 other cents, whatever it might be at this

7    point.  And he pushes the envelope and the line every single

8    time.

9         He's done other things.  When he goes back to FDC after

10   these hearings, he tells people at FDC in management positions

11   and in supervisory positions on the different floors or that he

12   has contact with that the Court has ordered certain things.  He

13   went back and told people after hearing with Judge Chang that

14   the Court ordered that this be granted him.  And it's not true.

15   He stands here today and he says, you know --

16              THE DEFENDANT:  I have to interrupt you.  That's

17   not --

18              THE COURT:  Mr. Williams, don't interrupt.

19              MR. JOHNSON:  He stands here today and he makes

20   claims.  He still claims to be a private attorney general.  The

21   last we heard from him in any public hearing, he denies that

22   he's been convicted of offenses in Florida, and I've repeatedly

23   briefed and cited convictions in Broward County for practicing

24   law without a license and for grand theft involving a property,

25   which he received 15 years' imprisonment for.  And -- and it's

1    just his failure to accept the facts that everybody else seems

2    to be able to prove and set forth.

3         In our response filed on February 1st -- and this is why I

4    referenced it in the most recent response, Your Honor, because

5    we indicated he has an an abundant opportunity for contact with

6    counsel on page 4; on page 5, Defendant Williams received full

7    legal mail protections; Defendant's electronic messages are

8    received and transmitted without undue delay, page 6; the

9    Defendant Williams has not improperly been charged for legal

10   access tools.  His classification as a sovereign, we went to

11   great length and cited videos where he himself is stating

12   things and creating the factual basis upon which that he's been

13   classified as a sovereign.

14        He's also filed lawsuits against judges and made comments

15   to probation officers that are threatening.  The defendant has

16   been properly subject to BOP discipline, and that starts at

17   page 10, and that the defendant failed to seek full review of

18   his disciplinary action, 11, and, you know, it's the same

19   material.  Again, it's -- it's the same song, different tune,

20   different register, whatever it is.  He changes the words, but

21   he's playing the same music again and again and again.

22        This should sit in front of Judge Kobayashi for a

23   determination of his motion for injunctive relief, his

24   reconsideration of his motion to compel, and his most recent

25   claim which, again, as I indicated our response to the -- to

1  the motion for injunctive relief, in his motion for injunctive

2  relief and retaliation by FDC, he says at No. 4, "Writing false

3  write ups and disciplinaries to deprive the undersigned of

4  rights and privileges, to harass, intimidate and obstruct

5  undersigned's ability to properly prepare for trial."  That

6  sounds remarkably similar to what he's here in front of you

7  talking about:

8      "Opening up legal mail from the courts or other federal

9  agencies outside the presence of the undersigned" -- again, messing

10  with his mail,

11      "Holding incoming, outgoing emails for 3 to 7 days,"

12      "Denying the undersigned the ability to call his standby

13  counsel every day,"

14      "Charging the undersigned for printing legal documents

15  when he has already been declared indigent,"

16      "Unlawfully classifying him as a sovereign," as well as,

17      "Retaliating against the undersigned for exercising his

18  constitutional rights" -- which we just heard,

19      "Denying the undersigned rights and privileges outlined in

20  federal law" -- we just heard,

21      "Denying the undersigned federal and constitutional rights

22  by using FDC policy to abrogate them" -- same issue.

23      Your Honor, every time he doesn't like what's going on,

24  takes pen to paper, we end up back here in court on the same

25  issues.  This should all be consolidated and placed before

1    Judge Kobayashi because it is in the form of injunctive relief.

2    He's seeking an action by the Court against the Federal

3    Detention Center for enforcement of their policies when the

4    case law clearly states that the FDC should be given great

5    latitude and deference in maintaining good order and discipline

6    and procedure and policy within the facility.

7         So that's the government's position, not that he shouldn't

8    have his day in court, it's just that it shouldn't be before

9    you, Your Honor.

10             THE COURT:  Okay.  Thank you.

11        Go ahead, Mr. Williams.

12             THE DEFENDANT:  Okay.  To respond to what he just

13   said about the mail, he said that putting that postage on there

14   was illegal.  Now, when I was in Tennessee, I went to the Post

15   Master of the post office in Nashville, Tennessee, with that

16   law that's printed on there, and the Post Master agreed with me

17   that I was right, that I could mail out all that mail, no

18   postage necessary in the United States, and I have been doing

19   so since 2009 with no problem because I got the Post Master to

20   look up that law and see that I had the right to be able to

21   send that mail out, no postage necessary.  Or for those who

22   don't even know the law, they actually can send out all the

23   regular mail that people are paying 49 cents or 50 cents, that

24   they can actually send it out for 3 cents.  I have the law on

25   that.

1       So there was no illegal activity.  I been sending this

2    from the FDC ever since I been locked up in the FDC, ever since

3    I been locked up in any facility anywhere.  Never had a problem

4    with it.  It just only became a problem after I got a court

5    order from the judge to force them to basically, you know,

6    recognize my constitutional rights be able to have access to

7    the things I need to be able to prepare for trial.

