```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3
    UNITED STATES OF AMERICA,      ) CR 17-00101 LEK
 4                                 )
               Plaintiff,          ) Honolulu, Hawaii
 5                                 ) September 29, 2017
        vs.                        )
 6                                 ) ARRAIGNMENT AND PLEA TO THE
    (01)ANTHONY T. WILLIAMS,       ) INDICTMENT AS TO DEFENDANT
 7  (02)ANABEL CABEBE,             ) (1)ANTHONY T. WILLIAMS;
                                   ) FINAL PRETRIAL CONFERENCE AS
 8             Defendant.          ) TO DEFENDANT (2)ANABEL
    _____) CABEBE;  STATUS CONFERENCE
 9                                 ) RE: TRIAL DATE AND  DEADLINES;
                                     AND MOTION TO DETAIN AS TO
10                                   DEFENDANT (1)ANTHONY T.
                                     WILLIAMS
11

12                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE KENNETH J. MANSFIELD
13                UNITED STATES MAGISTRATE JUDGE

14  APPEARANCES:

15  For the Government:        ROBERT G. JOHNSON, AUSA
                               Office of the United States Attorney
16                             PJKK Federal Building
                               300 Ala Moana Boulevard, Suite 6100
17                             Honolulu, Hawaii 96850

18  Also Present:             MEGAN CRAWLEY, SPECIAL AGENT

19  For the Defendant          ANTHONY T. WILLIAMS, Pro Se
    (01)Anthony T. Williams:
20
    For the Defendant          LARS ROBERT ISAACSON, ESQ.
21  (01)Anthony T. Williams    547 Halekauwila Street, Suite 102
    Standby Counsel:           Honolulu, Hawaii 96813
22
    For the Defendant          MICHAEL JAY GREEN, ESQ.
23  (02)Anabel Cabebe:         841 Bishop Street, Suite 2201
                               Honolulu, Hawaii 96813
24

25
```

Exhibit 2

```
 1    APPEARANCES CONTINUED:

 2
      Official Court Reporter:  Debra Read, CSR CRR RMR RDR
 3                              United States District Court
                                300 Ala Moana Boulevard
 4                              Honolulu, Hawaii 96850

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
      Proceedings recorded by electronic sound recording; transcript
25    produced with computer-aided transcription (CAT).
```

UNITED STATES DISTRICT COURT

1   FRIDAY, SEPTEMBER 29, 2017                      2:06 P.M.

2            THE COURTROOM MANAGER:  Criminal 17-101 LEK, United

3   States of America versus Defendant(1) Anthony T. Williams and

4   Defendant(2) Anabel Cabebe.

5       This case has been called for an arraignment and plea to

6   the indictment as to Defendant(1) Anthony Williams, a status

7   conference regarding trial date and deadlines, a final pretrial

8   conference as to Defendant(2) Anabel Cabebe, and a detention

9   hearing as to Defendant Williams.

10       Counsel, please make your appearances for the record.

11            MR. JOHNSON:  Good afternoon, Your Honor.

12       Ronald Johnson, Assistant United States Attorney on behalf

13   of the government.  Along with me is Megan Crawley, FBI Special

14   Agent.

15            THE COURT:  Good afternoon.

16            MR. ISAACSON:  Good morning, Your Honor.

17        Lars Isaacson for Mr. Williams who's present in the

18   courtroom today.

19            THE COURT:  Good afternoon.

20            MR. GREEN:  Your Honor, good afternoon.

21       My name is Michael Green.  I represent Ms. Cabebe.  She's

22   seated right behind me.

23            THE COURT:  Good afternoon.  You certainly may be

24   seated.

25       I guess, Mr. Isaacson and Mr. Williams, let's start where

1    we ended off last time.

2         Mr. Williams, do you still want to represent yourself in

3    this matter?

4              THE DEFENDANT WILLIAMS:  Yes, I will be representing

5    the legal fiction that you all are charging.

6              THE COURT:  Why do you want to represent yourself?

7              THE DEFENDANT WILLIAMS:  Because I've never lost.

8    The only two times I lost, they're actually pending right now.

9    I know the case better than anyone.  This case is basically

10   retaliation from the United States government in complicity

11   with the FBI for exposing the FBI's corruption with some of the

12   other prosecutors, the banks, and the things that I've been

13   exposing, my civil rights activities that I've been posting on

14   YouTube, and this case is basically just retaliation against

15   me.

16             THE COURT:  Okay.  Before I allow you to represent

17   yourself, I want to be sure that I'm convinced you're knowingly

18   giving up your constitutional right to have a court-appointed

19   lawyer.

20        So I'm going to ask you a few questions, ask that you

21   answer them just to be sure, like I said, I'm confident you

22   know what you're doing.

23        Do you understand why you're here today?

24             THE DEFENDANT WILLIAMS:  I do.

25             THE COURT:  Tell me why.

1          THE DEFENDANT WILLIAMS:  They've filed some bogus

2   charges of mail fraud and wire fraud against me.

3          THE COURT:  Okay.  Do you know where you are?

4          THE DEFENDANT WILLIAMS:  I'm in the state of Hawaii.

5          THE COURT:  Do you know who's next to you?

6          THE DEFENDANT WILLIAMS:  The public defender.

7          THE COURT:  Okay.  Do you know who's sitting over

8   there at the table?

9          THE DEFENDANT WILLIAMS:  The prosecutor.

10         THE COURT:  Okay.  And do you know who I am?

11         THE DEFENDANT WILLIAMS:  No, not your name, but I

12  know you're the magistrate in the case.

13         THE COURT:  Okay.  You know my role.  Okay.  Thank

14  you very much.

15     Are you on any medication, sir?

16         THE DEFENDANT WILLIAMS:  No, sir.

17         THE COURT:  Have you had any alcohol or drugs in the

18  last 48 hours?

19         THE DEFENDANT WILLIAMS:  Never done it in my life.

20         THE COURT:  Okay.  Mr. Isaacson, just from your

21  interactions with Mr. Williams, do you have any reason to

22  question his competency today?

