UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      vs.<br><br>ANTHONY T. WILLIAMS (01),<br><br>              Defendant. | CR NO. 17-00101 LEK |

**ORDER DENYING DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE AND DEFENDANT'S MOTION FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS**

          Before the Court are pro se Defendant Anthony T. Williams's ("Defendant"): Motion for Suppression of Evidence ("Motion to Suppress"), filed on March 19, 2019; and Motion for Evidentiary Hearing on Motion to Suppress ("Motion for Hearing"), filed on March 25, 2019.  [Dkt. nos. 437, 441.] Plaintiff the United States of America ("the Government") filed its memorandum in opposition to the Motion to Suppress ("Suppress Opposition") on April 29, 2019,[1] and Defendant filed his reply in support of the Motion to Suppress ("Suppress Reply") on May 7, 2019.  [Dkt. nos. 467 (sealed), 474.]  These matters came on for hearing on May 10, 2019.  On May 17, 2019, the Government filed a supplemental memorandum in opposition to

_____

          [1] The Suppress Opposition also addresses Defendant's argument that he is entitled to an evidentiary hearing.

the Motion to Suppress ("Supplemental Suppress Opposition"), and

Defendant filed a supplemental reply in support ("Supplemental

Suppress Reply") on June 2, 2019.  [Dkt nos. 480, 501.]

Defendant's Motion for Hearing and Motion to Suppress are hereby

denied for the reasons set forth below.

## BACKGROUND

Defendant is currently facing fifteen counts of wire

fraud, in violation of 18 U.S.C. § 1343, and seventeen counts of

mail fraud, in violation of 18 U.S.C. § 1341.  [Superseding

Indictment, filed 3/28/18 (dkt. no. 154).[2]]  The charges against

Defendant arise from an alleged mortgage fraud scheme.  The

scheme involved two entities, Mortgage Enterprise Investments

("MEI"), and The Common Law Office of America ("CLOA").  The

Superseding Indictment states Defendant was the founder, chief

executive officer ("CEO"), and partner of MEI.  [Id. at ¶ 1.]

Defendant challenges two warrants that a magistrate

judge issued on December 14, 2015.  [Motion to Suppress, Decl.

of Counsel ("Counsel Suppress Decl."), Exh. A at 5.[3]]  One

---

[2] The grand jury returned the original Indictment on
February 15, 2017 against Defendant and Defendant Anabel Cabebe
("Cabebe").  [Dkt. no. 1.]  It alleged eleven counts of wire
fraud and nineteen counts of mail fraud.  Charges against
Defendant Barbara Williams were added in the Superseding
Indictment.

[3] Exhibit A appears to consist of the text of five email
messages that Defendant sent to his stand-by counsel to file on
(. . . continued)

warrant was for the search of an office space on Democrat Street
in Honolulu that Defendant used ("Office Warrant"), and the
other was for Cabebe's residence in Aiea ("Residence Warrant"
and collectively "Warrants"). [Suppress Mem. at 11; Suppress
Opp., Exh. A (Office Warrant and supporting application), Exh. B
(Residence Warrant and supporting application).] Both
applications were supported by the same Affidavit in Support of
a Search Warrant by Federal Bureau of Investigation ("FBI")
Special Agent Megan Crawley ("Crawley Affidavit"). [Suppress
Opp., Exh. A at 2-30, Exh. B at 2-30.]

    Defendant argues the Crawley Affidavit was
"deliberately and recklessly false in material respects," and
therefore the Warrants were not supported by probable cause.
[Suppress Mem. at 3.] Defendant asserts the Crawley Affidavit
concealed the fact that the FBI's investigation was not prompted
by any complaint brought by one of Defendant's clients, and he
claims the investigation was in retaliation for Defendant's

---

Defendant's behalf.  See Counsel Suppress Decl. at ¶ 2.
Stand-by counsel apparently removed the email headings and
compiled the messages into one document.  Exhibit A will be
referred to as the "Suppress Memorandum."  Because the Suppress
Memorandum is not consecutively paginated, all citations to the
memorandum will refer to the page numbers assigned by the
district court's electronic case filing system.
    Stand-by counsel was not involved in the preparation of the
Motion to Suppress, and he makes no representation about the
appropriateness of the motion.  [Id. at ¶ 3.]

efforts to publicize government corruption. [Id. at 4.]

