KENJI M. PRICE  #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
GREGG PARIS YATES  #8225
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
E-Mail:      Ken.Sorenson@usdoj.gov
              Gregg.Yates@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 17-00101-01 LEK |
| | ) |
| Plaintiff, | ) GOVERNMENT'S TRIAL BRIEF; |
| | ) CERTIFICATE OF SERVICE |
| vs. | ) |
| | ) TRIAL:       February 3, 2020 |
| ANTHONY T. WILLIAMS,  (01) | ) TIME:        9:00 A.M. |
| | ) JUDGE:      Leslie E. Kobayashi |
| | ) |
| Defendant. | ) |
| | ) |

### GOVERNMENT'S TRIAL BRIEF

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..................................................................i-ii

I.     Introduction..........................................................................1

II.    Factual Background ...............................................................1

III.   Prior Convictions and Court Orders ......................................5

       A.    Florida Felony Convictions.........................................5

       B.    Judge Mollways' Order Re:  Williams' Appearing as a Legal
             Representative in Court.............................................6

IV.    Government Charts and Summaries........................................7

V.     The Government's Case-in-Chief..........................................8

       A.    Expert Witness Testimony ...........................................9

       B.    FBI Forensic Accountant Laurice Otsuka.........................9

       C.    Simon Klevansky ......................................................10

       D.    Cindy Maglasang......................................................10

       E.    Percipient Witness Testimony......................................10

       F.    Miscellaneous Evidence of Intent ................................11

       G.    Tax Information........................................................12

VI.    Co-conspirator and Agency Statements ................................13

VII.   The Jencks Act and FBI 302s.............................................14

VIII.  Conclusion ......................................................................18

## TABLE OF AUTHORITIES

Cases                                                                 Page(s)

*United States v. Kuiken*, 198 Fed. Appx. 643 (9th Cir. 2006) ............................. 12

*Palermo v. United States*, 360 U.S. 343 (1959) ............................................... 15, 17

*United States v. Claiborne*, 765 F.2d 784 (9th Cir. 1985) ..................................... 17

*United States v. Donato*, 99 F.3d 426 (D.C. Cir. 1996) ........................................ 16

*United States v. Epstein*, 426 F.3d 431 (1st Cir. 2005) ......................................... 12

*United States v. Farley*, 2 F.3d 645 (6th Cir. 1993) ............................................. 16

*United States v. Foley*, 871 F.2d 235 (1st Cir.1989) ............................................ 17

*United States v. Johnson*, 262 F.R.D. 410 (D. Del., 2009) .................................... 12

*United States v. Johnson*, 594 F.2d 1253 (9th Cir. 1979) ....................................... 7

*United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003) ...................................... 16

*United States v. Lesniewski*, 2013 WL 3776235 (S.D.N.Y. 2013) ........................ 12

*United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016) ............................................ 5

*United States v. Morris*, 957 F.2d 1391 (7th Cir.1992) ......................................... 16

*United States v. Price*, 542 F.3d 617 (8th Cir. 2008) ............................................ 16

*United States v. Roseboro*, 87 F.3d 642 (4th Cir. 1996) ........................................ 16

*United States v. Williams*, 998 F.2d 258 (5th Cir. 1993) ........................................ 16

i

| Statutes and Rules | Page(s) |
|---|---|
| 18 U.S.C. § 3500 | 14 |
| 18 U.S.C. § 3500(e) | 15 |
| Fed. R. Evid. 100 | 7 |
| Fed. R. Evid. 404(b) | 5-6 |
| Fed. R. Evid. 702 | 9 |
| Fed. R. Evid. 703 | 9 |
| Fed. R. Evid. 705 | 9 |
| Fed. R. Evid. 801(d)(2) | 13 |
| Fed. R. Evid. 801(d)(2)(E) | 13 |
| Fed. R. Evid. 1006 | 7 |

## I.   <u>Introduction</u>

The United States of America, by its undersigned counsel, Kenneth M. Sorenson and Gregg Paris Yates, Assistant United States Attorneys, hereby submits its Trial Brief to provide a preview of the government's evidence and alert the Court to potential issues that may arise during the course of the trial.

Defendant Anthony Williams is charged in a thirty-two (32) count Superseding Indictment with devising a scheme to defraud to obtain money from distressed homeowners seeking relief from their mortgage obligations.  Counts 1 through 15 charge Williams with substantive counts of wire fraud alleging that he caused the transmission in interstate commerce of wire communications for the purpose of effectuating his scheme to defraud.  Counts 16 through 32 charge Williams with using both mailed and private commercial interstate carriers for the purpose of effectuating the scheme to defraud.

