```
                UNITED STATES DISTRICT COURT

                     DISTRICT OF HAWAII
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     vs.<br><br>ANTHONY T. WILLIAMS,<br><br>            Defendants. | CR NO. 17-00101 LEK |

**ORDER GRANTING THE GOVERNMENT'S MOTION TO QUASH SUBPOENAS**

Before the Court is Plaintiff the United States of America's ("the Government") Motion to Quash Subpoenas ("Motion"), filed on January 27, 2020. [Dkt. no. 809.] Pro se Defendant Anthony T. Williams ("Defendant") did not file a response to the Motion. The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). The Government's Motion is hereby granted for the reasons set forth below.

**BACKGROUND**

Defendant has been charged with fifteen counts of wire fraud, in violation of 18 U.S.C. § 1343, and seventeen counts of mail fraud, in violation of 18 U.S.C. § 1341. [Superseding Indictment, filed 3/28/18 (dkt. no. 154).] The charges arise from an alleged scheme in which Defendant defrauded homeowners

in Hawai`i by offering mortgage reduction services, foreclosure assistance, and other related services through two entities, Mortgage Enterprise Investments ("MEI") and The Common Law Office of America ("CLOA"). [Id. at ¶¶ 1-21.]

Trial in this matter began on February 3, 2020. Defendant maintains that he, MEI, and CLOA offered legitimate services to homeowners and they provided valuable assistance related to their clients' mortgages, such as helping eligible clients avoid foreclosure. According to Defendant, some of his former associates engaged in fraudulent activities and misrepresented a continuing affiliation with MEI and/or CLOA after they were no longer working with either Defendant, MEI, or CLOA. It is Defendant's position that the actions which form the basis of the charges in Superseding Indictment were either: 1) legitimate activities; or 2) if any activities were fraudulent, they were committed by his former associates or others working with them.

At issue in the instant Motion are seven subpoenas issued for the following prospective witnesses in the defense's case:

-former Assistant United States Attorney ("AUSA") Ronald G. Johnson, who is now a judge in the State of Hawai`i First Circuit Court ("Judge Johnson");

-a special agent ("SA") with the Federal Bureau of Investigation ("FBI") in Tennessee who Defendant identifies as "Joe Craig";

-William F. Sweeney, Jr., the Assistant Director in Charge of the FBI Field Office in New York ("ADC Sweeney");

-Paul Delacourt, the Assistant Director in Charge of the FBI Field Office in Los Angeles ("ADC Delacourt");

-J.C. "Chris" Hacker, the SA in Charge of the FBI Field Office in Atlanta ("SAC Hacker");

-SA Joseph Lavelle, who is with the FBI Field Office in Miami ("SA Lavelle"); and

-SA Jamie Lynn Stranahan, who was formerly with the FBI Field Office in Miami, but who is now with the FBI Field Office in Washington D.C.

