KENJI M. PRICE                #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
GREGG PARIS YATES        #8225
Assistant United States Attorneys
United States Attorney's Office
300 Ala Moana Boulevard, Ste. 6-100
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
E-Mail:      Ken.Sorenson@usdoj.gov
             Gregg.Yates@usdoj.gov

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CR. NO.  17-00101 (LEK) |
| Plaintiff, | ) | |
| | ) | UNITED STATES'S RESPONSE TO |
| vs. | ) | DEFENDANT'S MOTION |
| | ) | FOR JUDGMENT OF ACQUITTAL; |
| ANTHONY T. WILLIAMS, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## UNITED STATES'S RESPONSE TO
## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ......................................................................................2

    I.     Standard of Review ...................................................................2

    II.    The Evidence At Trial Was Sufficient to Support the Defendant's
         Conviction ...........................................................................4

        A. Wire Fraud and Mail Fraud Elements..................................4

        B. Evidence of Scheme or Plan for Obtaining Money by
           Means of False or Fraudulent Representations or Promises
           and That The Defendant Acted with the Intent to Defraud ................5

           1. False or Fraudulent Representations or Promises ........................5

           2. Intent to Defraud............................................................7

        C. The Defendant's False or Fraudulent Representations or
           Promises Were Material........................................................5

        D. The Defendant's Caused Interstate Wire Communications
           And the U.S. Mail To Be Used...........................................11

    III.   The Defendant's Motion Asks This Court to Usurp the Role
         of the Jury, Re-Weigh the Credibility of Trial Witnesses,
         and Reconsider the Trial Evidence to Support Acquittal.........................14

    IV.   CONCLUSION ....................................................................21

i

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

United States v. Brugnara,
    856 F.3d 1198 (9th Cir. 2017) ................................................................5

United States v. Dreitzler,
    577 F.2d 539 (9th Cir. 1978) ................................................................4

United States v. Garlick,
    240 F.3d 789 (9th Cir. 2001) ................................................................11

United States v. Halbert,
    640 F.2d 1000 (9th Cir. 1981) ........................................................10,11

United States v. Lothian,
    976 F.2d 1257 (9th Cir. 1992) ................................................................7

United States v. Mausali,
    590 F.3d 1077 (9th Cir. 2010) ................................................................2

United States v. Nevils,
    598 F.3d 1158 (9th Cir. 2010) .........................................................3, 16

United States v. Rogers,
    321 F.3d 1226 (9th Cir. 2003) ................................................................7

**Rules**

Fed. R. Crim. P. 29 .......................................................................passim

On March 15, 2020, the defendant, Anthony T. Williams, filed a brief entitled "Defendant 'Private Attorney General Anthony Williams Motion for Judgment of Acquittal (Motion)," pursuant to Federal Rule of Criminal Procedure (Fed. R. Crim. Proc.) Rule 29.  The Motion consists a 28-page legal brief, and attaches 54 pages of copied text that have been purportedly taken from official transcripts of the February 3, 2020 trial in the above-captioned matter.

The Motion must be denied. The legal brief attached to the Motion re-submits verbatim the 25-page Rule 29 Motion for Judgment of Acquittal that the defendant filed on February 18, 2020 at the close of the government's case-in-chief.  ECF No. 903.  The Court denied that motion on that same day.  ECF No. 904.  The new Motion also adds two pages of factual arguments concerning the evidence at trial and a renewed selective prosecution claim.[1]  The new arguments, however, provide no basis to revisit the Court's February 18, 2020 Order.

