KENJI M. PRICE  #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
GREGG PARIS YATES  #8225
Assistant United States Attorneys
United States Attorney's Office
300 Ala Moana Boulevard, Ste. 6-100
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
E-Mail:  Ken.Sorenson@usdoj.gov
         Gregg.Yates@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CR. NO.  17-00101 (LEK) |
| Plaintiff, ) | |
| ) | UNITED STATES'S RESPONSE TO |
| vs. ) | DEFENDANT'S EXPEDITED |
| ) | EMERGENCY MOTION FOR |
| ANTHONY T. WILLIAMS, ) | IMMEDIATE RELEASE DUE TO |
| ) | THE CORONAVIRUS PANDEMIC; |
| Defendant. ) | CERTIFICATE OF SERVICE |
| _____ ) | |

UNITED STATES'S RESPONSE TO
DEFENDANT'S EXPEDITED, EMERGENCY MOTION FOR
IMMEDIATE RELEASE DUE TO THE CORONAVIRUS PANDEMIC

# Table of Contents

I.   The Defendant Should Not Be Released on Bail; The Federal Government Does Not Have Primary Jurisdiction Over The Defendant ........................... 2

II.  The BOP Has Established Comprehensive Measures To Protect Against COVID-19 Infection ................................................................................. 5

    A.   BOP National Measures .................................................................... 6
    B.   Enhanced COVID-19 Mitigation Measures at FDC Honolulu ............ 8
    C.   No Positive Cases at FDC Honolulu .................................................. 9

CONCLUSION ............................................................................................. 10

## Table of Authorities

**Cases**                                                                                           **Page(s)**

*Johnson v. Gill*,
  883 F.3d 756 (9th Cir. 2018) ................................................................................... 2, 3

*Morgan v. United States*,
  380 F.2d 686 (9th Cir. 1967) ...................................................................................... 3

*Strand v. Schmittroth*,
  251 F.2d 590 (9th Cir. 1957) ...................................................................................... 3

*Thomas v. Brewer*,
  952 F.2d 1361 (9th Cir. 1991) .................................................................................... 3

**Statutes**

18 U.S.C. § 3142 ............................................................................................................ 5

18 U.S.C. §  3145 ........................................................................................................... 3

The United States respectfully submits this brief in opposition to the defendant's "Expedited, Emergency Motion for Immediate Release Due to the Coronavirus Pandemic" (Motion). The Motion represents the defendant's fifth request to this Court to be released from detention, and his first since his March 3, 2020 conviction by a federal jury upon 15 counts of wire fraud and 17 counts of mail fraud. *See* ECF No. 35 (Hearing on government's Motion to Detain); ECF No. 133 (Defendant's Motion in Opposition to Denial of Speedy Trial and Pre-Trial Release); ECF No. 492 (Motion for Bond); ECF No. 524 (Motion to Demand Immediate Release from Custody). Following his March 3, 2020 conviction, the Court remanded the defendant to the custody of the U.S. Marshals Service to await sentencing. 18 U.S.C. § 3143(a)(1). The Motion appears to be an appeal of this post-conviction detention order pursuant to Section 3145(c).

The defendant's request for release must be denied. The defendant is ineligible for pre-sentence release while he is in federal custody because he is serving a fifteen year term of imprisonment under a sentence by the State of Florida, which retains primary jurisdiction over the defendant. Accordingly, and also in light of the defendant's conviction of 32 counts of fraud, the defendant poses a significant risk of flight and danger to the community. The defendant's latest motion is not based upon any rule or error of fact or law, but instead upon his vague concerns about the prospect of an uncontained COVID-19 outbreak at the

1

Federal Detention Center, Honolulu, where he is being held pending sentencing. There are currently no known cases of COVID-19 at that facility and defendant points to no evidence that the facility's staff is unprepared to address such cases if they should arise.

I.  The Defendant Should Not be Released on Bail; The Federal Government Does Not Have Primary Jurisdiction Over The Defendant

The Court may not simply release the defendant to the community upon his request because he is present in federal custody pursuant to a writ of *habeas corpus prosequendum*. ECF No. 23 (Writ). As the Court is aware, the defendant was initially arrested by the State of Florida, and tried and convicted of felony offenses in Broward County court in the State of Florida, and is currently serving a term of imprisonment of fifteen years. Exhs. A (Tr. Exh. 822). Following his conviction and sentencing in Florida, this Court issued a writ for his presence to face charges here. Nonetheless, the State of Florida, as the arresting sovereign, has primary jurisdiction over the defendant and may give effect to its sentence before other sovereigns do. *Johnson v. Gill*, 883 F.3d 756, 765 (9th Cir. 2018). This Court, U.S. Magistrate Judge Kenneth Mansfield, expressly relied upon the defendant's sentence in the State of Florida as a basis for its initial detention order, and found that no condition or combination of conditions would reasonably assure the appearance of the defendant in Court as required or the safety of any other person

and/or the community. Order Granting Government's Motion to Detain Defendant Without Bail at 2-3, ECF No. 189.

