IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR NO. 17-00101-1 LEK |
|---|---|
| Plaintiff, | ORDER DENYING DEFENDANT ANTHONY T. WILLIAMS' EXPEDITED EMERGENCY MOTION FOR IMMEDIATE RELEASE DUE TO THE CORONAVIRUS PANDEMIC |
| vs. | |
| ANTHONY T. WILLIAMS, | |
| Defendant. | |

ORDER DENYING DEFENDANT ANTHONY T. WILLIAMS'
EXPEDITED EMERGENCY MOTION FOR IMMEDIATE
RELEASE DUE TO THE CORONAVIRUS PANDEMIC

Many aspects of the criminal justice system have been affected by the

public health emergency brought on by the coronavirus disease 2019 (COVID-19

emergency).  The COVID-19 emergency poses many, rapidly developing

challenges to the day-to-day operations of federal court.  Through this Court's

general orders related to the COVID-19 emergency, our district has sought to

maintain a safe environment for court personnel, attorneys, law enforcement,

parties and the public.  The Court also may have to reevaluate some of its earlier

decisions considering defendants' health and safety.

1

Further, the Court must continue to protect the fundamental rights afforded to defendants under the Federal Rules of Criminal Procedure and the United States Constitution during this pandemic.  The COVID-19 emergency presents issues that affect fundamental tenets of criminal procedure including the defendant's right to be present for hearings, right to presentment of his charges before a Grand Jury, right to a speedy trial, and the right to a trial before a jury of his peers.  The Court's ability to conduct the most basic hearings in criminal cases is more difficult.  The COVID-19 emergency frustrates attorney-client communications for many defendants who are incarcerated or detained.  And, at issue in this Order, the COVID-19 emergency bears on the Court's consideration, and reconsideration, of whether a defendant should be released instead of detained pending trial.

Defendant filed his Expedited Emergency Motion for Immediate Release Due to the Coronavirus Pandemic on March 27, 2020 (Motion).  See Motion, ECF No. 957.  The Government filed its Opposition on April 3, 2020 (Govt. Opp.).  See Govt. Opp., ECF No. 967.  The Court finds that a hearing is not required for Defendant's Motion.  The Court decides this matter without a hearing, due in part to some of the challenges posed by the COVID-19 emergency and pursuant to 7.1(c) of the Local Rules of Practice of the United States District Court

for the District of Hawaii (Local Rules), as incorporated by Rule 12.3 of the

Criminal Local Rules.

In this Order, the Court will discuss:

(i)     the factual and procedural background of the case;

(ii)    its findings to "reopen" the prior detention determination under
        Section 3142(f)(2) because the COVID-19 emergency presents
        new and material information for the court to consider;

(iii)   in the context of the COVID-19 emergency, Defendant's
        individual characteristics under the factors set forth in Title 18
        United States Code Section 3142(g), such as, his "physical and
        mental condition" and the "safety of any other person and the
        community";

(iv)    the specific circumstances at the facility where Defendant is
        currently detained, Federal Detention Center (FDC) Honolulu;

(v)     the viability of Defendant's proposed conditions of release,
        including during the COVID-19 emergency; and

(vi)    *in the alternative*, whether a "compelling reason" exists for
        "temporary release" under Section 3142(i).

As set forth below, the Court has carefully considered all prior reports

prepared by U.S. Pretrial Services (USPTS), the submissions from counsel, the

declaration from Associate Warden AnneElizabeth W. Card at FDC Honolulu (see

ECF No. 967-5), and publicly-available information about the Federal Bureau of

Prisons (BOP) and the COVID-19 emergency.  Upon revisiting its prior detention

determination in the context of the COVID-19 emergency, the Court finds that

there remains no condition or combination of conditions that will reasonably assure

Defendant's presence at future proceedings or the safety of other persons and the

community.  In the alternative, considering "temporary release" under Section

3142(i), the Court finds no compelling reason related to the COVID-19 emergency.

Based on Defendant's individual characteristics, the specific circumstances of his

post-conviction detention at FDC Honolulu, and the impracticability of any

conditions of release for him, the Court DENIES Defendant's Motion.

