UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   vs.<br><br>ANTHONY T. WILLIAMS,<br><br>           Defendants. | CR NO. 17-00101 LEK |

**ORDER DENYING "DEFENDANT'S 'PRIVATE ATTORNEY GENERAL
ANTHONY WILLIAMS MOTION FOR JUDGMENT OF ACQUITTAL'"**

Before the Court is pro se Defendant Anthony T.
Williams's ("Defendant") motion seeking a judgment of acquittal
("Motion"), filed on March 15, 2020.  [Dkt. no. 955.]  Plaintiff
United States of America ("the Government") filed its response
to the Motion on March 30, 2020.  [Dkt. no. 964.]  On March 30,
2020 and April 3, 2020, Defendant filed documents that have been
construed as supplements to the Motion ("3/30/20 Supplement" and
"4/3/20 Supplement").  [Dkt. no. 960, 968.]  On May 5, 2020, the
Government filed its response to the 3/30/20 Supplement and the
4/3/20 Supplement.  [Dkt. no. 985.]  On June 5, 2020, Defendant
filed his reply to the Government's responses ("Reply"), and he
filed a declaration in support of the Reply on June 8, 2020.
[Dkt. nos. 1019, 1021.]  The Court finds this matter suitable
for disposition without a hearing pursuant to Rule LR7.1(c) of

the Local Rules of Practice for the United States District Court
for the District of Hawaii ("Local Rules").  Defendant's Motion
is hereby denied for the reasons set forth below.

**BACKGROUND**

I.   **Procedural History**

The original Indictment in this case was filed on
February 15, 2017.  [Dkt. no. 1.]  The Superseding Indictment
was filed on March 28, 2018, charging Defendant with fifteen
counts of wire fraud, in violation of 18 U.S.C. § 1343, and
seventeen counts of mail fraud, in violation of 18 U.S.C.
§ 1341.  [Dkt. no. 154.]

Defendant's jury trial began with jury selection on
February 3, 2020.  [Amended Minutes, filed 2/3/20 (dkt.
no. 925).]  On February 18, 2020, the Government rested its
case, and Defendant filed his Motion for Judgment of Acquittal,
pursuant to Fed. R. Crim. P. 29(a) ("Rule 29(a) Motion").
[Minutes, EP: Further Jury Trial – 9th day, filed 2/18/20 (dkt.
no. 909) ("2/18/20 Minutes"), at 1; Rule 29(a) Motion, filed
2/18/20 (dkt. no. 903).]  After hearing arguments on the
Rule 29(a) Motion, this Court denied the motion, orally and in
an entering order.  [2/18/20 Minutes at 1; Minute Order, EO:
Order Denying Motion for Judgment of Acquittal Pursuant to
Rule 29, Fed. R. Crim. P., filed 2/18/20 (dkt. no. 904).]  At
the close of all evidence, Defendant stated he was going to

renew his motion for judgment of acquittal in a written filing.
[Amended Minutes, EP: Further Jury Trial – 14th day, filed
2/26/20 (dkt. no. 934), at 2.]

On March 2, 2020, the Court's jury instructions were
read and the parties' closing arguments were given, and the jury
began its deliberations.  [Minutes, EP: Further Jury Trial –
15th day, filed 3/2/20 (dkt. no. 941).]  As to the wire fraud
counts, the jury was instructed:

> In order for a defendant to be found guilty of
> that charge, the government must prove each of
> the following elements beyond a reasonable doubt:
>
> First, the defendant knowingly participated
> in, or devised a scheme or plan to defraud, or a
> scheme or plan for obtaining money or property by
> means of false or fraudulent pretenses,
> representations, or promises.  Deceitful
> statements of half-truths may constitute false or
> fraudulent representations;
>
> Second, the statements made or facts omitted
> as part of the scheme were material; that is,
> they had a natural tendency to influence, or were
> capable of influencing, a person to part with
> money or property;
>
> Third, the defendant acted with the intent
> to defraud, that is, the intent to deceive or
> cheat; and
>
> Fourth, the defendant used, or caused to be
> used, an interstate wire communication to carry
> out or attempt to carry out an essential part of
> the scheme.

[Jury Instructions, filed 3/2/20 (dkt. no. 939), at 21-22 (Jury
Instruction No. 18).]  The jury instruction for the mail fraud

counts was similar.  See id. at 24-25 (Jury Instruction No. 20).
Jury Instruction No. 18 and Jury Instruction No. 20 were
originally proposed by the Government and were taken from the
Ninth Circuit Model Criminal Jury Instructions No. 8.124 and
No. 8.121, respectively.  [Government's [Proposed] Jury
Instructions, filed 1/22/20 (dkt. no. 790), at PageID #: 6917-18
([Proposed] Instruction No. 28), 6920-21 ([Proposed] Instruction
No. 30).]  Those instructions were given by agreement of the
parties.[1]  The jury was also instructed:

> You may determine whether a defendant had an
> honest, good faith belief in the truth of the
> specific misrepresentations alleged in the
> indictment in determining whether or not the
> defendant acted with intent to defraud.  However,
> a defendant's belief that the victims of the
> fraud will be paid in the future or will sustain
> no economic loss is no defense to the crime.