8       Now, he said in his -- the government response that they

9    haven't been unduly delaying my emails.  I printed out one of

10   the emails that was spent by my mom on January 11th.  I didn't

11   get it till January 17th.  I was actually able to get a inmate

12   to give me a copy of his emails where his emails are received

13   within the same -- same couple of hours every day, and all the

14   other emails from all the other inmates are being sent and

15   received within hours.  But I'm the only one whose emails are

16   continually to be held three to seven days.

17      Now, the reason why I asked for this hearing is not

18   because of those issues that are going to be dealt with with

19   Judge Kobayashi, 'cause we going have to deal with those.  This

20   was specifically for me being placed in the SHU for -- placed

21   in the SHU for things that I have a lawful right to do prior to

22   going to that hearing.  So this hearing is not for the

23   injunctive relief, 'cause we going to that, but this is for

24   them violating me and basically putting me in the SHU where

25   there's no warrant for it.

1       I didn't threaten anybody.  You can ask any of my housing

2   deputies; all my housing deputies will vouch for me.  I can

3   have them subpoenaed to court where they can testify about my

4   disposition in the unit and with other officers and staff.

5       All of these incident reports are written by the AW who

6   don't even -- who's never even saw me, never even had a contact

7   with me, never even talked to me personally, but used the

8   disciplinary process to make it look like I'm bodily

9   threatening someone.  And I read the thing so you can see I

10  didn't threaten anyone.  I basically told him, If you don't

11  follow the law, then someone can either lose their job or they

12  can go to jail 'cause it's a federal offense to tamper with

13  someone's mail.  And then I'm being placed in the SHU for that

14  and for basically still conducting my business as a pretrial

15  inmate.

16      And I don't think the FDC should be able to just throw me

17  in the SHU for me conducting and doing things and acting where

18  I constitutionally have a right to act and to conduct myself,

19  to conduct my business, and to do what I need to do as far as

20  being prepared for trial.  But they're doing that to restrict

21  me because they know by me being in the SHU, I don't have the

22  same access.

23      I can't be in the law library from 8 to 8:45 -- only got

24  three hours.  As he said, there's over 50,000 pages of

25  discovery, so three hours is not good enough.  That's the whole

1   reason we waned to be able to get that access where I can't

2   have access because before then they wouldn't give me that

3   access.  I just had access like all the other inmates.  But I

4   say my situation's different because I represent myself.  So I

5   have to have more access because I don't have someone writing

6   my motions, I don't have someone researching for me.  I'm doing

7   that for myself.

8       And so for the government to sit here to say that I'm

9   manipulating the system or anything like that, everything that

10  I've done I got approval from the proper authorities to do what

11  I'm doing or I got the federal law to back me up.

12      And so my question to you is this:  If the BOP -- does the

13  BOP have the authority to override federal law?  If it's stated

14  in the federal law, like, what they're supposed to do for us,

15  can they say, "Well, no, we're not going to obey the law; we're

16  just going to implement what we want to do, you know, and just

17  abrogate the federal law"?  That's my question to the Court.

18  Are they allowed to do that?  And if they are, what law -- what

19  Supreme Court ruling gives them the authority to override the

20  federal law?

21          THE COURT:  Okay.  Anything further?

22      All right.  Thank you.  The court will take this under

23  submission.  I'll issue a written order.

24          MR. ISAACSON:  May I ask Mr. Williams?

25          THE COURT:  Yeah.

 1           MR. ISAACSON:  One moment, Your Honor.  I'm sorry.

 2           THE COURT:  Go ahead.

 3           MR. ISAACSON:  Your Honor, if I may ask leave of the

 4  Court if I can maybe -- because of the copying situation, if I

 5  can make some exhibits and I'll file them separately for the

 6  Court's consideration, that we've reviewed them --

 7           THE COURT:  Of course, yeah.  I'll receive those.

 8  You can go ahead take them back to your office to make the

 9  necessary copy and file them.

10           MR. JOHNSON:  We have no objection to them.

11           MR. ISAACSON:  Okay.  So these are the ones?

12           THE DEFENDANT:  Yeah.

13           THE COURT:  You guys done?  Or done with me at

14  least?

15        All right.  Thank you, everybody.  We stand in recess.

16           (Proceedings concluded at 10:38 A.M.)

17

18

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATE

2

3              I, DEBRA READ, court approved transcriber, United

4    States District Court, District of Hawaii, do hereby certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the

7    above-entitled matter and that the transcript page format is in

8    conformance with the regulations of the Judicial Conference of

9    the United States.

10
             DATED at Honolulu, Hawaii, March 22, 2018.
11

12
                     */s/ Debra Read*
13
             DEBRA READ, CSR CRR RMR RDR
14

15

16

17

18

19

20

21

22

23

24

25

                      **UNITED STATES DISTRICT COURT**