23         MR. ISAACSON:  I do not, Judge.

24         THE COURT:  Okay.  Mr. Johnson, same question.  I

25  don't know what interactions you've had, but do you have any

1    reason to question the defendant's competency to proceed today?

2             MR. JOHNSON:  Aside from, you know, the statements

3    he expresses about --

4             THE COURT:  Yes.

5             MR. JOHNSON:  -- the Court and others, no.

6             THE COURT:  Okay.  Thank you.

7         Mr. Williams, can you read and write?

8             THE DEFENDANT WILLIAMS:  Yes, I am.

9             THE COURT:  How far did you go in school?

10            THE DEFENDANT WILLIAMS:  Some college.

11            THE COURT:  Okay.  Have you studied the law?

12            THE DEFENDANT WILLIAMS:  Yes.

13            THE COURT:  Okay.  You mentioned you represented

14   yourself before.  Was that in a criminal matter?

15            THE DEFENDANT WILLIAMS:  Yes, the State of Georgia

16   was versus me.  That also was a retaliation case.  They had

17   charged my son with rape and child molestation.  I got my son

18   case dismissed.  Then they end up charging me with the exact

19   same charges and I got that case dismissed also, representing

20   myself.

21            THE COURT:  Okay.  You realize if you represent

22   yourself, you're on your own?

23            THE DEFENDANT WILLIAMS:  I do understand that.

24            THE COURT:  Yeah.  The court's not going to help

25   you.  You understand that?

1              THE DEFENDANT WILLIAMS:  Well, the court wouldn't

2    help me if I had my own paid attorney.

3              THE COURT:  Okay.  You understand that you'll be up

4    against a very experienced prosecuting attorney who will try

5    your case?

6              THE DEFENDANT WILLIAMS:  I do understand that.

7              THE COURT:  Okay.  And you understand that neither

8    he nor the court will assist you or provide any special

9    treatment to you?

10             THE DEFENDANT WILLIAMS:  Only thing I ask is that

11   you follow the law and follows your oath to uphold the

12   Constitution of the United States in guarding my rights.

13             THE COURT:  Okay.  You understand that you have to

14   follow all the rules of the substantive law, criminal

15   procedure, and evidence just as a lawyer would?

16             THE DEFENDANT WILLIAMS:  Right, just as long as it

17   doesn't violate my rights.

18             THE COURT:  Do you understand that you will not

19   receive any more library privileges than those available to

20   other persons representing themselves?

21             THE DEFENDANT WILLIAMS:  I don't understand that.  I

22   don't understand why I wouldn't be able to get the law library

23   access as a pro se defendant.

24             THE COURT:  Right.

25             THE DEFENDANT WILLIAMS:  And also that I

1  was -- because I represented myself, I was able to have more

2  access to law library and also have a pro se phone so I can do

3  my witnesses and things like that.

4          THE COURT:  Sure.  You will get the same library

5  access available to other defendants; you will not get more.

6  Do you understand that?

7          THE DEFENDANT WILLIAMS:  No, because the U.S.

8  Supreme Court *Bounds v. Smith* actually gives me more access to

9  because that would be violating my right to access to the

10  courts and that would be handicapping me, and then I wouldn't

11  be able to have a fair trial in this courtroom.

12          THE COURT:  Okay.  We may just disagree on that for

13  now, but I'm telling you you may not get more library access

14  than others.  I understand you believe you're entitled to more,

15  you said that last time --

16          THE DEFENDANT WILLIAMS:  Well, I talked to the

17  administration.  They said only thing I would need is a order

18  from the court.

19          THE COURT:  Okay.  Well, you'll have to convince me

20  of that.  You're not getting one today.  So as of today if you

21  proceed by yourself, you will not get additional library

22  privileges unavailable to other incarcerated defendants.  I'm

23  just telling you that.

24          THE DEFENDANT WILLIAMS:  Then I'll just have to

25  appeal to a higher court.

```
 1                THE COURT:  Okay. Okay.  Do you understand that you

 2    will not receive extra time to prepare your case or

 3    motion -- for motion or for trial?

 4                THE DEFENDANT WILLIAMS:  I won't receive extra time?

 5                THE COURT:  You will not receive extra time on the

 6    basis that you're representing yourself.

 7                THE DEFENDANT WILLIAMS:  Well, I mean, as long as

 8    I'm still afforded the same time that they are.

 9                THE COURT:  Yes.

10                THE DEFENDANT WILLIAMS:  And if I need some

11    extensions, that I'm considered for the same extensions as they

12    are.  Long as everything is fair, I don't need no assistance

13    from anyone.

14                THE COURT:  Has anyone threatened you to make you

15    waive your right to an attorney?

16                THE DEFENDANT:  No.

17                THE COURT:  Has anyone promised you anything to get

18    you to waive your right to an attorney?

19                THE DEFENDANT:  No.

20                THE COURT:  Okay. Sir, I have to advise you in my

21    opinion I think you're making a mistake.  I believe you would

22    be much better off with representation of a trained lawyer,

23    like Mr. Isaacson, and I urge you not to represent yourself.

24          But with that said, with everything we've discussed, is it

25    still your desire to represent yourself and give up your right
```

1    to be represented by a court-appointed attorney?

2            THE DEFENDANT WILLIAMS:  Yes.  I'm representing the

3    legal fiction that you're charging.  But like I told him, I

4    rather have him as standby counsel --

5            THE COURT:  Okay.

6            THE DEFENDANT WILLIAMS:  -- as *United States v.*

7    *Cooper*, as in *Gigax*, also affords me.

8            THE COURT:  Okay.  I find that the defendant has

9    knowingly and voluntarily waived his right to counsel.  I will,

10   therefore, permit him to represent himself.

11       I specifically find that the defendant appears mentally

12   capable of making this decision, that he fully understands the

13   implications of waiving his right to be represented by counsel,

14   and that he has voluntarily done so.

15       I will also appoint Mr. Isaacson as standby counsel, and

16   the defendant may confirm with standby counsel this afternoon,

17   if he chooses to do so.

18       Okay.  So I think next we have your arraignment.

19       Mr. Williams, have you had enough time to review the

20   indictment?

21           THE DEFENDANT WILLIAMS:  Uhm, I reviewed the

22   indictment.