Defendant argues the Crawley Affidavit made the following

statements, which he contends were deliberately or recklessly

false:

-Defendant held himself out as an attorney; [id. at 5;]

-Defendant and MEI guaranteed their clients reductions in their
    mortgage loan amounts, mortgage loan terms, and monthly
    mortgage loan payments; [Suppress Reply, Decl. of Counsel
    ("Counsel Suppress Reply Decl."), Exh. A at 3;[4]]

-Defendant made misrepresentations and falsified documents to
    create the impression that MEI was licensed to service
    and/or modify mortgages, and some of MEI's clients became
    delinquent in their mortgage loans after acting upon
    Defendant's advice; [id.;]

-the FBI received a call from a state agency that had received a
    number of complaints regarding a mortgage reduction
    program, which the Crawley Affidavit suggests was MEI; [id.
    at 6;]

-Defendant instructed MEI clients to stop making their mortgage
    payments and to pay the money to Defendant instead; [id. at
    9;] and

-M.V., one of Defendant's alleged victims, was not delinquent in
    his mortgage payments when he began Defendant's program,
    but M.V. became delinquent because he stopped making his
    mortgage payments, [id. at 11].

In addition, Defendant argues the Warrants "are facially

defective and repeatedly and consistently failed to adequately

---

[4] Exhibit A is a hand-written document that Defendant sent
to his stand-by counsel to file on Defendant's behalf. See
Counsel Suppress Reply Decl. at ¶ 3. Exhibit A will be referred
to as the "Suppress Reply Memorandum." All citations to the
Suppress Reply Memorandum refer to Defendant's hand-written page
numbers.

particularize the place to be searched or the things to be
seized." [Suppress Mem. at 3.] Defendant therefore contends
the Warrants were invalid.

Even if each of the Warrants was valid, Defendant
contends each was executed in an illegal manner. According to
Defendant, Agent Crawley and the FBI exceeded the scope of the
Warrants and used the Warrants as granting "general rights of
search and seizure." [Id.]

The Motion to Suppress and the Motion for Hearing
request an evidentiary hearing, pursuant to Franks v. Delaware,
438 U.S. 154 (1978), to challenge the Crawley Affidavit.
Ultimately, Defendant seeks the suppression of all evidence
obtained as result of the searches and the dismissal of all of
the charges that were based on the illegally obtained evidence.
[Suppress Mem. at 2.] At the hearing, Defendant's Exhibits A,
B, C, E, F, H, J, O, and R were received in evidence. [Minutes,
filed 5/10/19 (dkt. no. 477), at 1.[5]]

---

[5] The Government attached Defendant's Exhibits A, B, C, E,
F, H, J, and O to its Supplemental Suppress Opposition.
Defendant's Exhibit R consists of the Office Warrant and the
Residence Warrant, which had already been filed with the
Suppress Opposition.

**DISCUSSION**

I.    **Request for a *Franks* Hearing**

        An evidentiary hearing pursuant to Franks allows
        a defendant to test the veracity of an affidavit
        supporting a warrant.  [438 U.S. 154.]  Given the
        assumption of validity underlying a supporting
        affidavit, a party moving for a Franks hearing
        must submit "allegations of deliberate falsehood
        or of reckless disregard for the truth, and those
        allegations must be accompanied by an offer of
        proof."  Franks, 438 U.S. at 171.  Furthermore,
        the movant must show that any omitted information
        is material.  United States v. Kiser, 716 F.2d
        1268, 1271 (9th Cir. 1983).  The movant bears the
        burden of proof and must make a substantial
        showing to support both elements.  See United
        States v. Garcia-Cruz, 978 F.2d 537, 540 (9th
        Cir. 1992).

        The Ninth Circuit has identified five
        requirements that a defendant must satisfy before
        he is entitled to a Franks hearing: "(1) the
        defendant must allege specifically which portions
        of the warrant affidavit are claimed to be false;
        (2) the defendant must contend that the false
        statements or omissions were deliberately or
        recklessly made; (3) a detailed offer of proof,
        including affidavits, must accompany the
        allegations; (4) the veracity of only the affiant
        must be challenged; and (5) the challenged
        statements must be necessary to find probable
        cause."  United States v. DiCesare, 765 F.2d 890,
        894–895 (9th Cir. 1985).