## II.   <u>Factual Background</u>

The government's evidence at trial will show that from a precise date unknown, but by at least mid-2012 to late 2015, Williams was the ringleader of a widespread, nationwide scheme to defraud homeowners and banking institutions. Williams' scheme spanned across multiple states, including Florida, Tennessee,

Arizona, California, and Hawaii.  Williams effected his scheme through a number
of deceptive practices, false representations, and omissions of material fact.

In order to provide himself with the appearance of legitimacy, Williams
founded two entities:  Mortgage Enterprise Investments (MEI) and the Common
Law Office of America (CLOA).  Williams also proclaimed himself to be a
"Private Attorney General" and wore a badge on his belt emblazoned with the
inscription of "Sovereign Peace Officer."  Williams told his clients he was either
an attorney, or a private attorney general, and declared that he had arrest authority
and that he could "handcuff" people.  Disturbingly, Williams was known to carry a
set of handcuffs on his person along with his "badge."  Williams also carried
credentials identifying himself as a "Private Attorney General," which he used to
great effect in convincing homeowners to trust him and his mortgage rescue scam.
Homeowners who testify at trial will state that based on Williams' representations
to them, they believed him to be an attorney and to have arrest authority.  They
will also testify that based on his representations that they believed he could
eradicate their existing mortgages.

Williams' practice, usually through intermediaries, would be to schedule
meetings with homeowners in mortgage distress, or simply seeking assistance in
meeting their mortgage obligations.  At these meetings, Williams would tell

2

homeowners that the government was corrupt, their mortgages were fraudulent, and that he could reduce their mortgage obligations and terms by half.  Williams told homeowners that for a fee, usually in the $1,500 to $3,500 range, they could qualify for Williams' "loan servicing" services.  Williams' services required homeowners to pay him one-half of their regular monthly mortgage for one-half of their remaining mortgage term.  To effect his scheme and inject it with the appearance of legitimacy, Williams would file at the Hawaii Bureau of Conveyances a UCC Filing statement naming the homeowner as both the debtor and the creditor.  The docketed filing statement provided that the homeowner's existing mortgage was "discharged," thereby purportedly (and falsely) terminating the rights of the homeowner's mortgage company to its duly filed and docketed mortgage interest in their homes.  Williams also had homeowners sign undated bogus mortgage and note documents that named MEI as the creditor, even though neither Williams nor MEI had loaned any funds to the homeowners, which Williams would later complete and also record at the Hawaii Bureau of Conveyances.

William had a number of co-conspirators who assisted him in operating his scheme, including his mother, Barbara Williams, and Anabel Cabebe, a notary, whose home he used for recruiting homeowner victims.  Barbara Williams has pled

guilty to misprision of felony for her role, and Cabebe has pled guilty to conspiracy to commit wire fraud.

The government's evidence at trial will show that Williams was not an attorney. Our evidence will show that his entity "CLOA" was a sham front purporting to be a practicing law firm. The CLOA website listed the services CLOA performed, and these included representation in litigation, powers of attorney, and the drafting of wills and trusts and other legal services. The government's evidence will show that no one associated with CLOA was a licensed attorney.

In September 2013, Williams went into custody on unrelated charges in the State of Georgia and was incarcerated for nearly a year. During this period, four of Williams' co-conspirators hijacked his scam and began directing MEI payments to their newly formed company, Mortgage Enterprise (ME). They also began recruiting new homeowners using Williams same false representations. When Williams was released in 2014, he returned to Honolulu and filed complaints with governmental agencies that ME had wrongfully appropriated MEI's mortgage rescue scam. (Except he did not call it a scam).

By November of 2015, with multiple homeowners losing their homes to short sales or foreclosure, and others in varying forms of default, Williams was arrested by federal agents.