[Motion, Decl. of Gregg Paris Yates in Supp. of Notice of Compliance with Order ("Yates Decl.") at ¶¶ 2-3, 8-11, Exh. A (Subpoena to Testify at a Hearing or Trial in a Criminal Case, issued to Ronald G. Johnson ("Johnson Subpoena")), Exh. B (letter dated 1/10/20 to Brian A. Benczkowski, Assistant Attorney General – Criminal Division, from Lars Robert Isaacson, Esq., Defendant's stand-by counsel, with attachments).[1]]

---

[1] Included within Exhibit B are: a declaration by Mr. Isaacson, dated January 10, 2020 ("Isaacson Declaration"); the Subpoena to Testify at a Hearing or Trial in a Criminal Case, issued to Joe Craig ("Craig Subpoena"); the Subpoena to Testify at a Hearing or Trial in a Criminal Case, issued to William F. Sweeney, Jr. ("Sweeney Subpoena"); the Subpoena to Testify at a Hearing or Trial in a Criminal Case, issued to Paul D. Delacourt ("Delacourt Subpoena"); the Subpoena to Testify at a Hearing or Trial in a Criminal Case, issued to J.C. "Chris" Hacker ("Hacker Subpoena"); the Subpoena to Testify at a Hearing or Trial in a Criminal Case, issued to FBI Agent Joseph Lavelle ("Lavelle Subpoena"); and the Subpoena to Testify at a Hearing or Trial in a Criminal Case, issued to FBI Agent Jamie Lynn Stranahan ("Stranahan Subpoena").  All citations to
(. . . continued)

The Government argues all seven subpoenas should be quashed. First, the Government contends the Johnson Subpoena should be quashed because Defendant did not comply with the applicable provisions of 28 C.F.R. § 16.21, *et seq.* ("Touhy regulations"). Cf. Touhy v. Ragen, 340 U.S. 462 (1951). The Government acknowledges that the letter to Assistant Attorney General Benczkowski was an attempt to comply with the Touhy regulations, but the Government argues the Isaacson Declaration fails to set forth a sufficient basis to warrant enforcement of the subpoenas described therein. Finally, the Government argues compelling ADC Sweeney, ADC Delacourt, SAC Hacker, and SA Stranahan to testify at trial would be unduly burdensome.

## DISCUSSION

### I. SA Joe Craig & SA Lavelle

The Government states "'Joe Craig' does not appear to be an employee of the FBI." [Yates Decl. at ¶ 11.] The Craig Subpoena was returned unexecuted because the United States Marshals Service was informed by the FBI Human Resources office that there were "no employees at Knoxville office by the name given on subpoena." [Proof of Service, filed 2/3/20 (dkt. no. 858), at 1.] Defendant has not presented any evidence

---

Exhibit B refer to the page numbers assigned to Exhibit B in the district court's electronic case filing system.

contradicting these statements.  Based on the lack of service and the statements in the Yates Declaration and the return of service, the Government's Motion is granted insofar as the Craig Subpoena is quashed.[2]

The Government concedes that: SA Lavelle was the case agent in the FBI's investigation into Defendant's alleged criminal conduct Miami; and SA Lavelle has information relevant to the instant case. [Motion at 14.]  The Government intends to call SA Lavelle to testify in its case-in-chief and does "not object to the defendant calling SA Lavelle in his own case for a relevant purpose." Id.; see also Government's Witness List, filed 1/31/20 (dkt. no. 848), at 3.  Assuming that the Government does call SA Lavelle in its case-in-chief, Defendant will be permitted wider latitude to question him on cross-examination and will be allowed to ask questions on cross-examination that Defendant would have asked SA Lavelle on direct examination if he were called in the defense case. **Unless expressly ordered by this Court, SA Lavelle will not be required to appear on two separate occasions**, i.e. once during the Government's case-in-chief and again during the defense case. For those reasons, the Government's Motion is granted insofar as

---

[2] In light of this ruling, it is not necessary to address the issue of whether the Isaacson Declaration's statements about SA Joe Craig satisfy the Touhy regulations.

5

the Lavelle Subpoena is quashed.  This ruling is without prejudice to the Court revisiting this issue if the Government elects not to call SA Lavelle during its case-in-chief.[3]

## II. Judge Johnson

AUSA Ronald Johnson was the lead prosecuting attorney in the instant case until he left the United States Attorney's Office on or about March 15, 2019.  [Yates Decl. at ¶ 2.]  The Touhy regulations apply to former a former AUSA.  See, e.g., Bloomgarden v. United States Dep't of Justice, Civil Action No. 15-0298 (ESH), 2016 WL 845299, at *3 (D.D.C. Mar. 2, 2016) (reviewing the Department of Justice's denial of a Touhy request regarding a former AUSA).  The Touhy regulations provide that:

> (a) Every attorney in the Department of Justice in charge of any case or matter in which the United States is a party is authorized, after consultation with the "originating component" as defined in § 16.24(a) of this part, to reveal and furnish to any person, including an actual or prospective witness, a grand jury, counsel, or a court, either during or preparatory to a proceeding, such testimony, and relevant unclassified material, documents, or information secured by any attorney, or investigator of the Department of Justice, as such attorney shall

---

[3] In light of these rulings, the Court declines to address the Government's argument that the Isaacson Declaration's statements about the Lavelle Subpoena do not satisfy the Touhy regulations.  To the extent that the Government is concerned about Defendant's intent to question SA Lavelle about matters which are irrelevant to the instant case, the Government must make its objections to specific questions during Defendant's examination of SA Lavelle.