As the Court is aware, as of March 3, 2020, the defendant has been convicted of 15 counts of wire fraud and 17 counts of mail fraud after a fifteen (15) day trial before a Federal jury.  At trial, the government presented substantial evidence that, taken in the light most favorable to the prosecution, was sufficient

---

[1] As noted in the government's motion *in limine*, ECF No. 772, selective prosecution is a question of law to be decided before trial.  *United States v. Mausali*, 590 F.3d 1077, 1080 (9th Cir. 2010).  The Court has twice considered and ruled upon the defendant's selective prosecution claim.  ECF Nos. 345, 542; *see also* ECF 677.

for a rational jury to find the essential elements of wire fraud or mail fraud to support each count of conviction.  The defendant's new Motion erroneously asks this Court to ignore Rule 29's standard of review and to re-weigh the evidence and the credibility of the witnesses in his favor, in order to overturn his conviction.

ARGUMENT

I.    Standard of Review

When a motion for judgment of acquittal is made by the defendant after the close of the government's case, Fed. R. Crim. P. Rule 29(a) provides that a court "must enter a judgment of acquittal" only if the evidence is "insufficient to sustain a conviction."  Rule 29(a).  A defendant may make a motion for judgment of acquittal 14 days after a guilty verdict.  Rule 29(c)(1).

Whether evidence is sufficient to sustain a conviction involves a two-step inquiry: First the Court must consider the evidence presented at trial in the light most favorable to the prosecution.  *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (*en banc*).  Second, the Court must determine whether the evidence, so viewed, is adequate to allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *Id.*, *citing Jackson*, 443 U.S. at 319.  The second step protects against the *rare* occasion in which a properly instructed jury may convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt.  *Id*. (emphasis added).  In any event, a

3

Rule 29 motion is not an opportunity for the defendant to re-try the case before the judge; it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts.  *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978), *citing United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977).

II.   <u>The Evidence At Trial Was Sufficient to Support the Defendant's Conviction</u>

The evidence at trial was sufficient to support the defendant's conviction upon 32 counts of wire fraud and mail fraud.  As demonstrated below, in the light most favorable to the prosecution, the evidence presented at trial amply allows a rational trier of fact to find the essential elements of the charged crimes beyond a reasonable doubt.

A. <u>Wire Fraud and Mail Fraud Elements</u>

Wire fraud requires proof that:

(1) "[T]he defendant knowingly participated in, or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations or promises."

(2) "[T]he statements made or facts omitted as part of the scheme were material;"

(3) "[T]he defendant acted with the intent to defraud[;]"

(4) "[T]he defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme."

4

Ninth Circuit Model Crim. Jury Instr. 8.124 (2010 ed., 12/2019 update).

The elements of mail fraud are "essentially identical," but require the use of mails to further the scheme.  *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017).

B. Evidence of Scheme or Plan for Obtaining Money by
   Means of False or Fraudulent Representations or Promises
   <u>and That The Defendant Acted with the Intent to Defraud</u>

   1. <u>False or Fraudulent Representations or Promises</u>

The government presented at trial, and the jury considered, substantial evidence from which a rational jury could find that the defendant had a scheme or plan to obtain money by means of false or fraudulent representations or promises. "Deceitful statements of half-truths may constitute false of fraudulent statements." Ninth Circuit Model Crim. Jury Instr. 8.124.  Moreover, [t]he arrangement of the words or the circumstances in which they are used may create an appearance which is false or deceptive, even if the words themselves fall short of this."  *Id.*

Proof that the jury could have relied upon to convict the defendant include testimony and documentary evidence of the following representations:

- The defendant's representations to prospective clients and homeowner victims that he and MEI could eradicate or "take care" of their existing mortgage obligations, and that his MEI forms, including the MEI UCC Financing Statement and MEI Mortgage

5

would discharge their existing mortgage obligations.  Exhibit A
(Trial Exhibit (Tr. Exh.) 14 at 4).

- The defendant's representations to prospective clients and
  homeowner victims that his company would take over their
  existing mortgage obligations, and their "mortgage[s] will be
  serviced by our company."  Exh. B (Tr. Exhs. 148).