When a defendant in state custody is transferred to federal custody pursuant to a writ of *habeas corpus prosequendum*, as was the case here, he is considered to be "on loan" to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly. *Thomas v. Brewer*, 952 F.2d 1361, 1367 (9th Cir. 1991). The primary jurisdiction of the State of Florida over the defendant does not terminate until the defendant's sentence expires or the State of Florida otherwise permits him to go free. *Johnson*, 883 F.3d at 764, *citing Strand v. Schmittroth*, 251 F.2d 590, 599 (9th Cir. 1957).

Thus, while the Court has the authority to review the bail status of the defendant pursuant to Title 18, United States Code, Section 3145, it may not free the defendant from his sentence of imprisonment in the State of Florida, which the defendant is serving while the defendant is in federal custody. Should the federal criminal proceedings against the defendant conclude, the United States Marshal must return the defendant to the custody of the Florida State Prison, pursuant to the terms of the writ. Writ at 2, ECF No. 23. Accordingly, in this circumstance and at this juncture, "both common sense and the doctrine of comity require that the state prisoner not be released by the federal authorities on bail." *Morgan v. United States*, 380 F.2d 686, 699 (9th Cir. 1967).

The defendant nonetheless supports his demand for release with the claim that "[t]he undersigned's Florida conviction has been vacated. . . ." Motion 1, ECF No. 957. This is the second time that the defendant has made this representation to this Court. *See* Motion to Demand Immediate Release, Exhibit A at 2 (ECF No. 524-2) ("The undersigned no longer has a hold from Florida and therefore must be released on his own recognizance."). Apparently the defendant hopes that the Court will take him at his word and release him, as the defendant has provided no support for this claim.

The docket available from the website of the Broward County, Florida Clerk of Court contains no record of a *vacatur* of the defendant's judgment and fifteen-year sentence. Exh. B at 5-9 (Case detail for Case # 17000074CF10A, Broward County Clerk of Courts, *available at* https://www.browardclerk.org/web2). To the contrary, the defendant apparently appealed his Florida state conviction and lost. *Id.;* Exh. C (Florida Court of Appeal Order). The defendant then appealed the affirmation of his conviction to the Florida Supreme Court, which dismissed his appeal. Exh. D (Order of Dismissal from Florida Supreme Court) ("This case is hereby dismissed. This Court lacks jurisdiction to review an unelaborated decision from a district court of appeal that is issued without opinion or explanation . . . ."). Thus, it appears that the defendant's repeated representations to this Court that his conviction in the State of Florida has been vacated are false.

4

In light of the fact that the defendant is currently serving his fifteen-year sentence from the State of Florida and that state retains primary jurisdiction over the defendant, and the fact that the defendant has now been convicted by a federal jury of 32 counts of wire and mail fraud, the Court's earlier findings that the defendant is a flight risk and a danger to other persons or the community are more true than ever.  The Motion for release into the community must be denied.

II.    The BOP Has Established Comprehensive
       Measures To Protect Against COVID-19 Infection

The basis for the defendant's motion for release is that the defendant feels threatened by the risk posed by the COVID-19 virus pandemic while he is detained.  The COVID-19 pandemic is a very serious concern for all members of our community, not just incarcerated persons.  Moreover, the COVID-19 virus pandemic does not change the fact that the defendant is serving a term of imprisonment handed down by the State of Florida while in federal custody and, in addition, that he has now been convicted in this Court of 32 counts of wire and mail fraud.  The defendant's generalized concerns about COVID-19 are not, without more, a sufficient reason to release him into the community despite his current term of imprisonment and the danger and flight risk that he has been found to present.

//

### A. BOP National Measures

The Bail Reform Act instructs the Court to consider defendant's own "physical and mental health," 18 U.S.C. § 3142(g)(3)(A), but the general existence of a pandemic does not have significant bearing on that assessment. The defendant does not make a particularized showing that his health is in jeopardy or that he might cause an outbreak. Instead, the defendant relies upon the possibility that he will become infected by someone else at the facility. Even if this Court could weigh such a speculative risk, and properly discount it by risk of the defendant's becoming infected in the community, the defendant's concern does not weigh towards release.

The BOP provides daily COVID-19 updates on the agency's public website.[1] *See* Exh. E (Declaration of AnnElizabeth W. Card, Ph.D. ("Card Decl.") at ¶ 4). BOP has taken strong and proactive national measures to mitigate the spread of COVID-19 within BOP. FDC Honolulu has implemented its own local changes consistent with national BOP directives.

In January 2020, the BOP implemented its Pandemic Influenza contingency plan. *Id.* at ¶ 5. On March 13, 2020, the agency issued directives suspending social and legal visits at all facilities, curtailing movement, cancelling staff travel

---

[1] See Federal Bureau of Prisons COVID-19/Coronavirus Resource Page at *https://www.bop.gov/coronavirus/* (last visited April 3, 2020, 10:50 a.m. HST).