## BACKGROUND

On February 15, 2017, Defendant Anthony T. Williams was first

indicted by the grand jury.  See ECF No. 1.  The allegations in the Indictment

included several charges for wire fraud and mail fraud.  See id.  Defendant

represented himself at trial and the Court appointed a stand-by counsel.  On March

3, 2020, a jury found Defendant guilty of 32 counts of wire fraud and mail fraud

and he awaits sentencing before the district court.  See ECF No. 946.

On September 25, 2017, Defendant made his initial appearance in

court and the Government filed a motion to detain.  See ECF Nos. 30, 32.  On

September 29, 2017, the Court held an initial detention hearing before the

magistrate judge.  At the initial detention hearing, the Court learned that Defendant

was initially arrested by the State of Florida, was tried and convicted of felony

offenses, and is currently serving a term of imprisonment of fifteen years.  See

Govt. Opp., ECF No. 967 at 5.  The Court expressly relied on this information in

making its detention determination.  See id. at 5-6.  Taking judicial notice of the

USPTS Report and considering the arguments of counsel and Defendant, the Court

ultimately found that there is no condition or combination of conditions of release

that "will reasonably assure the appearance of … [Defendant] and the safety of any

other person and the community" and ordered Defendant detained.  ECF No. 35;

see also 18 U.S.C. § 3142(e)(1).

Defendant has filed motions requesting release on three prior

occasions.  First, on March 7, 2018, Defendant filed a motion seeking pretrial

release.  See ECF No. 133.  The Court held a hearing on April 16, 2018 and denied

the Motion as no circumstances changed since the Court's initial order of

detention.  See ECF No. 214.

Second, on June 1, 2019, Defendant filed another motion seeking

pretrial release.  See ECF No. 492.  The Court took the motion under submission

as a non-hearing motion.  See ECF No. 505.  The Court denied the motion because

defendant did not provide a document showing any change in his custody status

with the State of Florida, where he is serving a sentence.  See ECF No. 536.

Finally, on July 22, 2019 Defendant filed a third motion demanding

release from custody.  See ECF No. 524.  The Court denied this Motion too due to

lack of changed circumstances including any information about Defendant's

custody status with the State of Florida.  See ECF No. 531. All three of his prior motions for pretrial release predated Defendant's jury trial on March 3, 2020.

Defendant filed the instant Motion, his fourth motion requesting the Court to revisit its detention determination, on March 27, 2020 after he was found guilty on all counts in the Indictment.

## THE COVID-19 EMERGENCY

In response to the continuing spread of the virus and the escalation of the COVID-19 emergency, President Donald Trump declared a national emergency on March 13, 2020 and issued guidelines directing at-risk individuals to stay home and away from other people, work from home to the extent possible, avoid discretionary travel, and avoid gatherings in groups of more than ten people. See The White House, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, dated March 13, 2020.  Governor David Ige thereafter issued a statewide emergency proclamation for the State of Hawaii including a stay-at-home order and a mandatory 14-day quarantine for all visitors and returning residents.  See Office of the Governor, State of Hawaii, *Third Supplementary Proclamation*, dated March 23, 2020.  This Court too issued successive general orders related to the COVID-19 emergency in order to maintain a safe environment for court personnel,

attorneys, law enforcement, and the public.  See General Order, In Re: District of Hawaii Response to COVID-19 Emergency, dated March 23, 2020.

The Centers for Disease Control and Prevention (CDC) and other public health authorities advised the American people to take precautions to reduce the possibility of exposure to the COVID-19 virus and to slow the spread of the disease.  These precautions are especially important for people who have a higher health risk should they contract the disease, such as people with underlying health conditions, older adults, and people with asthma.  See Centers for Disease Control and Prevention, *Are You at Higher Risk for Severe Illness?*, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last visited March 27, 2020).  Because there is evidence indicating that COVID-19 is spread by persons who are asymptomatic, leaders have urged everyone to practice social distancing, work from home, and stay at home.