[Jury Instructions at 26 (Jury Instruction No. 21).]  This
instruction was originally proposed by Defendant and was based
on United States v. Molinaro, 11 F.3d 853, 863 (9th Cir. 1993).
[Def.'s Suppl. Points and Authorities Re Jury Instructions,
filed 2/19/20 (dkt. no. 914), Decl. of Counsel, Exh. D (Def.'s
Proposed Instruction 1-B).]  The Government argued that, under
United States v. Shipsey, 363 F.3d 962, 967 (9th Cir. 2004), a
good faith instruction was not required because the jury

---

[1] The jury instructions were settled during a February 21,
2020 status conference.  [Minutes, filed 2/21/20 (dkt.
no. 924).]

instructions regarding the intent to deceive or cheat were adequate as to the state of mind required for convictions of the charged offenses.  Ultimately, Defendant's Proposed Instruction 1-B was given over the Government's objection as Jury Instruction No. 21.

On March 3, 2020, the jury returned a verdict of guilty on all counts.  [Verdict Form, filed 3/3/20 (dkt. no. 947).]

## II.  <u>The Motion and Supplements</u>

The Motion summarizes the trial testimony of each of the Government's witnesses and argues why the testimony supports acquittal.  [Motion, Decl. of Counsel, Exh. A (motion sent, in multiple parts, by email on 2/17/20 and 3/11/20 from Defendant to his stand-by counsel) at PageID #: 8141-61.]  It also argues the Government failed to prove the elements of mail fraud and wire fraud; [<u>id.</u> at PageID #: 8162-64;] and Defendant, who did not commit any crime, was subjected to a selective prosecution because of discrimination and retaliation, [<u>id.</u> at PageID #: 8164].  The 3/30/20 Supplement adds the argument that Defendant's prosecution in this case violates the Fifth

Amendment's prohibition against double jeopardy.  [3/30/20

Suppl., Decl. of Counsel, Exh. A.[2]]

The 4/3/20 Supplement adds the argument that Jury

Instruction No. 18 and Jury Instruction No. 20 were improper in

light of the Ninth Circuit's recent decision in United States v.

Miller, 953 F.3d 1095 (9th Cir. 2020).  Defendant contends that

the jury instruction error supports a judgment of acquittal or,

in the alternative, a new trial pursuant to Fed. R. Crim. P. 33.

[4/3/20 Suppl., Decl. of Counsel, Exh. A (Points and Authorities

Re Additional Issues).[3]]

**STANDARDS**

**I.   Rule 29**

Fed. R. Crim. P. 29(c)(1) states: "A defendant may

move for a judgment of acquittal, or renew such a motion, within

14 days after a guilty verdict or after the court discharges the

jury, whichever is later."  Rule 29(c) motions are evaluated

---

[2] Exhibit A is an excerpt of an email that Defendant sent to his stand-by counsel.  [3/30/20 Suppl., Decl. of Counsel at ¶ 2.]

[3] Unlike the majority of Defendant's other filings, Defendant's stand-by counsel wrote the 4/3/20 Supplement, in its entirety, at Defendant's request and direction.  Counsel states Defendant is experiencing increased limitations to his computer access and legal research time because of a facility lock-down in response to the coronavirus pandemic.  [4/3/20 Suppl., Decl. of Counsel at ¶¶ 7-8.]

under a sufficiency of the evidence standard.  Miller, 953 F.3d at 1108.  This district court has stated:

> The Supreme Court has created a two-part inquiry for determining whether a jury verdict can withstand a defendant's challenge based on the sufficiency of the evidence.  See United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).[4]  First, the court "must consider the evidence presented at trial in the light most favorable to the prosecution."  Id. (citing Jackson, 443 U.S. at 319).  The court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts."  United States v. Rojas, 554 F.2d 938, 943 (9th Cir. 1977) (internal quotation marks omitted); see also United States v. Alarcon-Simi, 300 F.3d 1172, 1176 (9th Cir. 2002).  As a result, "when 'faced with a record of historical facts that supports conflicting inferences' a reviewing court 'must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Nevils, 598 F.3d at 1163 (quoting Jackson, 443 U.S. at 326); see also United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992) ("Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.").

> "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."