23           THE COURT:  Do you understand the charges in the

24   indictment, Mr. Williams?

25           THE DEFENDANT WILLIAMS:  Well, I understand what

1    they've put in here.

2                    THE COURT:  Right.  That's all I'm asking.

3                    THE DEFENDANT WILLIAMS:  Right.

4                    THE COURT:  Would you like the indictment read in

5    open court?

6                    THE DEFENDANT WILLIAMS:  Yeah, if it's going to put

7    it on the record, yeah I would.

8                    THE COURT:  What I would ask is rather than

9    reading -- it's lengthy, that's why I asked you if you

10   understood it.  I could ask the government to summarize the

11   general nature of the allegations against you, sir.

12                   THE DEFENDANT WILLIAMS:  That's fine.

13                   THE COURT:  Okay.  Mr. Johnson?

14                   MR. JOHNSON:  Your Honor, as another matter, with

15   respect to the Faretta colloquy --

16                   THE COURT:  Yeah.

17                   MR. JOHNSON:  -- that the Court entered into with

18   the defendant, we think it's important that the defendant

19   understand, and actually we're getting to it at this point,

20   which is that he is charged with 11 counts of wire fraud, in

21   violation of Title 18 United States Code, Section 1343.  And to

22   the extent that there is a possibility that the Court may find

23   that a financial institution was affected by his actions --

24   because the mortgage fraud which was being perpetrated affected

25   the security interest of local banks who held mortgages on the

1  houses which he purportedly refinanced -- so to the extent it

2  had an effect on financial institutions, the maximum penalties

3  for the wire fraud and the mail fraud might be increased to up

4  to 30 years in prison or $1 million.  So it's important for him

5  not only to understand the nature of the charges, but the

6  potential maximum penalties for each one of the counts.

7       And so there is a possibility that if the Court were to

8  find that the actions of the defendant for convicted counts

9  affected a financial institution, we'd be looking at 30 years

10 for each count and up to a million dollars.

11      THE COURT:  Okay.  Mr. Williams, did you understand

12 what Mr. Johnson just said?

13      THE DEFENDANT WILLIAMS:  Well, I understand what he

14 tried to say.  First of all, I'd like to rebut that and object

15 to that.

16      THE COURT:  I just ask you just one step at the

17 time.  You understand there are 11 counts of wire fraud alleged

18 in the indictment?

19      THE DEFENDANT WILLIAMS:  Yes, I do.

20      THE COURT:  Okay.  And you understand that it's the

21 government's view that to the extent they're able to prove this

22 impacted financial institutions and if there's a conviction,

23 incarceration could be up to 30 years per count?

24      Is that correct, Mr. Johnson?

25      MR. JOHNSON:  Yes, Your Honor.

1            THE COURT:  Just want to make sure you understand

2    that.

3            THE DEFENDANT WILLIAMS:  I comprehend that's what he

4    state but that don't mean that's what the law says.

5            THE COURT:  Okay.  But -- you -- okay.  But you

6    understood what he said and you still want to represent

7    yourself?

8            THE DEFENDANT WILLIAMS:  I still want to

9    represent --

10           THE COURT:  Okay.  Thank you.

11           MR. JOHNSON:  And the same is true for Counts 12

12   through 30 which are mail fraud counts under Section 1341.

13           THE COURT:  All right.  Do you understand what he

14   said there, Mr. Williams?

15           THE DEFENDANT WILLIAMS:  I do comprehend it.

16           THE COURT:  Okay.  And you still want to represent

17   yourself?

18           THE DEFENDANT WILLIAMS:  I still want to represent

19   the legal fiction.

20           THE COURT:  All right.

21           MR. JOHNSON:  Your Honor, without getting into the

22   finer points, we would note on the record that he does have a

23   copy of the indictment in front of him.

24           THE COURT:  He does, yep.

25           MR. JOHNSON:  That he has thumbed through it

1    presently and has it with him.

2         We would summarize the case as follows:

3         that the defendant, Anthony T. Williams, started Mortgage

4    Enterprise Investments, a business owned and operated by him

5    and was registered in June of 2013 in the State of Hawaii;.

6         that the defendant, according to his website, has the

7    Common Law Office of America and was also -- references the

8    employment or the use of private attorney generals and offers

9    services to clients to include, but are not limited to,

10   mortgage reduction, foreclosure assistance, UCC filings,

11   document writing, power of attorney.  And Anthony T. Williams

12   is also the owner and operator of the Common Law Office of

13   America.

14        Through those two businesses, he approached local

15   homeowners.  He indicated to the local homeowners that he could

16   cut their mortgage payments in half, he could cut the term of

17   their mortgages in half, that they had to sign up with him and

18   fill out paperwork.  The defendant had them fill out paperwork.

19   Some of that paperwork was notarized.  The defendant then would

20   file liens on the properties and then in most cases file a

21   purported mortgage which superseded any previous document that

22   acted as a security -- or superseded any other mortgage that

23   had as the security the property in question, and he did this

24   at the Bureau of Conveyances here in Honolulu through his own

25   actions and through those of accomplices.

1           Once that documentation was filed, he would then indicate

2    to the homeowners if they were contacted by any of their banks

3    and the banks were attempting to foreclose on them or indicate

4    there were delinquencies, that information should be forwarded

5    to him.  He would then take that information, communicate back

6    with the banks that they were not to contact his clients, they

7    were to contact him, and he began an obstructionist action

8    against the banks in their attempt to foreclose or obtain

9    payment on the true mortgages.

10          He collected through his own actions and the actions of

11   others who worked with him the -- what were purported to be

12   mortgage payments on the new mortgage.  They were approximately

13   one-half of what the individuals had been paying before, and

14   they paid that stream of income to him.  He took that money,

15   converted it to his own use.

16          The defendant would, on occasion, appear in court and take

17   other actions indicating that he was now the true lien holder,

18   and the documents he filed with the Bureau of Conveyances

19   purported to be actual mortgages.

20          The defendant nor any of his accomplices have the right

21   through the State of Hawaii to issue mortgages, to restructure

22   mortgages, or to act as a financial institution, and so without

23   that authority, these mortgages are not valid and basically

24   clouded the title of the original mortgage companies.