United States v. Laulea, Cr. No. 13-00824 ACK, 2014 WL 3579642,

at *2 (D. Hawai`i July 18, 2014).  A defendant requesting a

Franks hearing is not required to present "[c]lear proof" that

the affiant made deliberate or reckless statements or omissions,

but "the defendant must make at least a 'substantial showing'

that the affiant" either made intentional or reckless statements

6

or "intentionally or recklessly omitted facts required to prevent technically true statements in an affidavit from being misleading." United States v. Gonsalves, Criminal No. 06-00080(03) SOM, 2008 WL 148938, at *7 (D. Hawai`i Jan. 16, 2008) (some citations omitted) (quoting United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985)).

Defendant has identified specific portions of the Crawley Affidavit that he contends were deliberately or recklessly false, and he has made an offer of proof, with affidavits and other documents. See DiCesare, 765 F.2d at 894-95. Defendant's offer of proof, however, does not make a "substantial showing" that Agent Crawley made deliberate or reckless representations or omissions in her affidavit. See Stanert, 762 F.2d at 781.

A. **Whether Defendant Stated He Was an Attorney**

Agent Crawley stated Defendant "personally represents himself as a [Private Attorney General] and carries badges/credentials to that effect." [Crawley Aff. at ¶ 14.] Defendant admits this. [Suppress Reply Mem. at 10 ("Every client was told that [Defendant] was a Private Attorney General . . . .").] Defendant has also described himself as a Private Attorney General in the instant case. See, e.g., Suppress Mem. at 1; Suppress Reply Mem. at 1. Defendant emphasizes that: he told each of his clients he was not a member

of any bar; and each client granted him a power of attorney.
[Suppress Mem. at 5.] Defendant also states his clients
received an explanation of the difference between a Private
Attorney General and an "attorney in fact." [Suppress Reply
Mem. at 10.] Thus, the statement in the Crawley Affidavit that
Defendant represents himself as a Private Attorney General was
not a deliberately or recklessly false statement.

The Crawley Affidavit also states W.R, one of
Defendant's clients, reported that he met with Defendant after
"a mass sign-up" session at the Democrat Street office, and
Defendant "represented himself as an attorney and stated he knew
the law book inside-out." [Crawley Aff. at ¶ 33.] To the
extent Defendant asserts W.R.'s statement was false, Defendant
is challenging W.R.'s veracity, not Agent Crawley's. See
DiCesare, 765 F.2d at 895 (stating only the affiant's veracity
must be challenged to obtain a Franks hearing). Defendant has
presented no evidence that Agent Crawley made deliberately or
recklessly false statements about W.R. Defendant has not made a
substantial showing that Agent Crawley deliberately or
recklessly made false statements about Defendant's
representation that he is either an attorney or a Private
Attorney General. Further, Agent Crawley's statements about
those representations are not necessary to support the
magistrate judge's probable cause finding. Defendant is not

entitled to a _Franks_ hearing to challenge Agent Crawley's statements that Defendant held himself out as an attorney and a Private Attorney General.

**B.    Instruction to Stop Paying Their Mortgage**

Defendant argues Agent Crawley lied when she stated that Defendant instructed his clients to stop paying their mortgages and to make their payments to MEI instead. [Suppress Reply Mem. at 9.] What the Crawley Affidavit stated is that MEI was

> offering a mortgage reduction program to clients in Hawaii and the mainland. The program guarantee[d] a reduction of overall loan amount, loan term, and monthly mortgage payment by half. After an initial sign-up fee to MEI, clients are instructed to cease all payments to their mortgage lender and to direct all future mortgage payments to MEI. However, because MEI [wa]s not a licensed mortgage company with the ability to create, service, or modify loans, the client's loan with their actual mortgage lender continue[d] to become increasingly delinquent as MEI d[id] not have authority, or make an attempt, to satisfy the client's mortgage before reassigning it to MEI.

[Crawley Aff. at ¶ 8.] The Crawley Affidavit also stated Defendant instructed clients to stop making payments to their mortgage lender and make the payments to MEI instead. [_Id._ at ¶ 32.]