### III.   <u>Prior Convictions and Court Orders</u>

A.   <u>Florida Felony Convictions</u>

On June 23, 2017, Williams was convicted in Broward County, Florida of grand theft for his operation of his rescue mortgage scheme in Florida.  Prior to this, on February 24, 2016, Williams had also been convicted of the unauthorized practice of law.  The facts underlying these convictions are direct proof of the existence of the charged scheme, that is, they arise from the same scheme to defraud homeowners through the sale of a bogus mortgage rescue service.  In Florida, Williams was convicted of marketing a service whereby he, as an attorney, could perform the magical act of making mortgages disappear.  Evidence of the Florida convictions is not subject to Rule 404(b) since it is direct proof of the defendant's intent in committing the charged scheme to defraud.  To put it more bluntly, Rule 404(b) addresses "other" acts.  The Florida conviction involves the same scheme to defraud with Florida victims.  Williams, using MEI and CLOA, defrauded Florida homeowners by telling them he was a "private attorney general" who could eradicate their mortgage for a fee.  See *United States v. Loftis*, 843 F.3d

5

1173, 1178 (9th Cir. 2016) (evidence of additional uncharged travel company

victims admissible as inextricably intertwined as evidence of intent).  Similarly, in

*United States v. Sayakhom*, 186 F.3d 928, 933 (9th Cir. 1999), the defendant was

charged with multiple counts of mail fraud arising from her fraudulent sale of life

insurance products through a single business entity (AAC).  After the government

effectively shut down AAC's operation, the defendant began operating through a

second entity (MAPS), "in order to continue the unlawful sale of life insurance

products."  *Id.* at 937–38.  At trial, the district court allowed the government to

introduce evidence regarding the defendant's operation of MAPS.  *See id.* at 937.

Explaining that "AAC and MAPS were part of an ongoing **scheme** to **defraud**," the

Court held "[t]he MAPS evidence is not subject to exclusion under **Rule 404(b)**

because it is **inextricably intertwined** with the indicted crimes."  *Id.* at 937–38.

The United States does not intend to introduce evidence of defendant's Florida

conviction during its case in chief.  It will, however, use such evidence during cross-

examination in the event William's testifies and offer affirmative evidence of the

conviction during rebuttal.

B.  Judge Mollways' Order Re:  Williams'
     Appearing as a Legal Representative in Court

On August 5, 2013, Williams filed a civil action in federal District Court on

behalf of Henry Malinay, a homeowner client who later became a co-conspirator,

6

against the Hawaii State Circuit Judge who presided over Malinay's foreclosure proceeding.  The civil action was assigned to the Hon. Judge Susan Mollway. Williams sought to represent Malinay as a "Private Attorney General."  Judge Mollway rejected Williams appearance issuing an Order that unequivocally advised him that he could not practice law or represent litigants in Court.  In spite of this clear directive, Williams continued to perpetrate his fraudulent loan servicing scam and falsely represent to clients that he could represent them in Court.  At trial, the United States will introduce Judge Mollway's Order as proof of his knowledge that he could not represent mortgage rescue victims in court.

## IV.   <u>Government Charts and Summaries</u>

At trial, the government will seek to admit summaries of Williams' and MEI's banking records as evidence of the amount of funds Williams collected from victim homeowners.  Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.  Fed. R. Evid. 100

*See United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979), "[T]he purpose of Rule 1006 is to allow the use of summaries when the volume of

documents being summarized is so large as to make their use impractical or impossible[.]"

Exhibits O-1 through O-3 summarize account information from the multiple bank accounts associated with Williams' mortgage relief scheme.  The charts summarize voluminous bank records from Bank of America, Extraco, First Hawaiian Bank, and Wells Fargo into an understandable and presentable format. of funds deposited into accounts associated with Williams by the 156 individuals the government asserts were victims of the debt relief scheme operated by Williams.  The government does not intend to introduce the underlying records into evidence.  It has provided all underlying records to Williams as discovery and provided him with the summary for review and inspection.

## V.   __The Government's Case-in-Chief__

The government's case-in-chief will consist of percipient witness testimony from approximately 10 MEI victims who will provide evidence of their interactions with Anthony Williams.  Additionally, the government will call to the stand two expert witnesses:  FBI Forensic Accountant Laurice Otsuka and bankruptcy attorney Simon Klevansky.

//

//

A.    Expert Witness Testimony

Pursuant to Rules 702, 703 and/or 705 of the Federal Rules of Evidence, the government intends to introduce the testimony of two expert witnesses who possess specialized knowledge concerning residential mortgages, creditor's rights law and forensic accounting.

B.    FBI Forensic Accountant Laurice Otsuka

Ms. Otsuka will first testify on the subject matter of mortgages in order to provide the jury with a firm factual understanding of the mortgage process and related documents.  Ms. Otsuka has previously been qualified as an expert in federal court on this same subject matter.  (*See United States v. Lindell*, *et als.* Crim. No. 13-00512 DKW).