6

>deem necessary or desirable to the discharge of the attorney's official duties: **Provided**, Such an attorney shall consider, with respect to any disclosure, the factors set forth in § 16.26(a) of this part: **And further provided**, An attorney shall not reveal or furnish any material, documents, testimony or information when, in the attorney's judgment, any of the factors specified in § 16.26(b) exists, without the express prior approval by the Assistant Attorney General in charge of the division responsible for the case or proceeding, the Director of the Executive Office for United States Trustees (hereinafter referred to as "the EOUST"), or such persons' designees.
>
>. . . .
>
>(c)   If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.

28 C.F.R. § 16.23 (emphases in original).  Further, 28 C.F.R. § 16.26 states, in pertinent part:

>(a)   In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:
>
>>(1)   Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and
>>
>>(2)   Whether disclosure is appropriate under the relevant substantive law concerning privilege.
>
>(b)   Among the demands in response to which disclosure will not be made by any Department

7

>  official are those demands with respect to which any of the following factors exist:
>
>> (1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F. R. Cr. P., Rule 6(e),
>>
>> (2) Disclosure would violate a specific regulation;
>>
>> (3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,
>>
>> (4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,
>>
>> (5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,
>>
>> (6) Disclosure would improperly reveal trade secrets without the owner's consent.

Because Defendant did not provide the § 16.23(c) affidavit or statement summarizing the testimony he seeks from Judge Johnson, the Department of Justice could not conduct the review contemplated by the Touhy regulations. The Johnson Subpoena must therefore be quashed.

Further, to the extent that Defendant intended to elicit testimony from Judge Johnson in an attempt to show there were defects either in the initiation of the prosecution against

8

Defendant or the indictment, the time to raise such challenges was during pretrial motions, not during trial.  See Fed. R. Crim. P. 12(b)(3)(A), (B) (stating "[t]he following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits: (A) a defect in instituting the prosecution . . . [and] (B) a defect in the indictment or information").  This Court has also ruled that testimony about alleged selective or vindictive prosecution, and other similar evidence, will not be permitted at trial.  [EO: Court Order Regarding Motions in Limine, filed 1/30/20 (dkt .no. 841), at 6 (granting the Government's motion in limine and ruling that Defendant is precluded from "rais[ing] arguments, attempt[ing] to question witnesses, and seek[ing] to enter evidence regarding alleged defects in search warrants, alleged discovery abuse, alleged selective or vindictive prosecution, nor alleged prosecutorial misconduct before the jury").]

      Based on the record before it, the Court concludes that the Johnson Subpoena must be quashed because it does not seek testimony that can be presented at the trial in this case.