Despite the foregoing representations, testimonial and documentary
evidence presented at trial, including the expert testimony of Simon Klevansky,
Esq., established that the defendant's MEI forms in fact did not discharge each
homeowner's existing loan obligations.

- The defendant's representations to prospective clients and
  homeowner victims that he was a "private attorney general," and
  that he was capable of representing a homeowner in mortgage-
  related legal proceedings.  Exh. C (Tr. Exhs. 853 at 3).

In fact, as demonstrated by the testimony of Hawaii State Bar Association
Executive Director Pat Mau-Shimizu and the August 15, 2013 order of Judge
Mollway Exh. D (Tr. Exh. 800), the defendant was not permitted to represent a
homeowner in legal proceedings.

- The defendant's representations to prospective clients and
  homeowner victims that he would refund their "initial start fee" in

6

the event that MEI failed to "reduce [the client's] mortgage service payment to half of what [her/his] current alleged mortgage payment is. . . ." Exh. A (Tr. Exh. 14 at 2).

In fact, as demonstrated by the analysis of FBI forensic accountant Laurice Otsuka, MEI only refunded a single check to a Hawaii client who had previously paid MEI for services. That client was Rosy Thomas, an MEI employee.

- The defendant's representations to prospective clients and homeowner victims that he was affiliated with the Federal Bureau of Investigation (FBI), and could not be arrested, but who had the power to arrest others. Exh. E (Tr. Exh. 866, 865).

2. Intent to Defraud

The government also presented ample evidence to allow a rational jury to find that the defendant acted with the intent to defraud. "It is settled law that intent to defraud may be established by circumstantial evidence." *United States v. Rogers*, 321 F.3d 1226, 1230 (9th Cir. 2003). An intent to defraud may be inferred from a defendant's misrepresentations. *Id.*; *United States v. Lothian*, 976 F.2d 1257, 1267-68 (9th Cir. 1992). Thus, evidence that a defendant knew his statements were fraudulent is sufficient evidence from which a jury may infer an intent to defraud. *Id.*

At trial, the jury heard evidence that the defendant knew that his representations to prospective clients and homeowner victims were false.  Namely:

The government presented evidence that the defendant created his own mortgage documents, and that these documents contained statements that the defendant understood were false.  For instance, each homeowner victim signed an MEI mortgage document that appeared legitimate, and included references to a borrower, secured party creditor, servicer, and trust.  Exh. F (Tr. Exh. 205 at 1).  The trust that the defendant included on the MEI mortgage, "Federal Mortgage American Trust," was an entity that the defendant knew to be fictitious, and whose address, 6230 3d St. N.W. #5, Washington, D.C., the defendant used also for another fictitious office of his own creation, the U.S. Office of the Private Attorney General.  *Compare id. with* Exh. E (Tr. Exh. 866).

Moreover, the defendant's MEI mortgage documents contained numerous representations that the defendant knew to be false.  Each MEI mortgage purported to "replace[] and make[] null and void" the homeowner's existing loan and listed MEI as the servicer for a new, outstanding mortgage loan.  Exh. F (Tr. Exh. 205 at 1).  Each homeowner victim also signed an MEI Note that appeared legitimate and that purported to obligate the homeowner victim to pay MEI a new loan amount to MEI.  *Id.* (Tr. Exh. 205 at 9) ("In return for valuable consideration that I have received, under the 50% mortgage service payment reduction program., [*sic*] I

promise to pay U.S. $400,00.00 [*sic*], (this amount will be called 'principal') [*sic*],

no interest to the order of Mortgagee.").  However, as the sole owner of MEI, the

defendant was aware that MEI never acquired each homeowner's existing home

loan, and therefore, that any impression that the defendant left with the homeowner

victim that his home loan was "eradicate[d]" or "discharged" was false.  Exh. A

(Tr. Exh. 14 at 4); Exh. G (Tr. Exh. 204 ("This Mortgage will be Discharged in

accordance with UCC 1-201(39) and 1-308")).