6

and training, limiting access for contractors and volunteers, and established enhanced screening for staff and inmates. *Id.* at ¶ 6. All facilities were placed on modified operations to maximize social distancing in facilities as much as practicable. *Id.* This modification included precautions such as staggered meal and recreation times in order to limit congregate gatherings. *Id.* All BOP facilities, including FDC Honolulu, developed local quarantine and isolation procedures at this time. *Id.*

By March 18, 2020, all cleaning, sanitation, and medical supplies were inventoried. *Id.* at ¶ 7. BOP determined ample supplies were on hand and ready to be distributed or moved to any facility as deemed necessary. *Id.* All facilities will continue to order additional supplies in anticipation of a protracted emergency. *Id.*

On March 26, 2020, the BOP issued guidance requiring a minimum 14-day medical isolation for all inmates entering or re-entering BOP facilities for any reason, including routine judicial proceedings. *Id.* at ¶ 8. Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff. *Id.* Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.*

On March 31, 2020, the BOP placed all of its facilities, including FDC Honolulu, on a limited inmate movement directive to maximize social distancing

between inmates. *Id.* at ¶ 9. At least until April 14, 2020, inmates in every institution will be secured in their assigned cells to decrease the spread of the virus. *Id.*

### B. Enhanced COVID-19 Mitigation Measures at FDC Honolulu

In addition to the comprehensive measures above, on March 19, 2020, FDC Honolulu ramped up its own sanitation measures. *See* Exh. E (Card Decl. at ¶¶ 16-23) and Exh. F (Enhanced Unit Sanitation Standards Memorandum from Captain M. Miller and PHS Commander D. Smith, Infection Prevention & Control Officer, dated March 19, 2020). Housing units are thoroughly sanitized three times a day (5 a.m., 10 a.m., and 4 p.m.), with powerful disinfectant applied to all tables, telephones, computers, handrails, and doorknobs.

Starting on March 27, as discussed in the Card Declaration, all staff members entering FDC Honolulu are being screened for COVID-19 symptoms and must have their temperature taken and documented by a trained staff member wearing personal protective equipment. *Id.* ¶ 23. This check must be conducted on all staff during each shift that they work. Any staff member who refuses to consent to a temperature check is refused entry. *Id.* Thus far, no staff members at FDC Honolulu have declined the mandatory temperature check. *Id.* The BOP has additional guidance and protocols for any staff who may be symptomatic, including mandatory self-reporting and facility security measures regarding entry

8

in coordination with the medical department. *Id.*

Taken together, these measures should sharply mitigate the risks of COVID-19 transmission defendant has raised. Given that no persons will be admitted to BOP facilities without being screened for symptoms and risk of infection, the risk that defendant himself will be infected simply as a result of his detention is no greater than releasing him into the community. Defendant's concerns to the contrary should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether he is properly subject to pretrial detention.

FDC Honolulu is continuing with its routine and individualized medical care for inmates, including filling prescriptions. *Id.* at ¶¶ 25-27. In addition, all inmates are getting their temperature checked daily as part of the FDC's enhanced medical screening procedures due to COVID-19. *Id.* Furthermore, FDC has made both hand sanitizer and soap available to inmates so that they can maintain personal hygiene and take individualized precautionary measures. *Id.* at ¶ 19.

C. <u>No Positive Cases at FDC Honolulu</u>

At 3:00 p.m. daily, BOP updates its public website to reflect all positive COVID-19 cases within the BOP system, reflecting both staff and inmate diagnoses. *See* URL in FN1 above (last visited 4/3/2020, 10:50 a.m. HST). As of April 3, 2020, at 10:50 a.m. HST, the BOP reports fifty-seven (75) inmate

9

diagnoses and thirty-seven (39) staff diagnoses. *Id.* None of these positive COVID-19 results are at FDC Honolulu or in the state of Hawaii. Further, as stated above, staff travel and inmate movements have been suspended for at least 30 days to prevent transmission between BOP facilities. All staff are individually screened during each shift. Unlike other facilities in the BOP system (or various state and local facilities), FDC Honolulu is not an overcrowded facility. It has approximately 440 inmates out of a capacity of more than 750 inmates and has sufficient bed space and other designated areas to ensure BOP and FDC Honolulu COVID-19 protocols are followed and enforced. *See* Card Decl. at ¶ 21.

In sum, the BOP has taken extensive measures to contain the threat of COVID-19. The defendant's generalized fear of COVID-19 contagion does not support his release.

//
//
//
//
//
//
//
//
//

## CONCLUSION

In light of the foregoing, the government respectfully requests that the Court deny the defendant's motion for release.

DATED: April 3, 2020, at Honolulu, Hawaii.

        KENJI M. PRICE
        United States Attorney
        District of Hawaii


By */s/ Gregg Paris Yates*
   KENNETH M. SORENSON
   GREGG PARIS YATES
   Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following by the method indicated on the date of filing:

<u>Served Electronically through CM/ECF:</u>

    Lars Isaacson, Esq.
    hawaii.defender@earthlink.net

    Standby Attorney for Defendant
    ANTHONY T. WILLIAMS

Defendant served by First Class Mail:

    Anthony T. Williams
    Register No. 05963-122
    Inmate Mail
    FDC Honolulu
    PO Box 30080
    Honolulu, HI 96820

    DATED:  April 3, 2020, at Honolulu, Hawaii.

                                        */s/ Melena Malunao*
                                        U.S. Attorney's Office
                                        District of Hawaii