In the Motion, Defendant recounts the national concerns about the COVID-19 emergency risks associated with prisons and detention facilities.  See Motion, ECF No. 957.  Prisons and detention facilities present unique challenges due to concerns about overcrowding and the ability to quarantine and isolate sick people working and housed at a facility.  Overcrowding and other circumstances within a facility may also frustrate a person's ability to follow CDC guidelines like

washing hands regularly and practicing social distancing.  It is important to note, as evidenced by the declaration from the Associate Warden Card from FDC Honolulu (ECF No. 967-5), that not all facilities are in the same circumstances and present the same risk to those housed there.  See infra Section (B)(2).

DISCUSSION

The Bail Reform Act governs the detention of a defendant.  See 18 U.S.C. § 3142 (2006).  The Act mandates the release of a person unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  Id. § 3142(e)(1).  In determining whether conditions of release will reasonably assure the safety of any other person and the community, the Court must consider the information set out in Section 3142(g), that is: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  See id. § 3142(g)(1)-(4).

Further, because Defendant was found guilty and is awaiting sentencing, the standards set forth in 18 U.S.C. § 3143 apply here.  Pursuant to Section 3143(a), once Defendant was found guilty of an offense and is awaiting imposition of a sentence *he shall be detained unless*, a court finds by clear and convincing

8

evidence that he is not likely to flee or poses a danger to the safety of another or the community if released.  <u>See</u> 18 U.S.C. § 3143(a).

### A. Defendant is in the District of Hawaii on a *Writ of Habeas Corpus Prosequendum* from the State of Florida

Before his conviction in Hawaii, Defendant was serving a fifteen-year sentence in the State of Florida.  <u>See</u> Govt. Opp., ECF No. 967 at 4.  Defendant first appeared in the District of Hawaii on a *writ of habeas corpus prosequendum* from the State of Florida.  <u>See</u> ECF No. 23.  If the Court were inclined to consider pretrial release or temporary release based upon the COVID-19 emergency, which it is not, Defendant would transfer to a Florida State facility – a likely more crowded facility.  <u>See</u> Govt. Opp., ECF No. 967 at 6.

Because of the COVID-19 emergency and the risks of spreading the virus, the Court will not enter an order that merely transfers Defendant to the custody of another court system or agency during a pandemic.  Put simply, now is not the time to transfer detainees to other facilities to interact more widely with other detainees and staff during the COVID-19 emergency.  Accordingly, the Court finds that Defendant's custody status, particularly in light of the COVID-19 emergency, also favors continued detention.

### B. The Court "Reopens" its Detention Determination under Section 3142(f)(2)

Putting aside his custody status with the State of Florida, the Court construes Defendant's Motion as a motion to reopen the detention hearing based upon new and material information under Section 3142(f)(2).  See 18 U.S.C. § 3142(f)(2).  Section 3142(f)(2) provides that a detention "hearing may be reopened ... if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." See id. § 3142(f)(2).  The Court finds that the COVID-19 emergency presents new information not previously available and the information is material to the detention determination that the Court must now reconsider.  Accordingly, Defendant's Motion is properly before the Court and this Court's detention determination is REOPENED pursuant to Section 3142(f)(2).

In revisiting its detention determination, the Court considers Defendant's custody status with the State of Florida discussed above and the following information in the context of the COVID-19 emergency: (1) Defendant's individual characteristics in the factors set forth in Section 3142(g); (2) the specific circumstances at FDC Honolulu, the facility where Defendant is detained; and (3) the viability of conditions of release for Defendant.  While the Court considers all

10

of the factors in Section 3142(g) in reopening its detention determination, including the "nature and circumstances of the offense" and "weight of the evidence", the Court will not discuss those factors that are unaffected by the COVID-19 emergency.  18 U.S.C. § 3142(g)(1), (3).

### 1.  Defendant's Individual Characteristics

Defendant argues that he is at risk of contracting COVID-19 while detained at FDC Honolulu.  See Motion, ECF No. 957.  Defendant's age is not a factor and he has not indicated any other specific vulnerabilities to the virus, including any respiratory condition, or any other particularized health concerns while detained at FDC Honolulu or while under USPTS supervision.  Defendant has presented no medical evidence, related or unrelated to the COVID-19 emergency, that would affect the Court's prior detention determinations. Defendant further argues that he should be released in order to assist his elderly clients and friends who need someone to bring them necessities and supplies.  See Motion, ECF No. 957 at 2.  The Court is unpersuaded.  The Court finds that Defendant's individual characteristics weigh in favor of continued detention.