---

[4] Jackson was superseded, in part, on other grounds by 28 U.S.C. § 2254(d).  See, e.g., United States v. Markham, No. CR F 08-065 LJO, 2010 WL 2650717, at *9 (E.D. Cal. July 1, 2010).

> Nevils, 598 F.3d at 1163 (quoting Jackson, 443
> U.S. at 319).  The question the court must ask is
> not "whether **it** believes that the evidence at the
> trial established guilt beyond a reasonable
> doubt," but "rather whether 'any' rational trier
> of fact could have made that finding."  Id.
> (quoting Jackson, 443 U.S. at 318-19).

United States v. Teves, CRIM. NO. 11-00503(3) JMS, 2013 WL

12212918, at *1 (D. Hawai`i Nov. 22, 2013) (emphasis and some

alterations in Teves); see also United States v. Johnson, 874

F.3d 1078, 1080-81 & n.2 (9th Cir. 2017) (stating the district

court's sufficiency of the evidence ruling in the Rule 29(c)

context is reviewed de novo and applying the two-step Jackson

analysis).

## II.  Rule 33

Fed. R. Crim. P. 33(a) states, in pertinent part:

"Upon the defendant's motion, the court may vacate any judgment

and grant a new trial if the interest of justice so requires."

This district court has stated:

> A motion for new trial "is directed to the
> discretion of the judge" and should be granted
> "only in exceptional cases in which the evidence
> preponderates heavily against the verdict."
> United States v. Pimentel, 654 F.2d 538, 545 (9th
> Cir. 1981) (quotation marks omitted); accord
> United States v. Mack, 362 F.3d 597, 600 (9th
> Cir. 2004) (reviewing the denial of a motion for
> new trial under Rule 33(a) under an abuse of
> discretion standard).  A district court's power
> to grant a motion for new trial is much broader
> than its power to grant a motion for judgment of
> acquittal, United States v. Alston, 974 F.2d
> 1206, 1211 (9th Cir. 1992) . . . .

United States v. Gear, CRIM. NO. 17-000742 SOM, 2019 WL 4396139, at *2 (D. Hawai`i Sept. 13, 2019), *appeal filed*, (9th Cir. Oct. 9, 2019).  It is Defendant's burden to establish that a new trial is warranted.  See, e.g., United States v. Kapahu, CR. NO. 16-00453 SOM, 2017 WL 2524838, at *2 (D. Hawai`i June 9, 2017) (citing United States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989)).

> In reviewing a motion for a new trial, a court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).  The Court may draw upon the information gained from presiding over the trial.  Balestreri v. United States, 224 F.2d 915, 917 (9th Cir. 1955). . . .

United States v. Ferreira, Crim. No. 07-00608 HG-02, 2011 WL 6012515, at *4 (D. Hawai`i Nov. 30, 2011).

## DISCUSSION

I.  ## Motion for Judgment of Acquittal

A.  ### Entitlement Based on *Miller*

James Miller was tried and convicted of nine counts, including five counts of wire fraud, in violation of § 1343. Miller, 953 F.3d at 1100.  At trial, Miller requested a jury instruction stating that the required intent for a wire fraud conviction was an intent to "'deceive and cheat'" the victim, MWRC Internet Sales, LLC ("MWRC").  Id.  The district court

9

rejected Miller's proposed instruction and, over Miller's objection, gave the government's proposed instruction, which was taken from the Ninth Circuit's model instruction and stated the required intent was to "'deceive **or** cheat.'"  Id. at 1100-01 (emphasis in Miller).

On appeal, Miller argued the instruction given was a misstatement of the law.  The Ninth Circuit noted: "As thus stated in the alternative, Miller could theoretically have been convicted of deceiving MWRC . . . , even if he had no intent to cheat MWRC, that is to, 'deprive [MWRC] of something valuable by the use of deceit or fraud.'"  Id. at 1101 (some alterations in Miller) (quoting Merriam-Webster's Collegiate Dictionary, 10th ed. (1997)).  The Ninth Circuit agreed the instruction presenting the alternative was erroneous because,

> [l]ike the mail fraud statute from which it is
> derived, the wire fraud statute, in plain and
> simple language, criminalizes the use of
> interstate wires to further, not mere deception,
> but a scheme or artifice to defraud or obtain
> money or property, i.e., in every day parlance,
> to cheat someone out of something valuable.  It
> follows that to be guilty of wire fraud, a
> defendant must act with the intent not only to
> make false statements or utilize other forms of
> deception, but also to deprive a victim of money
> or property by means of those deceptions.  In
> other words, a defendant must intend to deceive
> **and** cheat.