25          That's the allegation.

1          The individual counts are all premised around wirings and

2    mailings that were conducted in execution of the scheme or

3    which were foreseeable to the defendant as a result of the

4    scheme.  He caused or made these wirings himself or had others

5    make the wirings and mailing.

6          THE COURT:  Thank you, sir.

7          Mr. Williams, the government has read essentially the

8    substance of the charges in the indictment.  How do you plead

9    to the charges in the indictment?

10         THE DEFENDANT WILLIAMS:  Like I said at the first

11   hearing, the government do not have any jurisdiction for me to

12   even plea because, Number 1, there was no crime or mail fraud

13   or wire fraud committed, so they never had any jurisdiction to

14   file charges or arrest me and then charge the legal person

15   named Anthony Williams.  So there's no reason for me to plead

16   because there's nothing for me to plead to.  I didn't commit

17   any crime in order to be able to plea and that's the reason why

18   I have my documents here to file the motion to dismiss this

19   case immediately and have me released immediately.

20         THE COURT:  Okay.  So you deny the charges in the

21   indictment?

22         THE DEFENDANT WILLIAMS:  Yes, I do.

23         THE COURT:  Okay.  We're going to enter a not guilty

24   plea --

25         THE DEFENDANT WILLIAMS:  Do not enter a not guilty

1    plea.  If you going to enter it, it has to be innocent.

2              THE COURT:  Okay.  Then we won't enter a plea.

3              THE DEFENDANT WILLIAMS:  Because the law says

4    innocent --

5              THE COURT:  Any suggestions from the government if

6    he refuses to plead --

7              THE DEFENDANT WILLIAMS:  The law says we're innocent

8    till proven guilty.

9              THE COURT:  -- set it for trial?

10             THE DEFENDANT WILLIAMS:  We're innocent till proven

11   guilty.  It don't say not guilty till proven guilty.

12             MR. JOHNSON:  Your Honor, I think we're kind of

13   transitioning to some of the other things I raised in the

14   memorandum in support of the motion to detain.

15             THE COURT:  We are.

16             MR. JOHNSON:  These are the types of activities and

17   statements that were made to other courts and are documented in

18   the filing of the United States.

19        The defendant isn't recognizing the jurisdiction of the

20   Court.  He's not recognizing the validity of the indictment,

21   though it was returned by a grand jury here in the District of

22   Hawaii.

23             THE COURT:  Right.

24             MR. JOHNSON:  He claims to be innocent.  We believe

25   that the Court can acknowledge that this constitutes a not

1    guilty plea --

2              THE COURT:  Right.

3              MR. JOHNSON:  -- even though he is not stating that

4    because he somehow feels that that will somehow affect his

5    rights.

6         And then we can move on to the issues of detention.

7    And with respect to the issues of setting for trial --

8              THE COURT:  Right.

9              MR. JOHNSON:  -- we do believe that the case is

10   complex.  The reason for us believing that -- and I think

11   Ms. Cabebe came in on this and I have had conversation with

12   Mr. Green about this -- we stated at the last hearing that we

13   provided approximately 53,000 pages of discovery to the

14   defendant in this form which we turned over to his standby

15   counsel.  We also have provided that to Mr. Green.  There's

16   additional discovery which is being provided today.

17        The offenses occurred in Hawaii.  There were activities

18   also in Texas and in Florida.  There were searches in Hawaii,

19   Texas, and Florida.

20        There are -- okay.  The FBI agent informs me that they

21   have identified somewhere in the neighborhood 300 victims in

22   Hawaii.  Each of the victims either participated or was asked

23   to participate or showed interest in participating in this and

24   somehow has had contact with Mr. Williams and his associates.

25        There is a large volume of paper.  It is not just bank

1    records.  There are documents which I'm sure Mr. Williams will

2    object to, but we would characterize them as fraudulent

3    mortgages --

4              THE DEFENDANT WILLIAMS:  I object to that.

5              MR. JOHNSON:  -- and fraudulent liens --

6              THE DEFENDANT WILLIAMS:  There's nothing fraudulent

7    about them.

8              MR. JOHNSON:  -- that were filed with the Bureau of

9    Conveyances and clouded the title of financial -- the financial

10   interests of local banks.

11       So with that, we believe that this needs to be set in a

12   period of time greater than the normal course.  I don't know

13   what Mr. Green's position is, but I don't think that this is

14   something that can be ready for trial in 70 days.  And I --

15             THE DEFENDANT WILLIAMS:  I object.

16             THE COURT:  One second, sir.

17             MR. JOHNSON:  Yeah.

18             THE COURT:  Go ahead, Mr. Johnson.

19             MR. GREEN:  Your Honor, I believe it's complex, and

20   I would be with the government that the time for motions and

21   trial be extended.

22             THE COURT:  Okay.  Mr. Williams?

23             THE DEFENDANT WILLIAMS:  I object because, Number 1,

24   I'm not waiving my speedy trial rights, and the government is

25   the one that brought these bogus charges.  When they brought

1    the charges, they should have been ready for trial when they

2    brought the charges.  So I'm not going to allow them to violate

3    my constitutional rights to a speedy and public trial.

4        Also, I have several news stations, including CNN that's

5    going to be sending a letter to the Court so they can be here

6    to record the actual trial when we do have the trial so I can

7    expose the corruption of the FBI and the prosecuting attorney's

8    office for them retaliating against me for actually standing up

9    for the rights of the people.

10        So I been held since February of this year on this charge.

11   The first time I've ever seen a judge was Monday when I saw

12   you.  That violated my due process rights.  The time to try me

13   this case has already passed.  So they can't say, well, they

14   needed extension of time because the time to try me from the

15   get-go has already passed, so they don't have any legal

16   standing to stand on as far as to ask for a continuance.

17        MR. JOHNSON:  Your Honor, if I may?

18        THE COURT:  Yeah.

19        MR. JOHNSON:  The defendant at our last hearing did

20   not acknowledge that he was recently convicted of a fraud in

21   Broward County.  We did our research through the public records

22   and found that Anthony Troy Williams, who we believe is the

23   individual standing before you, was convicted of a fraud as

24   indicated in our filing.