Crawley's statements were supported by statements from MEI clients, such as that of D.A., who stated that, during a meeting in which Henry Malinay ("Malinay") explained the

mortgage reduction program to her, Malinay told her to stop
paying her mortgage.  At that meeting, Malinay collected various
fees from D.A.  D.A. and her husband later met with Defendant at
the Democrat Street office to sign more paperwork.  [Id. at
¶ 34.]  Agent Crawley stated her "investigation has currently
discovered one (1) of D.A.'s checks deposited into an Extraco
Bank checking account ending in 678 that is held by MEI, with
[Defendant] and Barbara [Williams] as signatories."  [Id.]

Agent Crawley also notes that Malinay testified during
his deposition in a bankruptcy proceeding that Defendant
recruited Malinay to make referrals to Defendant's program.
[Id. at ¶ 28.]  Further, a confidential source ("CS") who was a
MEI client, told the FBI that Malinay said the program would
reduce the CS's mortgage by fifty percent.  Agent Crawley states
she observed the CS drop off a mortgage payment to Cabebe at the
Aiea residence.  [Id. at ¶ 35.]  "Bank statements of the [CS]'s
checking account show the funds were withdrawn the following
week."  [Id.]

Defendant asserts MEI was "not in business to create,
service or modify loans in any state and was set up as a
Mortgage and Foreclosure Assistance Company, not as a lender,
servicer or modifier of any pre-existing loan."  [Suppress Reply
Mem. at 5.]  As to Crawley Affidavit's claim that MEI guaranteed
a reduction in clients' mortgage loan amounts, terms, and

monthly payments, Defendant states: "The guarantee [wa]s for
clients who weren't facing foreclosure and never guaranteed a
reduction in their loan amount, loan term but guaranteed that if
they weren't in foreclosure, with [Defendant's] program their
monthly 'mortgage service payment' is half of what their
'mortgage payment' was to their original alleged lender." [Id.
at 3.] Defendant also asserts Malinay and others used "Mortgage
Enterprise (ME) a fraudulent copy cat company," which Malinay
and the others set up, [id. at 6-7,] but which is not affiliated
with MEI. Defendant ultimately challenges the statements by
Malinay, D.A., the CS, and other similar persons described in
the Crawley Affidavit. Defendant has presented no evidence that
Agent Crawley made deliberately or recklessly false statements
about those persons. Defendant's challenge to the veracity of
those persons does not constitute a challenge to Agent Crawley's
veracity. Defendant is not entitled to a Franks hearing to
challenge Agent Crawley's statements that Defendant told clients
to stop paying their mortgages.

C.  **Creation of False Documents**

        The Crawley Affidavit stated Defendant "and others
made material misrepresentations, created false documents and
created false appearances that MEI was authorized to perform the
services it was offering." [Crawley Aff. at ¶ 9.] Further,
Defendant was CLOA's owner and operator, [id. at ¶ 14,] and

> CLOA prepares the mortgage paperwork, files it
> with the State of Hawaii Bureau of Conveyances
> (BOC), and instructs the BOC to mail the BOC
> recorded copy to MEI at [redacted], Killeen,
> Texas 76540 as MEI is alleged to be the new
> mortgage holder.  Williams advises clients if
> they receive any communication from their
> mortgage lender, notifying them of delinquency of
> loan payments, to refer their lender to CLOA and
> their legal representative, Williams. . . .

[Id. at ¶ 32.]  Although Defendant argues this statement in the
Crawley Affidavit was deliberately or recklessly false because
MEI was only operating as a mortgage and foreclosure assistance
program, see, e.g., Suppress Reply Mem. at 4, The Crawley
Affidavit does not identify witnesses who provided this
information.  Thus, Defendant's position is only challenges to
Agent Crawley's veracity.  Defendant asserts "[n]othing [he]
said was a misrepresentation, neither none of the documents
false or created false appearances."  [Id.]  However, the
affidavits and other evidence Defendant submitted do not
contradict Agent Crawley's statements about Defendant's role in
CLOA or her statement that CLOA created mortgage documents for
MEI clients.  Defendant has failed to make a substantial showing
that Agent Crawley's statement that Defendant made
misrepresentations and created false documents was deliberately
or recklessly false.  Defendant is not entitled to a Franks
hearing to challenge Agent Crawley's statements that Defendant
made misrepresentations and created false documents.