Ms. Otsuka will be called later in the trial to testify that she reviewed the banking records of MEI and generated charts summarizing those accounts. Ms. Otsuka will testify as to the content those charts which detail the amount of victim funds deposited into MEI bank accounts.  While Ms. Otsuka is a trained forensic accountant, she will not be testifying as an expert in this role, but simply to her examination of bank accounts and the charts she created to summarize them.

//

//

9

C.      Simon Klevansky

Mr. Klevansky specializes in creditor's rights law and represents the

bankruptcy trustee in bankruptcy related litigation.  Mr. Klevansky will testify on

the subject matters of creditor's rights, the creation of secured interests such as

mortgages, the Bureau of Conveyances and the notice provisions of state law.

Mr. Klevansky will also testify on the subject matter of UCC Financing

Statements, including their purpose and use.

D.      Cindy Maglasang

Ms. Maglasang is a former FBI forensic computer examiner.  She will testify

as to the forensic techniques utilized to image the hard drives seized during the

investigation of the case.

E.      Percipient Witness Testimony

The United States intends to call multiple homeowners who fell victim to

Williams' scheme.  These homeowners will testify as to how they came to meet

Williams, the false representations that he made to them as part of his sales pitch,

and other interactions that they had with him and his co-conspirators.  The

homeowners will testify that they relied upon these representations and stopped

paying their mortgage payments and instead paid Williams and MEI.  The United

States also intends to call the mortgage servicers and note holders of the

10

homeowner's mortgage notes to testify to the payment history of the homeowner

witnesses, and their actions when the homeowners stopped paying off their loans,

including entering into foreclosure proceedings.  The United States also intends to

call witnesses from the Hawaii State Bar Association and the Hawaii Department

of Financial Institutions to testify that, at no time, has Williams been licensed to

provide mortgage services or practice law in Hawaii.  The United States also

intends to call to the stand representatives from the Bureau of Conveyances to

testify regarding the bogus documents that Williams and MEI had filed or caused

to be filed on behalf of the homeowner victims.

      F.    <u>Miscellaneous Evidence of Intent</u>

      The United States also intends to call a witness from the Hawaii Bar

Association to prove that Williams is not now, nor has he ever been, a member of

the Hawaii State Bar.  A witness from the State of Hawaii Department of Financial

Services will testify that neither Williams, nor MEI, were licensed to perform loan

servicing in Hawaii.  U.S. Postal Inspector Brian Shaugnessy will testify that

Williams was using a fabricated mail stamp to send scheme-related mail to his

mother and others.  FBI Special Agent Joe Lavelle will testify that when Williams

was arrested on these charges in Florida he possessed multiple official appearing

identity documents, including a "sovereign police officer" badge, various

credentials identifying Williams as a "Private Attorney General" and a set of handcuffs.  Witnesses will testify that Williams told them that he had the authority to handcuff people, which further led them to believe that his bogus representations that he could eliminate their mortgages were credible.

G.    Tax Information

Tax information can play an important role in proving the intent element of a scheme to defraud.  The United States will introduce evidence that during the operation of his scheme to defraud, in which he earned hundreds of thousands of dollars, Williams failed to report any income to the Internal Revenue Service. Multiple courts have reviewed the admission of the non-reporting of criminally derived income from fraud schemes and found it to be both intrinsic and admissible.  *See United States v. Epstein*, 426 F.3d 431 (1st Cir. 2005) (Defendant's tax return was intertwined with the crime because the tax return reports the income that he received from the *fraudulent* scheme.  *See also, United States v. Johnson,* 262 F.R.D. 410, 415 (D. Del., 2009) (tax return evidence intrinsic where the unreported income is a fruit of the charged fraudulent scheme.) In *United States v. Lesniewski*, 2013 WL 3776235 (S.D.N.Y. 2013), the court found tax return evidence "inextricably intertwined" with the charged disability fraud case stating that the defendant's "failure to disclose or his decision to

12

underreport income helps complete the story of [the] charges. *Id*. at 7. Finally, in *United States v. Kuiken*, 198 Fed. Appx. 643 (9th Cir. 2006) (unpublished) the Court found that the district court did not abuse its discretion in admitting evidence that the defendant had not filed tax returns or had underreported income finding it relevant to the defendant's treatment of investor funds. *Id*. at 646.

Here, the money and benefits Williams derived from the alleged scheme to defraud flowed to him as substantial income, which he then failed to report to the IRS. Williams failure to report the receipt of fraudulently derived income is evidence of him secreting the fruits of his unlawful activity from the Internal Revenue Service.