**III. ADC Sweeny, ADC Delacourt, and SAC Hacker**

      Defendant seeks ADC Sweeny's testimony "'that [Defendant] had no complaints from clients in New York and that

9

there was no evidence that [Defendant], MEI or CLOA had committed any crime'" in New York.  [Yates Decl., Exh. B at pg. 4, ¶ 3.a.]  Defendant seeks similar testimony from ADC Delacourt regarding California and from SAC Hacker regarding Georgia.  [Id. at pg. 4, ¶¶ 4.a, 5.a.]  Even assuming that ADC Sweeny, ADC Delacourt, and SAC Hacker would give such testimony if called, the testimony would not prove that there were no complaints about Defendant, MEI, or CLOA in Hawai`i, nor would it prove that Defendant committed no crime in Hawai`i.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Insofar as the Government has argued Defendant's actions in Hawai`i which form the basis of the charges in this case were consistent with his actions in other parts of the country, the proposed testimony arguably makes it more probable that Defendant's actions in Hawai`i did not constitute a crime.  However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The arguable relevance of the proposed testimony from ADC Sweeny, ADC Delacourt, and

10

SAC Hacker is slight and would be "substantially outweighed by" the danger of "confusing the issues, misleading the jury, [and] wasting time" because permitting such testimony would result in mini-trials examining Defendant's actions in New York, California, and Georgia.  See id.  Thus, the proposed testimony by ADC Sweeney, ADC Delacourt, and SAC Hacker would be excluded pursuant to Rule 403.

Based on the record before it, the Court concludes that the Sweeney Subpoena, the Delacourt Subpoena, and the Hacker Subpoena must be quashed because they do not seek testimony that would be admissible in CR 17-101.

**IV. SA Stranahan**

According to the Government, when SA Stranahan was based in the FBI's Miami Field Office, she "encountered the defendant Anthony Williams when he filed a walk-in complaint with another individual named Donna Hickenbottom.  Hickenbottom claimed that banks had foreclosed on 10 of her properties, and judges in various Florida counties were receiving kickbacks from banks associated with foreclosure proceedings."  [Yates Decl. at ¶ 4.]  Defendant seeks SA Stranahan's testimony because she "was contacted by clients of [his who reported] that fraud had been committed against them by other companies and that [Defendant] was the one assisting and helping them fight their foreclosure."  [Id., Exh. B at pg. 5 (Isaacson Declaration), ¶ 7.a.]  Even if

11

Defendant helped clients who had been the victims of mortgage fraud in Miami, that is not relevant to the issue of whether Defendant committed wire fraud and mail fraud in Hawai`i. Further, any minimal relevance of SA Stranahan's testimony about the complaint made by Defendant and Ms. Hickenbottom would be "substantially outweighed by" the danger of "confusing the issues, misleading the jury, [and] wasting time." See Rule 403.

In addition, the Government notes that SA Stranahan has been on maternity leave since December 2019. [Yates Decl. at ¶ 4.] Pursuant to Fed. R. Crim. P. 17(c)(2), a subpoena for documents and objects can be quashed or modified "if compliance would be unreasonable or oppressive." District courts within the Ninth Circuit also apply Rule 17(c)(2) to subpoenas for testimony at a hearing or trial. See, e.g., United States v. Mixon, No. CR-14-00631-001-TUC-JGZ, 2015 WL 13848985, at *2 (D. Ariz. Dec. 4, 2015). In light of the minimal relevance, if any, of SA Stranahan's proposed testimony and the likelihood that it would be excluded under the Rule 403 analysis, compelling her to testify in this case during her maternity leave would be unreasonable and oppressive. Therefore, the Stranahan Subpoena must be quashed pursuant to Rule 17(c)(2).

## CONCLUSION

On the basis of the foregoing, the Government's Motion to Quash Subpoenas, filed January 27, 2020, is HEREBY GRANTED.

The subpoenas issued for The Honorable Ronald G. Johnson; the SA identified as "Joe Craig"; ADC William F. Sweeney, Jr.; ADC Paul Delacourt; SAC J.C. "Chris" Hacker; SA Joseph Lavelle; and SA Jamie Lynn Stranahan are HEREBY QUASHED.

    IT IS SO ORDERED.

    DATED AT HONOLULU, HAWAI`I, February 5, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES OF AMERICA VS. ANTHONY WILLIAMS; CR 17-00101 (01) LEK; ORDER GRANTING THE GOVERNMENT'S MOTION TO QUASH SUBPOENAS**