Moreover, the defendant understood that his representations to prospective

clients that he could represent them in mortgage relating legal proceedings were

false.  The government presented evidence that, early in the scheme, on August 14,

2013, this Court, Judge Susan Mollway, issued an order expressly informing the

defendant that his representation of homeowners in mortgage-related litigation was

unlawful.  Exh. D (Tr. Exh. 800).  Nonetheless, the evidence showed that the

defendant contended that he could represent his "clients" in court as late as 2015,

and he continued to call himself a "private attorney general" even at trial.

Finally, the jury could conclude that the defendant understood that his

scheme was fraudulent from the testimony of victims Julita Asuncion and Mary

Jane Laforteza that the defendant purported to be affiliated with the Federal Bureau

of Investigation, and the FBI number on his "private attorney general" credentials

that he presented to prospective clients, without explaining that the number

9

represented his FBI National Criminal Information Center (NCIC) criminal number.  Exh. E (Tr. Exh. 866).

### C. The Defendant's False or Fraudulent Representations or Promises Were Material

The government presented ample evidence that the defendant's representations were material.  Materiality means that the representations "had a natural tendency to influence, or were capable of influencing, a person to part with money or property."  Ninth Circuit Model Crim. Jury Instr. 8.124.  "A misrepresentation may be material without inducing actual reliance." *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981).

At trial, the government presented the testimony from eight homeowner victims of the defendant's fraudulent scheme.  Each homeowner victim testified that the defendant and his co-conspirators/agents, orally or in writing, made false statements to them as part of their sales pitch for MEI and CLOA's services.  In particular, the homeowners all testified that the defendant and his co-conspirators/agents marketed MEI and CLOA's services to them with the promise that MEI could eliminate their mortgage obligations to their lenders, and that CLOA could represent the homeowners in legal proceedings relating to their mortgages.  *See also* Exh. A (Tr. Exh. 14 at 4 (MEI Marketing Powerpoint); Trial Exh. C (Tr. Exh. 853 at 3 (CLOA Letterhead)).  Furthermore, many homeowners testified that the defendant showed them a badge and credentials when he first met

10

them to talk about MEI's services, and certain witnesses testified that the defendant claimed he was affiliated with the FBI. *See, e.g.*, Exh. E (Tr. Exh. 866). As these statements were "in furtherance of some fraudulent purpose," they were material to the wire and mail fraud. *Halbert*, 640 F.2d at 1009.

D. The Defendant Caused Interstate Wire
   Communications and the U.S. Mail To Be Used

Finally, the government presented evidence that the defendant either directly used, or caused to be used, interstate wires and the U.S. Mails to carry out or attempt to carry out an essential part of the scheme. As the Ninth Circuit has held "the focus of the mail and wire fraud statutes is upon the misuse of the instrumentality of communication." *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001). Accordingly, each use of the wires or mails constitutes a separate violation of the wire and mail fraud statutes. *Id.* at 793.

The government presented at trial evidence of 15 wire communications and 17 mail communications that the defendant either sent, received, or caused to be sent or received, either directly or through his co-conspirators or MEI employees:

| Wire Fraud Count | Evidence |
|---|---|
| 1 | Exh. 4 (7/8/2013 Email from B. Williams to A. Williams regarding customer payments for July 2013) |
| 2 | Exh. 4 (7/10/2013 Email from B. Williams to A. Williams re customer payments for July 2013) |
| 3 | Exh. 3 (7/13/2013 E-mail from A. Williams to B. Williams re User ID on Texas Secretary of State Website for filing UCC documents) |