### 2.  The Specific Circumstances of Detention at FDC Honolulu

The Court understands the challenges facing prisons and their ability to keep inmates and detainees safe from infectious disease.  See Motion, ECF No. 957.  The COVID-19 emergency brings the challenge front and center.  However,

the BOP was quick to institute comprehensive measures to limit the spread of COVID-19 in its facilities.  See Govt. Opp., ECF No. 967-5.  Nationwide, new inmates and detainees at BOP are screened for symptoms and risks of exposure and they are quarantined if necessary.  See id. ¶ 4.  BOP has halted the movement of its inmates and detainees among its facilities, initiated enhanced and regular sanitizing procedures for common areas and instituted social distancing policies within its facilities.  See id. ¶¶ 5-16.

While Defendant argues that circumstances in prisons generally including other BOP facilities dictate his release but, as discussed below, most of his arguments do not apply to FDC Honolulu.  Unlike the overcrowding at other facilities, FDC Honolulu is a low-capacity facility housing a total of 465 inmates.[1] See Federal Bureau of Prisons, *FDC Honolulu*, https://www.bop.gov/locations/institutions/hon/ (last visited Mar. 24, 2020).  Early in the COVID-19 emergency, FDC Honolulu curtailed outside visitors including attorneys and instituted mandatory quarantine policies for new detainees.  See Govt. Opp., ECF No. 967-5 ¶ 4.  FDC Honolulu has ramped up its own sanitation measures and has taken steps to ensure that the food preparation for inmates and

---

[1] A recent news story relayed that a significant number of Hawaii state prisoners may be transferred to the FDC Honolulu.  However, even with additional state prisoners, the number of people housed at FDC Honolulu remains well below the 700 or so beds available at the facility.

staff meets cleanliness standards and that communication issues between inmates
and counsel are addressed in a timely manner.  See id. ¶¶ 6-15.  FDC Honolulu has
no reported cases.  See Govt. Opp., ECF No. 967 at 9.  Accordingly, the current
circumstances at FDC Honolulu and within BOP facilities also weigh in favor of
continued detention.

### 3.  The Viability of Conditions of Release

In the federal system, the Court regularly considers a wide range of
possible release conditions, and combinations of conditions, in lieu of detention.
The Court draws upon the expertise of officers from USPTS and arguments from
defense counsel about viable conditions of release.[2]  Conversely, without viable
release conditions, it is difficult for the Court to make findings about a defendant's
risk of flight and potential danger to others and the community.  The same is true
for a motion to reopen the detention determination.  And the need for viable release
conditions does not go away during a public health emergency.  In fact, a
defendant could potentially pose a greater danger to others and the community if,
during a pandemic, he were released without a stable home environment and other
conditions like location monitoring or a suitable third-party custodian.

Defendant requests to be released to the Island of Oahu where he
would reside with a third-party custodian, his elderly clients.  See ECF No. 957 at

---

[2] The government generally has the burden of proof at a detention hearing.

3.  Again, even if this Court were to consider release, which it is not, then Defendant would have to answer to the State of Florida and his pending sentence there.  The Court finds that his proposed released conditions are therefore not viable.  The Court previously found that no condition or conditions of releases existed that would reasonable assure the safety of the community and nothing has changed since he was ordered detained.  Accordingly, the Court finds that there are no conditions of release that will reasonably assure his presence at future proceedings and the safety of other persons and the community, particularly during the COVID-19 emergency, and this too weighs in favor of continued detention.

Taking into account the new and material information presented by the COVID-19 emergency, the Court finds that the factors set forth in Section 3142(g) still weigh in favor of detention.  Under Section 3143, the Court therefore finds that Defendant shall be detained because the Court cannot find by clear and convincing evidence that he is not likely to flee or poses a danger to the safety of another or the community if released.