Id. (emphasis in original).  Prior Ninth Circuit cases, including Shipsey, upheld the model jury instruction with the

10

"deceive or cheat" language, but <u>Miller</u> overruled those cases in light of <u>Shaw v. United States</u>, 137 S. Ct. 462 (2016), and "h[e]ld that wire fraud requires the intent to deceive **and** cheat — in other words, to deprive the victim of money or property by means of deception." <u>Miller</u>, 953 F.3d at 1102-03.  However, the Ninth Circuit ultimately held that the erroneous instruction given at Miller's trial was harmless.  <u>Id.</u> at 1103-04.

Defendant's 4/3/20 Supplement argues <u>Miller</u> is both an additional ground supporting his request for a judgment of acquittal and grounds for a new trial.  Although Defendant argues the analysis and holding in <u>Miller</u> warrant a judgment of acquittal, he does not argue the erroneous instructions, in and of themselves, warrant a judgment of acquittal.[5]  Instead, he argues the erroneous instructions contributed to the Government's failure to present sufficient evidence to support his convictions.  <u>See</u> 4/3/20 Suppl., Decl. of Counsel, Exh. A (Points & Authorities Re Additional Issues) at ¶ 6 ("Because the Government did not present direct evidence of Defendant's intent, the erroneous jury instructions add[] to the gravity of

_____

[5] This district court liberally construes the filings of pro se defendants in criminal cases.  <u>See, e.g.</u>, <u>United States v. Sullivan</u>, CR. NO. 17-00104 JMS-KJM, 2020 WL 589526, at *1 (D. Hawai`i Feb. 6, 2020).  However, because Defendant's stand-by counsel wrote the 4/3/20 Supplement, it is not necessary to liberally construe that filing.

the failure of the Government's proof in this case."). Defendant's argument that <u>Miller</u> supports his request for a judgment of acquittal will therefore be addressed in the context of Defendant's sufficiency of the evidence argument.

###    B.    <u>Sufficiency of the Evidence</u>

Defendant contends the Government failed to present sufficient evidence to prove the elements of mail and wire fraud.  As to Counts 1 to 15, the Superseding Indictment alleged:

> On or about the dates stated, within the District of Hawaii and elsewhere, for the purpose of executing, and attempting to execute, the aforesaid scheme and artifice to defraud, Defendants, ANTHONY T. WILLIAMS, ANABEL CABEBE, and BARBARA WILLIAMS, did knowingly transmit, and cause to be transmitted, in interstate and foreign commerce, by means of wire communications, certain signs, signals and sounds, that is, the following wirings, with each such wire communication constituting a separate count of this Indictment[.]

[Superseding Indictment at ¶ 33 (emphases in original).]  The Superseding Indictment thereafter lists two Moneygram wirings (Counts 7 and 8) and thirteen email messages.  [<u>Id.</u> at pg. 18.]

As to Counts 16 to 32, the Superseding Indictment alleged:

> On or about the dates stated, in the District of Hawaii and elsewhere, for the purposes of executing or attempting to execute the above-described scheme and artifice to defraud, Defendants, ANTHONY T. WILLIAMS, ANABEL CABEBE, and BARBARA WILLIAMS, knowingly caused to

> be delivered by mail and a private and commercial interstate carrier according to the direction thereon, the following matter, with each constituting a separate count of this Indictment[.]

[Id. at ¶ 35 (emphases in original).]  The Superseding Indictment thereafter lists one mailed letter (Count 16) and sixteen mailed mortgage payments.  [Id. at pgs. 19-20.]

> To convict a defendant of wire fraud, the jury must find beyond a reasonable doubt: "(1) the existence of a scheme to defraud; (2) the use of wire . . . to further the scheme; and (3) a specific intent to defraud." United States v. Jinian, 725 F.3d 954, 960 (9th Cir. 2013).  In order to prove a "scheme to defraud," the jury must find that the defendant employed "**material** falsehoods." Neder [v. United States], 527 U.S. [1,] 20, 119 S. Ct. 1827 [(1999)].  "In general, a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" Id. at 16, 119 S. Ct. 1827 (alteration in original) (quoting [United States v.] Gaudin, 515 U.S. [506,] 509, 115 S. Ct. 2310 [(1995)]).

United States v. Lindsey, 850 F.3d 1009, 1013–14 (9th Cir. 2017) (emphasis and some alterations in Lindsey).  Mail fraud has similar elements.  See United States v. Lo, 839 F.3d 777, 788 n.5 (9th Cir. 2016) (stating "the essential elements of a mail fraud offense include: (1) a scheme to defraud; (2) materiality of the statements made in furtherance of the scheme; (3) an intent to defraud; and (4) use of the mails" (citation omitted)).  As previously stated, under Miller, an intent to defraud for either wire fraud or mail fraud "requires the intent

to deceive **and** cheat — in other words, to deprive the victim of money or property by means of deception."  953 F.3d at 1103 (emphasis in original).