25        THE DEFENDANT WILLIAMS:  That's a lie.  I was not

1    convicted of anything with --

2         THE COURT:  Wait your turn, sir.  I'm letting

3    everybody speak.  You wait your turn.

4         THE DEFENDANT WILLIAMS:  Okay.

5         MR. JOHNSON:  -- and was sentenced to 15 years'

6    imprisonment to be followed by 15 years' probation.  So the

7    judgment which occurred in that matter, he was sentenced on

8    June 23rd of 2017.  We filed our writ.  We were unable to

9    remove him from Broward County while he had a active case

10   pending because if we removed him from Broward County to face

11   our charges, their charges would run on speedy trial.  They had

12   him first, we filed our writ, and we brought him forth as soon

13   as practicable.

14        Mr. Williams had some -- had a issue which prevented him

15   from traveling and that prolonged his transport here and that

16   was beyond the ability of the United States or the Marshals

17   Service to prevent, so he is here as soon as practicable.

18        THE COURT:  So based on the reasons asserted by the

19   government and joined by Mr. Green on behalf of his client, I

20   do declare the case complex.

21        Have you guys discussed the trial date you would like?

22        MR. GREEN:  I have not, Your Honor, respectfully.

23        THE COURT:  Okay.  Do you have something in mind --

24        MR. JOHNSON:  Your Honor, not at this point.

25        And the other issue that presents itself is because of

UNITED STATES DISTRICT COURT

1    some of the information provided in our filing which indicate

2    the types of activities and the failure to recognize the

3    jurisdiction of the Court that Mr. Williams has participated in

4    in the past, we anticipate that it will be essential that he

5    have standby counsel because in instances such as this -- and

6    we're not saying it's likely, but there's always the

7    possibility that because of his failure to follow the rules or

8    failure to accept the jurisdiction of the Court and abide by

9    what he's supposed to do as a pro se defendant, he might not

10   have that ability at some point in the future.  We have seen

11   that and experienced that through our office's prior case.  So

12   we believe that it's essential to have Mr. Isaacson available,

13   even though Mr. Williams indicates that he's ready for trial.

14            THE COURT:  Okay.  So taking these in steps, one,

15   I'm going to enter a not guilty plea.  I understand it's over

16   your objection, but the essence of what you've articulated is a

17   denial of the charges and denial of jurisdiction;  declare the

18   case complex, and I'll ask Mr. Johnson to prepare the written

19   order on that.

20        We haven't discussed a trial date.  If we give

21   Mr. Williams a trial date, in the normal course for now,

22   Mr. Green, that would give your client the additional time

23   'cause right now you're set for trial in just a few weeks.

24            MR. GREEN:  Understood.

25            THE COURT:  We do that, and then you folks can come

1  back to court with a later trial date when you have that in

2  mind.  So we're going to give you that normal course trial date

3  and pretrial deadlines now.  Hang on a sec.

4      Thanks, Tony.

5          THE DEFENDANT WILLIAMS:  I need to ask a question,

6  too.

7          THE COURT:  Go ahead, sir.

8          THE DEFENDANT WILLIAMS:  These proceedings are being

9  transcribed, correct?

10          THE COURT:  They're being recorded, sir.  You can

11  obtain a transcription.  You can apply to court for it.  But

12  everything's recorded.  We're on the record.

13          THE DEFENDANT WILLIAMS:  Okay.  Just want to make

14  sure it's on the record.

15          THE COURT:  Yep.

16          THE DEFENDANT WILLIAMS:  And also, since we're on

17  the record, I would like to move to have my co-defendant Cabebe

18  case dismissed and removed because they just added her because

19  she was supporting me.  They just put her on there to retaliate

20  against me.

21          THE COURT:  So Ms. Cabebe has her own attorney here,

22  and so I'll let him speak for her.  Okay?  You can file such a

23  motion if you would like to.

24      Go ahead.

25          THE COURTROOM MANAGER:  Jury trial is set for

1    November 21st at 9 o'clock before Judge Kobayashi.  Pretrial is

2    set for October 23rd at 10 o'clock before Magistrate Judge

3    Chang, defense motions October 9th, and government's response

4    October 23rd.

5                THE COURT:  Okay.  So moving down the to-do list, I

6    have Mr. Williams's motion for appointment of counsel that he

7    previously filed.  I will deny that motion as moot given what

8    we've already accomplished.

9         I also have Mr. Williams's motion for discovery which I

10   will also deny as moot.  The government has provided its

11   discovery to the defendant and I'm sure the government will

12   supplement that, if necessary.

13        Which leaves us with the government's motion to detain.

14   I've reviewed the motion to detain, the memorandum in support,

15   and the report from Pretrial Services.

16        Mr. Williams --

17                MR. GREEN:  Your Honor, may I interrupt?

18                THE COURT:  Yes.

19                MR. GREEN:  May I be excused?

20                THE COURT:  Yes, you may, sir.  Thank you for

21   coming.

22                MR. GREEN:  With my client?

23                THE COURT:  Yes, you may.

24        Mr. Williams, on the motion to detain, any argument?

25                THE DEFENDANT WILLIAMS:  Yes.

1          THE COURT:  You may proceed.

2          THE DEFENDANT WILLIAMS:  According to the actual

3   United States Code 3142 --

4          MR. JOHNSON:  Your Honor, may I sit down?

5          THE COURT:  Yes, you may, sir.

6          MR. JOHNSON:  I'll be glad to stand, if you like.

7          THE COURT:  Yeah.

8          THE DEFENDANT WILLIAMS:  The parameters for denying

9   pretrial detention, I don't qualify for any of those parameters

10  in the U.S.C. 3142.  The case is not a drug case.  The case is

11  not a violent case.  Contrary to what the prosecutor's saying,

12  there are no victims.  There will be any -- not any homeowners

13  that will come forward and testify against me that I committed

14  any crime against them because I saved most of these people

15  from being evicted illegally and unlawfully from their homes.