12

**D.** **Complaints to the State Agency**

The Crawley Affidavit stated:

> On or about February 23, 2015, I received a
> call from a [State of Hawai`i Department of
> Commerce and Consumer Affairs, Division of
> Financial Institutions ("DFI"),] Criminal
> Investigator who reported to the FBI a number of
> complaints they had received recently from
> distressed homeowners.  The complainants reported
> of a mortgage reduction program they had signed
> up for and paid money toward, only to
> subsequently have their property foreclosed
> on. . . .

[Crawley Aff. at ¶ 27.]  Defendant asserts Agent Crawley knew
these reports were not against MEI or CLOA, and she knew the
complaints were against Malinay or another person affiliated
with ME.  [Suppress Reply Mem. at 6-7.]  According to Defendant,
Agent Crawley intentionally omitted those facts "to make it
appear as if these complaints were made against [Defendant] and
MEI."  [Id. at 6.]

First, "a defendant cannot make a 'substantial
showing' by arguing that the affidavit did not contain every
fact known to the affiant."  Gonsalves, 2008 WL 148938, at *7
(citing United States v. Ventresca, 380 U.S. 102, 108, 85 S. Ct.
741, 13 L. Ed. 2d 684 (1965)).  Further, at the time she signed
the affidavit, Agent Crawley had information that Malinay was
working – or, at a minimum, had worked – with Defendant, see
supra § I.B, and Defendant's challenge to that information
contests the credibility of persons other than Agent Crawley.

13

Defendant has therefore failed to make a substantial showing
that the alleged omission of the subject of the homeowner
complaints referenced in paragraph 27 was an intentional or
reckless omission of fact.  Defendant is not entitled to a
Franks hearing to challenge Agent Crawley's statements about
homeowner complaints to the DFI

        **E.**   **M.V.'s Mortgage**

        The Crawley Affidavit stated:

> On November 19, 2015, M.V., a client of MEI,
> told the FBI his sister-in-law introduced him to
> Malinay where Malinay told M.V. he was working
> with Williams and would be able to cut M.V.'s
> mortgage in half through their mortgage reduction
> program.  M.V. filled out some paperwork and paid
> Malinay a $900 enrollment fee to sign up for the
> program.  Malinay told M.V. to cease all mortgage
> payments, which were currently over $2,000 a
> month, to his current lender and to begin sending
> payments, now only $900 through the program, to
> MEI.  When M.V. began the program, he was not
> delinquent on his original loan nor was his
> property in foreclosure.  My investigation has
> discovered eleven (11) of M.V.'s checks, all
> having been deposited into an Extraco Bank
> checking account ending in 678 that is held by
> MEI, with [Defendant] and Barbara [Williams] as
> signatories.

[Crawley Aff. at ¶ 36.]  Defendant appears to acknowledge that
M.V. was a MEI client who Malinay recruited to the program, but
Defendant asserts "Malinay did not notify [Defendant] nor had
the proper paper work filled out for a client who was not in
foreclosure."  [Suppress Reply Mem. at 11.]  According to
Defendant: 1) by the time Defendant received M.V.'s paperwork,

M.V. was in foreclosure; 2) Defendant fought the foreclosure on M.V.'s behalf; 3) M.V. "is still in his home because of the work done by MEI, CLOA and [Defendant]"; and 4) M.V. submitted an affidavit stating that Defendant never lied to him.  [Id.]

Although Defendant asserts M.V. submitted an affidavit, that affidavit is not before this Court.  The only affidavits Defendant submitted in connection with the instant motions were by Rosy E. Thomas, Cabebe, and Angelita Pasion. [Def.'s Exhs. A-C.]  To the extent he contests the Crawley Affidavit's description of M.V.'s mortgage status, Defendant does not only challenge Agent Crawley's veracity, but also M.V.'s.  Further, the Crawley Affidavit's statements about M.V. are not necessary to find probable cause because, even without the statements about M.V., there is ample other information supporting probable cause.  Defendant has therefore failed to make substantial showing that Agent Crawley made intentional or reckless statements or omissions about M.V.  Defendant is not entitled to a Franks hearing to challenge Agent Crawley's statements about M.V.'s mortgage.