## VI.    Co-conspirator and Agency Statements

Federal Rule of Evidence 801(d)(2) permits the admission of statements offered against an opposing party. The government's evidence at trial will show that during the operation of his scheme, Williams employed multiple people to market his business to victims, including Annabel Cabebe, Henry Malinay, Barbara Williams, and others. These individuals were all authorized to make statements in furtherance of the scheme to prospective victims, and acted within the scope of their agency and/or employment with Williams. Additionally, these individuals were coconspirators of Williams and their statements are admissible

13

pursuant to Fed. R. Evid. 801(d)(2)(E).  Accordingly, the United States will seek to admit relevant statements made by both Williams and his agents/coconspirators to victims at the trial of this case.

## VII.   The Jencks Act and FBI 302s

Government counsel has disclosed an extensive number of FBI 302s in this case.  While these reports are not generally discoverable, we have made a large number of them available to the defense.  FBI 302s are memorandums of interview in which agents record their recollections of witness interviews in writing. Because these reports are sometimes abused during trial, we brief this issue only to apprise the Court of the nature of our objections should such an effort to abuse the reports occur.

FBI 302s turned over to the defense in this case are not "statements" of government witnesses.  They were not drafted by the witnesses, and the witnesses had no editorial role in what agents decided to write, or not write.  To provide for full and fair cross-examination, the Jencks Act requires that after a witness for the United States testifies on direct examination, the government must provide the defense with any statements made by the witness that relates to the subject of his or her testimony.  See 18 U.S.C. § 3500.  A statement within the meaning of the Jencks Act is defined as "a written statement made by said witness and signed or

14

otherwise adopted or approved by him;" a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously;" or a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e).  In *Palermo v. United States*, 360 U.S. 343, 349 (1959), the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements for impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense."  *Id.* at 352.  The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced."  *Id.* at 352–53.

Consistent with *Palermo*, FBI 302s are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute.  Unless the witness has reviewed and affirmatively adopted the FBI 302s, the 302s are not statements of the witness under subsection (e)(1) of the Jencks Act.  Moreover, because the 302s are written after interviews are completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness' statement under subsection (e)(2).

Every circuit court to address the question, including the Ninth Circuit, has held that FBI 302s are not discoverable under the Jencks Act. *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable under ... the Jencks Act"); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report ... are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); *United States v. Farley*, 2 F.3d 645, 654–55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved ... it was not clearly erroneous ... to deny defendants access to the FBI 302"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir.1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted ... and further because they are

16

not a verbatim recital ... but rather only an agent's summary."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir.1989) ("It is plain that the 302s are not substantially verbatim recitals ... and recorded contemporaneously."); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent ... the agents' selection of certain information ... the district court properly characterized the summaries as non-Jencks Act material"), abrogated on other grounds by *Ross v. Oklahoma*, 487 U.S. 81 (1988).

Accordingly, the government will object to any use of FBI 302s to impeach witnesses on the basis of inconsistent statements, because the statements are not the statements of the witnesses themselves.  Government counsel will object to the defendants in this case quoting, publishing or suggesting to the jury in any way the contents of an FBI 302 or that an FBI 302 is a statement of a witness.  As the Court stated in *Palermo*, it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."  *Palermo*, 360 U.S. at 350.

Moreover, Williams has listed a number of FBI 302s on his exhibit list.  For the reasons articulated above, the United States will object to the entry into evidence of FBI 302s at trial.

## VIII.  **Conclusion**

Should additional matters deserving of the Court's pretrial attention come to

light, the United States will take appropriate measures to raise them with the Court.

DATED:  January 22, 2020, at Honolulu, Hawaii.

KENJI M. PRICE
United States Attorney
District of Hawaii

*/s/ Gregg Paris Yates*
By_____
    KENNETH M. SORENSON
    GREGG PARIS YATES
    Assistant U.S. Attorneys

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

Lars Isaacson, Esq.                    hawaii.defender@earthlink.net

Attorney for Defendant
ANTHONY T. WILLIAMS

Served by First Class Mail on or by January 22, 2020:

Anthony T. Williams
Register No. 05963-122
Inmate Mail
FDC Honolulu
PO Box 30080
Honolulu, HI   96820

DATED:  January 22, 2020, at Honolulu, Hawaii.


*/s/ Dawn Aihara*
_____