| 4 | Exh. 5 (E-mail dated September 6, 2013 from K. Frank to A. Williams asking for information regarding the MEI mortgage process to pass along to prospective clients) |
|---|---|
| 5 | Exh. 5 (E-mail dated September 6, 2013 from A. Williams to K. Frank relaying information regarding MEI to pass along to prospective clients) |
| 6 | Exh. 7 (E-mail dated September 8, 2013 from A. Williams to E. Williams concerning recruiting E. Williams as an employee of Common Law Office of America) |
| 7 | Exh. 6 (Money gram wire, dated September 22, 2013 from M.J. Castillo to B. Williams sending MEI proceeds) |
| 8 | Exh. 8 (Money gram wire, dated October 11, 2013 from M.J. Castillo to B. Williams sending MEI proceeds) |
| 9 | Exh. 9 (E-mail dated November 23, 2014 from M. Ventura to A. Williams regarding payment to MEI) |
| 10 | Exh. 9 (E-mail dated November 26, 2014 from A. Williams to M. Ventura, responding to M. Ventura's inquiry) |
| 11 | Exh. 9 (E-mail dated November 27, 2014 from M. Ventura to A. Williams regarding payment to MEI) |
| 12 | Exh. 9 (E-mail dated November 27, 2014 from A. Williams to M. Ventura, responding to M. Ventura's inquiry) |
| 13 | Exh. 11 (E-mail dated May 27, 2015 from M. Laforteza to A. Williams, forwarding e-mail from Laforteza's attorney K. Agard regarding his legal representation of Laforteza in connection with foreclosure) |
| 14 | Exh. 12 (E-mail dated May 28, 2015 from A. Williams to M. Laforteza, advising Laforteza to fire her attorney) |
| 15 | Exh. 10 (E-mail dated May 3, 2015 from A. Williams to E. Williams regarding his Common Law Office of America employment) |

| Mail Fraud Count | Evidence |
|---|---|
| 16 | Exh. 2 (Scanned image of stamped letter from A. Williams to B. Williams, dated May 16, 2013, attached to May 20, 2013 e-mail from A. Williams to B. Williams indicating "I sent this certified letter for free!") |

| 17 | Exh. 134, 135 (MEI invoice for E. Subia payment, June 2013, and stamped letter from A. Subia and E. Subia to MEI, dated June 13, 2013) |
|---|---|
| 18 | Exhs. 136, 137  (MEI invoice for E. Subia payment, July 2013,  and stamped letter from A. Subia and E. Subia to MEI, dated July 6, 2013) |
| 19 | Exhs. 138, 139 (MEI invoice for E. Subia payment, October 2013 and stamped letter from A. Subia and E. Subia to MEI dated September 27, 2013) |
| 20 | Exhs. 140, 141 (MEI invoice for E. Subia payment, November 2013 and stamped letter from A. Subia and E. Subia to MEI dated November 1, 2013) |
| 21 | Exhs. 101, 102 (MEI invoice for M. Ventura payment, and stamped letter from M. Ventura to MEI dated November 28, 2014) |
| 22 | Exhs. 103, 104 (MEI invoice for M. Ventura payment, and stamped letter from M. Ventura to MEI dated January 6, 2015) |
| 23 | Exhs. 105-107 (MEI invoice for M. Ventura payment, check from M. Ventura to MEI, and stamped letter from M. Ventura to MEI dated January 29, 2015) |
| 24 | Exhs. 109, 110 (check from M. Ventura to MEI dated February 27, 2015, and stamped letter from M. Ventura to MEI dated February 28, 2015) |
| 25 | Exhs. 112, 113 (check from M. Ventura to MEI dated March 30, 2015, and stamped letter from M. Ventura to MEI dated March 31, 2015) |
| 26 | Exh. 115 (stamped envelope from M. Ventura to MEI dated April 29, 2015) |
| 27 | Exhs. 117, 118 (check from M. Ventura to MEI dated May 27, 2015, and stamped letter from M. Ventura to MEI dated May 27, 2015) |
| 28 | Exhs. 119, 120 (check from M. Ventura to MEI dated June 27, 2015, and stamped letter from M. Ventura to MEI dated June 27, 2015) |
| 29 | Exhs. 122, 123 (check from M. Ventura to MEI dated July 25, 2015, and stamped letter from M. Ventura to MEI dated July 25, 2015) |