### C. The Court Finds No "Compelling Reason" Exists for Temporary Release Under Section 3142(i)

The Court construes Defendant's request for compassionate release as a request for temporary release of a person in custody for a "compelling reason." See 18 U.S.C. § 3142(i).  Defendant bears the burden to show that temporary release is necessary under this provision.  See United States v. Dupree, 833 F.

14

Supp. 2d 241, 246 (E.D.N.Y. 2011).  Release under Section 3142(i) is intended for "extraordinary circumstances."  See United States v. Rebollo-Andino, 312 Fed. Appx. 346, 348 (1st Cir. 2009).  As discussed above, the Court finds that continued detention is warranted under Sections 3142(e) and 3142(f)(2).

The federal bail statute and caselaw are silent as to whether, or to what extent, a "compelling reason" under Section 3142(i) relates to the court's findings of risk of flight and danger to the community.  The federal bail statute and caselaw are similarly silent as to whether a "compelling reason" under Section 3142(i) should be weighed against the factors set out in Section 3142(g), prior violations of release conditions, and other information that the court may consider.  A plain reading of Section 3142(i) suggests that "compelling reasons" may support temporary release irrespective of the court's determinations on flight and dangerousness.  For purposes of the Motion, the Court will consider, standing on its own, whether information related to the COVID-19 emergency may serve as a "compelling reason" to support temporary release for the defendant.

Here, Defendant contends that the COVID-19 emergency creates a heightened risk of contracting an infectious disease and that his elderly clients need his assistance therefore he should be granted release.  See ECF No. 957.  The Court disagrees.  Defendant's speculation about an increased risk within FDC Honolulu is not extraordinary nor compelling.  As stated above, the conditions at

FDC Honolulu may be better controlled and contained than elsewhere in the community.  Defendant's speculative assessment of risk does not currently warrant his temporary release.  Furthermore, Defendant could potentially expose his elderly clients to the virus if he were released during a pandemic.

Accordingly, the Court finds that no compelling reason currently exists to grant Defendant temporary release under Section 3142(i).

### D. Defendant's Other Constitutional Arguments Are Without Merit

Defendant argues that his pretrial detention violates the Due Process Clause of the Fifth and Fourteenth Amendments and the Eighth Amendment's prohibition of cruel and unusual punishment.  These arguments too lack merit.

 The Bail Reform Act affords detainees certain procedural rights including the right to request counsel, to testify, to present witnesses, to proffer evidence, and to cross-examine other witnesses.  See 18 U.S.C. § 3142.  The Act also specifies the standard of proof and the factors the Court must consider in making a detention determination.  See id. at §§ 3143 and 3142(g).  Accordingly, because of the Act's legitimate and compelling regulatory purpose and its procedural protections, the Act is constitutional and does not violate any detainee's rights to due process.  See United States v. Salerno, 481 U.S. 739, 739 (1987).

Similarly, the Act does not violate the Eighth Amendment.  If detention is "reasonably related to a legitimate governmental objective, it does not,

16

without more, amount to 'punishment.'"  <u>Bell v. Wolfish</u>, 441 U.S. 520, 539

(1979).  In the Court's previous detention determinations, it found that Defendant's

detention serves the legitimate objectives of protecting the safety for other persons

and the community and ensuring his presence at future proceedings.  Defendant's

pretrial detention is not amount to punishment and, thus, cannot constitute cruel

and unusual punishment under the Eighth Amendment.

   Accordingly, the Court finds Defendant's contention that his pretrial

detention amounts to constitutional violations lacks merit and Defendant's Motion

is DENIED.

CONCLUSION

   For the reasons set forth above, Defendant's Motion to Reopen

Detention Hearing is DENIED.

   IT IS SO ORDERED.

   DATED AT HONOLULU, HAWAII, APRIL 14, 2020.



            _____
            Wes Reber Porter
            United States Magistrate Judge

**U.S.A. v. Williams; CR 17-00101-1 LEK; Order Denying Defendant Anthony T. Williams' Expedited Emergency Motion for Immediate Release Due to the Coronavirus Pandemic**