### 1.   Use of Wires and the Mail

The Government presented exhibits showing the wire transfers of money, the emails, and the mail, described in the Superseding Indictment.  See Tr. Exhs. 6, 8 (Moneygram wirings); Tr. Exhs. 3-5, 7, 9-12 (emails); Tr. Exhs. 2, 101-32, 134-41 (exhibits showing use of the mail).  Each of these was sent by or received by either Defendant or his co-defendant, Barbara Williams, who was acting on behalf of Defendant's entity, Mortgage Enterprise Investments ("MEI").  Thus, the trial record is adequate to allow "any rational trier of fact" to find, beyond a reasonable doubt, that Defendant used wires and the mail as alleged in the Superseding Indictment.  See Nevils, 598 F.3d at 1164 (citations omitted).

### 2.   Scheme to Defraud and Materiality

It is undisputed that: Defendant owned and operated MEI and its related entity The Common Law Office of America ("CLOA"); and some of MEI's former clients in Hawai`i testified at trial.  Among the services offered by MEI were a mortgage reduction program and a foreclosure assistance program. Defendant argues some of the witnesses whom the Government presented as former MEI clients were actually clients of

14

Henry Malinay ("Malinay"), Anabel Cabebe ("Cabebe"), and others, who started another company, Mortgage Enterprise ("ME"). Malinay and Cabebe previously worked with Defendant, but they started ME when Defendant was arrested and incarcerated for charges unrelated to this case.  They attempted to utilize the same mortgage reduction system utilized by MEI, but Defendant contends they were unsuccessful because they did not understand his system and/or they were incapable of carrying it out. Defendant claims that he and MEI never defrauded anyone, and the only fraud committed was by ME and persons acting on ME's behalf.  However, even assuming that ME committed fraud, that does not negate the evidence that Defendant and MEI committed fraud.  As James Evers, Esq.,[6] testified, both the MEI system and the ME system were fraudulent.

Laurice Otsuka, a forensic accountant with the Federal Bureau of Investigations ("FBI"), testified that she examined MEI's bank records and identified 112 clients in Hawai`i and over 3,000 transactions involving checks deposited to MEI's accounts.[7]  The summary charts prepared by Agent Otsuka showed a

---

[6] Mr. Evers is an enforcement attorney with the State of Hawai`i Office of Consumer Protection ("OCP").  His specialty is consumer protection in the mortgage rescue fraud area. Mr. Evers was called as a witness in Defendant's case.

[7] Cash payments to MEI were not analyzed because of the difficulty in determining the source of the payment.

total of $218,527.13 received from Hawai`i clients from June 7, 2012 to December 31, 2015. [Tr. Exhs. 903 (Mortgage Enterprise Investments (Hawaii) Mortgage Client Income by Year), 904 (Mortgage Enterprise Investments (Hawaii) 06/07/2012 to 02/29/2016 – List of Mortgage Clients (Sorted by Last Name)).] Agent Otsuka's analysis did not include any of ME's accounts; she only analyzed MEI accounts, each of which Defendant was a signatory for. Defendant does not dispute that MEI received money from Hawai`i clients; his position is that that the money represented legitimate payments for legitimate services.

It is undisputed that Defendant would carry a badge, which he stated he carried as a sovereign peace officer. He also carried handcuffs and an identification card ("ID") that stated he was a Private Attorney General. Defendant freely admits he is not an attorney at law, and he states he always explained to clients the difference between a Private Attorney General, who is an attorney in fact, and an attorney at law. The former MEI clients who testified at trial said Defendant showed them the badge, ID, and handcuffs, and they said that, based on the items and Defendant's representations about the items, they trusted him more. They believed he was a lawyer and/or that he was affiliated with the federal government. Some of the former MEI clients testified that, if they had known Defendant was not a lawyer, they would not have signed up for

16

MEI's program.  Although some of the former MEI clients completed their paperwork with persons other than Defendant, they initially attended meetings with Defendant where Defendant explained the program.

FBI Agent Megan Crawley testified that she had never heard of a sovereign police officer badge prior this investigation, and she did not believe the badge that was seized from Defendant was a legitimate badge issued by a law enforcement agency.  Although Agent Crawley could not identify where Defendant purchased that particular badge, she testified that the FBI investigation found websites where similar badges could be created, as well as PayPal records showing that Defendant purchased multiple law enforcement badges on eBay.