16      Everything in the application was lawful and they

17  understood it and they signed it along with --

18          MR. ISAACSON:  May I have one moment, Your Honor?

19  May I?

20          THE COURT:  Yes, you may.

21          MR. ISAACSON:  Okay.  Thank you, Your Honor.

22          THE DEFENDANT WILLIAMS:  The -- the report is based

23  on lies and fabrications.  They put that I have a violent

24  criminal history, violent behavior history, and there's nothing

25  in my history where I've been convicted of anything violent.

1    I'm not a violent man.  I'm a man of faith.  I'm actually a

2    minister of Yahweh.  I don't have any criminal history as far

3    as intimidation of witnesses, not showing up for court.  Matter

4    of fact, the case against me for the rape and child

5    molestation, I was given a bond by the State of Georgia; did

6    not flee because I know I was innocent so there was no reason

7    for me to run.

8        I made every court hearing until the case was dismissed.

9    I filed the documents to have the case dismissed because the

10   charges were bogus and they were trumped up charges basically

11   to retaliate against me.

12       I have no reason to run.  I'm looking forward to exposing

13   the corruption that I've been exposing for the last ten years

14   on YouTube against the government and the prosecuting attorneys

15   who -- including the FBI who likes to cherry-pick on crimes

16   that they will prosecute.

17       I've made several complaints to the FBI regarding mortgage

18   fraud which was ignored, and I also videotaped me actually

19   going to the FBI to make those complaints.

20       Also, when the FBI was calling around my clients and

21   saying that I was wanted, that I was on their Most Wanted list,

22   instead of running, I went to the FBI office to turn myself in,

23   if in fact that they said I had a warrant.  I also videotaped

24   that on YouTube under *Anthony Confronts FBI*.  I did not run

25   because I know I didn't do anything wrong.

1        So I'm not the type of person that would be a flight risk.

2   I have people here that I can stay with in Hawaii until that

3   trial because I do look forward to this trial to proving my

4   innocence and also expose the corruption that I been fighting

5   for the last ten years.

6        THE COURT:  Thank you, sir.

7      Mr. Johnson.

8        MR. JOHNSON:  Your Honor, the government indicated

9   in its motion to detain that under sub part 6 that the other

10  factor the Court has to take into consideration is the

11  defendant is currently serving his term for being convicted in

12  Broward County, Florida.  The defendant may believe that that

13  might be overturned on appeal.  If at such time it is, then,

14  you know, they can decide what his status as far as their

15  detention will be.

16       We're asking that he be detained on this matter because we

17  have writted him out to prosecute him and Broward County has

18  him as a individual who is serving a sentence.  He's earning

19  credit against that sentence right now and, therefore, he can't

20  be released.

21       THE COURT:  Okay.  Thank you, sir.

22       THE DEFENDANT WILLIAMS:  I'd like to rebut that.

23       THE COURT:  Go ahead, sir.

24       THE DEFENDANT WILLIAMS:  I actually have a

25  supersedeas bond that was filed on my case.  I'm waiting to

1   hear from the Fourth District Court of Appeals on that.  So I'm

2   pretty -- almost a hundred percent sure that the supersedeas

3   bond will be granted because of the charges that I was charged

4   with was unlawful filing of documents and grand theft of a

5   house, which I don't know how you could grand theft a house,

6   but they charged me with that, which was actually a

7   foreclosure.

8        So I should be hearing pretty soon on that supersedeas

9   bond, and I just wanted to at least have a bond or bail here so

10  when that supersedeas bond goes through, I will be able at

11  least fight my case like my co-defendant is, on the streets,

12  and then have access to all the legal resources that I would

13  need that I'm being handicapped with by being at FDC.

14       But the Education Department actually told me yesterday

15  that if I needed more access, I would just need to get a order

16  from you stating that I could use the computer that has the

17  actual Word document on there and that, you know, I could be

18  able to be able to type my motions up and whatever I need to be

19  able to submit to the Court; they would just need a order from

20  you.

21       THE COURT:  Okay.  All right.  Having considered all

22  the information available to the court, including the report

23  from Pretrial Services, the motion to detain, the memorandum in

24  support of motion, and the indictment, hearing the argument of

25  Mr. Williams and Mr. Johnson, and applying the factors in 18

1    U.S.C. Section 3142, the court finds that there are no

2    conditions it can impose to negate the flight risk or danger to

3    the community posed by the defendant and therefore orders that

4    the defendant be ordered detained pending the trial in this

5    case.

6         Anything further?

7              MR. JOHNSON:  Nothing further, Your Honor.

8              THE DEFENDANT WILLIAMS:  Yes, I have my motions to

9    file.

10             THE COURT:  Okay.  You can file --

11             MR. ISAACSON:  May I address the Court briefly?

12             THE COURT:  Yes, Mr. Isaacson.  I haven't given you

13   a chance to speak.

14             MR. ISAACSON:  Judge, as standby counsel I just want

15   to -- 'cause I talked to my client.  Of course, I advised him

16   anything he said on the record can be used against him and to

17   be very careful about anything he says.

18        Judge, I think we might be wise to talk about a trial

19   date.  A couple things, Judge.  As a standby counsel, my

20   understanding with standby counsel is I'm here to assist

21   Mr. Williams, not make legal decisions for him.  I want to be

22   clear about.  Is that --

23             THE COURT:  Yes, that's my understanding.  I don't

24   even know that you have to sit at table with him.  You can be

25   available at the gallery, if he wants to talk to you.

UNITED STATES DISTRICT COURT

1          MR. ISAACSON:  The reason I bring this up now,

2    Judge, is the trial date I think is important.  If you declare

3    the case complex, I don't know what my client will do with

4    that.

5          THE COURT:  Yeah.

6          MR. ISAACSON:  But if you are inclined to

7    do -- because he will be the one to be discussing the trial

8    date, not myself --

9          THE COURT:  Yes.

10          MR. ISAACSON:  -- with the government, is my

11    understanding --

12          THE COURT:  Yes.

13          MR. ISAACSON:  -- so it might be wise -- I don't

14    know how we're going to facilitate that.