### F.    Other Allegations and Ruling

Defendant's arguments as to other allegedly intentional or reckless misrepresentations and omissions in the Crawley Affidavit fail for the same reasons as the arguments discussed *supra*.  There has been no showing that Agent Crawley

15

made intentional or reckless statements or omissions in her

affidavit.  Defendant's request for a <u>Franks</u> hearing is

therefore denied.  This Court will examine the validity of the

Warrants based on the existing record.

## II.  <u>Validity of the Warrants</u>

>            The "precise and clear" words of the Fourth
>    Amendment "require only three things" for a valid
>    search warrant:
>
>>        First, warrants must be issued by neutral,
>>    disinterested magistrates.  Second, those
>>    seeking the warrant must demonstrate to the
>>    magistrate their probable cause to believe
>>    that the evidence sought will aid in a
>>    particular apprehension or conviction for a
>>    particular offense.  Finally, warrants must
>>    particularly describe the things to be
>>    seized, as well as the place to be searched.

<u>Bill v. Brewer</u>, 799 F.3d 1295, 1300 (9th Cir. 2015) (quoting

<u>Dalia v. United States</u>, 441 U.S. 238, 255, 99 S. Ct. 1682, 60 L.

Ed. 2d 177 (1979)).

No evidence has been presented challenging the

neutrality of the magistrate judge who issued the Warrants.

Thus, the first requirement is satisfied.  As to the third

requirement, "[t]he description must be specific enough to

enable the person conducting the search reasonably to identify

the things authorized to be seized.  The purpose of the breadth

requirement is to limit the scope of the warrant by the probable

cause on which the warrant is based."  <u>United States v. Fries</u>,

16

781 F.3d 1137, 1151 (9th Cir. 2015) (ellipse, citation, and quotation marks omitted).

The Office Warrant and the Residence Warrant each includes a specific description – including photographs – of the premises to be searched.  [Suppress Opp., Exh. A at 31-32 (Attachment A), Exh. B  at 31-32 (Attachment A).]  The Crawley Affidavit includes specific examples of events in Defendant's mortgage fraud scheme that occurred at each location.  See, e.g., Crawley Aff. at ¶¶ 28, 33-35.  The Office Warrant and the Residence Warrant each has an Attachment B, which sets forth a specific description of the items to be seized, as well as a description of the procedures to be used to search digital devices.  [Suppress Opp., Exh. A at 33-39 (Attachment B), Exh. B at 33-39 (Attachment B).]  The Crawley Affidavit includes an extensive discussion of: why "there is probable cause to believe those records will be stored on that computer or storage medium"; [Crawley Aff. at ¶ 45;] why "[t]here is probable cause to believe that this forensic electronic evidence will be on any storage medium in the SUBJECT PREMISES"; [id. at ¶ 51 (emphasis in original); why it is was necessary to seize or copy the complete contents of computers and other storage media, [id. at ¶ 52;] and how the seized electronic items would be examined, [id. at ¶ 53].

The foregoing descriptions were "specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." See Fries, 781 F.3d at 1151 (citation and quotation marks omitted). The third validity requirement is therefore satisfied.

As to the probable cause requirement,

> "[t]he critical element in a reasonable search is not that the owner of the property[]" . . . to be searched "is suspected of crime." Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978).[6] Rather, "probable cause to search . . . concerns the connection of the items sought with crime and the present location of the items." United States v. O'Connor, 658 F.2d 688, 693 n.7 (9th Cir. 1981). Of course, law enforcement must demonstrate "a nexus . . . between the item to be seized and criminal behavior." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967). "[I]n the case of 'mere evidence,' probable cause" for such a nexus "must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." Id.

Bill, 799 F.3d at 1301 (some alterations in Bill). The Crawley Affidavit, read as a whole, establishes a nexus between the items to be seized and the suspected mortgage fraud scheme. Further, the Crawley Affidavit establishes a connection between the items to be seized and the location of the items at that time. See, e.g., *supra* discussion of statements in the Crawley

---

[6] Zurcher was superseded by statute on other grounds, as stated in Guest v. Leis, 255 F.3d 325, 340 (6th Cir. 2001).