| 30 | Exhs. 125, 126 (check from M. Ventura to MEI dated August 28, 2015, and stamped letter from M. Ventura to MEI dated August 28, 2015) |
| 31 | Exhs. 128, 129 (check from M. Ventura to MEI dated September 27, 2015, and stamped letter from M. Ventura to MEI dated September 28, 2015) |
| 32 | Exhs. 131, 132 (check from M. Ventura to MEI dated October 27, 2015, and stamped letter from M. Ventura to MEI dated October 28, 2015) |

From each of these communications, a jury could have found that the defendant used or caused to be used a wire or mail in furtherance of the fraudulent scheme.

The foregoing recitation sets forth the evidence that the government presented at trial with respect to each element of each count. The Court must consider this evidence in the light most favorable to the prosecution. Based upon the evidence presented, a rational jury could find that the government proved the essential elements of wire fraud and mail fraud beyond a reasonable doubt. Accordingly, the defendant's Motion pursuant to Rule 29 must be denied.

III.   The Defendant's Motion Asks This Court to Usurp the Role
of the Jury, Re-Weigh the Credibility of Trial Witnesses,
and Reconsider the Trial Evidence to Support Acquittal

The specific arguments raised by the defendant in his Motion are unavailing. As an initial matter, the Court has ruled upon the arguments raised in the Motion in its February 18, 2020 Order upon the defendant's first motion for judgment of acquittal. ECR No. 904.

14

In any event, the Motion does not address the sufficiency of the evidence presented at trial, as required by a Rule 29 analysis.  The Motion does not deny that the government presented *any* evidence with respect to each element of the counts of conviction.  Rather, the Motion asks this Court to re-consider the evidence presented at trial, re-weigh the credibility of the government's witnesses, and to resolve the conflicts of trial evidence in his favor.  With the evidence considered in the light most favorable most favorable to himself, the defendant urges this Court to ignore the verdict of the federal jury and to find that the evidence was insufficient to support his conviction.

The Motion misconstrues Rule 29.  Pursuant to Rule 29, a Court "may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial."  *Nevils*, 598 F.3d at 1164.  Rather, when "faced with a record of historical facts that supports conflicting inferences," a reviewing court must "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.*  "[T]he government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or rule out every hypothesis except that of guilt beyond a reasonable doubt."  *Nevils*, 598 F.3d at 1164.

15

In sum, the Court need not traverse the bramble of re-argued evidence set forth in the defendant's motion. As set forth in the prior section, taken in the light most favorable to the prosecution, the evidence introduced at trial is sufficient for a rational jury to find the essential elements of the counts charged in the Superseding Indictment beyond a reasonable doubt. Rule 29 requires nothing more. *Id.* The Motion should be denied.

<u>CONCLUSION</u>

In light of the foregoing, the government respectfully requests that the Court deny the defendant's Motion for Judgement of Acquittal.

DATED:  March 30, 2020, at Honolulu, Hawaii.

KENJI M. PRICE
United States Attorney
District of Hawaii


By */s/ Gregg Paris Yates*
   KENNETH M. SORENSON
   GREGG PARIS YATES
   Assistant United States Attorneys

16

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following by the method indicated on the date of filing:

<u>Served Electronically through CM/ECF:</u>

Lars Isaacson, Esq.
hawaii.defender@earthlink.net

Standby Attorney for Defendant
ANTHONY T. WILLIAMS

Defendant served by First Class Mail:

Anthony T. Williams
Register No. 05963-122
Inmate Mail
FDC Honolulu
PO Box 30080
Honolulu, HI 96820

DATED:  March 30, 2020, at Honolulu, Hawaii.

/s/ Melena Malunao
U.S. Attorney's Office
District of Hawaii

17