MEI clients were told to stop making their monthly mortgage payments to their existing mortgagee or mortgage servicer because MEI would take over their mortgages.  Instead, a MEI client paid an initial fee to MEI and made monthly payments to MEI of approximately one-half of the amount of the client's original mortgage payment, sometimes less.  MEI clients were also told that the principal owed on their mortgage loan would also be reduced.  The MEI mortgage reduction program was purportedly accomplished through the filing of various

17

documents, including a UCC Financing Statement[8] and a Mortgage, with the State of Hawai`i Bureau of Conveyances ("BOC").  See, e.g., Tr. Exhs. 200 (UCC Financing Statement for Julita and Miguel Asuncion), 201 (Mortgage for Julita and Miguel Asuncion). The Government's witness, Simon Klevansky, Esq. - who was accepted by the Court as an expert in law, specifically debtor/creditor issues, the UCC, liens, and mortgages - testified regarding one of the UCC Statements filed on behalf of MEI clients.  Mr. Klevanksy stated the document did not affect the clients' real property, as the document purported to.  He also testified that, to the extent someone stated the UCC Statement would render the clients' prior mortgage null and void, that statement would be false.  The MEI clients who testified at trial did not have their original mortgage nullified, voided, or taken over by MEI.  They either faced foreclosure or had to renegotiate their monthly mortgage payments to their mortgagee, resulting in amounts much higher than their monthly payments before they signed up for the MEI program.  The OCP eventually obtained a judgment declaring MEI mortgages void.  [Tr. Exh. 209 (Final Judgment and Permanent

---

[8] "UCC" refers to the Uniform Commercial Code.  The portions of the UCC that Hawai`i has adopted appear in Haw. Rev. Stat. Chapter 490.

Injunction in Favor of Plaintiff and Against Defendants, recorded in the BOC on 6/15/17).[9]]

Thus, there is evidence that MEI's programs were part of a scheme to deprive clients of money through false statements by Defendant, and others, about MEI's ability to reduce the amounts owed on their mortgages.  Those false statements were material because they promised benefits that MEI clients believed they would obtain if they paid money to go through MEI's programs.  There is also evidence that Defendant made false statements about his status as a type of attorney and a type of peace officer.  Those false statements were also material because they had "a natural tendency to influence, or [were] capable of influencing" people who were recruited as potential MEI clients because Defendant's purported status made him appear more trustworthy than he would have been without that status.  See Neder, 527 U.S. at 16 (citation and quotation marks omitted).

When viewed in the light most favorable to the Government, the evidence summarized above, together with the other evidence presented at trial, is adequate to allow "any rational trier of fact" to find, beyond a reasonable doubt, that

---

[9] The plaintiff was OCP and the defendants were Anabel Gasmen Cabebe, Mortgage Enterprise Investments, Mortgage Enterprises Investments, and Mortgage Enterprise. [Tr. Exh. 209 at 1.]

Defendant intentionally engaged in a scheme to defraud MEI clients and that he made material misrepresentations in furtherance of that scheme.

### 3.   Intent to Defraud

As previously noted, the jury was instructed that the intent to defraud is "the intent to deceive or cheat." [Jury Instructions at 21 (Jury Instruction No. 18), 24 (Jury Instruction No. 20).] Miller now makes it clear that those instructions were erroneous, in part because they would allow conviction where a defendant engaged in a deception, but the defendant did not intend to deprive the alleged victim of money or property through that deception.  See 953 F.3d at 1102-03. However, that type of error arising from the "deceive or cheat" instruction was mitigated in this case by Jury Instruction No. 21, which informed the jury that, in determining whether Defendant had an intent to defraud, it could consider whether he had an "honest, good faith belief in the truth of the specific misrepresentations alleged in the indictment." See Jury Instructions at 26.  If the jury determined that Defendant had an honest, good faith belief in the truth of his statements, he would not have either an intent to deceive or an intent to cheat, i.e. to deprive MEI clients of money or property through his statements.  It can be inferred from the verdict that the jury ultimately rejected Defendant's position that he had a good

faith belief that his mortgage reduction and foreclosure assistance programs worked.

The evidence summarized above indicates that: MEI had a significant number of clients in Hawai`i; MEI collected significant amounts of money from those clients; but, the MEI mortgage reduction program ultimately did not reduce any Hawai`i client's mortgage; and the documents MEI prepared and filed with BOC did not have a legitimate legal basis. During Defendant's testimony, he explained the theory behind MEI's practice of listing the MEI client as both the creditor and the debtor on the MEI documents. He stated that client's "straw man," or legal fiction, identity is the debtor and the client's "flesh and blood" identity is the creditor. Defendant also testified that MEI mortgage documents comparable to the documents that MEI used in Hawai`i resulted in replacement of an Illinois client's, John Hicks, original mortgage with a MEI mortgage. Defendant testified that the Hicks home was later sold because of a divorce, but the Government presented an exhibit suggesting that the Hicks mortgage was not voided, and the home was foreclosed upon by the mortgagee that Defendant claimed was replaced by MEI. [Tr. Exh. 873 (Notice of Foreclosure (Lis Pendens) filed in Bank of Am., Nat'l Ass'n v. John E. Hicks, et al., in the Circuit Court of the Twelfth Judicial Circuit, Joliet, Will County, Illinois on 1/5/15).] The Government also presented