15      I want to talk about a practical matter, if I might,

16    Judge.

17          THE COURT:  Right, right.

18          MR. ISAACSON:  If -- should we talk about it now?

19    If you're going to grant -- I don't know if there's a motion to

20    continue yet.  There's not been a motion yet.

21          THE COURT:  There is not yet, so it's set for

22    November 21st.  And if that date needs to moved, I think we're

23    going to have to have a motion on that.  From what I've heard

24    today, Mr. Williams is inclined to oppose.

25          MR. ISAACSON:  Okay.  Okay.

1          THE COURT:  No, you're raising good points, and I

2   think we'll need to keep our eye on them all the way through.

3          MR. ISAACSON:  And Your Honor, if I may,

4   Mr. Williams is -- now he's just starting that we're going

5   through the discovery phase.  Is it -- if I may, is it your

6   wish for him to see what he can do, and if he cannot properly

7   access the materials, then to come to you?  Is that what I'm

8   understanding?

9          THE COURT:  Yes, yes, yes.  If he is not getting

10  what he needs from FDC and he goes through their procedures, we

11  can address it at that time.  But I'm not just carte blanche

12  going to grant him additional access.

13      What I -- and I'm sure you've heard judges say this -- I

14  don't run FDC.  I can't tell them how to run their business.

15         MR. ISAACSON:  Mr. Williams, if I understand

16  correctly, I believe he has indicated that he would like paper

17  copies of the discovery.

18         THE DEFENDANT WILLIAMS:  Yes.

19         MR. ISAACSON:  And I want to i that's -- I know he

20  wants to do that.  And because of the difficulty in accessing

21  the computer there --

22         THE COURT:  Right.

23         MR. ISAACSON:  -- and I thought I would at least

24  raise this at this time, the request.

25      Is that okay, Mr. Williams, that I explain that?

1           THE DEFENDANT WILLIAMS:  That's correct.  That's

2    correct.

3           MR. ISAACSON:  And I would have to ask that -- I

4    know it's a lot of paper -- but copies be given to me, too, as

5    standby counsel.

6           THE COURT:  Okay.  How much paper is it,

7    Mr. Johnson?

8           MR. JOHNSON:  Over 100,000 pages.

9           THE COURT:  So how many boxes is it?

10          MR. JOHNSON:  If we're making two sets, it -- we

11   know that roughly from talking to my paralegal, in the first

12   batch of discovery we provided with the discs, that was

13   approximately 53,000 pages, little over, probably.

14          THE COURT:  So we may need to just have a status

15   conference with Tim Rodrigues or someone from FDC.  I don't

16   know where he would store that.

17          MR. ISAACSON:  That's correct, Your Honor.

18          THE COURT:  Just from the logistics of it, I don't

19   understand if I would order the government to do that, where

20   Mr. Williams would put it.

21          THE DEFENDANT WILLIAMS:  Well, in my cell because I

22   went through this with Broward County.  I had 30,000 pages and

23   they had to give me the paper copy because I didn't have access

24   to the computer with the discs.  So I had to have my papers in

25   my cell so I can go through the whole discovery myself.

1          MR. JOHNSON:  So, Your Honor, is -- there's two

2    issues then.

3          THE COURT:  Yeah, at least two.

4          MR. JOHNSON:  Yeah, at least two.  One is if he has

5    access to utilize the computer and the discs, then --

6          THE COURT:  We get past it.

7          MR. JOHNSON:  -- we get past it.

8          THE COURT:  Yeah.

9          MR. JOHNSON:  And what I heard the Court saying is

10   he needs to talk to FDC about that.

11         THE COURT:  Yes.

12         MR. JOHNSON:  And that you would be supportive if he

13   needs more --

14         THE COURT:  Yes.

15         MR. JOHNSON:  -- or an instruction from the Court to

16   give him more time.

17         THE COURT:  Yes, it would be.  And if that gets us

18   past the issue, so be it.

19         MR. JOHNSON:  Yeah.  If -- if he doesn't get that

20   access, if they can -- if he can have standby counsel notify us

21   or we can come back into court on a status conference, we can

22   begin the process of making 100,000 copies.

23         THE COURT:  Printing it all out.

24         MR. JOHNSON:  Yeah.

25         THE COURT:  Okay. So, Mr. Williams, when you get

1   back to FDC, talk to -- is it your case manager?  I'm not sure

2   who the person is -- about your access to this computer.  Let

3   him know how much you have to review and what arrangements can

4   be made.  And if they tell you that it -- that arrangements can

5   be made but they need an order from the court, either you

6   contact the court or let Mr. Isaacson know.

7           THE DEFENDANT WILLIAMS:  Well, I already talked to

8   them.  They said they would --

9           THE COURT:  Well, what I'd like to do is have a

10  status conference at that point with someone from the FDC --

11  they do it all the time -- whether it's Mr. Rodrigues or

12  someone else so we can have a conversation about the logistics

13  and figure out what makes the most sense and do it quickly.  I

14  don't think -- I mean, this should happen next week.

15          MR. ISAACSON:  Would I be a motion -- would you be

16  asking he --

17          THE COURT:  Or even just a status conference with

18  someone from FDC next week.

19          MR. ISAACSON:  You know somebody, Judge, who's done

20  this before with you guys?

21          THE COURT:  I know Tim Rodrigues is usually the

22  person.  He is essentially FDC's attorney.

23          MR. JOHNSON:  Yes.

24          THE COURT:  And so he would know who to involve in

25  this.  And, Mr. Isaacson, maybe if you reach out to him, let

1    him know what we've discussed and figure out when you folks are

2    all available, it would probably come before Judge Chang next

3    week, but you can reach out to his courtroom manager.

4            MR. ISAACSON:  Shall we set it now, Judge, since

5    we're here?

6            THE COURT:  You want to try to set something now?

7    Does that make sense?  And then if Mr. Rodrigues can't meet

8    that, you can call the courtroom manager and they'll pick a new

9    date.

10       Okay.  Tuesday?  Wednesday?  You know, give you guys a

11   couple days to -- what works?

12           MR. ISAACSON:  Wednesday's okay.  I have -- I have

13   to be in Circuit Court in the morning.  The afternoon I'm clear

14   on Wednesday.  That's good.