18

Aff. regarding events occurring at the Democrat Street office
and Cabebe's residence; Crawley Aff. at ¶ 37 ("On November 23,
2015, the [CS] informed me that [Defendant], when in Hawaii,
resides and conducts MEI business out of the second floor
[redacted] Democrat Street and occasionally stays in a bedroom
provided by Cabebe" at her Aiea residence.).  The probable cause
requirement is therefore satisfied.

        Because all three requirements are satisfied,
Defendant's argument that the Warrants were invalid is rejected.[7]
To the extent the Motion to Suppress seeks suppression of
evidence and the dismissal of charges on the ground that the
Warrants were invalid, the Motion to Suppress is denied.

## III. **Execution of the Warrants**

        Finally, Defendant challenges the manner in which the
Warrants were executed.  Defendant contends that, even assuming
the Warrants were valid on their faces, they were executed as

---

[7] Defendant's argument that the Warrants are not supported
by probable cause because the applications did not include
evidence favorable to him is rejected because, as previously
noted, the affiant is not required to include all information
known to her, and there is no evidence that Agent Crawley
intentionally or recklessly omitted material information from
her affidavit.  Defendant's argument that defects in the
indictments are evidence that the Warrants were not supported by
probable cause is also rejected.  See Dawson v. City of Seattle,
435 F.3d 1054, 1063 (9th Cir. 2006) (noting that, in reviewing a
probable cause determination, a court is limited to the
information contained in the application for a search warrant).

"general searches," which are unconstitutional.  Cf. Maryland v. Garrison, 480 U.S. 79, 84 (1987) ("The manifest purpose of th[e] particularity requirement [in the Warrant Clause of the Fourth Amendment] was to prevent general searches.").

The Ninth Circuit has stated:

> The principles relating to execution of search warrants are well known.  To pass constitutional muster, the "search must be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed." United States v. Rettig, 589 F.2d 418, 423 (9th Cir. 1978).  When the defendant challenges the manner in which a search was conducted, we examine the language of the search warrant and ask whether "a reasonable officer [would] have interpreted the warrant to permit the search at issue." United States v. Gorman, 104 F.3d 272, 274 (9th Cir. 1996).  Thus, a search authorized by a valid warrant may nonetheless be unreasonable if the officers conducting the search exceed the scope of the warrant and, for example, begin looking for files that are not related to the subject of the search warrant.  See United States v. Hill, 459 F.3d 966, 978 (9th Cir. 2006).

United States v. Johnston, 789 F.3d 934, 941 (9th Cir. 2015) (alteration in Johnston).

According to Defendant, while executing the Warrants, FBI agents seized:

> documents and files of various content and matters including:
>
> * Business Cards
> * Private Attorney General Stamp
> * Religious CD's & DVD's
> * Music CD's

20

```
* Movie DVD's
* ID Badges
* Motorola Flip Phone
* Two Samsung Flip Phones
* Black Cell Phone
* Black & Silver Cell Phone
* CLOA stamp[.]
```

[Suppress Mem. at 11-12.] Defendant argues "[n]o investigative agent acting in good faith could possibly believe these files were relevant to the investigation outlined in" the Crawley Affidavit. [Id. at 12.]

A.  **Office Warrant**

According to the Receipt for Property attached to the return for the Office Warrant ("Office Property Receipt"), the majority of the documents seized were described as "mortgage documents," "business documents," "legal documents," "financial documents," "mailing documents," "check documents," "client letter," or a combination of such documents. [Suppress Opp., Exh. A at 41.] These documents fall within the categories specifically identified in Attachment B to the Office Warrant. See id. at 34, ¶ 3 ("any records, documents, programs, applications, or materials pertaining to mortgage loans or mortgage reduction programs, or when MEI or CLOA is listed"), id. at 34, ¶ 4 ("[a]ny MEI or CLOA financial and accounting records, documents, programs, applications, or materials of MEI or CLOA, its employees or affiliated associates"); id. at 35, ¶ 6 ("[a]ny records, documents, programs, applications, or

materials containing correspondence relating to the mortgage reduction program, or associates, employees, clients, or potential clients of MEI or CLOA"). Some similar items – undescribed envelopes, documents, and notebooks – arguably do not fall within these categories. [Suppress Opp., Exh. A at 41.] However, such items "are so innocuous . . . that their seizure was harmless in the overall execution of the [Office W]arrant." See United States v. Rodriguez, 869 F.2d 479, 487 (9th Cir. 1989).