21

evidence that Defendant was convicted in a Florida state court of grand theft and unlawful filing of false documents or records relating to property for his operation of a mortgage scheme similar the one at issue in the instant case.  [Tr. Exh. 822 (Judgment in <u>State of Florida v. Anthony Troy Williams</u>, in the 17th Judicial Circuit, Broward County, dated 6/23/17).] Although the Florida conviction occurred after the events at issue in the current case, at the trial in the instant case, Defendant made it clear that he still believes his mortgage reduction system works, in spite of the Florida confliction.  A reasonable jury could have considered the Florida conviction in determining the credibility of Defendant's current representations about the effectiveness of his system, as well as his credibility when he made representations about the beliefs that he held at the times relevant to the Superseding Indictment.

When viewed in the light most favorable to the Government, the evidence summarized above, together with the other evidence presented at trial, is adequate to allow "any rational trier of fact" to find, beyond a reasonable doubt, that Defendant had the intent to defraud required under <u>Miller</u>, *i.e.* an intent to deceive **and** cheat.

4.   **Ruling**

The Court finds that the trial record, viewed in the light most favorable to the Government, contains adequate evidence for "any rational trier of fact [to find] the essential elements of the crime[s] beyond a reasonable doubt," including the intent to deceive **and** cheat.  See Nevils, 598 F.3d at 1163. Therefore, even in light of Miller, there was sufficient evidence presented at trial to support Defendant's convictions. The Motion, as supplemented, is denied to the extent that it requests a judgment of acquittal because of insufficient evidence.

C.   **Selective Prosecution**

Defendant next argues he is entitled to a judgment of acquittal because he is the victim of selective prosecution. However, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996).

Further, an allegation of "selective or vindictive prosecution" "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(iv).  Defendant did raise the issue of selective

23

prosecution in his pretrial motions, and his claim was rejected each time.  See Order Denying Def.'s [242] Sworn Motion to Disbar Ronald Johson [sic] for Prosecutorial Misconduct and Racism, filed 10/1/18 (dkt. no. 345), at 3 ("the Court finds that Defendant fails to establish selective prosecution"); Minute Order, EO: Court Order Denying Def.'s "Motion to Show Prosecutors Ronald G. Johnson and Gregg Paris Yates Engaged in Unlawful Selective Prosecution Against Private Attorney General Anthony Troy Williams," filed 8/8/19 (dkt. no. 542) ("8/8/19 EO").[10]

Because selective prosecution is not a defense to the merits of a criminal charge and because Defendant's prior selective prosecution claims have been considered and rejected, the Motion is denied, to the extent that Defendant raises selective prosecution as a basis for a judgment of acquittal.

**D.**  **Double Jeopardy**

Defendant's final argument in support of his request for a judgment of acquittal is that the charges in this case are duplicative of the charges he faced in the Florida state court, in violation of his Fifth Amendment right against double jeopardy.  Unlike a selective prosecution argument, a defendant

---

[10] On September 3, 2019, Defendant filed a motion for reconsideration of the 8/8/19 EO.  [Dkt. no. 570.]  The motion for reconsideration was denied in a November 27, 2019 entering order.  [Dkt. no. 667.]

is not required to raise a double jeopardy argument prior to trial.  A prior version of Rule 12(b)(3)(A) required double jeopardy arguments to be raised in a pretrial motion, but that requirement was removed in the most recent amendments to subsection (b)(3).  See Fed. R. Crim. P. 12(b)(3) advisory committee's note to 2014 Amendments ("The references to 'double jeopardy' and 'statute of limitations' were dropped from the nonexclusive list in (b)(3)(A) to permit further debate over the treatment of such claims.").

Although Defendant was not required to do so, he did raise the double jeopardy argument in his pretrial motions, and the argument has been rejected by this Court.  See Order Denying Def.'s "Sworn Motion to Dismiss Superseding Indictment," filed 10/1/18 (dkt. no. 330), at 19-21; Minute Order, EO: Court Order Denying Def.'s "Sworn Motion to Dismiss," filed 2/2/20 (dkt. no. 852), at 3.  The instant Motion, as supplemented, does not present any factual or legal basis warranting either reconsideration of those orders or a new analysis of the double jeopardy issue.  The Motion is therefore denied, to the extent that Defendant raises double jeopardy as a basis for a judgment of acquittal.

**E.    Summary**

Having rejected all of the grounds Defendant has presented, the portion of the Motion seeking the entry of a judgment of acquittal is denied.

## II.  Motion for a New Trial

The Court next turns to Defendant's argument that he is entitled to a new trial based on Miller.

**A.    Timeliness**

The Government first argues Defendant's request for a new trial is untimely. A motion for a new trial must be filed within fourteen days after the jury verdict, unless the motion is based upon newly discovered evidence. Fed. R. Crim. P. 33(b)(2). Defendant requested a new trial in the 4/3/20 Supplement, which was filed more than fourteen days after the jury returned its verdict.

However, the rule's advisory committee notes recognize that, in light of Fed. R. Crim. P. 45(b)(1)(B), an untimely motion for a new trial may be considered "if the court determines that the failure to file it on time was the result of excusable neglect." Fed. R. Crim. P. 33(b)(2) advisory committee's note to 2005 amendments. Further, the United States Supreme Court has held that the Rule 33(b)(2) time limitation is not jurisdictional. Eberhart v. United States, 546 U.S. 12, 19

(2005) (per curiam) (holding the government forfeited the defense that the motion for a new trial was untimely).

The Miller opinion, which is the basis of Defendant's request for a new trial, did not exist during the fourteen-day period after the jury returned its verdict in this case. Defendant filed the 4/3/20 Supplement fourteen days after the Ninth Circuit issued Miller.  Therefore, Defendant's failure to file a motion for a new trial within Rule 33(b)(2)'s fourteen-day period was excusable, and the Government's timeliness argument is rejected.

### B.   **Whether a New Trial is Warranted**

"The harmless and plain error standards set forth in Rule 52 of the Federal Rules of Criminal Procedure apply to new trial motions."  Gear, 2019 WL 4396139, at *4 (citing United States v. Santiago, 2019 WL 4040323, at *1 (N.D. Cal. Aug. 27, 2019)).  Rule 52 states: "(a) Harmless Error.  Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.  (b) Plain Error.  A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

Unlike in Miller, Defendant did not object to the jury instructions with the "deceive or cheat" language.  The plain error standard therefore applies to Defendant's request for a new trial.  "To establish plain error, [the defendant] must show

27

that (1) there was an error, (2) the error is clear or obvious, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." United States v. Johnson, 963 F.3d 847, 850 (9th Cir. 2020) (citation omitted).

In light of Miller, there was a clear error in Jury Instruction No. 18 and Jury Instruction No. 20. Thus, the first two requirements of the plain error analysis are met. Because this Court will assume, without deciding, that erroneous jury instructions affected Defendant's substantial rights, only the fourth requirement of the plain error is at issue. Cf. Johnson, 963 F.3d at 850.

In the sufficiency of the evidence analysis, this Court concluded that there was sufficient evidence in the record to support Defendant's convictions, even when considering the Miller requirement of an intent to deceive **and** cheat. The Court recognizes that a motion for a new trial differs from a motion for a judgment of acquittal because, in deciding whether to order a new trial, a district court does not view the evidence in the light most favorable to the Government, and the district court is able to weigh the evidence, including making evaluations of credibility. See Alston, 974 F.2d at 1211. However, even when the record is viewed in this manner, there is overwhelming evidence supporting Defendant's convictions. This

Court therefore concludes that allowing Defendant's convictions to stand, in spite of the Ninth Circuit's subsequent decision in Miller, would not "seriously affected the fairness, integrity, or public reputation of judicial proceedings." See Johnson, 963 F.3d at 850 (citation omitted). Because the fourth requirement in the plain error analysis is not met, giving the erroneous instructions in Jury Instruction No. 18 and Jury Instruction No. 20 did not constitute plain error.[11]

The Motion, as supplemented, is denied as to Defendant's request for a new trial.

## CONCLUSION

On the basis of the foregoing, Defendant's "Private Attorney General Anthony Williams Motion for Judgment of Acquittal," filed on March 15, 2020 and supplemented on March 30, 2020 and April 3, 2020, is HEREBY DENIED.

---

[11] Even if the harmless error standard applied, see Miller, 953 F.3d at 1103, this Court would still find, beyond a reasonable doubt, that the jury would have convicted Defendant if properly instructed because of the strength of the evidence. Further, the jury's rejection of Defendant's good faith argument, in spite of the good faith instruction, also indicates that the jury would still have convicted Defendant, even if it had been instructed according to Miller.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, August 19, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

USA VS. ANTHONY T.WILLIAMS; CR 17-00101 LEK; ORDER DENYING
DEFENDANT'S PRIVATE ATTORNEY GENERAL ANTHONY WILLIAMS MOTION FOR
JUDGMENT OF ACQUITTAL