15           THE COURTROOM MANAGER:  October 4, 9 o'clock.

16           MR. ISAACSON:  No, I've got a morning.

17           THE COURTROOM MANAGER:  Oh, you have a morning.

18           THE COURT:  You've got a morning.

19           THE COURTROOM MANAGER:  Okay.  Wait a sec.

20           MR. ISAACSON:  Thursday morning after 9:00.

21           MR. JOHNSON:  I have a full- --

22           THE COURT:  Something.

23           MR. JOHNSON:  -- blown evidentiary hearing with

24   Judge Watson on the 5th.

25           THE COURT:  Which is Thursday.  Okay.

1          MR. JOHNSON:  Yeah.

2          THE COURTROOM MANAGER:  Friday?

3          THE COURT:  How's Friday?

4          MR. ISAACSON:  I'm good on Friday.

5          MR. JOHNSON:  Friday's open, Your Honor.

6          THE COURTROOM MANAGER:  Okay.  10 o'clock.

7          THE COURT:  10 A.M. Friday.

8          THE COURTROOM MANAGER:  October 6th at 10:00.

9          MR. ISAACSON:  Sure.

10         THE COURT:  And that'll be a status conference to

11   discuss discovery, defendant's ability to access the court

12   computers, will involve Mr. Rodrigues, and figure out what

13   makes the most sense logistically.  And if it takes a court

14   order, we'll have Mr. Rodrigues either here in person or

15   available by phone and we'll take care of it.

16         THE DEFENDANT WILLIAMS:  Okay.  I need to file these

17   motions so I can give them a copy of the motions I need to file

18   today.

19         THE COURT:  Yeah, we can take those, if you hand

20   them to Mr. Isaacson.

21         THE DEFENDANT WILLIAMS:  And do you all have anyone

22   here that is like a deputy that can notarize affidavits?

23   'Cause they don't have one at FDC.  They say they would have to

24   actually call somebody from outside and they don't know when

25   'cause --

```
 1              THE COURT:  Mr. Isaacson.

 2              THE DEFENDANT WILLIAMS:  -- I have an affidavit that

 3   I need to have notarized so I can file it -- so I can file the

 4   affidavit with the motion that I filed.

 5              THE COURT:  I don't know that we do, sir.  I don't

 6   know that you need --

 7              THE DEFENDANT WILLIAMS:  Well, can I just state

 8   under penalty of perjury?

 9              THE COURT:  For now, yes, that's fine.

10              THE DEFENDANT WILLIAMS:  Okay.  Well, let me sign

11   this and this needs to be attached to the motion to dismiss.

12   This is my affidavit.  That needs to be attached to the motion.

13              MR. ISAACSON:  May I approach, Judge?

14              THE COURT:  Yes, please, sir.

15              THE COURTROOM MANAGER:  Is it to be attached?

16              THE COURT:  We make sure we have everything we need.

17              THE COURTROOM MANAGER:  Okay.  Attach this one to

18   the motion to dismiss?  The affidavit?

19              THE DEFENDANT:  Yes, ma'am.

20              THE COURT:  All right.  I think we're done?

21              MR. ISAACSON:  Judge, I just want to make sure.

22              THE COURT:  Oh, go ahead, Mr. Isaacson.

23              THE DEFENDANT WILLIAMS:  Can I get a stamped copy

24   that --

25              MR. ISAACSON:  May I?  I can do it.
```

```
 1                   THE COURT:  Thank you.

 2                   MR. ISAACSON:  She's -- if I may, Judge,

 3     electronically it'll be filed --

 4                   THE COURT:  Yes.

 5                   MR. ISAACSON:  -- and then I'll get it and I'll

 6     forward it to you.

 7                   THE DEFENDANT WILLIAMS:  And serve them.

 8                   MR. ISAACSON:  He gets served electronically.

 9                   THE COURT:  He'll get it once we file it.

10                   MR. ISAACSON:  I do want to say, Judge, just for the

11     record, I'm happy to be involved as standby counsel in this

12     case.  We are set for trial in November currently.

13                   THE COURT:  Yes.

14                   MR. ISAACSON:  I do -- as a standby counsel, my

15     reading of standby counsel is to assist, but also to step in

16     and conduct the trial, if needed.

17                   THE COURT:  Yes.

18                   MR. ISAACSON:  So I do have to at least inform the

19     Court, I think, of my concerns a bit that if the case does go

20     to trial at that time, you know, Mr. Williams is the captain of

21     the ship, obviously, for him, but I do need to -- I'm not sure

22     where we stand on this, but I didn't just want to say, "Okay.

23     I'll be standby counsel and no trouble, no problems."  If we

24     end up going to trial in November, there may be difficulty for

25     me as well, Judge.
```

1              THE COURT:  Okay.  So thank you for raising that,

2      sir, and I respect that.  And if -- I think we'll have a better

3      idea of where things stand within a couple weeks or so, and if

4      that date is going to stick and it looks like it's difficult

5      for you, please raise that with the court and we can look into

6      a substitute standby counsel.

7              MR. ISAACSON:  Very well, Your Honor.

8              THE COURT:  Okay.  All right.

9              MR. ISAACSON:  Is there anything else?

10             THE COURT:  Anything else, Mr. Williams?

11             THE DEFENDANT WILLIAMS:  Well, he said when we going

12     to have the status conference on my access 'cause I need --

13             MR. ISAACSON:  Next Friday.

14             THE COURT:  Next Friday.

15         All right.  We'll stand in recess and the defendant is

16     remanded to the Marshals.

17             MR. JOHNSON:  Thank you.

18             (Proceedings concluded at 1:59 P.M.)

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATE

2

3            I, DEBRA READ, court approved transcriber, United

4    States District Court, District of Hawaii, do hereby certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the

7    above-entitled matter and that the transcript page format is in

8    conformance with the regulations of the Judicial Conference of

9    the United States.

10

             DATED at Honolulu, Hawaii, March 21, 2018.

11

12

                       */s/ Debra Read*

13

                   DEBRA READ, CSR CRR RMR RDR

14

15

16

17

18

19

20

21

22

23

24

25


                    **UNITED STATES DISTRICT COURT**