In executing the Office Warrant, the FBI also uncovered "ID badges, business cards, stamps" and another group of business cards. [Suppress Opp., Exh. A at 41.] Defendant recognizes that the seized stamps state "Private Attorney General" and "CLOA." [Suppress Mem. at 11-12.] The badges, business cards, and stamps fall within the scope of the Office Warrant because they are "materials pertaining to mortgage loans or mortgage reduction programs," including MEI or CLOA. [Suppress Opp., Exh. A at 34, ¶ 3.]

Defendant also challenges the seizure of a "Motorola flip phone" and "two Samsung flip phones with chargers." See id. at 41. The phones fall within the scope of the Office Warrant. Id. at 34-35, ¶ 5 ("[a]ny address books (including electronic address books, such as devices commonly referred to as electronic organizers), message logs, or other notation of

messages maintained by Williams, Cabebe, MEI, or CLOA with information relating to associates, employees, clients, or potential clients of MEI or CLOA"); id. at 35, ¶ 6 (quoted *supra*).

**B.    Residence Warrant**

The types of items listed on the Receipt for Property attached to the return for the Residence Warrant ("Residence Property Receipt") are the same as the types of items listed on the Office Property Receipt.  Compare Suppress Opp., Exh. A (Office Warrant) at 41, with id., Exh. B (Residence Warrant) at 41-42.  Further, Attachment B of the Office Warrant, which identifies the items to be seized, is identical to Attachment B of the Residence Warrant.  Compare Suppress Opp., Exh. A at 33-39, with id., Exh. B at 33-39.  Thus, the analysis of whether the FBI exceeded the scope of the Residence Warrant during the execution of the warrant is the same as the analysis of the execution of the Office Warrant.

**C.    Summary**

Defendant also asserts the FBI seized religious and music audio discs and religious and movie video discs. [Suppress Mem. at 11.]  Neither the Office Property Receipt nor the Residence Property Receipt list such items.  [Suppress Opp., Exh. A at 41; id., Exh. B at 41-42.]  The Government also states such items were not seized pursuant to the Warrants at issue in

23

the instant case.  [Suppress Opp. at 20.]  The Government states

a "black CD case containing 46 CDs, mostly with handwritten

titles, was seized as part of the FBI Miami investigation," and

it offered to return the case to Defendant's stand-by counsel

after it confirmed the discs in the case contained no relevant

information.  [Id.]  No evidence has been presented to dispute

the Government's representations about the discs obtained from

the Miami investigation.

Thus, Defendant has not shown that either: 1) the

items seized by the FBI either "exceed the scope of the

warrant"; or 2) the FBI "look[ed] for [items] that [we]re not

related to the subject of the [W]arrant[s]."  See Johnston, 789

F.3d at 941.  This Court therefore concludes that the Warrants

were property executed.[8]  To the extent the Motion to Suppress

seeks suppression of evidence and the dismissal of charges on

the ground that the manner in which the Warrants were executed

was improper, the Motion to Suppress is denied.

### CONCLUSION

On the basis of the foregoing, Defendant's Motion for

Suppression of Evidence, filed March 19, 2019, and Motion for

---

[8] In light of this Court's ruling, it is not necessary to
reach the Government's alternate argument that, if any evidence
was improperly seized, the good faith exception applies.

Evidentiary Hearing on Motion to Suppress, filed March 25, 2019,

are HEREBY DENIED.

       IT IS SO ORDERED.

       DATED AT HONOLULU, HAWAI`I, July 26, 2019.



                               /s/ Leslie E. Kobayashi
                               Leslie E. Kobayashi
                               United States District Judge

**<u>USA VS. ANTHONY T. WILLIAMS</u>; CR 17-00101 LEK; ORDER DENYING DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE AND DEFENDANT'S MOTION FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS**